ROBERT S. BREWER JR.
United States Attorney
MELANIE K. PIERSON
Assistant U.S. Attorney
California Bar No. 112520
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0420
Email: Melanie.Pierson@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br>JACOB BYCHAK (1),<br>MARK MANOOGIAN (2),<br>MOHAMMED ABDUL QAYYUM (3),<br>PETR PACAS (4)<br><br>          Defendants. | Case No. 18cr4683-GPC<br><br>**GOVERNMENT'S AMENDED MOTION FOR PROTECTIVE ORDER** |
|---|---|

COMES NOW the plaintiff, United States of America, by and through its counsel, United States Attorney Robert S. Brewer Jr. and Assistant U.S. Attorneys Melanie K. Pierson, Robert Ciaffa, and Sabrina L. Fève, and hereby files its Amended Motion for Protective Order. Said Order is based on the files and records of the case.

    DATED: February 4, 2019    Respectfully submitted,

                                        ROBERT S. BREWER JR.
                                        United States Attorney

                                        /s/*Melanie K. Pierso*n
                                        Assistant United States Attorney

I.

STATEMENT OF THE CASE

On October 31, 2018, a federal grand jury in the Southern District of California returned a ten-count indictment charging defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum and Petr Pacas, with Conspiracy, in violation of Title 18, United States Code, Section 371; four counts of Wire Fraud, in violation of Title 18, United States Code, Section 1343; five counts of Electronic Mail Fraud, in violation of Title 18, United States Code, Section 1037(a)(5), and Criminal Forfeiture. The charges related to the defendants' fraudulent acquisition of Internet Protocol (IP) addresses and the use of the purloined IP addresses to send spam.

All defendants appeared for arraignment without being arrested. On November 1, 2018, defendants Bychak and Manoogian were arraigned, and entered pleas of not guilty to all charges. A hearing on all motions was scheduled for December 7, 2018. Defendants Qayyum and Pacas were arraigned on November 5, 2018, and also entered pleas of not guilty to all charges. At the joint request of the parties, the motion date was continued to January 25, 2019. On November 21, 2018, the defendants filed a joint motion for a bill of particulars and the matter was set for a hearing on Friday January 25, 2019.

Between November 1, 2018 and January 25, 2019, the government produced four rounds of discovery. Each round included a detailed index of the documents being produced. The discovery encompassed approximately 100,490 files, which totaled over 56 gigabytes and more than one million pages. In January, the government also provided defense counsel with a protective order that was standard for this district. At the January

25, 2019 hearing, defense counsel advised the government they would not sign the protective order.

At a subsequent meet and confer, the government advised defense counsel that it was not seeking a protective order for the materials obtained from Company A (which employs all four defendants). The materials obtained from Company A comprise the vast bulk of the discovery. The government asked defense counsel if there were any limitations they would agree to under a protective order. Defense counsel indicated there were no materials for which they would agree to a joint protective order. This motion followed.

II

STATEMENT OF FACTS

The defendants were and remain employed by Company A, a San Diego firm engaged in the business of digital advertising. Defendant Jacob Bychak held, among others, the title of Business Operations Manager. Defendant Mark Manoogian (who is an attorney) represented himself to be Business Development Manager, and defendant Mohammed Abdul Qayyum was the Technical Operations Manager. Defendant Petr Pacas was employed as Director of Operations.[1]

To transmit its digital advertising, Company A required numerous Internet Protocol (IP) addresses to send its commercial emails. Company A needed to constantly acquire large groups, or blocks, of IP addresses (hereafter, "netblocks") because the IP addresses used to transmit their email advertising were repeatedly blocked by spam filters. Jake Bychak

---

[1] Pacas moved to a related company in San Diego for several years and then back to Company A after Company A acquired the related company.

*Response and Opposition to Motion for Bill of Particulars*  3  18cr4683-GPC

and Petr Pacas, on behalf of Company A, acquired a number of cut-rate netblocks from Daniel Dye (charged elsewhere) that were hijacked from their authorized users. To use these netblocks to send commercial emails, the defendants provided a fraudulent Letter of Authorization (LOA) -- supposedly from the authorized user -- to the hosting companies and internet service providers (ISPs), indicating that the mailer was authorized by the registrant to use the netblock. Mark Manoogian and Abdul Mohammed (with the knowledge and agreement of their co-conspirators) knowingly created and used false LOAs, represented to be from the authorized users, and sent them to the ISPs to allow Company A to use the hijacked netblocks to send commercial email, which earned Company A substantial profits during the period of the conspiracy.

