1                  UNITED STATES DISTRICT COURT

2             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4    UNITED STATES OF AMERICA,      .
                                    .
5                  Plaintiff,       . No. 18-cr-4683-GPC
                                    .
6                  v.               . February 14, 2019
                                    . 1:00 p.m.
7    JACOB BYCHAK,                  .
     MARK MANOOGIAN,                .
8    MOHAMMED ABDUL QAYYUM,         .
     PETR PACAS,                    .
9                                   .
                   Defendants.      . San Diego, California
10   . . . . . . . . . . . . . . . .

11
                     TRANSCRIPT OF MOTION HEARING
12           BEFORE THE HONORABLE GONZALO P. CURIEL
                    UNITED STATES DISTRICT JUDGE
13
     APPEARANCES:
14
     For the Plaintiff:      United States Attorney's Office
15                           By: MELANIE K. PIERSON, ESQ.
                                 SABRINA FEVE, ESQ.
16                           880 Front Street, Room 6293
                             San Diego, California 92101
17
     For the Defendant       Law Office of David W. Wiechert
18   JACOB BYCHAK:           By: JESSICA C. MUNK, ESQ.
                             115 Avenida Miramar
19                           San Clemente, California 92672

20   For the Defendant       Mintz Levin
     MARK MANOOGIAN:         By:  RANDY K. JONES, ESQ.
21                           3580 Carmel Mountain Road, Suite 300
                             San Diego, California 92130
22

23

24

25   ///

```
 1   APPEARANCES (CONTINUED):

 2

 3   For the Defendant      Bienert, Miller & Katzman, P.L.C.
     MOHAMMED ABDUL         By:  WHITNEY Z. BERNSTEIN, ESQ.
 4   QAYYUM:                903 Calle Amanecer, Suite 350
                            San Clemente, California 92673
 5

 6   For the Defendant      Bird Marella Boxer Wolpert
     PETR PACAS:              Nessim Drooks & Lincenberg
 7                          By:  NAEUN RIM, ESQ.
                            1875 Century Park East
 8                          Suite 2300
                            Los Angeles, California 90067
 9

10

11

12

13

14

15

16

17

18

19

20

21   Court Reporter:        Chari L. Bowery, RPR, CRR
                            USDC Clerk's Office
22                          333 West Broadway, Suite 420
                            San Diego, California 92101
23                          chari_bowery@casd.uscourts.gov

24   Reported by Stenotype, Transcribed by Computer

25
```

```
1              SAN DIEGO, CALIFORNIA; FEBRUARY 14, 2019; 1:00 P.M.

2                                   -o0o-

3              THE CLERK:  Calling Item Number 1 on the calendar,

4    18-cr-4683, U.S.A. v. Defendant Number 1, Jacob Bychak.

5              MS. MUNK:  Good afternoon, Your Honor.  Jessica Munk

6    on behalf of Jacob Bychak, who -- we filed a waiver of his

7    appearance, per the Court's order when we were last here, Your

8    Honor.

9              THE COURT:  Good afternoon.

10             THE CLERK:  Defendant 2, Mark Manoogian.

11             MR. JONES:  Good afternoon, Your Honor.  Randy Jones,

12   on behalf of my client, Mark Manoogian, who has also waived his

13   appearance today.

14             THE COURT:  Good afternoon.

15             THE CLERK:  Defendant Number 3, Mohammed Abdul

16   Qayyum.

17             MS. BERNSTEIN:  Good afternoon, Your Honor.  Whitney

18   Bernstein with Bienert, Miller & Katzman, on behalf of Mohammed

19   Abdul Qayyum, who has also waived his appearance.

20             THE CLERK:  Defendant Number 4, Petr Pacas.

21             MS. RIM:  Good afternoon, Your Honor.  Naeun Rim on

22   behalf of Petr Pacas, who has also waived his appearance.

23             THE COURT:  Good afternoon, defense counsel.

24             MS. FEVE:  Good afternoon, Your Honor.  Sabrina Feve

25   and Melanie Pierson for the United States.
```

1          THE COURT:  Good afternoon.

2      We are here for a motion hearing which relates to a

3  proposed protective order.  The parties have briefed the issues

4  that are pending, that are in dispute.  And I have reviewed the

5  law, Rule 16, the First Amendment, cases addressing discovery

6  issues.  And at this point, here is my tentative.

