```
ROBERT S. BREWER JR.
United States Attorney
MELANIE K. PIERSON
ROBERT CIAFFA
SABRINA L. FEVE
Assistant U.S. Attorneys
California Bar Nos. 112520/179432/226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0420
Email: Sabrina.Feve@usdoj.gov

Attorneys for the United States
```

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br>JACOB BYCHAK (1),<br>MARK MANOOGIAN (2),<br>MOHAMMED ABDUL QAYYUM (3),<br>PETR PACAS (4)<br><br>            Defendants. | Case No. 18cr4683-GPC<br><br>**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO MOIDIFY PROTECTIVE ORDER** |

COMES NOW the plaintiff, United States of America, by and through its counsel, United States Attorney Robert S. Brewer Jr. and Assistant U.S. Attorneys Melanie K. Pierson, Robert Ciaffa, and Sabrina L. Fève, and hereby files its Response in Opposition to Defendants' Motion to Modify Protective Order. This Response is based on the files and records of the case.

```
    DATED: April 5, 2019           Respectfully submitted,

                                   ROBERT S. BREWER JR.
                                   United States Attorney

                                   /s/Sabrina L. Fève
                                   Assistant United States Attorney
```

I.

STATEMENT OF THE CASE

On October 31, 2018, a federal grand jury in the Southern District of California returned a ten-count indictment charging defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr Pacas with Conspiracy, in violation of Title 18, United States Code, Section 371; four counts of Wire Fraud, in violation of Title 18, United States Code, Section 1343; five counts of Electronic Mail Fraud, in violation of Title 18, United States Code, Section 1037(a)(5); and Criminal Forfeiture. The charges related to the defendants' fraudulent acquisition of Internet Protocol (IP) addresses and the use of the purloined IP addresses to send commercial email.

Between November 1, 2018 and March 28, 2019, the government produced six rounds of discovery. Each round included a detailed index of the documents produced. The discovery totals over 56 gigabytes and more than one million pages.

On February 4, 2019, the government filed a motion for a protective order that would have prohibited the defense from sharing records with third parties, including defendants' employer Company A. ECF No. 57. Defendants opposed the motion and, on February 14, 2019, the Court held a hearing and issued a verbal order granting in part, and denying in part, the government's motion. The Court directed the government to prepare a draft Order and submit it to defense counsel for approval prior to submitting it to the Court. ECF No. 62.

## II.

## FACTUAL BACKGROUND

As a condition to approving the government's draft Order, defense counsel verbally asked the government to agree to modify the Court's Protective Order to include Company A's outside counsel. Def. Ex. B at 3. The government instead asked the defense first to complete the task of memorializing the Court's order and agreed that, "Once you have the discovery, we can meet and confer regarding any concerns you have about not being able to share it with members outside the defense team." *Id.*

On March 25, 2019, shortly after the government produced records obtained from Yahoo! and Earth Class Mail pursuant to the protective order, defense counsel contacted the government via email and asked them to agree to modify the protective order so that the protected materials, as well as American Express records (which were not subject to the protective order), could be shared with Company A's outside counsel. Def. Ex. C at 2. The email did not detail the basis for defendants' specific concerns about why they were prejudiced by not being able to share the protected materials with outside counsel. *Id.*

Government counsel sought to clarify, "Without knowing the reason that the modification is necessary, we can't tell you why we might object…." *Id.* at 2. Because defendants' email did not elaborate on what particular prejudice the protective order posed, the government asked why the defense was proposing what appeared to be a motion for reconsideration. Def. Ex. D at 5-7. When the defense replied that they were not proposing such a motion and cited alleged misrepresentations by the government, the government asked the defense to explain why it

3

*Response and Opposition to Motion to Modify Protective Order*      18cr4683-GPC

felt the government had mischaracterized the Discovery Materials. *Id.* at 5. The defendants' response was, "We will explain to the Court in our motion why the evidence was not as you described during the February 14 hearing, which you can see for yourself in the transcript." *Id.* at 4. This response suggested that further emails would not improve the parties' ability to meet and confer, so the government proposed scheduling a phone call. *Id.* The only time offered by the defense, however, was the very next morning, when one of the prosecutors was in trial and the other two were unavailable. *Id.* at 3. This email exchange also occurred while the government was preparing its responses to defendants' voluminous motions, which defendants knew were due that Friday, March 29, 2019. Within approximately 30 minutes of submitting their first response to those motions, government counsel circulated an internal email to find times when they could schedule a phone call.[1] Before they could respond to defense counsel with a mutually convenient time, however, defendants filed the instant motion.

III.

