Gary S. Lincenberg - SBN 123058
  glincenberg@birdmarella.com
Naeun Rim - SBN 263558
  nrim@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG &
RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Petr Pacas

David W. Wiechert - SBN 94607
  dwiechert@aol.com
Jessica C. Munk - SBN 238832
  jessica@wmgattorneys.com
William J. Migler - SBN 318518
  william@wmgattorneys.com
WIECHERT, MUNK & GOLDSTEIN, PC
27136 Paseo Espada, Suite B1123
San Juan Capistrano, California 92675
Telephone: (949) 361-2822

Attorneys for Iacob Bychak

Randy K. Jones - SBN 141711
  rkjones@mintz.com
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, California 92130
Telephone: (858) 314-1510

*Attorney for Mark Manoogian*

Whitney Z. Bernstein - SBN 304917
  wbernstein@bmkattorneys.com
Thomas H. Bienert, Jr. - SBN 135311
  tbienert@bmkattorneys.com
James Riddet – SBN 39826
  jriddet@bmkattorneys.com
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700

*Attorneys for Mohammed Abdul Qayyum*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>    vs.<br><br>JACOB BYCHAK, MARK MANOOGIAN, MOHAMMED ABDUL QAYYUM, AND PETR PACAS,<br><br>      Defendants. | CASE NO. 3:18-cr-04683-GPC<br><br>**DEFENDANTS' REPLY TO GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS WIRE FRAUD COUNTS AND ALLEGATIONS FOR FAILURE TO STATE AN OFFENSE**<br><br>Date: February 20, 2020<br>Time: 1:00 p.m.<br>Dept.: 2D<br><br>Assigned to Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

**Page**

I. Introduction ................................................................................................................. 5

II. Argument ..................................................................................................................... 5

    A. The Court Must Consider Undisputed Facts In a Pretrial Motion ....................... 5

    B. Civil Cases Regarding Telephone Numbers Support the Argument That IP Addresses Are Not Property ................................................................................ 7

    C. Like Copyrights in *Dowling*, IP Addresses Are Not "Property" Just Because IP Address Holders Enjoy Some Limited Exclusivity ............................ 9

    D. The Court Must Apply the Rule of Lenity And Find IP Addresses Are Not Property To Avoid Rending the Wire Fraud Statute Vague ......................... 10

    E. Hosting Companies and ISPs, Who Were Not Deprived of Property, Cannot Be "Victims" Under *Lew*, *Bruchhausen*, and Judicial Estoppel ................ 11

    F. Alternatively, the Indictment Must Be Dismissed for Lack of Specificity ......... 13

III. Conclusion ................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Carpenter v. United States*,
  484 U.S. 19 .................................................................................................................. 10

*Cleveland v. United States*,
  531 U.S. 12 (2000) .................................................................................................10, 11

*Dowling v. United States*,
  473 U.S. 207 (1985) ........................................................................................... 9, 10, 11

*Employers Ins. of Wausau v. Granite State Ins. Co.*,
  330 F.3d 1214 (9th Cir. 2003) ....................................................................................... 7

*Glob. NAPS, Inc. v. Verizon New England, Inc.*,
  No. CV 02-12489-RWZ, 2015 WL 12781223 (D. Mass. Mar. 10, 2015) ............................ 10

*Jahn v. 1-800-FLOWERS.com, Inc.*,
  284 F.3d 807 (7th Cir. 2002) ......................................................................................8, 9

*Kremen v. Cohen*,
  337 F.3d 1024 (9th Cir. 2003) ....................................................................................7, 9

*McNally v. United States*,
  483 U.S. 350 (1987) ..................................................................................................... 11

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ..................................................................................................... 12

*Rotstein v. Cable & Wireless, Inc.*,
  No. G027549, 2002 WL 691458 (Cal. Ct. App. Apr. 24, 2002) ......................................7, 8

*Skilling v. United States*,
  561 U.S. 358 (2010) ..................................................................................................... 11

