UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　　Plaintiff,<br>v.<br>JACOB BYCHAK, et al.,<br>　　　　　　　　　Defendants. | Case No.: 18-CR-4683-GPC<br><br>**ORDER DENYING MOTION TO DISMISS THE CAN-SPAM ACT COUNTS 1 AND 6 THROUGH 10**<br><br>**(ECF No. 69.)** |

On March 15, 2019, Defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr Pacas ("Defendants") filed a motion to dismiss Counts 6 through 10 of the Indictment charging violations of 18 U.S.C. §1037, on the ground that subsection (a)(5) is void for vagueness – both facially and as applied to the instant facts. (ECF No. 69 at 3.) Defendants also argued that Counts 6 through 10, and Count 1, failed to state an offense. (*Id.*)

Following a full briefing and hearing schedule, the Court DENIES the motion. The Court finds that subsection (a)(5) of the CAN-SPAM Act is not vague on its face and that Defendants' as-applied challenge is premature at this time. The Court further finds that the Indictment does not fail to state an offense with respect to Counts 1 and 6 through 10.

1

## I. Background

### A. Procedural Background

Defendant's initial motion to dismiss was filed on March 15, 2019. (ECF No. 69.) On March 29, 2019, the Government filed a response. (ECF No. 75.) On April 12, 2019, Defendants filed a reply. (ECF No. 84.) The Court heard the motion on April 30, 2019. (ECF No. 100.) After the hearing, on July 10, 2019, the Government filed a supporting declaration by Mr. John Curran, Chief Executive Officer of the American Registry for Internet Numbers, Ltd. ("ARIN"). (ECF No. 107-1.)

On August 20, 2019, Defendants filed a counter-declaration by Mr. Marc A. Lindsey, President and co-founder of Avenue4 LLC. (ECF No. 116.) The Government filed a response to Defendants' counter-declaration on October 27, 2019, and Defendants filed a reply on September 4, 2019. (ECF Nos. 122, 127.) On October 24, 2019, the Court held a second hearing on Defendants' vagueness challenge and took the motion under submission. (ECF No. 141.)[1]

### B. The Indictment

From December 2010 to September 2014, Defendants allegedly conspired with each other to commit wire fraud and felony electronic mail fraud. (ECF No. 1, Indictment.) Defendants are each charged in all ten counts of the Indictment as follows:

- Count 1: Conspiracy to commit offenses against the United States, specifically, wire fraud (18 U.S.C. § 1343) and electronic mail fraud (18 U.S.C. § 1037(a)(5) and (b)(2)(C)), in violation of 18 U.S.C. § 371;
- Counts 2–5: Wire fraud, in violation of 18 U.S.C. § 1343; and

---

[1] Given the uncontested nature of the background information provided in the Parties' competing declarations, the Court finds that it is unnecessary to consider the declarations in full to address the issues raised by the parties.

- Counts 6–10: Electronic mail fraud, in violation of 18 U.S.C. § 1037(a)(5) and (b)(2)(C), and 18 U.S.C. § 2.

As alleged in the Indictment, Defendants' scheme entailed: (1) Defendants identifying or paying to identify blocks of Internet Protocol (IP) addresses called "netblocks" that were registered to others and appeared to be inactive; (2) Defendants creating and sending letters to Internet hosting companies fraudulently stating the letter bearer had been authorized by the registrants of the inactive IP addresses to use the IP addresses; and (3) Defendants using the fraudulently acquired IP addresses to send commercial email ("spam") messages. (ECF No. 1, Indictment at ¶ 2.)

**C.    The Statute Penalizing Electronic Mail Fraud (18 U.S.C. § 1037)**

Counts 6 through 10 allege violations of 18 U.S.C. § 1037(a)(5). That statute provides, in pertinent part, as follows:

> Whoever, in or affecting interstate or foreign commerce, knowingly . . . falsely represents oneself to be the registrant or the legitimate successor in interest to the registrant of 5 or more Internet Protocol addresses, and intentionally initiates the transmission of multiple commercial electronic mail messages from such addresses, or conspires to do so . . . shall be punished.