Dye introduced the defendants to Vince Tarney (charged elsewhere), who operated his own firm in New Jersey, as a hosting company willing to host risky IP addresses. Both Dye and Tarney have pled guilty to felony violations of the CAN-SPAM Act (electronic mail fraud), and are awaiting sentencing.

## III

## POINTS AND AUTHORITIES

The government moves for a protective order governing disclosure of (1) grand jury exhibits and testimony; (2) FBI reports and emails; and (3) records obtained from third parties that include third-party information. Under Rule 16(d)(1) of the Federal Rules of Criminal Procedure, the Court may "deny, restrict, or defer discovery or inspection, or grant other appropriate relief" at any time for good cause. In determining whether a protective order is appropriate, courts

consider factors such as the "'safety of witnesses and others, a particular danger of perjury or witness intimidation, the protection of information vital to national security, and the protection of business enterprises from economic reprisals.'" *United States v. Dent*, No. SACR 16-00029(B)-CJC, 2017 WL 1025162, at *3 (C.D. Cal. Mar. 15, 2017) (citing *United States v. Stone*, No. CR12-0072-JCC-GSA, 2014 WL 788349, at *2 (E.D. Cal. Feb. 25, 2014)). Rule 16's advisory committee notes further provide that "it is obvious that [a protective order] would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed." Fed. R. Crim. P. 16 advisory committee's note to 1974 amendments; *see also Dent,* at *3.

There is no common law or First Amendment public right of access to discovery information, let alone a presumption of a right to access. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33, 36 (1984). There is also no general right of access to information a government official knows, but has not released to the public. *United States v. Bundy*, No. 2:16-CR-046-GMN-PAL, 2016 WL 7030431, at *2 (D. Nev. Nov. 30, 2016) (citing *United States v. Blagojevich*, 612 F.3d 558, 562 (7th Cir. 2010); *L.A. Police Dep't v. United Reported Publ'g Co.*, 528 U.S. 32, 40 (1999)). Materials from criminal investigations are not "judicial records under federal law, the public has no presumptive right of access to them." *United States v. Loughner*, 807 F. Supp. 2d 828, 834 (D. Ariz. 2011); *see also United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process

because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation.").

In this case, the Court ruled at the January 25, 2019 hearing that it would not consider staying any further dissemination by defense counsel of materials already produced. In light of this ruling, the government seeks a protective order for future discovery of the following materials: (1) grand jury exhibits and testimony; (2) FBI reports and emails; and 3) documents containing personal identification information for third parties. For the following reasons, the government respectfully submits that good cause exists to subject this narrow class of records to a protective order.

A. Good Cause Exists to Protect the Grand Jury Proceedings

The grand jury is "subject to strict secrecy requirements," *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991). For this reason, Rule 16 specifically contemplates that certain types of evidence brought before the grand jury will be subject to limited discovery. For example, Rule 16(a)(3) exempts a grand jury's recorded proceedings from discovery or inspection subject to a limited number of exceptions. This deliberate and tailored exemption is consistent with Rule 6(e) of the Federal Rules of Criminal Procedure, which mandates that ongoing grand jury proceedings remain secret subject to a limited number of exceptions.

In this case, the defendants are aware of an active grand jury proceeding in regards to which Company A and other individuals have retained counsel. The government is limited in what in can say regarding this proceeding, but represents that disclosing grand jury materials and FBI reports to individuals other than members of the defense team (which

would include expert witnesses retained by the defense to instruct or advise them) runs counter to Rule 6(e) and risks prejudicing the investigation.  The investigative risks include that current and future witnesses brought before the grand jury would know which documents the grand jury has already reviewed, would be able to make educated guesses about which other witnesses may have seen or testified about these documents,[2] would anticipate what other witnesses or records the grand jury may subpoena in the future, and would be in a position to influence future testimony inadvertently or deliberately.

These risks are not speculative. In a meeting with a party represented by counsel ("Party A"), Party A made a statement to the FBI regarding another party's actions ("Party B").  When pressed for the factual basis of this statement, Party A acknowledged that his lawyers had told him that Party B took those actions, but that he had no independent knowledge of those actions.  These actions were material and could, if true, expose Party B to criminal liability. This blurring of what a witness knows and believes is evidence of why a protective order is needed.  For while the government **does not** believe Party A or his lawyers intended to distort his testimony, the consequence is nonetheless akin to perjury in that the listener risks believing a false statement. A protective order is specifically designed to prevent and mitigate such risks. *See Dent* at *3. To ensure the integrity of the grand jury proceeding, the government submits there is good cause to enact a protective order that will prevent the defense team from sharing

---

[2] Company A has provided counsel to past and current employees contacted by the government and, in most cases, the same attorney has represented all the past and current employees.  As such, Company A has detailed knowledge of who the potential grand jury witnesses are and in what order they would have testified.