7      With respect to the efforts to protect information related

8  to third parties, at line 24 of the protective orders, third

9  parties' personal identification information, I am inclined to

10  grant that.  I am prepared to find that there is good cause to

11  redact -- not redact -- I should say make that information

12  subject to the protective order.

13      And I understand that the defense says it is just e-mail

14  addresses, but ultimately, the Court is concerned that in this

15  day and age that just even providing these e-mails would

16  present potential privacy issues for these individuals being

17  contacted when they don't want to be contacted, and otherwise

18  building a set of identifiers as to an individual that

19  ultimately can be used for no good.

20      With respect to the attempt to ban or prohibit the media

21  or -- representatives of the media to be provided with

22  materials, the Court believes that is appropriate given the

23  need to protect the defendants from having information relating

24  to this case prematurely provided to the public and denying

25  them a fair trial.  The Court believes that there is good cause

1   to provide that limitation.

2       As to the grand jury exhibits, testimony, and FBI reports

3   and e-mails, two things.  One, it seems to me that, to the

4   extent that defendants need to present some of this information

5   to representatives and employees from Company A, that the

6   protective order may go too far by denying the access to

7   employees and representatives from Company A so as to assist

8   the defendants in the preparation of the defense.

9       And then, second of all, at this point, to the extent that

10  the government needs to establish good cause, it is not clear

11  to me, other than in general, what the good cause is.  And I

12  would be prepared to accept, in camera, a letter, some filing

13  which would indicate that there's ongoing investigations; that

14  the release of this information relating to the grand jury

15  investigation or the FBI reports would potentially alert

16  targets; would be problematic for any number of investigative

17  reasons.  I would be prepared to consider, to entertain that

18  type of filing so that the record would be more filled out as

19  far as good cause.

20      So, those are my observations with respect to the request

21  for a protective order.  And to the extent that the government

22  is the moving party on this, I will hear from you.

23          MS. FEVE:  Your Honor, I will be brief because I am

24  going to submit on the Court's tentative.  And if -- I just

25  want to clarify one part of which I understand from the Court,

1    which is right now, we have come before the Court to do,

2    essentially, two things; one of which is much more discrete and

3    it sounds like one that the Court is more prepared to deal

4    with, is to say currently the government has two sets of

5    discovery production it is holding back in light of the failure

6    to reach an agreement with the defense, and that is materials

7    including voluminous e-mail addresses received from a webmail

8    provider and materials received from a mail-forwarding service.

9        In the case of the webmail provider, the e-mails were so

10   pervasive and so voluminous, it was going to pose a challenge,

11   and it was also going to be a privacy issue.

12       With regard to the mail-forwarding service, again, the

13   only thing we would have had to redact would have been

14   addresses and contact information.

15       So, both categories of documents for which we are

16   currently actively prepping discovery and seeking guidance from

17   the Court, my understanding is, will be subject to the Court's

18   tentative, which says that, in the case of PII -- that is,

19   personally identifying information -- those categories of

20   documents should be subject to a protective order.

21       So, as far as the discovery we have right now in this

22   moment, where we needed the clarification, I believe we have

23   gotten it.  I would submit on the Court's tentative.  And we

24   would be prepared to, once the protective order was entered

25   with regard to this one category of documents, to go forward.

1        And as I understand the Court, what the Court is saying is

2    we have not provided the Court with sufficient details to

3    warrant good cause, given that, on some level, we are

4    anticipating having grand jury materials and anticipating

5    having FBI reports; but I am not coming before the Court as I

6    am with regard to the webmail records and the mail-forwarding

7    records to say, "This is why we need them"; but that the Court

8    is saying the government has leave to approach the Court in the

9    future, when we do have such records, to support the reasons

10   why we believe good cause is warranted with regard to either

11   those categories or those particular documents.

12       If I correctly understand the Court, I believe, at the end

13   of the day, that that solves the problem for today and that, if

14   we have a problem going forward, we will come back to the Court

15   with reasons why we believe those additional materials should

16   be subject to the protective order.