ARGUMENT

A. Good Cause Exists to Protect Third-Party Information

The government respectfully submits that good cause exists, pursuant to Rule 16(d)(1), to continue to issue a protective order for the Yahoo! and Earth Class Mail records that contain third-party personal information. The government will not repeat the legal arguments submitted in its February 4, 2019 brief. Rather, this brief will

---

[1] Government counsel has an email circulated at 4:29 pm establishing their efforts to find a time for a phone call and will produce it if needed and if the parties agree that doing so does not waive any present or future claims of work-product protection.

emphasize the underlying factual basis and highlight two primary reasons why good cause exists.

The first reason why a protective order is justified is that there is an active and ongoing grand jury investigation and disclosure of materials obtained from third party witnesses to individuals and entities outside the defense team would jeopardize this investigation. Further details pertaining to this investigation and the potential impact of permitting disclosure to uncharged parties are contained in an *ex parte* declaration that will be filed under seal.

Second, defendants misunderstand or misstate important facts. Defendants insist that the "people who wrote letters to Company A's Compliance Department willingly provided their names, mailing addresses, and other PII to Company A in their letters." Def. Br. at 7:23-25. The records produced to defendants show, however, that the third parties whose addresses are at issue *had no idea* they were writing to Company A.  Not only were these letters not addressed to Company A, but Company A had deliberately obfuscated its identity and location through the use of DBAs and anonymous mailboxes like those offered by Earth Class Mail. In fact, the whole point of Company A using Earth Class Mail was so that people would not know it was involved in sending the commercial email messages that were the subject of the letter writers' complaints.

In addition, defendants' argument relies on their representation that the "letters were routed to Company A's Compliance Department, which Defendants were not a part of…." Def. Br. at 8:5-7.  Defendant Manoogian, however, was one of the primary points of contact within Company A for handling and managing Earth Class Mail.  It is further the

*Response and Opposition to Motion to Modify Protective Order*  5  18cr4683-GPC

government's information and belief that Manoogian's supervisors were, depending on the period in question, either defendant Bychak or Company A's in-house counsel (who also supervised the small handful of Company A employees who handled compliance). Despite arguing that these letters are "precisely the kind of evidence that Defendants must show to Company A to adequately prepare their defense," Def. Br. at 8:8-9, defendants do not explain how the limited number of third-party letters obtained from Earth Class Mail relate to their defense against hijacking IP netblocks and wire fraud, let alone how it prejudices them not to share with Company A the envelopes containing the senders' return addresses.

If defendants are correct that "Company A *should* already have the mailing address, email addresses, and any other PII contained in the Discovery Materials," Def. Br. At 7:27-28 (emphasis added), then there is no prejudice. All they need to do is ask Company A to collect those records and review them with the defense team. If, however, Company A should – but for whatever reason – does not have these records, then criminal discovery in this case should not be a means for Company A to obtain them without the third parties' knowing consent. Defendants suggest with no supporting evidence that Company A has received and stored "millions of letters," *id.* at 8:18, and implies that it would be unfair or impractical to ask Company A to gather the letters it received via Earth Class Mail and review them with defendants. There is no evidence, however, that defendants have actually asked Company A to look for these records or that Company A has actually said it cannot possibly do so. Defendants' representation that Company A already knows these third parties' addresses is also inconsistent with materials obtained

by the government during the course of its investigation. Before the Court relies on defendants' representation that there can be no violation of these third parties' privacy interests because Company A already knows their addresses and personal information, the government requests an opportunity to vet this information directly with Company A's outside counsel. Similarly, with regard to the email addresses obtained from Yahoo!, defendants can discuss with Company A how it distributed email and the defense can ask Company A to collect and discuss a particular date/time/ad campaign/netblock/mail platform (e.g., Yahoo!) that will direct Company A to the relevant records, but without supplying them with the recipients' email addresses – which there is currently no evidence Company A possesses or uses. If defendants can articulate a reason why, even with all the header information other than the recipients' email addresses, they cannot investigate whether the hijacked IP netblocks were used to send the commercial mailings provided in discovery, then they should provide a discrete list of Company A employees and/or lawyers with whom they need to discuss this header information and those individuals should be vetted for potential conflicts. If there is no conflict, then those outside consultants can examine the records subject to a protective order as well.

B. The Government Did Not Make False Representations

Defendant's allegation that government counsel misled the Court regarding a material fact is a very serious and very troubling accusation. The record does not support this allegation.