*In re StarNet, Inc.*,
  355 F.3d 634 (7th Cir. 2004) ......................................................................................... 7

*Teleco, Inc. v. Sw. Bell Tel. Co.*,
  392 F. Supp. 692 (W.D. Okla. 1974) ...........................................................................7, 8

*U.S. v. Shortt Accountancy Corp.*,
  785 F.2d 1448 (9th Cir. 1986) ........................................................................................ 6

*United States v. Ali*,
    620 F.3d 1062 (9th Cir. 2010) ....................................................................................12, 13

*United States v. Boren*,
    278 F.3d 911 (9th Cir. 2002) ................................................................................................ 5

*United States v. Bruchhausen*,
    977 F.2d 464 (9th Cir. 1992) ........................................................................................11, 13

*United States v. Cecil*,
    608 F.2d 1294 (9th Cir. 1979) ......................................................................................13, 14

*United States v. Covington*,
    395 U.S. 57 (1969) ................................................................................................................ 6

*United States v. Hall*,
    20 F.3d 1084 (10th Cir. 1994) ............................................................................................. 5

*United States v. Lew*,
    875 F.2d 219 (9th Cir. 1989) ................................................................................. 11, 12, 13

*United States v. Phillips*,
    367 F.3d 846 (9th Cir. 2004) ............................................................................................... 5

*United States v. Thomas*,
    377 F.3d 232 (2d Cir. 2004) ................................................................................................ 9

*United States v. Vasquez-Ramos*,
    531 F.3d 987 (9th Cir. 2008) ............................................................................................... 6

**Statutes**

18 U.S.C. § 2314 .............................................................................................................................. 9

47 C.F.R. § 52.107 ........................................................................................................................... 8

Fed. R. Cr. P. 12(b)(3)(B)(iii) ...................................................................................................... 13

Fed. R. Evid. 201(c)(2) ................................................................................................................... 6

## I. Introduction

In arguing that it has sufficiently pled wire fraud, the Government confirms the flaws inherent in the Indictment by relying heavily on new allegations. The Government claims, for example, that Defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr Pacas "earned millions of dollars" from hijacking IP addresses, a statement for which there is zero evidence and that is patently false—Defendants made no money other than their ordinary salaries. The Government also now claims, after having told this Court otherwise, that IP addresses are property and that Company H was the victim deceived. It is disturbing that the Government has taken polar opposite positions more than once in this case, and even more disturbing that it is asking this Court to rely on fictions in considering this pretrial motion. While the Court must take the allegations in the Indictment as true, these new disputed allegations appear nowhere in the Indictment. When considering the Indictment on its face, in conjunction with *undisputed* facts, the Court must find that the Government has failed to plead wire fraud.

## II. Argument

### A. The Court Must Consider Undisputed Facts In a Pretrial Motion

The Government does not dispute any of the facts Defendants set forth in their motion. Instead, they claim the Court must ignore these undisputed facts in deciding a pretrial motion. But the Ninth Circuit has expressly held that it is proper for a district court to consider *undisputed* facts when considering a pretrial motion to dismiss for the purposes of deciding an issue of law. *United States v. Phillips*, 367 F.3d 846, 855 (9th Cir. 2004) (district court properly considered uncontested fact to decide pretrial motion to dismiss). The Ninth Circuit cited with approval *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994), which it characterized as "noting that a district court may dismiss an indictment pretrial for insufficient evidence when the facts are essentially undisputed." *Phillips*, 367 F.3d 846, 855 n.25. The case cited by the government, *United States v. Boren*, 278 F.3d 911, 913 (9th Cir. 2002), is inapposite—in that case, the trial court had conducted an evidentiary hearing on facts that were apparently in dispute, which the Ninth Circuit declined to consider.

Even where there are facts in dispute, a motion requiring factual determinations may be decided before trial if "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969)). If the disputed factual issues are "entirely segregable" from the evidence to be presented at trial, "the district court ***must*** decide the issue raised in the pretrial motion before trial."  *U.S. v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (emphasis added).