18 U.S.C. § 1037. This statute codifies the criminal penalties of an act entitled the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (the "CAN-SPAM Act" or "the Act"), 15 U.S.C. § 7701, *et seq*.

In enacting the CAN-SPAM Act, Congress made several findings about commercial electronic mail, including the following:

> (3) The receipt of unsolicited commercial electronic mail may result in costs to recipients who cannot refuse to accept such mail and who incur costs for the storage of such mail, or for the time spent accessing, reviewing, and discarding such mail, or for both . . .
>
> (6) The growth in unsolicited commercial electronic mail imposes significant monetary costs on providers of Internet access services, businesses, and educational and nonprofit institutions that carry and receive such mail . . .

3

18-CR-4683-GPC

(7) Many senders of unsolicited commercial electronic mail purposefully disguise the source of such mail.

15 U.S.C. § 7701(a)(1)–(7). Because of these and other findings, Congress determined:

(1) there is a substantial government interest in regulation of commercial electronic mail on a nationwide basis;

(2) senders of commercial electronic mail should not mislead recipients as to the source or content of such mail; and

(3) recipients of commercial electronic mail have a right to decline to receive additional commercial electronic mail from the same source.

15 U.S.C. § 7701(b). Congress also recognized that spam posed an additional problem, namely, that those who send it disguise or falsify header, domain, and registration information to avoid being identified. S. Rep. No. 108-102, at 4, 2004 U.S.C.C.A.N. 2348, 2351 ("Compounding these problems is the fact that nearly all spam being sent today is considered untraceable . . . Although many ISPs try to locate spammers . . . spammers can rather easily disguise their whereabouts, quickly move to other ISPs, or set up websites at new domains.")

### D. Internet Protocol ("IP") Addresses and American Registry of Internet Numbers ("ARIN")

"Each device connected to the global Internet needs a numeric identifier, an 'Internet Protocol' address, or simply 'IP address,'" that is unique and "not used by any other device on the network." Ben Edelman and Stephen M. Ryan, *Guidance from ARIN on Legal Aspects of the Transfer of Internet Protocol Numbers*, BUSINESS LAW TODAY, https://www.americanbar.org/publications/blt/2013/05/03_edelman.html (May 2013). To ensure IP uniqueness, the U.S. Government established an Internet Registry System. *Id.* An Internet Registry "carefully manages allocation and registration of IP addresses." *Id.*

Prior to 1997, various government institutions, including the Defense Advanced Research Projects Agency ("DARPA"), the National Science Foundation ("NSF"), and

4

Internet Assigned Numbers Authority ("IANA"), served the function of a registry. AMERICAN REGISTRY FOR INTERNET NUMBERS, HISTORY AND SERVICES at 3 (2020) (ebook), available at https://www.arin.net/reference/training/historyand services.pdf. One NSF contractor, Network Solutions, Inc., was responsible for "the services of IP address and domain name registration and support." *Id.* And, under the auspices of a government project named the Network Information Center (i.e., InterNIC), NSF and NSI "provide[d] registration and allocation of domain names and IP address numbers." *Id.*

In 1997, these institutions transferred their duties and responsibilities concerning IP address management and assignment to the newly-founded American Registry of Internet Numbers. *Id.* at 4. When it was formed, ARIN "inherited the InterNIC database of existing IP addresses" as well as the responsibility to maintain the records in it. *Id.*; *see* Edelman, *Guidance from ARIN*, *supra*. These records became known as "early registrations" or "legacy registrations*." Id*. Legacy number resources thus include IP addresses issued "by an Internet Registry (InterNIC or its predecessors) prior to the inception of ARIN." AMERICAN REGISTRY FOR INTERNET NUMBERS, *Registration Services Agreement (RSA) FAQ*, https://www.arin.net/about/corporate/agreements/rsa_faq/ (last visited February 27, 2020).

Today, ARIN provides IP address services to the United States, Canada, and some islands in the Caribbean Sea and North Atlantic Ocean. *See* ARIN, HISTORY AND SERVICES, *supra*, at 3. ARIN also offers public access to internet resource registration data through its "WhoIs" service, "a public resource that allows a user to retrieve information about IP number resources, organizations, [points of contact], customers, and other entities." AMERICAN REGISTRY FOR INTERNET NUMBERS, *Using Whois*, https://www.arin.net/resources/registry/whois/ (last visited February 27, 2020).