*Response and Opposition to Motion for Bill of Particulars* 7 18cr4683-GPC

grand jury and investigative materials (namely, FBI reports) with anyone outside the defense team.[3]

### B. Good Cause Exists to Protect Records Involving Third Parties

The government has obtained records from third parties that include personally identifying information for third-party witnesses whom the government alleges received and, in some cases, complained about email spam. For example, the government is currently prepping two batches of records for discovery. The first batch involves approximately 5,555 pages obtained from a mail-forwarding service. These records include the names and mailing addresses of individuals who complained about receiving unsolicited emails. These individuals have not consented to having their names or addresses made public. The government therefore either must redact all their names and addresses, or obtain a protective order; however, the government anticipates that if it does redact each name and address the defense will complain that they are being prevented from identifying potential witnesses and that the government is taking too long to produce the records.

Similarly, the second batch of records involves email header information obtained from a large webmail provider. These records pertain to spam sent to its subscribers. Almost every line of the data provided by the webmail provider includes a third party's email address, none of whom have agreed to have their addresses made public. Each

---

[3] Defendants should not suffer prejudice from this limitation regarding grand jury exhibits because the government has produced documents identical to the grand jury exhibits other than that they are not marked as grand jury exhibits. Thus, to the extent defense counsel maintain they must be able to show the documents to Company A or its employees, they have unfettered access to the original documents whose substance is identical, but which would not expose grand jury proceedings.

email address will need to be redacted, which will both slow and limit the discovery.

The Ninth Circuit has recognized that confidentiality and privacy are legitimate grounds for restricting public access to court records – and discovery materials are entitled to greater protection than court records. *See United States v. Schlette*, 842 F.2d 1574, 1579 (9th Cir. 1988) (when balancing the desire for confidentiality against the common-law right of access, there is "a strong presumption in favor of confidentiality"). Congress has also sought to protect the privacy of third parties via the Privacy Act of 1974, 5 U.S.C. § 552a, ("the Privacy Act"), which is a statutory limitation on the public's right to access certain private information in government records. In addition to the Privacy Act, the Federal Rules of Criminal Procedure provide that, under Rule 49.1, unless there is a court order to the contrary and subject to certain exceptions, filings with the court should redact in whole or in part social security numbers, taxpayer identification numbers, birth dates, names of minors, financial account numbers, or home addresses of individuals. Fed. R. Crim. P. 49.1; *see also United States v. Nosal*, 2013 WL 11327121, at *5 (N.D. Cal. Mar. 29, 2013). While email addresses are not yet enumerated among the identifiers to be redacted, the Court has seen in other criminal matters what grave financial harm can befall an individual who loses control of his or her email address. An email address, like a home address, exposes a person by pinpointing where she or he can be found and accessed. While that exposure does not guarantee harassment, it increases the risks. Where, as here, there is no prejudice to the defendants' ability to review the webmail records with

their counsel and any expert witness they retain, such risks are unwarranted and therefore merit protection.

## III

## CONCLUSION

For the foregoing reasons, the government submits good cause exists to grant the government's motion for a limited protective order that would prevent the defense team from disseminating outside the defense team those materials that fall into one of the following three categories: (1) grand jury exhibits and testimony; (2) FBI reports and emails; (3) third parties' personal identification information, which would include email addresses.

DATED:   February 1, 2019            Respectfully submitted,

ROBERT S. BREWER JR.
United States Attorney


*s/Melanie K. Pierson*
MELANIE K. PIERSON
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> JACOB BYCHAK (1), ) <br> MARK MANOOGIAN (2), ) <br> MOHAMMED ABDUL QAYYUM (3), ) <br> PETR PACAS (4), ) <br> ) <br> Defendants. ) <br> _____) | Case No. 18-CR46836-GPC <br><br><br><br><br> CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

    I, Sabrina L. Fève, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action.  I have caused service of the Government's Amended Motion for Protective Order on the opposing party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on February 4, 2019.

                                  *s/Sabrina L. Fève*
                                  SABRINA L. FEVE