17       Is that an accurate distillation?

18           THE COURT:  I think so.

19       And also, I wanted to note that previously I had said

20   that, given the fact that there was already discovery that had

21   been turned over months ago, I wasn't prepared last week or two

22   weeks ago to enter any kind of order regarding that discovery.

23       I would be prepared to revisit previously provided

24   discovery to the extent that you would want to have this

25   prohibition on providing the information to the media made

1    applicable to that.  Because, in the Court's view, the same

2    reasoning that supports the ban on the information being

3    provided to the media that I made as to the anticipated

4    discovery would equally apply to what was previously provided.

5    And with respect to any prior grand jury discovery and agent

6    reports that were provided, if you are in a position to

7    demonstrate that that also should be protected because there's

8    good cause, I would entertain that as well.

9        I was not prepared to take you or take the government --

10   if not on faith, allow the government to obtain a protective

11   order on previously provided discovery to the extent there was

12   no showing of good cause.  But that's not to say I would not be

13   prepared to provide a protective order as to that if there is

14   good cause.

15       And recognizing the fact that it already has been

16   provided, it may be more difficult for the government to prove

17   that the protective order as to that information was violated.

18       At the same time -- especially as to the public

19   dissemination or the media dissemination.  I think, at this

20   point, it appears it has not been disseminated to the media,

21   and to the extent that that is an ongoing concern, that we

22   would -- I would be prepared to address that.

23           MS. FEVE:  If that is the case, what the

24   government -- obviously, we will wait to hear the position

25   articulated by the defendants.  But if the Court's position

```
 1   holds throughout this hearing, what we would be prepared to
 2   submit is an amended protective order that both prohibits
 3   dissemination to the media, without seeking permission from the
 4   Court, for all discovery.  And then, with regard to going
 5   forward, the government has leave to mark, subject to a
 6   protective order, those materials that are obtained from a
 7   third party, not from Company A, that include PII for third
 8   parties.
 9       So we have been -- we have endeavored to be as tailored
10   and narrow as we can.  There is third-party PII we got from
11   Company A, but we are mindful the company is already aware of
12   it.  The defendants are already aware of it.  So we are not
13   seeking to subject that to protective order.  It is only
14   third-party PII obtained from records obtained from third
15   parties.  That's why we believe those privacy interests are
16   more pronounced than they would be if we were to come to the
17   Court and say, "We don't want Company A to know something that
18   it already knows."
19       We are not seeking to do this for the sake of fighting.
20   We are trying to both honor our discovery obligations while
21   being mindful of our obligations and duties toward putative
22   victims, to protect their privacy.
23       So if that's the case, that's what we will do going
24   forward.  And to the extent we believe there are other classes
25   of documents where we need to provide the Court with additional
```

1    information to support a finding of good cause, whether it is

2    in the prior production or going forward, we recognize our

3    burden as the moving party to do so.  And we are prepared to

4    come before the Court in the future if we encounter this

5    category of documents, rather than, as we did in this motion,

6    asking the Court to preemptively bless the production, absent a

7    particular showing of what the nature of those documents is.

8         And with that, Your Honor, I would submit.

9         THE COURT:  So, let me hear from defense counsel with

10   respect to the Court's tentative and what the government has to

11   offer.

12        MS. BERNSTEIN:  Thank you, Your Honor.  I think I

13   will take up the third-party discovery first.  I would like --

14   defense would like some clarification as to whom this order

15   that the Court is contemplating would be excluded, and we would

16   ask Company A be specifically permitted to review the documents

17   as well.  And it can be designated, if it satisfies the Court,

18   to attorneys' eyes only, but --

19        THE COURT:  And let me ask you, who is Company A?

20   Are we talking about five individuals that work at this

21   company, or are we talking about 105?  Specifically, what are

22   we talking about?

23        MS. BERNSTEIN:  Company A is all four defendants'

24   employer.  So when we were requesting that Company A have

25   permission to participate in the defense as well, in the

1  preparation of the defense, we are specifically referring to

2  upper management in Company A as well as Company A's counsel,

3  because we do need to rely on their expertise in aiding us to

4  go through the discovery.