In its February 4, 2019 motion for a protective order, the government specified three categories of records for which it sought a

*Response and Opposition to Motion to Modify Protective Order*  7  18cr4683-GPC

protective order, the third of which was, "documents containing personal identification information for third parties." ECF. No. 57 at 6:8-9. The government's brief elaborated that it had "obtained records from third parties that include personally identifying information [PII] for third-party witnesses whom the government alleges received and, in some cases, complained about email spam." *Id.* At 8:4-7. Nowhere in the brief did the government represent or imply that this PII was unknown to Company A. Such an implication would, in fact, have been nonsensical because if Company A did not have some means of contacting these individuals, they would never have received spam or had a reason to complain. Moreover, if the records did not involve Company A, there would have been no reason to produce them in discovery. Recognizing this fact, defendants grudgingly note that "[a]lthough it is true that the Government collected the Discovery Materials from third parties, it is clear that these materials either originated from Company A or were sent by Company A." Def. Br. at 9:25-27.

To justify their accusation that the government misled the Court, defendants seize on the government's effort to paraphrase its own argument (which the Court reporter clearly understood to be a paraphrase, as the reporter placed the comment in quotation marks) when government counsel said that the privacy interests involving materials obtained from third parties were different from materials obtained from Company A: "That's why we believe those privacy interests are more pronounced than they would be if were to come to Court and say, 'We don't want Company A to know something that it already knows.'" Def. Ex. A at 10:15-18. From this paraphrasing, defendants argue both that the government

misled the Court and that the Court relied on this misrepresentation. Def. Br. at 8:25-27 ("THE INITIAL DECISION BY THE COURT WAS BASED ON A FALSE REPRESENTATION BY THE GOVERNMENT"). The record does not support either assertion.

At the hearing, the government accurately described the Discovery Materials as "voluminous e-mail addresses received from a webmail provider and materials received from a mail-forwarding service." Def. Ex. At at 7:6-8. The government distinguished those documents containing personal information obtained from Company A and those obtained from third parties, and agreed that only the latter would be subject to the protective order. *Id.* At 10:6-8. Defendants' suggestion that the government stated, and the Court understood, that the materials obtained from third parties were completely unknown to Company A is belied by the analogy the government used to illustrate its concerns with supplying Company A with personal information it might have had – but for which it was not the source:

> So, to draw an analogy, if we had a boiler-room scheme, where people were being called by phone and receiving phone calls that they did not want and potentially luring them into doing things they did not want to do, this would be analogous to us saying, "While we may have only indicted employees of the boiler room, we are seeking a protective order for those third-party records that include PII from being disseminated **back to** the boiler room." We are giving it to the individual defendants in this case, but we are saying, "Please prevent them from giving it to their employer absent a showing of good cause and necessity."

Def. Ex. A at 17:12-22.

This quote, which defendants do not discuss, shows that neither the record nor the logical implications of the government collecting and

producing spam complaints involving Company A supports defendants' argument that the government misled the Court regarding the third-party Discovery Material. Defendants' argument that this putative deception resulted in a "manifestly unjust" decision therefore should fail. Def. Br. at 9:22. Their argument that they had no way of knowing Company A might have access to this PII is similarly strained. This argument requires an unreasonable belief that the government's short sentence paraphrasing its position forestalled them from understanding either the explicit analogy provided by the government that it was worried about giving the PII "back to" Company A, or the illogic of the government collecting and producing spam complaints involving anyone other than Company A. Absent a clear articulation of a newly-discovered and specific prejudice, their motion should be denied.

## IV.

## CONCLUSION

Defendants first requested that the protective order be modified to permit it to share sensitive materials only with Company A's outside counsel. Now they maintain that the sensitive materials must also be shared with unidentified current and former Company A employees. A true and pressing need would support a more robust and fixed position. Their motion should be denied unless and until they can point to a specific and relevant prejudice.

DATED:   April 5, 2019                    Respectfully submitted,

                                          ROBERT S. BREWER JR.
                                          United States Attorney

                                          *s/Sabrina L. Fève*
                                          SABRINA L. FEVE
                                          Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,              )<br>                                        )<br>          Plaintiff,                   )<br>                                        )<br>     v.                                )<br>                                        )<br>                                        )<br>JACOB BYCHAK (1),                       )<br>MARK MANOOGIAN (2),                     )<br>MOHAMMED ABDUL QAYYUM (3),              )<br>PETR PACAS (4),                         )<br>                                        )<br>          Defendants.                  )<br>_____) | Case No. 18-CR46836-GPC<br><br><br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

    I, Sabrina L. Fève, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of the Government's Response in Opposition to Defendants' Motion to Modify Protective Order on the opposing party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on April 5, 2019.

                            *s/Sabrina L. Fève*
                            SABRINA L. FEVE

11