The following facts outside of the Indictment are not in dispute: (1) in support of its prosecution, the Government in this case submitted a declaration from the CEO of ARIN that took the position that IP addresses are not property (Dkt. 107-1), (2) since at least 2004, ARIN has publicly taken the position that IP addresses are not property (including in RSAs, LRSAs, publications, and legal proceedings), (3) federal agencies have affirmed that IP addresses are not property (FCC) and publicly stated that they agree with ARIN's policies (NTIA), and (4) the IP addresses in the indictment are legacy addresses that were not subject to an LRSA. (*See* Dkt. 149-1 ("Mot.") at 8-11.)  There is no way for the Government to dispute these facts because their accuracy cannot reasonably be questioned.[1]

Moreover, facts regarding whether an IP address can be considered "property" are "entirely segregable" from the evidence that will be presented at trial. *See Shortt Accountancy Corp.*, 785 F.2d at 1452. The question of whether an IP address constitutes "property" under the federal wire fraud statute is an issue of statutory construction, which is a question of law for the Court, not a question for the trier-of-fact. *See United States v. Vasquez-Ramos*, 531 F.3d 987, 990 (9th Cir. 2008) (denial of motion to dismiss based on interpretation of federal statute is question of law). Even if these undisputed facts were presented to the jury at trial, it is still the Court that would have to decide the issue of whether an IP address is property.

---

[1]  Accordingly, because Defendants supplied the Court "with the necessary information," the Court "*must* take judicial notice" of these facts. *See* Fed. R. Evid. 201(c)(2).

### B. Civil Cases Regarding Telephone Numbers Support the Argument That IP Addresses Are Not Property

Tellingly, the Government has not cited any *criminal* cases that have construed an IP address to be "property." Instead, the Government tries to analogize to several civil cases. As an initial matter, the cases cited by the Government are distinguishable because they are not criminal—as discussed further below, the rule of lenity makes a critical difference when it comes to the interpretation of criminal statutes, which comports with the high stakes—loss of liberty—in a criminal case. But even in the universe of civil cases, the weight of the case law falls in Defendants' favor. Unable to find a case holding that an IP address is considered "property" in a conversion claim, the Government asks the Court to apply *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003), which held that domain names are property for purposes of conversion. But the Government ignores another line of civil tort cases that have found that **telephone numbers are not property**. *See, e.g., Rotstein v. Cable & Wireless, Inc.,* No. G027549, 2002 WL 691458, at *6 (Cal. Ct. App. Apr. 24, 2002) (telephone number not property for purpose of conversion),[2] *Teleco, Inc. v. Sw. Bell Tel. Co.*, 392 F. Supp. 692, 697 (W.D. Okla. 1974), *aff'd*, 511 F.2d 949 (10th Cir. 1975) ("The right to telephone service is not . . . personal property which is capable of being converted"); *see also In re StarNet, Inc.*, 355 F.3d 634, 637 (7th Cir. 2004) ("No one has a property interest in a phone number").

As IP addresses are far more similar to telephone numbers than domain names, the Court should look to the cases regarding telephone numbers, not domain names, for guidance. Like IP addresses, telephone numbers are a series of numbers that help devices (phones) on the telecommunication network find other devices (other phones). A private entity, a telephone carrier, typically allocates telephone numbers to direct users. With few exceptions, the numbers in the telephone number are random and have no inherent meaning.[3] And

---

[2] Federal courts may consider unpublished state decisions as persuasive authority. *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 fn.8 (9th Cir. 2003).

[3] On the other hand, people ordinarily come up with or select their desired domain name

because a telephone number is limited to ten digits, they are a finite resource. In fact, in 1997, the year of ARIN's creation, the FCC passed an anti-hoarding regulation with respect to toll-free numbers that sought to conserve them by preventing subscribers from selling them to third parties. *See* 47 C.F.R. § 52.107. These restrictions echo the limitations ARIN has placed on the transfer of IP netblocks.