## II. Discussion

Defendants' motion to dismiss presents three questions: (A) whether the Court

must dismiss the electronic mail fraud counts of the Indictment because 18 U.S.C. § 1037(a)(5) is void for vagueness; (B) in the alternative, whether the Court must dismiss the same counts for failure to state an offense; and (C) whether the Court must dismiss Count 1, which alleges a conspiracy to commit electronic mail fraud and wire fraud.

For the following reasons, the Court DENIES Defendants' motion.

### A. 18 U.S.C. § 1037(a)(5) is Not Void for Vagueness.

The United States Supreme Court has observed that the "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285 (2008). "Vague statutes are invalidated for three reasons: (1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of laws based on 'arbitrary and discriminatory enforcement' by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms." *Humanitarian Law Project v. Mukasey*, 552 F.3d 916, 928 (9th Cir. 2009) (*quoting Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998)) (internal quotation marks omitted). A statute is unconstitutionally vague on its face if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304 (citations omitted). A statute is unconstitutionally vague as applied if it fails to place a defendant on notice that his conduct is criminal. *United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001).

Courts ordinarily do not consider whether a statute is void on its face unless a defendant first demonstrates that the challenged statute implicates the First Amendment. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) ("In a facial challenge to the . . . vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct."). Where a statute is challenged as unconstitutionally vague in a case that does

not involve the First Amendment, the Court "do[es] not consider 'whether the statute is unconstitutional on its face,' but rather 'whether the statute is impermissibly vague in the circumstances of this case.'" *Cavitt v. Cullen*, 728 F.3d 1000, 1005 (9th Cir. 2013) (quoting *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004)). In other words, for § 1037(a)(5) to be subject to a facial vagueness challenge, Defendants must demonstrate that the statute regulates commercial speech that is protected. Otherwise, the statute can only be challenged for vagueness on an as-applied basis.

Here, Defendants argue that Counts 6 through 10 of the Indictment should be dismissed on the basis that the statute under which they are charged, 18 U.S.C. § 1037(a)(5), is void for vagueness. Specifically, Defendants argue the terms "registrant," "legitimate successor in interest," and "falsely represent" used in § 1037(a)(5) render the statute unconstitutionally vague both on its face and as applied to Defendants.

### 1. Section 1037(a)(5) Does Not Regulate Protected Speech.

Whether a facial vagueness challenge can be mounted at all, turns on whether § 1037(a)(5) implicates the First Amendment. For commercial speech to receive First Amendment protection, it must not be false, deceptive, or misleading. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 576 (1980); *United States v. Simpson*, 741 F.3d 539, 550 (5th Cir. 2014). In *Simpson*, the Fifth Circuit found that because § 1037(a)(2) of the CAN-SPAM Act specifically targets and punishes only unprotected, intentionally misleading commercial speech, and thus excludes commercial speech that is not misleading, it is not unconstitutionally vague under the First Amendment. *Simpson*, 741 F.3d at 551. The Ninth Circuit has affirmatively chosen not to decide whether § 1037 regulates protected speech and is thereby subject to a facial vagueness challenge. *United States v. Kilbride*, 584 F.3d 1240, 1258 (9th Cir. 2009) ("We need not determine whether § 1037 regulates protected speech, thereby permitting defendants' facial vagueness challenge, as in any case Defendants' challenge would be

unsuccessful.")

Given the absence of precedent on this issue, Defendants argue the CAN-SPAM Act provisions, including subsection (a)(5), regulate commercial speech—namely, email advertising—which is protected by the First Amendment. (ECF No. 69-1 at 6, 9.) The Government contends otherwise, citing *Simpson* for the proposition that § 1037 regulates fraudulent conduct, not protected speech. (ECF No. 75 at 3); *see also Simpson*, 741 F.3d 539, 550–51 (5th Cir. 2014) (finding that sending commercial email with intent to deceive or mislead recipients or ISPs as to origin of message, in violation of § 1037(a)(2), is not protected by First Amendment). Defendants respond that, unlike subsection (a)(2), the falsity element of subsection (a)(5) applies only to a representation and not to the content or transmission of the commercial emails. (ECF No. 84 at 7–9.)