5       And I am particularly concerned if the government is

6  saying that the forthcoming production are so -- are so covered

7  with PII information that they wouldn't have even been able to

8  redact it meaningfully.  I am concern that then to exclude

9  Company A from that material is to effectively exclude

10 Company A from having any of that material, as well as imposing

11 on defense the burden of having to review it, having to

12 summarize it, and having to still seek the advice of counsel of

13 Company A without being able to share documents in any capacity

14 that have third-party information.

15      So I am not asking for the third-party information to be

16 able to be disclosed to the public at large or to the media.

17 We can certainly respect the Court's tentative with regard to

18 that.  But just asking that, if the Court is inclined to grant

19 a protective order with regard to third-party personal

20 identification information -- which, just for the record, as

21 laid out in the papers, we don't agree with -- but if that's

22 where the Court is headed, we would like to specifically ensure

23 that Company A is party to that.  And we can restrict that to

24 attorneys' eyes only at Company A, if that satisfies the Court.

25           THE COURT:  And I am not sure if Ms. Feve responded

1    to that part of my tentative, that I was of the view that the

2    expressed concern about prejudice based upon the need to have

3    Company A representatives assist the defense in identifying

4    documents or identifying protocols, making sense of certain

5    information, was such that it was potentially over-inclusive or

6    it was potentially prejudicial not to allow Company A employees

7    to be a part of the group that's considered to be the

8    assistants.

9           MS. FEVE:  Well, Company A is an international

10   conglomerate, where I don't even understand the corporate

11   structure after years of discovery.  So, being told it's only

12   applicable to an amorphous executive suite is cold comfort.  I

13   would want to know a discrete list of individuals who are

14   contemplated to be subject to the sharing.

15       But putting that aside, I still think it's completely

16   inappropriate.  There are some things we can brief the Court on

17   in camera, but what I can say in open court is Company A is not

18   a party to this litigation; therefore, there's no presumptive

19   constitutional right, whether it is as a defendant or as a

20   First Amendment right, where their right of access would be the

21   same as any other member of the public.

22       To the extent that defense counsel is claiming an

23   unspecified expertise, what I would suggest to the Court is

24   they receive the discovery subject to the protective order.

25   They come back to us to articulate the prejudice that they

1    believe they are dealing with.  To the extent that we can keep

2    this out of this courtroom and spare the Court further

3    headaches, we will try to resolve whatever complaints they

4    have.  But right now, they haven't seen the documents and they

5    are already saying they have to show it to Company A.

6              THE COURT:  All right.

7              MS. FEVE:  And one reason this causes me great

8    concern, Your Honor, is there's one part of their motion that

9    puzzles me, and perhaps I am being unduly dour in my reading of

10   it.  But in their arguments regarding corporate governance, on

11   page 10 of their motion, they argue -- this is on line 16 of

12   page 10 -- that, as employees, these four defendants are,

13   quote/unquote, "Obligated to cooperate with Company A."

14       My understanding is that defense attorneys who are before

15   you have one duty and one duty alone, and that is to their

16   clients.  And to the extent that any pressure is being exerted

17   on their defendants to cooperate with or act for the benefit of

18   Company A, I submit that is wholly improper in this situation.

19       So, to the extent that they are actually saying there is

20   some legal obligation that compels the defendants to do

21   anything with regard to Company A as it pertains to their

22   defense, that is deeply problematic.

23       So, there are two issues here.  The first is, to the

24   extent that they are saying they have to tell Company A because

25   of some sort of contractual obligation, that should be a cause

1   of concern to the Court and it is a cause of concern to the

2   government.

3        To the extent that they are saying that they have to speak

4   with Company A to fulfill their own constitutional duty to

5   prepare a defense, in that regard, we are much more

6   sympathetic, and we are willing to engage with and discuss with

7   them what they believe the prejudice is and why it is they

8   believe that only Company A can help them and in what form they

9   need that.

10       I understand that there are going to be times when they

11  don't want to come to us, but at the end of the day, they are

12  going to have to go and retain their own independent experts,

13  understanding that no matter what joint defense agreement they

14  may or may not have, there will likely come a time when their

15  clients' interest is adverse to that of Company A, and they

16  should be in a position where they have an independent expert

17  who is capable of advising them without contemplating the

18  interests of Company A.