In considering these characteristics, courts have held that telephone numbers are not property even for civil conversion claims. *See Rotstein,* WL 691458, at *6; *Teleco*, 392 F. Supp. at 697. In *Rotstein*, the plaintiff sued a telephone carrier for continuing to route calls made to his private phone numbers to his former employer's corporate offices. The carrier refused the plaintiff's requests to "give them back their private phone numbers." *Id.* at *1. The court dismissed the claim of conversion, concluding that neither a telephone number nor the "right to telephone service" was property. *Id.* at *6.

Importantly, in *Jahn v. 1-800-FLOWERS.com, Inc.*, 284 F.3d 807, 811 (7th Cir. 2002), the Seventh Circuit held that, prior to the FCC's 1997 prohibition on selling numbers, **telephone numbers could be sold even though they were "not the subscriber's property**." In 1976, the plaintiff in *Jahn* was assigned the phone number 1-800-FLOWERS by his carrier at random. *Id.* at 808. The plaintiff effectively "sold" the phone number to defendant 1-800-FLOWERS.com by entering into a contract entitling him to royalty payments from sales made through the phone number. *See id.* After the FCC passed the 1997 regulation, 1-800-FLOWERS stopped honoring the royalty contract, claiming that the prohibition on selling phone numbers precluded it from continuing to pay plaintiff. *Id.* The Seventh Circuit held that the FCC regulation could not prohibit the sale of any phone numbers that had been allocated prior to 1997. *Id.* at 810. In so holding, the court explained that even though pre-1997 phone numbers were not considered property, that "did not mean that subscribers were forbidden to transact about whatever interest they enjoyed in the use of the numbers currently assigned." *Id.* Put another way, the ability to sell a phone number does not make the phone number

---

by choosing specific words.

1 "property." *See id.* The court went on to describe a number of examples where one could
2 receive money for transferring a possessory interest in something without *owning* it, such as
3 subleasing an apartment or renting out a domain name. *Id.* at 811. *Jahn* is clear that an
4 intangible object is not "property" simply because it can be sold for value. Accordingly, IP
5 addresses are not "property" just because they can be sold or by virtue of the fact that some
6 bankruptcy courts have held that they are transferrable.

7    If telephone numbers are not "property" even in the context of these civil lawsuits, an
8 IP address is certainly not property with respect to a *criminal* statute. <u>Kremen</u> does not mandate
9 a different conclusion. Significantly, and undisputedly, the IP addresses at issue here were
10 legacy addresses that were *not subject to a signed LRSA*, the document that confers the "exclusive
11 right to be the registrant" of the IP address. This distinguishes the IP addresses in this case
12 even further from the domain names in *Kremen*. In evaluating whether a domain name was a
13 property right, the court emphasized that the decision to *register* the domain name is what gave
14 domain holders a claim to "exclusivity." *Kremen*, 337 F.3d at 1030. Here, the legacy holders
15 declined to register their IP addresses with ARIN, calling into question whether they ever
16 made a claim to "exclusivity" in the first place and further distinguishing this case from *Kremen*.

17    **C.    Like Copyrights in *Dowling*, IP Addresses Are Not "Property" Just**
18         **Because IP Address Holders Enjoy Some Limited Exclusivity**

19    Even assuming that legacy holders had some claim to exclusivity, the wire fraud claims
20 still fail.  The Government contends that because the legacy IP holders had the "exclusive
21 right to control or use the IP netblocks," that is enough to make the IP netblocks "property."
22 (Opp. at 13.) But the Supreme Court squarely rejected this argument in *Dowling v. United States*,
23 473 U.S. 207 (1985).[4] In *Dowling*, the Court held that a copyright was not "property," even as it
24 recognized that copyright holders held a "bundle of *exclusive* rights" to "publish, copy, and