However, in both § 1037(a)(2) and § 1037(a)(5), the falsity element entails some deception in the process of transmitting emails, and that deception is aimed at concealing the source of spam emails (i.e., the "registrant"). In other words, subsection (a)(5) makes a crime the transmission of commercial emails initiated through the use of false representations as to one's status as an IP address registrant or successor in interest to a registrant. From this, it is apparent that § 1037, a fraud-spam statute, does not concern the harmless sending of commercial emails.

Moreover, as alleged in the Indictment, Defendants posed as authorized users of the IP addresses and concealed their use of the IP addresses to send "spam" emails by using business names, post office boxes, and email addresses under different names. (ECF No.1, Indictment at 3–4.) These actions, if proven true, would have the effect of subverting the public's ability to rely on identifying information to discern the originator of the subject emails. Thus, for the foregoing reasons, and like subsection (a)(2), subsection (a)(5) targets fraudulent conduct and not protected speech. *Simpson*, 741 F.3d at 551 ("Given that the statute specifically targets and punishes only unprotected,

8

intentionally misleading commercial speech, and thus excludes commercial speech that is not misleading and all political or charitable speech, we conclude that it is not facially vague or overbroad.").

Because subsection (a)(5) concerns the transmission of commercial emails in the context of false representation and given that the First Amendment does not shield commercial speech that is "false, deceptive or misleading," *Simpson*, 741 F.3d at 550–51, the Court finds that subsection (a)(5) does not implicate the First Amendment. Therefore, Defendants' facial vagueness challenge is inappropriate here, and the vagueness challenge is instead confined to "the circumstances of this case." *See Rodriguez*, 360 F.3d 949 at 953.

### 2. Section 1037(a)(5) is Not Unconstitutionally Vague on Its Face.

Even assuming 18 U.S.C. § 1037(a)(5) was to implicate the First Amendment, Defendants' argument that the operative terms of § 1037(a)(5) – "registrant," "legitimate successor in interest," and "false representation" – are so unclear as to make the statute void-for-vagueness fails to persuade the Court.

For Defendants to succeed on their facial challenge, they must allege that subsection (a)(5) "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Kilbride*, 584 F.3d at 1257 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). "For statutes like § 1037 involving criminal sanctions 'the requirement for clarity is enhanced.'" *Id.* (quoting *Info. Providers' Coal. for the Def. of the First Amendment v. FCC*, 928 F.2d 866, 874 (9th Cir. 1991)). "However, even applying this heightened requirement, 'due process does not require impossible standards of clarity.'" *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 361 (1983)).

"When Congress does not define a term in a statute, [courts] construe that term according to its ordinary, contemporary, common meaning.'" *Kilbride*, 584 F.3d at 1257

9

18-CR-4683-GPC

(quoting *United States v. W.R. Grace*, 504 F.3d 745, 755 (9th Cir. 2007)). In construing the terms of a statute, a court must recognize that a word "gathers meaning from the words around it." *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 702 (1995). In other words, statutory terms are defined by their context.

In determining whether 18 U.S.C. § 1037(a)(5) is unconstitutionally vague on its face, the Court first looks to the statute. This statute makes it a crime to knowingly[2] and "**falsely represent**[] oneself to be the **registrant** or the **legitimate successor in interest** to the registrant of 5 or more Internet Protocol addresses, and intentionally initiate[] the transmission of multiple commercial electronic mail messages from such addresses." 18 U.S.C. § 1037(a)(5) (emphasis added). The terms at issue here are "registrant," "legitimate successor in interest," and "falsely represent." (ECF No. 69-1 at 5–6.) Although neither the Act nor its implementing regulations define these terms, *see* 16 C.F.R. § 316.2, the "ordinary, contemporary, common meaning" of the terms can be found in the dictionary.

As the Government notes, the definitions for the terms in question are as follows:

- "Registrant" is defined as "one that registers or is registered." In turn, to "register" means "to make or secure official entry of in a register;" and a "register" is "a written record containing regular entries of items or details," or "a book or system of public records."