19            THE COURT:  All right.  So it sounds to me like

20  there's a two-step involved here.  The first step is with

21  respect to the government showing good cause to withhold the

22  information relating to grand jury exhibits, testimony, FBI

23  reports.  And then, in addition, you would provide the Court

24  with information, to the extent that it exists, whether or not

25  there are concerns with respect to representatives of

1   Company A, who are themselves targets, so that by having this

2   very open-ended kind of view of, "Okay, anybody at Company A,"

3   that that then walks right up to the problem, that it now is

4   potentially compromising an ongoing investigation.

5        To the extent that you can show good cause exists, to the

6   extent that there is some further reason as to why there should

7   be a limited group of people -- well, not a limited group of

8   people -- that you provide that information, I would then be

9   prepared to have this information provided to the defense.  And

10  then, based upon their review, argue to the Court that it needs

11  to be reviewed by an identified group of individuals at

12  Company A in order to allow them to prepare the defense.

13            MS. FEVE:  Just to provide a record for the Court, in

14  this case, the allegations are that these individuals as

15  well -- in the course of their employment for Company A, sent

16  unsolicited, commercial e-mail to people who had not consented,

17  registered to or agreed to be the recipients of this e-mail,

18  which is commonly call "spam."  So, under these allegations,

19  the people who received the unsolicited e-mails were victims.

20       For instance -- now, just to illustrate, the records we

21  are discussing with the Court are from the mail-forwarding

22  service and the webmail provider.  In the case of the

23  mail-forwarding service, the third-party information we are

24  seeking to protect and limit having distributed to Company A

25  comes from victims.  These are people who actually took

1    multiple steps to try and get themselves off the e-mail

2    distribution lists that were being distributed and used by

3    Company A to send the spam.  These were the people who were

4    saying, "I don't want you to communicate with me."  So, giving

5    their records, their personal information to the person they

6    are specifically saying, "I don't want you to communicate with

7    me," is part of why we are saying we believe there's a

8    compelling reason, there's good cause to protect their privacy.

9         Similarly, with the webmail records that we are getting,

10   these are individuals who a webmail provider identified as

11   being victims of spam.

12        So, to draw an analogy, if we had a boiler-room scheme,

13   where people were being called by phone and receiving phone

14   calls that they did not want and potentially luring them into

15   doing things they did not want to do, this would be analogous

16   to us saying, "While we may have only indicted employees of the

17   boiler room, we are seeking a protective order for those

18   third-party records that include PII from being disseminated

19   back to the boiler room."  We are giving it to the individual

20   defendants in this case, but we are saying, "Please prevent

21   them from giving it to their employer absent a showing of good

22   cause and necessity."

23        Does that help illustrate to the Court how we perceive the

24   victims' PII in this case?

25             THE COURT:  I think so.  Ultimately, as a starting

1    point, as I stated, I find there is good cause to protect that.

2    And I guess the remaining question would be whether or not at

3    this point it should apply -- this protection should apply to

4    not only the media but to Company A representatives until the

5    defense overcomes the concerns that the Court has regarding the

6    sharing of that PII.

7              MS. FEVE:  We understood the protective order, as it

8    pertains to PII, to be preventing the defense team from

9    circulating that PII outside the members of the defense team.