---

[4]  *Dowling* interpreted 18 U.S.C. § 2314 (called the "travel fraud statute"), which is "analyzed in the same way" as the wire fraud statute, because they "use the same relevant language." *See United States v. Thomas*, 377 F.3d 232, 242 (2d Cir. 2004).

distribute" their own work. *Id.* at 216-17 (emphasis added). While it is true that the Supreme Court has considered "exclusivity" to be a factor in determining whether an intangible right is "property," *see Carpenter v. United States*, 484 U.S. 19, 26-27 (regarding confidential business information), *Dowling* makes clear that exclusivity alone is not enough. Notably, *Dowling* observed that although the copyright owner's rights are "exclusive," the copyright owner never has "complete control over all possible uses of his work." *Id.* at 217 (quotations and citation omitted). Among other things, copyright holders must allow for "fair use" and grant compulsory licenses in nondramatic musical works. *Id.* That copyright owners cannot prevent others from using their works in all circumstances was a factor that led the Supreme Court to decide that copyrights were not property. *Id.*

Like copyrights owners, IP address holders have a "bundle of exclusive rights," but never have "complete control" over their IP addresses. Among other things, they cannot sell or transfer IP addresses without ARIN's approval and are subject to ARIN's minimum usage requirements. (*See* Mot. at 8, fn.3.) Importantly, even in civil cases where courts have arguably recognized some limited property interest in IP addresses by allowing parties to transfer them to other parties, those same courts have also held that the new recipient of the IP addresses *must register with ARIN and comply with its policies. See, e.g.*, *Glob. NAPS, Inc. v. Verizon New England, Inc.*, No. CV 02-12489-RWZ, 2015 WL 12781223, at *4 (D. Mass. Mar. 10, 2015) (new recipient of legacy IP addresses must register with ARIN). Thus, like the copyright holder in *Dowling*, the holder of an IP address never has "complete control."

### D. The Court Must Apply the Rule of Lenity And Find IP Addresses Are Not Property To Avoid Rending the Wire Fraud Statute Vague

Contrary to the Government's argument, the interpretation of what is "property" under the wire fraud statute is the exact situation in which the rule of lenity applies. The rule of lenity requires courts to construe any ambiguities in a criminal statute in the defendant's favor. *Cleveland v. United States*, 531 U.S. 12, 25 (2000). The ambiguity at issue here has been addressed time and time again by the Supreme Court. Particularly with respect to federal criminal fraud statutes, the Court has recognized the terms "scheme to defraud" and "property" to be

ambiguous and found it appropriate to apply the rule of lenity in lieu of having to invalidate those statutes—that is, the Court chose to narrow the application of these phrases rather than finding the entire statutory scheme void for vagueness. *See, e.g., Skilling v. United States*, 561 U.S. 358, 412 (2010) (honest services fraud statute not void for vagueness once construed under the rule of lenity to apply only to bribery and kickback schemes); *Cleveland*, 531 U.S. at 25 (under rule of lenity, video poker license in hands of government not "property" for purposes of wire fraud); *McNally v. United States*, 483 U.S. 350, 359-60 (1987) (under rule of lenity, the right to honest services is not "property" for purposes of mail fraud); *Dowling*, 473 U.S. at 229 (under rule of lenity, copyright is not "property" for the purposes of travel fraud).

The Court must do the same here and apply the rule of lenity. As discussed in Defendants' motion, at minimum, there is ambiguity as to whether IP addresses are "property" under the wire fraud statute in light of the statements made by ARIN and the FCC. (Mot. at 16-17.) "A person of ordinary intelligence" cannot be said to have "fair notice of what is prohibited," namely that an IP address, which federal agencies and quasi-government agencies have been arguing is *not* property, is suddenly property when it comes to criminal wire fraud. *See Skilling*, 561 U.S. at 416. A statute that fails to provide such "fair notice" is void for vagueness. *Id.*

> **E.  Hosting Companies and ISPs, Who Were Not Deprived of Property, Cannot Be "Victims" Under *Lew*, *Bruchhausen*, and Judicial Estoppel**

Having been apprised of the law, the Government has once again revised its theory of the case. The Government now takes the position that (1) Company H was one of the victims, (2) Company H was deceived, and (3) Company H gave the Defendants' the right to the exclusive use and control of the netblocks. (Opp. at 12-14.) The Government claims that the legacy holders and the upstream providers who received the LOAs from Company H were also victims. All of these theories must be rejected.