- "Legitimate" is defined as "being exactly as purposed: neither spurious nor false," and "accordant with law or with established legal forms and requirements." The term "successor in interest" is defined as "a successor to another's interest in property," and "especially: a successor in ownership of a business that is carried on and controlled substantially as it was before

---

[2] The Supreme Court has noted that a scienter requirement can help a law escape a vagueness problem. *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994) (citing *Vill. of Hoffman Estates*, 455 U.S. at 499). § 1037(a)(5) contains such a scienter requirement: it does not simply prohibit the false representation of the registrant or legitimate successor in interest to the registrant but requires a defendant to do so knowingly. The intent requirement thus mitigates the perceived vagueness of § 1037(a)(5).

10

the transfer."

- The term "represent" is defined as "to act the part or role of." The term "falsely" means "intentionally untrue," "adjusted or made so as to deceive," and "intended or intending to mislead."

MERRIAM-WEBSTER, https://www.merriam-webster.com (last visited Feb. 24, 2020).

Taken together, the Government maintains that there is nothing vague about what is prohibited. (ECF No. 75 at 6–8.) The Government notes that in *Kilbride*, the terms challenged as vague by defendants (i.e., "material falsification," "altered or concealed," and "impair") were not unconstitutionally vague and had a "clear meaning not open to wholly subjective interpretation." (ECF No. 75 at 8 (quoting *Kilbride*, 584 F.3d at 1258)). By comparison, the Government argues, the terms at issue here are "much more precise." (*Id.* at 7.) The Government further argues that the terms "registrant," "legitimate successor in interest," and "falsely represent" "are not descriptive terms subject to reasonable differences of opinion" and "leave no doubt as to their meaning." (*Id.* at 8.)

On the other hand, Defendants argue that general dictionary definitions are not sufficiently specific for technical criminal statutes such as 18 U.S.C. § 1037. (ECF No. 69-1 at 10–12; ECF No. 84 at 9–11.) Defendants dismiss *Kilbride*'s conclusion as irrelevant because the court in that case was construing "very different terms" used in other subsections of § 1037 in the context of an as-applied challenge. (ECF No. 69-1 at 11; ECF No. 84 at 10.) The crux of Defendants' argument is that the statute fails to specify where or with whom the "registrant" must have registered. (ECF No. 69-1 at 10–11; ECF No. 84 at 11–14.) Defendants further argue that "falsely represent" is vague with respect to whom and in what manner the false representation must be made to trigger liability. (ECF No. 69-1 at 11; ECF No. 84 at 14–15.)

### i. "Registrant" and "Successor in Interest to the Registrant"

Subsection (a)(5) states in full, "[w]hoever . . . knowingly falsely represents oneself to be the registrant or the legitimate successor in interest to the registrant of 5 or

11

more Internet Protocol addresses, and intentionally initiates the transmission of multiple commercial electronic mail messages from such addresses . . . or conspires to do so, shall be punished . . ." 18 U.S.C. § 1037(a)(5).

Considering the context of the CAN-SPAM Act, and the history of how IP addresses have been assigned to their users, the Court finds that there is but one plausible registry for IP addresses in the United States today: ARIN. As the Government points out, since the inception of IP addresses, ARIN and its predecessor scientists, agencies, contractors, and non-profits have maintained a single list of internet numbers. (ECF No. 75 at 8–11.) And, true enough, that registry has taken various forms. ARIN, HISTORY AND SERVICES, *supra*, at 3–4; Edelman, *Guidance from ARIN*, *supra*. Nonetheless, that the registry's name and custodian have changed over time, or that the registry itself may suffer from some inaccuracies, does not detract from its consistent role as a catalogue for the entities or people entitled to use each assigned IP address. (ECF No. 86 at 6, 9–14.) Thus, as the language of the Act plainly directs itself to current "registrant[s]" of IP addresses, and such information is stored and made available to the public in the United States through a single entity, ARIN, the term "registrant" is not so vague as to fail to provide a person of ordinary intelligence fair notice of what is prohibited. *Kilbride*, 584 F.3d at 1257; *Williams*, 553 U.S. at 304.