10             THE COURT:  All right.

11       Ms. Bernstein?

12             MS. BERNSTEIN:  Your Honor, I think that allowing

13   Company A attorneys' eyes only would solve all of the concerns

14   that we have articulated.  And that solution would also, Your

15   Honor, not cause defendants to suffer undue prejudice to our

16   Fifth and Sixth Amendment constitutional rights to prepare and

17   present a defense.  We are not talking about mailing this out

18   to everyone at Company A, but attorneys' eyes only is a

19   prohibition that could be absolutely respected that would

20   balance these concerns and would solve the Court's --

21             THE COURT:  Do you agree?

22             MS. FEVE:  No, Your Honor, I do not.

23        First of all, I don't know, when she says "attorneys' eyes

24   only," which attorneys she means.  For instance, there's an

25   employee of Company A who wears many hats.  One he wears

```
 1   sometimes is as an attorney.
 2           THE COURT:  So, is there a particular attorney you
 3   have in mind?
 4           MS. BERNSTEIN:  I think we can make an ex parte
 5   showing if the Court is interested.  I don't actually feel
 6   comfortable at this time having to disclose to the government
 7   what would be part of our defense preparation.
 8           THE COURT:  Competing ex partes.
 9           MS. BERNSTEIN:  And in that vein, Your Honor, I also
10   want to be sure I don't forget, that to the extent the
11   government does make any future purported showings of good
12   cause, whether in camera or otherwise, to the Court, I would
13   like to request leave of the defense to be able to oppose that.
14           THE COURT:  All right.  And you may.
15       But, ultimately, given the considerations that would be
16   taken into account, with the need to maintain an investigation
17   confidential, I certainly would not be prepared to find that
18   the government is required to provide its justification in an
19   open filing or on the record.
20       And I would be prepare to follow the lead of the Southern
21   District of New York in *United States v. Smith*, 985 F.Supp.2d
22   506, where the Court did that exactly, for purposes of having
23   good cause established.
24           MS. BERNSTEIN:  Understood, Your Honor.
25           MS. FEVE:  And, Your Honor, again, we will try to
```

19

1   make the issue, if it has to come before the Court, as narrow

2   as possible.

3       What we want to do is give unredacted copies of the

4   discovery that we have ready to the defense; have them come

5   back to us before we have to seek intervention of the Court and

6   explain to us, to the extent they can, why they believe there's

7   prejudice.  To the extent that we can work with them, we will

8   do so.  And then, to the extent that we cannot reach an

9   agreement, they can always come back to the Court to explain

10  why Company A needs to be exposed to this, at which point we

11  can potentially discuss which parties.

12      But part of what we are trying to do, Your Honor, is get

13  discovery to the defendants.  The protective order is not to

14  encumber anyone's constitutional rights.  It is to balance the

15  competing privacy interests of these third parties, our 16

16  obligations, and our interest in the integrity of the

17  proceedings before the grand jury.

18      So, to the extent the Court has requests or suggestions

19  about how it would like us to handle these things going

20  forward, we are happy to try and adhere to them through the

21  meet-and-confer process.  We are not suggesting that simply by

22  giving this order that means that the defense can't later

23  articulate whatever it is they believe is the necessity.

24      But here, when I hear Ms. Bernstein talk about the need

25  for expertise and she hasn't even seen the records, it seems

1  somewhat speculative.  She may well be right, but how can she

2  know that until she's seen them?

3          THE COURT:  And I think both parties are right on a

4  number of issues, as a starting point.  The defense is

5  absolutely right; the government is required to show good cause

6  for purposes of a Rule 16 protective order.  And at this point,

7  I am not convinced that that showing has been made.  At the

8  same time, given the realities of the need to protect

9  investigations, I would understand why it hasn't been filed in

10 a publicly filed document.  So I am prepared to have you

11 provide that.

12     When can you provide that?

13         MS. FEVE:  If the discovery -- when can we provide

14 the discovery?

15         THE COURT:  The good cause, the in camera.

16         MS. FEVE:  For what category of document, Your Honor?

17         THE COURT:  Well, we were talking about the FBI

18 reports, the grand jury exhibits, and whether or not they

19 otherwise reveal ongoing investigations so that they should be

20 subject to this protective order.

21         MS. FEVE:  Your Honor, we did not appreciate that the

22 Court was willing to revisit its statements from the prior

23 hearing about the previously produced discovery.  So we would

24 need to go back, figure out what, if anything, we wanted to

25 seek a protective order for going forward in light of the

1   Court's ruling to revisit that.  I don't know off the cuff with

2   regard to those documents.

3        With regard to documents going forward, at this time, the

4   two batches of discovery we are most focused on getting out are

5   the two that I have described.  To the extent that we have an

6   active, ongoing investigation and we know that records are

7   going to be coming in, I am mindful of what Court has said, so

8   I can't necessarily anticipate what reports I am going to see.

9        And I am prepared, in light of the Court's ruling and the

10  fact that the law is clear that we do have to show good cause,

11  to do it on an ad hoc basis, because we are unable to reach any

12  sort of broader agreement.