First, the Government is judicially estopped from arguing that Mr. H or Company H are victims. The Government's current position is directly contrary to what it told the Court in

April. Then, the Government's position was (1) Mr. H and Company H were not victims,[5] (2) Company H was not deceived because Mr. H did not care whether the LOAs were forged,[6] and (3) Company H did not have the power to transfer IP addresses between registrants.[7] The Government took these positions to gain an advantage in that proceeding and argued that the defense was not entitled to informant discovery. The Court relied on Government's arguments, observing, "And then if anyone is a victim, it would be the IP person – the entity that has had their profit accessed through false verifications, so that they would be the victims, but it wouldn't be [Mr. H]." (Dkt. 100, 04/30/19 Trans. 28:22-25.) The court then confirmed its tentative denying the motion. (Dkt. 100, 04/30/19 Trans. 31:17-19.) Having "succeeded in persuading a court to accept" its earlier position, the Government is now estopped from arguing the opposite. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

Second, none of these theories can satisfy the requirement in *Lew* that the property be obtained from the victim of the deceit. *See United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989). The Government does not deny that, at best, the Indictment alleges that the deceived party was Company H (and now apparently upstream providers), and the ones who were deprived of the alleged "property" were the legacy holders. Under *Lew*, this lack of convergence between the deceit and the deprivation of property is fatal to the Government's wire fraud claims. Although the Government cites several out-of-circuit authorities that hold otherwise, here in the Ninth Circuit, *Lew* remains good law and is binding on this Court. *See United States v. Ali*, 620 F.3d 1062, 1071 (9th Cir. 2010) (applying *Lew* to find that victim was the one from whom property was taken).[8]

---

[5] "Our theory is not that [Mr. H] is the victim here." (Dkt. 100, 04/30/19 Trans. 29:1-2.)

[6] "My expectation is that [Mr. H] is going to testify that he did not believe it was his job to verify whether or not the LOAs were, in fact, true." (Dkt. 100, 04/30/19 Trans. 20:25-21:2.)

[7] "And that's because [Mr. H] did not have the power or authority to transfer IP blocks between registrants." (Dkt. 100, 04/30/19 Trans. 21:4-5.)

[8] While the Government attempts to distinguish *Lew* by citing to a few case that have held

Finally, the Government's theory that Company H and any upstream providers were deprived of property because they were deceived into routing the IP netblocks is foreclosed by *United States v. Bruchhausen*, 977 F.2d 464 (9th Cir. 1992). The Government is essentially arguing that Company H and the upstream providers had a property interest in being able to provide a service without being deceived as to its purpose. In *Bruchhausen*, the Ninth Circuit held that manufacturers had not lost a "property right" by selling goods to the defendant, even though the defendant had lied about what the goods would be used for. *Id.* at 466-67. Unsurprisingly, the Government does not even address *Bruchhausen* in its opposition.

### F.     Alternatively, the Indictment Must Be Dismissed for Lack of Specificity

If nothing else, the Government's opposition shows that the Indictment must be dismissed for lack of specificity. *See* Fed. R. Cr. P. 12(b)(3)(B)(iii). An indictment must set forth "a sufficient description of the charges against [a defendant] to enable him to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge." *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979). The Indictment falls woefully short of these standards—it is ambiguous as to what the specific nature of the property is, who was deceived, what was material, and who was deprived of what. To fill in these holes, the Government raises a host of new (disputed) accusations against Defendants in their Opposition that are nowhere in the Indictment (notwithstanding their vociferous objection to the Court considering any of Defendants' undisputed facts outside of the Indictment's four corners). They claim, for example, that Defendants made millions of dollars, that Company H was deceived and would