Meanwhile, a "legitimate successor in interest to the registrant" would necessarily be "a successor to another's interest" in the assigned IP address who has obtained such interest lawfully. For example, when an IP address is sold or transferred, there is only one legitimate successor in interest: the buyer who bought it, and whose name will then be entered in ARIN's database as the new registrant of that IP address. Consequently, this term also provides a person of ordinary intelligence fair notice of what is prescribed.

### ii. "Falsely Represent"

Defendants further argue that the term "falsely represent" in subsection (a)(5) is

unconstitutionally vague because the statute does not specify the person to whom the false representation must be made, or how that representation must be made. (ECF No. 69-1 at 11–12; ECF No. 84 at 8–10.) Relying on *Tandaric*, a case involving false representation of U.S. citizenship, the Government contends that the absence of such specificity does not invalidate the statute. (ECF No. 75 at 7.) In *Tandaric*, the court found that the false representation statute was constitutional – despite failing to specify the circumstances under which, and the persons to whom, the false representation was to be made – because it required that the representation be made for fraudulent purpose. *United States v. Tandaric*, 152 F.2d 3, 5 (7th Cir. 1945).

The terms of a criminal statute must be sufficiently clear to provide guidance as to what conduct will expose a person to liability. *See Kilbride*, 584 F.3d at 1257; *Tandaric*, 152 F.2d at 3. A statute which proscribes conduct in terms so vague that a person of ordinary intelligence must necessarily guess at its meaning violates due process of law. *Id.* Here, as in *Tandaric*, the Court finds that the mere fact that § 1037(a)(5) does not specify the circumstances under which, and the persons to whom, the false representation must be made does not make the statute void for vagueness.

Section 1037 is a fraud-spam statute enacted to, *inter alia*, address the growth in "spam [which] has become a favored mechanism of those who seek to defraud consumers and make a living by preying on unsuspecting e-mail users and those new to the Internet." S. Rep. No. 108-102 at 2, 2004 U.S.C.C.A.N. 2348, 2349. Subsection (a)(5) thus criminalizes the transmission of commercial emails from IP addresses about which a person knowingly and falsely represents themselves to be the registrant. In other words, subsection (a)(5) limits itself, not by the person who is deceived, but rather by the specific conduct to which the false representation relates. It is aimed at, *inter alia*, the false impersonation of true registrants of IP addresses to send spam. Congress recognized that this form of fraud makes tracing the true source of the spam difficult and costly. 15

13

U.S.C. § 7701(a)(1)–(7).

Given the context of the CAN-SPAM Act, and the specific conduct identified (i.e., false representation of registrations), subsection (a)(5)'s false representation requirement is not so incomprehensibly vague that "[people] of common intelligence must necessarily guess at its meaning." *Tandaric*, 152 F.2d at 5. Hence, for the foregoing reasons, subsection (a)(5) does not "fail[] to provide a person of ordinary intelligence fair notice of what is prohibited." *See Kilbride*, 584 F.3d at 1257. Therefore, Defendants' facial challenge must fail.

### 3. An As-Applied Challenge to § 1037(a)(5) is Premature.

Defendants additionally challenge the constitutionality of subsection (a)(5) for being vague as applied to their conduct. (ECF No. 69 at 7–9, 12–14.) Parallel to their facial challenge, Defendants' as-applied challenge rests on the claim that the terms "registrant," "legitimate successor in interest," and "falsely represent" are so vague that Defendants could not have anticipated that making allegedly false representations about "inactive," pre-ARIN, and thus presumably not registered, IP addresses would expose them to subsection (a)(5) liability. (*Id.*) In response, the Government argues that, at this pre-trial stage in the proceedings, the Defendants' challenge is premature. (ECF No. 75 at 3.) The Court agrees with the Government and denies Defendants' as-applied challenge without prejudice at this time.