13           THE COURT:  What I would propose is, with respect to

14  these two batches of discovery that are ready to go once we

15  address these issues, that you provide the in camera filing

16  establishing good cause as to those two batches as soon as

17  possible.  And then, to the extent that you wish to file an

18  additional filing establishing good cause to address previously

19  provided batches of discovery, you can do that in due course,

20  but just so that -- given that defense counsel already has the

21  previously provided discovery, so that's not an issue.

22           MS. FEVE:  So, is the good cause -- I am sorry, Your

23  Honor.  I initially understood that you were saying there was

24  good cause for third-party PII to be subject to protective

25  order.

```
 1              THE COURT:  There is, as to the third party.
 2              MS. FEVE:  So to the extent we have -- the only
 3    concern we had with the two batches of discovery were e-mail
 4    addresses and mailing addresses for third parties.
 5              THE COURT:  You also identified FBI reports.
 6              MS. FEVE:  Yes.  And what I understood from the
 7    Court's tentative was -- and what I was trying to paraphrase is
 8    to say we have ready right now two batches of documents where
 9    the only concern we have is those are records obtained from
10    third parties, a mail-forwarding service and a webmail
11    provider.  The only concern with regard to those documents is
12    the third-party PII.  We were waiting on producing those until
13    we understood the Court's order.
14       What we will do is we will go back this week and revisit
15    what, if anything, we think we need from the discovery that has
16    already been produced, needs to be briefed to the Court with a
17    showing of good cause.
18              THE COURT:  So, what, you anticipate in the future
19    providing further grand jury exhibits and testimony --
20              MS. FEVE:  Your Honor, we understand our discovery
21    obligation to be ongoing up and until we get to trial.  And
22    because we know that we have an active investigation, which I
23    can't say in detail, there may be materials --
24              THE COURT:  I assumed there already was grand jury
25    exhibits and testimony and FBI reports and e-mails that were
```

1  the subject of this protective order.  So I guess the answer is

2  no, that there are not, correct?

3        MS. FEVE:  What happened, Your Honor, is -- most of

4  the attorneys here are from Orange County or L.A.

5        THE COURT:  Except for Mr. Jones.  I think I

6  recognize him.  And Ms. Bernstein I think I recognize.

7        MS. FEVE:  Except for Mr. Jones.

8     In the course of our dealing with almost all of the other

9  defense attorneys in the Southern District of California, we

10 have never had a problem -- either Mr. Ciaffa, Ms. Pierson or

11 myself.  We had not anticipated it.  And so our focus had been

12 on getting discovery out right away.  Ultimately, that was on

13 us.  We expected something that was not what happened.  That is

14 our problem.  We understand that.  But we wanted to get

15 discovery out as quickly as possible.

16    So when we produced discovery, it was based on a mistake,

17 which was our mistaken belief that we would not have a problem

18 negotiating a protective order.  We have to deal with our

19 mistake, and we will look at the consequences, to the extent

20 that they can be mitigated.

21    But we also understand that, going forward, when discovery

22 comes in that we believe defendants are entitled to, to the

23 extent that it falls within one of the three categories we have

24 identified to the Court -- our hope had been to negotiate this

25 once or to litigate it once.  I appreciate the Court's position

 1   about why we need to make a more detailed showing of good

 2   cause.  I am mindful of that obligation.  What I would say to

 3   the Court is, if we see it, we will come before the Court and

 4   we will establish the foundation.  Once we have either won or

 5   lost in that regard, we will then produce the discovery.

 6            THE COURT:  All right.

 7       Ms. Bernstein?

 8            MS. BERNSTEIN:  So the only point I would like to

 9   clarify, Your Honor, is -- I guess I will take them in reverse

10   order.

11       In regard to future in camera or ex parte showings to this

12   Court purportedly to establish good cause, to the extent that

13   the Court is able to give the defense an opportunity to

14   respond -- mindful, of course, of the concerns that the Court

15   is mirroring from the Smith case in the Southern District of

16   New York -- to the extent it's possible to give us an

17   opportunity to respond, I would like to request that leave of

18   the Court.