---

that the false statement need not have been made directly to the victim, these cases are entirely consistent with *Lew*. The holding under *Lew* is that the property must have been obtained from the victim of *deceit*. One can be the target of deceit even without being the recipient of a direct misrepresentation. *See Ali*, 620 F.3d at 1071 (even though victim did not receive the misrepresentation, *Lew* still satisfied because victim was target of deceit). Here, the Indictment fails to allege that Defendants intended to induce the legacy holders to part with their IP addresses by *deceiving them*.

not have announced the IP netblocks if he had known the LOA was forged, that Company H passed the LOA onto upstream providers who relied on it to route the IP addresses, that announcing an IP address conferred upon the Defendants the exclusive right to use that IP address, and that email companies were victims because they had to filter spam email.

Not only is there no evidence for most of these statements, for some, the Government has said the very opposite in open court. It is disturbing that the Indictment is so general that the Government can simply change its theory every time the defense challenges the sufficiency of an element. These deficiencies are exactly what are prohibited by Rule12(b)(3)(iii). With these ever-evolving theories, Defendants cannot prepare their defense, inform the Court of the sufficiency of the allegations, and most importantly, Defendants cannot determine whether they are being prosecuted on the basis of facts presented to the grand jury. These fatal errors cannot be saved with a bill of particulars or discovery:

> If a bill of particulars were allowed to save an insufficient indictment, the role of the grand jury as intervenor would be circumvented. Rather than the assurance that a body of fellow citizens had assessed the facts and determined that an individual should face prosecution, the prosecutor would be in a position to second guess what actually happened within the grand jury and fill in the gaps with what he assumed transpired. The protection of a significant check on the power of the courts and prosecutors would thus be lost. For similar reasons, 'open file' discovery cannot cure an invalid indictment.

*United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979).

## III. Conclusion

For the above reasons, the Court must grant Defendants' motion.

|   |   |   |
|---|---|---|
| 1 | DATED: February 14, 2020 | Gary S. Lincenberg |
| 2 | | Naeun Rim |
| | | Bird, Marella, Boxer, Wolpert, Nessim, |
| 3 | | Drooks, Lincenberg & Rhow, P.C. |

By: _____*s/ Naeun Rim*_____
Gary S. Lincenberg
Attorneys for Petr Pacas

DATED: February 14, 2020    David W. Wiechert
Jessica C. Munk
William J. Migler
Wiechert, Munk & Goldstein, PC

By: _____*s/ Jessica C. Munk*_____
Jessica C. Munk
Attorneys for Jacob Bychak

DATED: February 14, 2020    Randy K. Jones
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

By: _____*s/ Randy K. Jones*_____
Randy K. Jones
Attorney for Mark Manoogian

DATED: February 14, 2020    Whitney Z. Bernstein
Thomas H. Bienert, Jr.
James Riddet
BIENERT | KATZMAN PC

By: _____*s/ Whitney Z. Bernstein*_____
Whitney Z. Bernstein
Attorneys for Mohammed Abdul Qayyum

## CERTIFICATE OF AUTHORIZATION
## TO SIGN ELECTRONIC SIGNATURE

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to counsel for the Defendants and that I have obtained authorization to affix their electronic signatures to this document.

Respectfully submitted,

DATED: February 14, 2020

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____*s/ Naeun Rim*_____
Naeun Rim
Attorneys for Petr Pacas

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

Sabrina L. Feve

Assistant U.S. Attorney

sabrina.feve@usdoj.gov

Melanie K. Pierson

Assistance U.S. Attorney

melanie.pierson@usdoj.gov

Robert Ciaffa

Assistant U.S. Attorney

robert.ciaffa@usdoj.gov

Respectfully submitted,

DATED: February 14, 2020

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:   *s/ Naeun Rim*
        Naeun Rim
   Attorneys for Petr Pacas