"[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013) (*quoting United States v. Mazurie*, 419 U.S. 544, 550 (1975)); *United States v. Rodriguez*, 360 F.3d 949, 953 (9th Cir. 2004) ("Where, as here, a statute is challenged as unconstitutionally vague in a cause of action not involving the First Amendment, we do not consider whether the statute is unconstitutional on its face. Rather, we must determine 'whether the statute is

14

impermissibly vague in the circumstances of this case.'") (*citing United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2004)); *see also Vill. of Hoffman Estates v. Flipside*, *Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. The rationale is evident: to sustain such a challenge, the complainant must prove that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all."); *see also United States v. Reyes*, No. CR-06-00556-CRB, 2007 WL 831808, at *8 n.1 (N.D. Cal. Mar. 16, 2007) (finding pre-trial as-applied vagueness challenge premature in absence of any proof of what Defendants' conduct); *United States v. Caputo*, 288 F. Supp. 2d 912, 917 (N.D. Ill. 2003) ("'As-applied' review requires a court to review the specific facts in the case to determine if a reasonable person in Defendants' position would have been on notice that their conduct was at risk. These types of factual determinations are not appropriately determined by a court in a pretrial motion. Accordingly, Defendants' motion to dismiss on these grounds is denied as premature.").

Here, Defendants' claim, that based upon their actions a reasonable person in their position would not have been on notice that their conduct was criminal, calls for a fact-bound analysis. Though it goes without saying, at the pre-trial phase, the parties have not adduced evidence as to what has happened in this case, and thus the Court lacks the factual predicate necessary to determine whether the statute was sufficiently clear "as applied" to that conduct. In addition, the Parties refer to various factual issues including, how pre-1997 addresses function, the accuracy with which the ARIN registry tracks those addresses, and the terms of ARIN's service agreements, that may bear upon the Court's decision. (*See generally* ECF Nos. 107, 116, 122, 127.) Consequently, a decision on Defendants' as-applied challenge to Counts 6 through 10 of the Indictment is premature at this time, and thus the Court denies the challenge without prejudice.

### B. Counts 6 through 10 of the Indictment Do Not Fail to State an Offense.

Defendants argue that, even if the Court does not agree § 1037(a)(5) is unconstitutionally vague, Counts 6 through 10 of the Indictment should be dismissed for failure to state an offense because the legislative intent, ambiguities in subsection (b)(5), and the rule of lenity warrant a narrow construction. (ECF No. 69-1 at 7, 14–15; ECF No. 84 at 16–18.) Based upon a narrow construction, Defendants posit that the term "registrant" should mean, "with respect to a United States IP address, a registrant of an IP address registered with ARIN," and that the term phrase to "falsely represents oneself to be the registrant" should mean "an explicit false representation that one is the registrant of a United States IP address registered with ARIN." (ECF No. 84 at 16.) Representations, moreover, should be limited to false statements relating to registration. (*Id*. at 16–17.) Under this definition, there could be no violation of (b)(5) unless there was a false statement regarding registration of the IP addresses.

"In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "The court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *Id.* "Where the indictment 'tracks the words of the statute charging the offense,' the indictment will be held sufficient 'so long as the words unambiguously set forth all elements necessary to constitute the offense.'" *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (quoting *United States v. Fitzgerald*, 882 F.2d 397, 399 (9th Cir. 1989)). "The rule of lenity applies only if, after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what Congress intended." *Reno v. Koray*, 515 U.S. 50, 65 (1995) (quotations omitted).

Here, Defendants are charged with a scheme to fraudulently acquire and then use IP addresses, which were registered to someone else, to send commercial email in

violation of 18 U.S.C. § 1037(a)(5). (*See generally* ECF No. 1, Indictment.) The Indictment alleges that Defendants "knowingly and falsely represent[ed] themselves to be the registrant and the legitimate successor in interest to the registrants of 5 and more Internet Protocol addresses . . . and intentionally initiate[d] the transmission of multiple commercial electronic mail messages from such addresses." (*Id.* at ¶ 9.) The Indictment lists the blocks of IP addresses allegedly used, and describes several overt acts involved in the scheme, including (a) "identifying[ing] or pay[ing] to identify blocks of Internet Protocol (IP) addresses called 'netblocks' that were registered to others and appeared to be inactive," (b) "creat[ing] and send[ing] letters to Internet hosting companies fraudulently stating the letter bearer had been authorized by the registrants of the inactive IP addresses to use the IP addresses," and (c) "us[ing] the fraudulently acquired IP addresses to send commercial email ('spam') messages." (*Id.* at ¶¶ 2, 9.) Relying on the four corners of the Indictment, and presuming the truth of the allegations therein, as is required at this stage, the allegations of the Indictment do not clearly fail to state an offense. *Boren*, 278 F.3d at 914–17.