19       Because I do think that what is happening here is -- I am

20   not -- I am not sure what insinuation is being made.  I

21   practiced in this district before Your Honor for many years.

22   That discovery was given to us on a mistaken belief that we

23   were going to use that discovery for three months before the

24   first request for a protective order came in.  I am not sure

25   what is being implied there, but, certainly, going forward, to

25

1    the extent any purported cause is established to Your Honor and

2    we have the ability to make a showing or respond to that, we

3    would like to request that.

4         Regarding the order it sounds as though the Court is

5    prepared to endorse regarding the third-party information, I

6    still am seeking clarity as to whether allowing attorneys only

7    from Company A --

8              THE COURT:  As of this moment, I will not permit

9    that; but, with the understanding that, once you review it, to

10   the extent that you can articulate why, upon your review, this

11   is precisely the kind of information that you need to have

12   representatives from Company A assist you with, then I will

13   allow you to seek a modification of a protective order.  And

14   then we can hear from the government as far as their response

15   as to why the Court should not amplify the group of people who

16   have access to this information.

17             MS. BERNSTEIN:  Okay, Your Honor.

18        May I just have a moment?

19             THE COURT:  Of course.

20        (Counsel confer.)

21             MS. BERNSTEIN:  Thank you, Your Honor.

22             THE COURT:  Let me ask Ms. Feve to reformulate or

23   prepare a new protective order that reflects what the Court has

24   permitted and then provide it to defense counsel.  And then, to

25   the extent that there is a disagreement, then I will ask you to

1   present that to the Court.  And then, we won't have a hearing,

2   but you can just present your respective views on why you think

3   it does or does not comport with what I ordered.  All right?

4           MS. FEVE:  I am happy to do that.  I am also happy if

5   defense counsel wants to get me a draft of what they believe

6   the Court's order is.  To the extent that I can endorse their

7   own language, that would hopefully -- again, I am willing to

8   take the laboring oar, but to the extent they want that

9   opportunity --

10          THE COURT:  She said no.  I think they are happy

11  letting you start.

12          MS. BERNSTEIN:  We are happy to respond, Your Honor.

13          THE COURT:  That's what we will do.

14     And then, at this point, we are on calendar -- or are we

15  on calendar for any further proceedings?  Doesn't look like we

16  are.

17          MS. BERNSTEIN:  I believe we have a hearing on

18  April 19, with defense motions due to the Court by the 22nd of

19  this month.

20          THE COURT:  Is that right, Madam Clerk?

21          MS. BERNSTEIN:  I think it is the 19th, at

22  one o'clock.

23          THE COURT:  It didn't make it onto the calendar

24  sheet.

25          THE CLERK:  I don't show it on calendar.

1          MS. PIERSON:  That is the date we had agreed upon.

2          THE COURT:  All right.  So, it didn't appear on the

3    calendar sheet it and doesn't appear in our CEO system.  So,

4    thank you.  I will confirm that.

5       4/19, at what time?

6          MS. BERNSTEIN:  The Court said 1:00 p.m.  You had a

7    conflict at 10:30.

8          THE COURT:  So, then, we will confirm that,

9    April 19th, at 1:00 p.m.

10      And is there anything else to address at this moment?

11         MS. BERNSTEIN:  No.  Thank you, Your Honor.

12         THE COURT:  Thank you, Counsel.

13         MS. FEVE:  Thank you, Your Honor.

14      (End of proceedings at 1:43 p.m.)

15                         -o0o-

16

17

18

19

20

21

22

23

24

25

```
 1                    C-E-R-T-I-F-I-C-A-T-I-O-N

 2

 3          I hereby certify that I am a duly appointed,

 4   qualified and acting official Court Reporter for the United

 5   States District Court; that the foregoing is a true and correct

 6   transcript of the proceedings had in the aforementioned cause;

 7   that said transcript is a true and correct transcription of my

 8   stenographic notes; and that the format used herein complies

 9   with rules and requirements of the United States Judicial

10   Conference.

11              DATED:  February 15, 2019, at San Diego,

12   California.

13

14                       /s/  Chari L. Bowery
                         _____
15                       Chari L. Bowery
                         CSR No. 9944, RPR, CRR
16

17

18

19

20

21

22

23

24

25
```