Looking beyond the Indictment itself, Defendants argue that the legislative history of 18 U.S.C. 1037(a)(5) and the rule of lenity require subsection (a)(5) be narrowly construed in the Defendants' favor. (ECF No. 69-1 at 7, 14–15; ECF No. 84 at 16–18.) First, Defendants contend that the statute's legislative history reveals Congress changed the statutory language of subsection (a)(5) from "the right to use" to "oneself to be the registrant or legitimate successor in interest," demonstrating that Congress "was focused on false representations specifically regarding registration—not general false representations."[3] (ECF No. 69-1 at 14.) However, by focusing on misrepresentations

---

[3] The Court grants the Defendants' unopposed request to take judicial notice of Senate Bill 877, the version of the CAN-SPAM Act passed by the Senate on October 23, 2003. (ECF No. 84-3.)

regarding one's status as a registrant, Congress provided clarity in how one obtained the "right to use." In this way, Congress avoided a vagueness challenge to the general phrase "right to use" and limited itself to false statements that were tethered to one's status as a "registrant" of an IP address. There is no indication that Congress intended to change its focus from the use (and misuse) of IP addresses to the registration of IP addresses.

Second, Defendants ask the Court to apply the rule of lenity to find (b)(5) does not state an offense. However, the rule of lenity plays no role in statutory interpretation unless the statute is truly ambiguous. *See Moskal v. United States*, 498 U.S. 103, 107 (1990). A statute is not ambiguous simply because it is possible to construe a statute narrowly. *See id*. Rather, the rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Id*. (quotation omitted). In determining the scope of a statute, a court must look first to the statute's language and structure. *See id*. at 108; *see also United States v. 594,464 Pounds of Salmon*, 871 F.2d 824, 825 (9th Cir.1989). If the statute's language is unambiguous, its plain language controls except in rare and exceptional circumstances. *See 594,464 Pounds of Salmon*, 871 F.2d at 826. The words used in the statute are given their ordinary meaning. *Moska*l, 498 U.S. at 108.

As discussed above, the language of (b)(5) is not ambiguous. A "registrant" of an IP address is the person or entity who has been assigned the IP address by ARIN or its predecessors, and whose information is stored and listed in ARIN's WhoIs database. And, the term "falsely represent" is not vague simply because the statute does not specify to whom and under what circumstances the false representation must be made. These conclusions dispose of Defendants' related contentions that the Court should narrowly construe (1) the term "registrant" to exclude pre-ARIN IP addresses not subject to an executed services agreement, and (2) the term "falsely represent" to mean an explicit

18

false representation that one is the registrant of an IP address. Thus, Defendants' interpretation of what subsection (a)(5) should mean is not reasonable and, as such, this is not a circumstance in which the rule of lenity applies. *Moskal*, 498 U.S. at 107.

Consequently, Counts 6 through 10 of the Indictment do not fail to state an offense because 18 U.S.C. § 1037(a)(5) is not void for vagueness on its face. With respect to the mail fraud counts, Indictment is sufficient as alleged and the Court denies Defendants' motion to dismiss for failure to state an offense.

### C. The Count 1 (Conspiracy) Does Not Fail to State an Offense.

Defendants claim that if § 1037(a)(5) is void for vagueness, then a conspiracy to violate the statute necessarily fails. Because § 1037(a)(5) is not void for vagueness for the foregoing reasons, Defendants' argument fails, and the motion to dismiss the conspiracy count (Count 1) is DENIED.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion (1) to dismiss Counts 6 through 10 of the Indictment as void for vagueness, (2) to dismiss Counts 6 through 10 for failure to state an offense, and (3) to dismiss Count 1 alleging conspiracy.

**IT IS SO ORDERED.**

Dated: February 27, 2020

Hon. Gonzalo P. Curiel
United States District Judge

19

18-CR-4683-GPC