```
12:51:14   1                    UNITED STATES DISTRICT COURT

           2            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

           3

           4    UNITED STATES OF AMERICA,          .
                                                   .
           5         PLAINTIFF,                    . NO.18-CR-4683-GPC
                                                   .
           6            V.                         . FEBRUARY 20, 2020
                                                   . 1:00P.M.
           7    JACOB BYCHAK,                      .
                MARK MANOOGIAN,                    .
           8    MOAMMED ABDUL QAYYUM,              .
                PETR PACAS.                        .
           9                                       .
12:51:14        DEFENDANTS.                        .
          10    . . . . . . . . . . . . . . . . .. SAN DIEGO, CALIFORNIA

          11

          12               TRANSCRIPT OF MOTION HEARING
                        BEFORE THE HONORABLE GONZALO P. CURIEL
          13               UNITED STATES DISTRICT JUDGE

          14    APPEARANCES:

          15    FOR THE PLAINTIFF:      UNITED STATES ATTORNEY'S OFFICE
                                        BY: SABRINA L. FEVE, ESQ.
          16                                 MELANIE K. PIERSON, ESQ.
                                        880 FRONT STREET, ROOM 6293
          17                            SAN DIEGO, CALIFORNIA  92101

          18    FOR THE DEFENDANT       LAW OFFICE OF DAVID W. WIECHERT
                JACOB BYCHAK:           BY: JESSICA MUNK, ESQ.
          19                            115 AVENIDA MIRAMAR
                                        SAN CLEMENTE, CALIFORNIA  92672

          20    FOR THE DEFENDANT       MINTZ LEVIN
                MARK MANOOGIAN:         BY: RANDY K. JONES, ESQ.
          21                            3580 CARMEL MOUNTAIN ROAD, SUITE 300
                                        SAN DIEGO, CALIFORNIA  92130

          22
                FOR THE DEFENDANT       BIENERT, MILLER & KATZMAN, PLC
          23    MOHAMMED ABDUL QAYYUM:  BY: WHITNEY Z. BERNSTEIN, ESQ.
                                        903 CALLE AMANECER, SUITE 350
          24                            SAN CLEMENTE, CALIFORNIA  92673

          25    ///
```

1

12:51:14  1   (APPEARANCES CONTINUED)

2   FOR THE DEFENDANT        BIRD MARELLA BOXER WOLPERT NESSIM
    PETR PACAS:                  DROOKS & LINCENBERG
3                           BY: NAEUN RIM, ESQ.
                            1875 CENTURY PARK EAST, SUITE2300
4                           LOS ANGELES, CALIFORNIA  90067

5

6

7

12:51:14  8

9

10

11

12

13

14

15

16

17

18

19

20

21   COURT REPORTER:         JULIET Y. EICHENLAUB, RPR, CSR
                            USDC CLERK'S OFFICE
22                          333 WEST BROADWAY, ROOM 420
                            SAN DIEGO, CALIFORNIA  92101
23                          JULIET_EICHENLAUB@CASD.USCOURTS.GOV

24
     REPORTED BY STENOTYPE, TRANSCRIBED BY COMPUTER
25

12:51:14   1                    SAN DIEGO, CALIFORNIA; FEBRUARY 20, 2020; 1:01 P.M.

           2                                    -O0O-

           3              THE CLERK:  CALLING ITEM NUMBER ONE ON CALENDAR, CASE

           4    NUMBER 18CR4683, USA VS. JACOB BYCHAK, DEFENDANT NUMBER ONE; IF

           5    I CAN HAVE THE APPEARANCE OF THE ATTORNEY PLEASE.

           6              MS. MUNK:  GOOD AFTERNOON, YOUR HONOR.  JESSICA MUNK

           7    ON BEHALF OF JACOB BYCHAK WHO IS PRESENT IN COURT.

           8              THE COURT:  GOOD AFTERNOON.

           9              THE CLERK:  DEFENDANT NUMBER TWO, MARK MANOOGIAN.

          10              MR. JONES:  GOOD AFTERNOON.  RANDY JONES ON BEHALF OF

          11    DEFENDANT MARK MANOOGIAN WHO IS ALSO PRESENT IN COURT.

          12              THE COURT:  GOOD AFTERNOON.

          13              THE CLERK:  DEFENDANT NUMBER THREE, MOHAMMED ABDUL

          14    QAYYUM.

13:02:38  15              MS. BERNSTEIN:  GOOD AFTERNOON, YOUR HONOR.  WHITNEY

          16    BERNSTEIN ON BEHALF OF MR. QAYYUM WHO IS PRESENT BEFORE THE

          17    COURT.

          18              THE COURT:  GOOD AFTERNOON.

          19              THE CLERK:  AND DEFENDANT NUMBER FOUR, PETR PACAS.

          20              MS. RIM:  GOOD AFTERNOON, NAEUN RIM ON BEHALF OF PETR

          21    PACAS WHO IS PRESENT BEFORE THE COURT.

          22              THE COURT:  GOOD AFTERNOON.

          23              MS. PIERSON:  AND MELANIE PIERSON AND SABRINA FEVE ON

          24    BEHALF OF THE UNITED STATES.

          25              THE COURT:  GOOD AFTERNOON TO ALL.  WE'RE HERE ON A

13:03:01  1   MOTION TO DISMISS WIRE FRAUD COUNTS AND TO STRIKE WIRE FRAUD

2   ALLEGATIONS IN COUNT ONE FOR FAILURE TO STATE AN OFFENSE, AND

3   THE COURT HAS REVIEWED THE MOVING PAPERS, THE RESPONSE AND

4   REPLY, I'VE ALSO VIEWED A NUMBER OF THE CITED CASES.  AND I

5   HAVE SOME QUESTIONS.  I THINK THE PARTIES HAVE DONE AN

6   OUTSTANDING JOB IN BRIEFING THE ISSUES PRESENTED.  BUT THE WAY

7   I SEE IT, THERE'S TWO CRITICALLY IMPORTANT ISSUES.

8          ONE IS WITH RESPECT TO IP ADDRESSES AND WHETHER OR

9   NOT THEY QUALIFY OR CONSTITUTE PROPERTY FOR PURPOSES OF THE

10   MAIL FRAUD STATUTES AND OR WIRE FRAUD AND -- I SHOULD SAY WIRE

11   FRAUD; AND THEN THE SECOND QUESTION RELATES TO THE QUESTION OF

12   THE QUESTION OF A CONVERGENCE, AND UNDER *LEW*, WHETHER OR NOT

13   THE FALSE STATEMENTS AND MISREPRESENTATIONS NEED TO BE DIRECTED

14   TO THE PERSON, THE ENTITY, THAT ENDS UP LOSING SOME PROPERTY OR

13:04:35  15   MONEY.

16          SO WITH RESPECT TO THE IP ADDRESSES AS PROPERTY, I

17   UNDERSTAND THAT THERE ARE TWO CASES THAT ARE RELIED UPON THE

18   PARTIES RESPECTIVELY.  THERE ARE A NUMBER OF ADDITIONAL BUT THE

19   PRIMARY CASES THAT PROVIDE SOME GUIDANCE ARE *DOWLING* ON THE

20   DEFENSE SIDE RELATING TO COPYRIGHTS AND WHETHER OR NOT

21   COPYRIGHTS QUALIFY AS A PROPERTY IN A SEPARATE OR DIFFERENT

22   CONTEXT BUT WHETHER OR NOT THE COURT WAS PREPARED TO FIND THAT

23   COPYRIGHTS AFFORD A CONCRETE ENOUGH OR DEFINITE ENOUGH BENEFIT

24   TO QUALIFY AS PROPERTY; AND THEN THE NINTH CIRCUIT DECISION IN

25   -- I'M NOT SURE IF IT'S *KREMEN* OR *KREMEN*, AND THAT INVOLVED A

13:05:42  1   DOMAIN NAME AND APPLYING CALIFORNIA LAW THAT THE NINTH CIRCUIT

2   CONCLUDED THAT DOMAIN NAME INDEED QUALIFIED AS PROPERTY.

3        I DON'T THINK ANYONE DISPUTES THAT WHAT WE HAVE IS

4   SOMEWHERE IN THE MIDDLE AND THAT THERE ARE A NUMBER OF

5   ASSERTIONS REGARDING WHAT ARIN'S POSITION HAS BEEN WITH RESPECT

6   TO IP ADDRESSES, AND THEN THE GOVERNMENT PROVIDES PERHAPS SOME

7   NUANCE OBSERVATIONS ABOUT MR. CURRAN'S DECLARATIONS PREVIOUSLY

8   FILED AND QUERY WHETHER OR NOT THE COURT SHOULD CONSIDER MR.

9   CURRAN'S DECLARATIONS FOR PURPOSES OF THESE PROCEEDINGS WHERE

10  IT'S THE INDICTMENT THAT'S BEING CHALLENGED.

11       AT THIS POINT, I'M MORE ON THE SIDE OF *DOWLING*, THAT

12  WHAT WE HAVE WITH RESPECT TO IP ADDRESSES AND THE RIGHTS THAT

13  ARE PROVIDED ARE MORE SIMILAR TO COPYRIGHTS IN BEING A BUNDLE

14  OF RIGHTS THAT ARE PROVIDED, THAT THEY ARE NOT AS ABSOLUTE AS A

13:07:26  15  DOMAIN NAME.  THEY DO NOT INVOLVE AS MUCH ACTIONS, CREATION BY

16  A PERSON WHO OBTAINS THE RIGHTS TO A DOMAIN NAME.  THE FACT

17  THAT ARIN ASSERTS THAT IT HAS CERTAIN RIGHTS TO TERMINATE THE

18  RIGHTS OF AN IP ADDRESS OR NETBLOCK HOLDER SUGGESTS THAT

19  THERE'S MORE LIMITATIONS IN THE CASE OF IP ADDRESSES OR

20  NETBLOCKS THAN THERE IS IN THE CASE OF DOMAIN NAMES.

21       AND SO AT THIS POINT I'D LIKE TO HEAR FIRST FROM THE

22  GOVERNMENT BECAUSE, AS I STATED, I THINK AT THIS POINT I'M

23  SIDING MORE WITH THE *DOWLING* ANALYSIS AND FINDING THAT THAT IS

24  MORE SALIENT THAN THAT PROVIDED BY *KREMEN*.  SO WITH THAT, I'LL

25  HEAR FROM YOU.

13:08:41  1     MS. FEVE:  YOUR HONOR, I'D START BY LOOKING AT RULE

2 12.  AND RULE 12 SAYS THAT IN A MOTION TO DISMISS, WHICH IS

3 WHAT'S BEFORE THE COURT, WE LOOK AT THE FOUR CORNERS OF THE

4 INDICTMENT.

5     THE COURT:  AND I'M PREPARED TO DO THAT.

6     MS. FEVE:  AND THERE'S NO QUESTION THAT THE

7 INDICTMENT ALLEGES PROPERTY.  SO WHEN YOU USUALLY SEE A MOTION

8 TO DISMISS -- WE SEE 1325'S ALL THE TIME.  WHAT THE FEDERAL

9 DEFENDERS HAVE KIND OF VERY DILIGENTLY AND STEADILY POINTED OUT

10 IS THAT IN THE 1325 CHARGE WE NEEDED TO ALLEGE THAT THE

11 DEFENDANT WAS NOT UNDER PRIOR OR OFFICIAL RESTRAINT OR THAT WE

12 NEEDED TO ALLEGE THAT THERE WAS SCIENTER, THAT THE DEFENDANT

13 TOOK A CONSCIOUS TOWARDS ENTERING THE COUNTRY WITHOUT

14 AUTHORIZATION.  IN THIS CASE, IF WE LOOK JUST AT THE

13:09:27  15 INDICTMENT, THERE IS NO QUESTION THAT WE HAVE ALLEGED

16 PROPERTY.  SO --

17     THE COURT:  BUT IS IT ENOUGH THAT YOU JUST MERELY

18 ALLEGE PROPERTY WHERE, IN FACT, LOOKING AT WHAT THE PROPERTY IS

19 OR THE ALLEGED PROPERTY IS -- THE IP ADDRESS/NETBLOCKS -- THAT

20 THE COURT WOULD, AS A THRESHOLD MATTER, DETERMINE WHETHER AS A

21 MATTER OF LAW THESE NETBLOCKS QUALIFY AS PROPERTY?

22     MS. FEVE:  IT IS, YOUR HONOR, BECAUSE UNLESS YOU ARE

23 PREPARED TO ISSUE A DETERMINATION ABOUT WHETHER A NETBLOCK IS

24 PROPERTY WITH NO FINDINGS OF FACT AND TO DO IT SIMPLY BY

25 ANALOGIZING IT TO *DOWLING* OR TO *KREMEN*, FIRST YOU'RE GOING TO

13:10:09  1    REQUIRE SOME FACTUAL PREDICATE FOR WHAT AN IP ADDRESS IS

        2    BECAUSE EVEN BY THE COURT'S TENTATIVE YOU SAY, I FIND THEM

        3    SOMEWHERE IN THE MIDDLE AND MORE LIKE IT.

        4            AND MY QUESTION WOULD BE:  BASED ON WHAT FACTS?

        5    BECAUSE WE CAN TALK ABOUT WHAT IP ADDRESSES ARE, AND IF THE

        6    COURT IS SAYING, I'M RELYING ON WEINSTEIN OR I'M RELYING ON

        7    THESE PRIOR JUDICIAL DETERMINATIONS ON WHAT AN IP ADDRESS IS

        8    AND HOW IT FUNCTIONS TO EXPLAIN WHY I THINK IT'S A COPYRIGHT,

        9    THEN WE CAN ADDRESS THOSE QUESTIONS AS MATTERS OF LAW.  BUT IF

       10    THE COURT IS ACTUALLY MAKING FACTUAL FINDINGS, IF IT'S

       11    REFERRING TO THE DECLARATION OF JOHN CURRAN WHICH IS OUTSIDE

       12    THE SCOPE OF THE INDICTMENT --

       13            THE COURT:  AND I'M NOT.

       14            MS. FEVE:  SO, AGAIN, IF WE'RE LOOKING AT THE

13:10:51 15    INDICTMENT -- AND AGAIN, I APPRECIATE YOUR POINT WHICH IS THAT

       16    IF THERE IS A DISPOSITIVE CASE ON THIS ISSUE SIMILAR TO -- I

       17    APOLOGIZE, I FORGET THE NAME OF THE BUT ONE OF THE CASES THE

       18    DEFENDANTS CITED IN THEIR REPLY BRIEF INVOLVED A DEFENDANT'S

       19    POSSESSION OF EAGLE FEATHERS.

       20            THE COURT:  POSSESSION OF WHAT?

       21            MS. FEVE:  EAGLE FEATHERS.

       22            THE COURT:  I DON'T KNOW IF I LOOKED THAT ONE UP.

       23            MS. FEVE:  SO THEY TALKED ABOUT THERE WERE DEFENDANTS

       24    WHO BROUGHT A MOTION TO DISMISS SAYING THAT PROSECUTING THEM

       25    FOR POSSESSION OF EAGLE FEATHERS WAS ON ITS FACE AN UNLAWFUL

13:11:20   1   INTERFERENCE WITH THEIR FIRST AMENDMENT RIGHTS TO PRACTICE

2   THEIR RELIGION AS THEY SAW FIT.  IN THIS CASE THE MOTION WAS

3   ACTUALLY DENIED, BUT THE REASON WHY THE COURT SAID, I DON'T

4   EVEN NEED TO LOOK AT THE FACTS IS BECAUSE WE LITERALLY HANDLED

5   THESE EXACT SAME SET OF FACTS AND ARGUMENT IN A PRIOR CASE AND

6   CITED A DIFFERENT NINTH CIRCUIT ARGUMENT WHERE THEY PREVIOUSLY

7   EVALUATED AND CONSIDERED THE ARGUMENT THAT IF YOU WERE

8   PROSECUTED FOR THE UNLAWFUL POSSESSION OF EAGLE FATHERS WAS IT,

9   IF YOU WERE A MEMBER OR A PUNITIVE MEMBER OF A NATIVE AMERICAN

10   TRIBE, AN INTERFERENCE WITH YOUR FIRST AMENDMENT RIGHT, AND THE

11   COURT HAD DONE A VERY DETAILED-ANALYSIS ABOUT WAS IT THE LEAST

12   RESTRICTIVE MEANS OF PROTECTING A LEGITIMATE POLICY GOAL.  SO

13   THERE, BECAUSE THERE WAS THIS VERY SQUARE CONVERGENCE BETWEEN

14   THE FACTS PRESENTED IN THAT CASE AND THE FACTS IN ANOTHER CASE,

13:12:07   15   THE COURT SAID WE ARE COMFORTABLE TREATING THIS AS A MATTER OF

16   LAW.

17        BUT THAT WAS ALSO BY INVOKING PRIOR FACTUAL FINDINGS.

18   AND HERE -- I WOULD DISPUTE THE IP ADDRESSES ARE MORE LIKE

19   COPYRIGHTS, BUT I ALSO RECOGNIZE THAT TO ENGAGE IN THAT

20   ARGUMENT I AM BY NECESSITY GOING TO REFER TO FACTS OUTSIDE THE

21   SCOPE OF THE INDICTMENT.  SO I JUST WANT TO BEGIN BY SAYING, WE

22   HAVE TRIED IN OUR MOTION TO PRACTICE WHAT WE BELIEVE THE COURT

23   SHOULD BE DOING ITSELF WHICH IS TO BE LOOKING AT THE FACE OF

24   THE INDICTMENT:  DID WE PROPERLY ALLEGE THE ELEMENTS?  IS THERE

25   A CASE THAT IS SQUARELY ON THE FOUR CORNERS OF OUR CASE AS

13:12:49  1  PLEAD THAT SHOWS THAT AS A MATTER OF LAW, NO MATTER WHAT FACTS

2  WE PUT BEFORE THE COURT, WE CANNOT MEET OUR LEGAL BURDEN?

3       THEY HAVE NOT PRESENTED THAT CASE BECAUSE AS THEY

4  WANT TO POINT OUT, WHEN THEY'RE ARGUING FOR THE RULE OF LENITY,

5  THEY'RE SAYING THERE'S AN ABSENCE OF DIRECT AND CONTROLLING

6  PRECEDENT.  THERE IS AN ABSENCE OF DIRECT AND CONTROLLING

7  PRECEDENT; BUT THERE IS NOT AN ABSENCE OF LEGAL PRECEDENT.  FOR

8  YOUR HONOR TO SAY THERE IS NO PROPERTY INTEREST HERE WOULD BE

9  IN CONFLICT WITH THE *GLOBAL NAPS* DECISION OUT OF MASSACHUSETTS

10  WHERE THE COURT SPECIFICALLY FOUND THAT IP ADDRESSES WERE

11  PROPERTY.  IT WOULD --

12       THE COURT:  WELL, THEY FOUND IT IN A DIFFERENT

13  CONTEXT THOUGH, DIDN'T IT?

14       MS. FEVE:  SO WHAT IS THE CONTEXT, YOUR HONOR?

13:13:30  15  BECAUSE AGAIN, IF IT'S NOT ON THE FACE OF THE INDICTMENT --

16       THE COURT:  I DON'T THINK ANYONE DISPUTES THAT IP

17  ADDRESS, THAT NETBLOCKS CONFER SOME ENTITLEMENT, BENEFITS AND

18  RIGHTS.  BUT THE QUESTION WOULD BE, UNDER EVEN *KREMEN*, THE

19  THREE-FACTOR TEST WHETHER OR NOT THE THIRD ELEMENT WOULD BE

20  PRESENT WITH RESPECT TO THE PUNITIVE OWNER MUST HAVE

21  ESTABLISHED A LEGITIMATE CLAIM TO EXCLUSIVITY.

22       MS. FEVE:  BUT THERE IS A LEGITIMATE CLAIM TO

23  EXCLUSIVITY.  SIMILAR TO -- SO THE DEFENDANTS IN THEIR REPLY

24  BRIEF BROUGHT UP TELEPHONE NUMBERS, AND THEY MENTIONED A STATE

25  CALIFORNIA CASE AND A SEVENTH CIRCUIT CASE AND ONE OTHER CASE.

13:14:17  1   THEY DID NOT MENTION A HOST OF OTHER CASE -- THE FIRST CIRCUIT,

2   FIFTH CIRCUIT, DISTRICT COURTS IN VIRGINIA AND FLORIDA -- BUT

3   MOST NOTABLY HERE IN CALIFORNIA WHERE JUDGE WHELAN ADDRESSED

4   WHETHER TELEPHONE NUMBERS COULD BE PROPERTY FOR PURPOSES OF

5   EVALUATING A MOTION TO DISMISS AND HELD THAT IN FACT THE

6   PLAINTIFFS COULD BRING A CLAIM FOR CONVERSION OF TELEPHONE

7   NUMBERS, FINDING A POSSESSORY INTEREST; AND EVEN IF YOU LOOK AT

8   THE SEVENTH CIRCUIT DECISION, THE *1-800-FLOWERS* DECISION THE

9   DEFENDANTS REPLY ON, JUDGE EASTERBROOK THERE DELIBERATELY PUTS

10  THE WORD "PROPERTY" IN QUOTATION MARKS BECAUSE HE SAYS PRE-1997

11  THERE IS NO QUESTION YOU HAD A POSSESSORY INTEREST, AND HE

12  OVERTURNS THE DISTRICT COURT BECAUSE HE SAYS YOU ABSOLUTELY

13  COULD SUE TO ENFORCE A CONTRACT FOR BENEFITS THAT YOU GOT BY

14  SELLING YOUR PHONE NUMBER.

13:15:04  15       SO WHAT WE SEE IS THAT ACROSS THE DISCIPLINES THERE

16  ARE POSSESSORY INTERESTS WHERE EVEN IF IT'S NOT IN PERPETUITY

17  AND FOREVER, WHETHER IT'S A LEASEHOLD, WHETHER IT'S A LICENSE

18  THAT IS HELD BY A PRIVATE PARTY -- WE ALL UNDERSTAND THAT WHEN

19  YOU HAVE A BROADCAST LICENSE YOU DON'T NECESSARILY HAVE THAT

20  LICENSE FOREVER AND THAT IT'S BEEN GRANTED TO YOU BY THE STATE,

21  SIMILAR TO HOW THEY'RE ARGUING IT MAY HAVE BEEN GRANTED BY THE

22  AUTHORITY THAT PRECEDED ARIN; HOWEVER, THE SUPREME COURT HAS

23  REPEATEDLY RECOGNIZED THAT THOSE INTERESTS, EVEN IF THEY ARE,

24  "A," NOT PHYSICAL, AND "B," NOT NECESSARILY IN PERPETUITY, ARE

25  CLEARLY PROPERTY RIGHTS THAT ARE RECOGNIZED AND PROTECTED UNDER

13:15:47  1   ALL THE FRAUD STATUTES.

2            THE COURT:  WHICH RAISES THE SECOND QUESTION WHICH

3   IS, THE PROPERTY RIGHT TO WHO?  CERTAINLY, THERE IS, I THINK,

4   THE ARGUMENT THAT THE IP ADDRESSES, THE NETBLOCKS PROVIDE A

5   POSSESSORY INTEREST OF SOME TYPE, THIS BUNDLE OF RIGHTS FOR THE

6   REGISTRANT OR THE INDIVIDUAL THAT IS AWARDED THAT; AND THEN

7   THAT BRINGS UP THE *LEW* ISSUE WITH RESPECT TO WHETHER OR NOT THE

8   FRAUDULENT STATEMENT, THE MISREPRESENTATION, IS DIRECTED AT THE

9   HOLDER OF THE RIGHT.

10            MS. FEVE:  AND I'M HAPPY TO ADDRESS *LEW*, BUT I WANT

11   TO MAKE SURE I FOLLOW UP ON ONE POINT WHICH IS, YOUR HONOR, WE

12   DID NOT SUBMIT OVER ONE HUNDRED PAGES OF SUPPORTING DOCUMENTS.

13   IF THE COURT WANTS OR FEELS THAT IT IS REQUIRED TO HAVE A

14   HEARING, WE'RE PREPARED TO DO SO.  BUT THE REASON I SAY THIS IS

13:16:41 15   THAT WHEN I HEAR YOU DESCRIBING AN IP ADDRESS AND WHY IT'S MORE

16   ANALOGOUS WITH A COPYRIGHT, I AM CONFUSED BECAUSE A DOMAIN

17   NAME, YOU CAN HAVE ONE DOMAIN NAME JUST AS YOU CAN HAVE ONE IP

18   ADDRESS, WHEREAS EVERY SINGLE ONE OF YOU US CAN HAVE THE SAME

19   SONG.

20            IF WE HAVE A COPY OF A BEYONCE SONG, I CAN HAVE THE

21   ALBUM, YOU CAN HAVE THE ALBUM, EVERYONE CAN HAVE THE ALBUM; WE

22   CAN LISTEN TO THE ALBUM AT DIFFERENT TIMES.  MY USE AND CONTROL

23   AND ENJOYMENT OF MY BEYONCE ALBUM IN NO WAY, SHAPE OR FORM

24   INTERFERES WITH YOURS.  AND THAT'S BECAUSE THE ONLY THING THAT

25   PROTECTS THAT ALBUM, TO THE EXTENT THAT IT'S NOW IN DIGITAL

```
13:17:19   1   FORM AS PROPERTY, IS THIS LEGAL ARTIFICE CALLED A COPYRIGHT.  I
           2   CAN'T JUST DISTRIBUTE IT WILLY-NILLY BECAUSE IT IS COPYRIGHT
           3   PROTECTED.  THAT IS NOT TRUE OF AN IP ADDRESS.  UNLIKE WITH A
           4   BEYONCE ALBUM WHERE EVERY SINGLE ONE OF US COULD BE LISTENING
           5   TO IT AT ANY TIME WITH NO DISRUPTION TO OTHERS USE AND
           6   ENJOYMENT, ONLY ONE OF US CAN USE AN IP ADDRESS.  AND THERE IS
           7   NO WAY THAT THE INTERNET WORKS IF IT IS ANYTHING OTHER THAN
           8   THAT CASE.  AND THAT IS WHY IT'S MORE LIKE A DOMAIN NAME
           9   BECAUSE A DOMAIN NAME IS ACTUALLY A SHADOW OF AN IP ADDRESS.
          10        THE ONLY THING THAT GIVES A DOMAIN NAME VALUE AND USE
          11   IS WHEN YOU ASSIGN IT TO AN IP ADDRESS.  OTHERWISE, IT'S LIKE
          12   SAYING I CAN MARKET THE 1-800-FLOWERS PHONE NUMBER, BUT IF THAT
          13   DOESN'T ACTUALLY CORRESPOND TO MY PHONE NUMBER, IT'S JUST A
          14   BRAND NAME, AND IT'S ARGUABLY CONFUSING BECAUSE IT'S NOT
13:18:08  15   ACTUALLY GOING TO TAKE YOU TO MY COMPANY.  SO THE REASON I'M
          16   EMPHASIZING THE FACTUAL NATURE IS TO MAKE IT CLEAR WHY AN IP
          17   ADDRESS, IN KREMEN, LIKE A DOMAIN NAME, IS EXCLUSIVE AND IT
          18   CANNOT BE USED, AND IT'S NOT SOMETHING THAT'S JUST SIMPLY A
          19   BUNDLE OF RIGHTS WHERE IT'S KIND OF AMORPHOUS AND REQUIRES A
          20   LEGAL FICTION TO DETERMINE HOW EXCLUSIVE OR NON-EXCLUSIVE IT
          21   IS.
          22        THE IP ADDRESS HAS INTRINSIC PHYSICAL PROPERTIES AS
          23   FAR AS HOW THE INTERNET AND THE TECHNOLOGY OF THE INTERNET
          24   WORKS.  SO IF THE COURT IS GOING TO SAY IT IS NOT PROPERTY,
          25   IT IS GOING -- THE COURT WILL REACH THAT QUESTION ON THE LEGAL
```

13:18:45   1   MERITS ON THE FACE OF THE INDICTMENT, BUT IT'S TO SAY, THAT

2   WILL HAVE FAR-REACHING IMPLICATIONS FOR MANY CONTRACTUALISTS.

3   SO I WANT, TO THE BEST I CAN, AS AN ADVOCATE, TO MAKE SURE IF

4   THAT'S WHERE YOU WANT TO GO, I WOULD LIKE TO HAVE AN ACTUAL

5   HEARING BECAUSE I HEAR YOU REFERRING TO JOHN CURRAN'S

6   DECLARATION, AND I'D LIKE TO GIVE YOU SOME CONTEXT TO WHY HE

7   SAID WHAT HE SAID --

8        THE COURT:  I DON'T THINK WE NEED TO GO THERE.

9        MS. FEVE:  AGAIN, IF WE'RE NOT GOING TO THE FCC 2010

10   WORKING PAPER -- WHICH ON ITS FACE SPECIFICALLY SAYS THIS DOES

11   NOT BIND EVEN THE FCC OR ANY OF THE COMMISSIONERS, THIS IS A

12   THOUGHT PIECE DESIGNED TO STIMULATE CONVERSATION -- TO THE

13   EXTENT WE KEEP HEARING FROM THE DEFENDANTS THAT EVERYTHING IS

14   UNDISPUTED AND WE'RE COLLATERALLY ESTOPPED AND WE ARE BOUND,

13:19:27  15   THE FCC DOCUMENT ON THE VERY FIRST PAGE SPECIFICALLY SAYS

16   OTHERWISE.  SO IF THE COURT IS GOING TO FIND AS A MATTER OF LAW

17   WITH NO CONTROLLING PRECEDENT THAT AN IP ADDRESS IS OR IS NOT

18   LIKE SOMETHING, ON SOME LEVEL YOU ARE GOING TO NEED FACTS TO

19   EXPLAIN THAT RATIONALE ABSENT A CONTROLLING PRECEDENT WHERE

20   THEY HAVE ALREADY REACHED THOSE FACTS AND YOU ARE BOUND BY

21   THOSE DETERMINATIONS, AND THERE'S NO DAYLIGHT BETWEEN THOSE

22   FACTS AND OURS.

23        SO THAT IS WHY HERE IT'S TO SAY -- ONE OF THE THINGS

24   THE DEFENDANTS ARGUE IN THEIR REPLY BRIEF IS WE -- UNDER THE

25   1985 *SHORTT*, KIND OF, SAC DECISION THEY SAY, WELL, IF WE MOVE

13:20:07  1    FOR AN EVIDENTIARY HEARING AND THAT HEARING WOULD IN NO WAY

2    INVOLVE FACTS THAT WOULD SUBJECT TO DISPUTE AT TRIAL AND IF WE

3    AGREE THAT WE WOULD NOT BE PREPARED TO ARGUE THAT WHETHER OR

4    NOT AN IP ADDRESS QUALIFIES AS PROPERTY SHOULD BE SUBMITTED TO

5    A JURY, THEN THEY CAN PROPERLY PUT THAT ARGUMENT BEFORE YOU AND

6    EXPLAIN WHY IT IS THAT THEY BELIEVE THE FACTS ABOUT WHETHER OR

7    NOT IP ADDRESSES ARE PROPERTY IS SO DIVISIBLE FROM THE

8    QUESTIONS OF FACT THAT WOULD BE PRESENTED AT TRIAL.  AND THEY

9    WOULD ALSO BE REQUIRED TO FLAT OUT SAY, WE DON'T THINK THIS IS

10   A QUESTION FOR THE JURY, BECAUSE IF WHETHER OR NOT IP ADDRESS

11   ARE QUESTIONS THAT SHOULD BE SUBMITTED TO THE JURY, THEN IT

12   SHOULD CERTAINLY NOT BE ADJUDICATED ON A MOTION TO DISMISS.

13           SO AGAIN, TAKING A STEP BACK, I HEAR YOU SAYING, I'M

14   LOOKING AT *KREMEN* AND I'M LOOKING AT *DOWLING*; AND I HEAR YOU

13:21:05  15   TELLING ME THE MASSACHUSETTS CASE, FOR WHATEVER REASON, DOESN'T

16   COUNT; AND THE BANKRUPTCY COURT PROCEEDINGS WHERE THEY HAVE

17   AUCTIONED OFF IP ADDRESSES, TREATING THEM AS PROPERTY, DON'T

18   COUNT.

19           THE COURT:  LET ME ASK YOU THIS:  COPYRIGHTS ARE ONES

20   THAT I WOULD IMAGINE CAN BE ASSIGNED, CAN BE TRANSFERRED, CAN

21   BE SUBJECT OF BANKRUPTCY PROCEEDINGS --

22           MS. FEVE:  I DON'T KNOW ABOUT THAT, YOUR HONOR,

23   BECAUSE FIRST THEY ARE -- I DON'T KNOW WHO ISSUES -- I DON'T

24   REMEMBER -- I'M NOT AN EXPERT ON COPYRIGHT LAW SO I DON'T KNOW

25   IF IT GOES OUT OF THE COPYRIGHT PATENT'S OFFICE OR WHAT THEIR

14

13:21:43   1   RULES AND REGULATIONS ARE.  SO AGAIN, THESE ARE FACTS THAT ARE
2   BEYOND THE SCOPE OF OUR INDICTMENT WHICH I'M NOT PREPARED TO
3   ARGUE OR PUT BEFORE THE COURT.  WHAT I AM SUBMITTING TO THE
4   COURT IS THAT IF WE LOOK AT THE CASES THAT DO LOOK AT
5   INTANGIBLE PROPERTY RIGHTS -- BECAUSE THERE'S NO DISPUTE THAT
6   WE'RE TALKING ABOUT INTANGIBLE PROPERTY RIGHTS, WE'RE NOT
7   TALKING ABOUT HONEST SERVICES FRAUD, WE'RE NOT TALKING ABOUT
8   MONEY -- IF WE LOOK AT THE CASES THAT ARE ADDRESSING INTANGIBLE
9   PROPERTY RIGHTS, THEY ARE FREQUENTLY CONCERNED ABOUT POSSESSORY
10   INTERESTS, AND THEY ARE NOT REQUIRING THAT THOSE POSSESSORY
11   INTERESTS BE FOR SOMETHING THAT IS PHYSICAL OR THAT IS FOREVER,
12   AND WE'VE PUT MANY OF THOSE CASES BEFORE THE COURT.
13           AND I JUST WANT TO PULL UP *CLEVELAND* BECAUSE, IF YOU
14   RECALL *CLEVELAND*, THERE THE CONTEXT WAS A LICENSE OBTAINED FROM
13:22:56   15   THE STATE.  AND ONE OF THE THINGS *CLEVELAND* WAS CAREFUL TO SAY
16   IS THAT THE MAIL FRAUD AND THE FRAUD STATUTES HAVE AT THEIR
17   ORIGIN THE DESIRE TO PROTECT INDIVIDUAL PROPERTY RIGHTS.  IT
18   DOES NOT SAY EXCLUSIVE OWNERSHIP.  AND ANY BENEFIT FROM WHICH
19   THE GOVERNMENT DERIVES FROM THE STATUTE MUST BE LIMITED TO THE
20   GOVERNMENT'S INTEREST AS A PROPERTY HOLDER.  SO THEY'RE TALKING
21   ABOUT BEING A PROPERTY HOLDER.  AT NO POINT IS THE PROPERTY
22   HOLDER SOMEONE WHO MUST HAVE IT FOREVER.  *DOWLING* IS THE
23   OUTLIER.  *DOWLING* IS NOT THE NORM.  AND ONE OF THE REASONS WHY
24   *DOWLING* IS THE OUTLIER IS THAT *DOWLING* SHARES IN COMMON
25   SOMETHING WITH MANY OF THE CASES YOU HAVE SEED INVOLVING HONEST

13:23:36  1   SERVICES FRAUD OR CASES LIKE *CLEVELAND* WHERE THE FRAUD IS ON

2   THE GOVERNMENT OR LIKE *LEW*, OR AGAIN, THE FRAUD IS ON THE

3   GOVERNMENT.

4          SO IN *DOWLING*, WE HAVE A COPYRIGHT WHICH IT IS

5   COMPLETELY INTANGIBLE AND THERE IS NO REAL WORLD LIMIT ON HOW

6   MANY TIMES SOMETHING COULD BE PHYSICALLY LAWFULLY DUPLICATED.

7   IN *CLEVELAND*, IN *LEW*, IN SEVERAL OTHER CASES, WE HAVE THE

8   GOVERNMENT ISSUING A LICENSE OR A VISA.  IT IS SOMETHING THAT

9   THE GOVERNMENT CAN ISSUE AS MANY TIMES AS IT WANTS BECAUSE ON

10   SOME LEVEL IT IS A LEGAL ARTIFICE AND THE ONLY REASON IT IS NOT

11   A LEGAL FICTION IS BECAUSE OF THE RULES SURROUNDING IT

12          THE COURT:  I'M NOT SURE I UNDERSTAND YOU

13   DISTINGUISHING *DOWLING*.  YOU SAID WITH A COPYRIGHT YOU HAVE

14   UNTOLD NUMBERS OF ITEMS THAT ARE COPYRIGHTED.  IS THAT WHAT

13:24:30  15   YOU'RE SAYING?

16          MS. FEVE:  SO THE LEGAL PROTECTION OF A COPYRIGHT IS

17   SAYING YOU CAN'T DUPLICATE THIS.

18          THE COURT:  "THIS."  YOU CAN'T MAKE ONE COPY --

19          MS. FEVE:  YOU CAN'T MAKE A COPY OF THIS UNLESS YOU

20   PAY ME FOR MY COPYRIGHT.  SO THE COPYRIGHT ITSELF IS SIMILAR TO

21   A LICENSE.  THERE IS NOTHING PHYSICAL OR INTRINSIC ABOUT IT.

22   IT IS THE GOVERNMENT SAYING YOU GAVE US WHATEVER YOUR

23   APPLICATION WAS AND WE GAVE YOU A COPYRIGHT, JUST AS IN *LEW* WE

24   GAVE YOU A VISA.

25          THE COURT:  WE RECOGNIZE THIS INTELLECTUAL

16

13:25:01   1    PROPERTY.

2              MS. FEVE:  WE RECOGNIZE THIS INTELLECTUAL PROPERTY.

3              THE COURT:  AND *CARPENTER* TELLS US THAT PROPERTY IS

4    NOT LIMITED TO TANGIBLE PROPERTY.  SO, SO FAR SO GOOD.

5              MS. FEVE:  RIGHT.  SO FAR SO GOOD.  BUT WHERE *DOWLING*

6    SAYS THERE'S A DIFFERENCE IS THAT THERE IS NOTHING TO PREVENT

7    THE DISSEMINATION AND THE COPYING OTHER THAN THE COPYRIGHT.

8    AND SO HERE --

9              THE COURT:  THAT'S NOT THE REASON THE *DOWLING* COURT

10   REACHED ITS CONCLUSION, IS IT?

11             MS. FEVE:  I BELIEVE IT IS, YOUR HONOR.  I BELIEVE A

12   CONSIDERABLE AMOUNT OF THEIR DISCUSSION IS ABOUT THE FACT THAT

13   IT COULD BE COPIED AND THAT THERE WAS NOTHING INTRINSIC TO IT

14   OTHER THAN THE KIND OF LEGAL CONCEDE OF THE --

13:25:45  15             THE COURT:  THE COURT SAID, A COPYRIGHT LIKE OTHER

16   INTELLECTUAL PROPERTY COMPRISES A SERIES OF CAREFULLY DEFINED

17   AND CAREFULLY DELIMITED INTEREST TO WHICH THE LAW AFFORDS

18   CORRESPONDINGLY EXACT PROTECTIONS.  I GUESS ONE CAN ARGUE THAT

19   HERE THERE'S ARIN THAT HAS CRAFTED WITH SPECIFICITY CERTAIN

20   RIGHTS AND THEN CERTAIN LIMITATIONS.

21             MS. FEVE:  WELL, FIRST, IP ADDRESS AREN'T

22   INTELLECTUAL PROPERTY.  THAT'S ONE OF THE FIRST, MOST IMPORTANT

23   DISTINCTIONS.

24             THE COURT:  WOULDN'T IT BE A STRONGER ARGUMENT THAT

25   SOMETHING IS DESERVING OF BEING VIEWED AS PROPERTY TO THE

13:26:27   1   EXTENT THAT IT IS INTELLECTUAL PROPERTY, THAT IT'S SOMEONE'S

2   DESIGN, SOMEONE'S CREATION?

3           MS. FEVE:  YOUR HONOR, FOR PURPOSES OF THE INTANGIBLE

4   PROPERTY STATUTES, THAT'S NOT WHERE THEY HAVE GONE.  WHERE THEY

5   HAVE GONE IS, IS THIS INTANGIBLE?  CAN YOU HAVE EXCLUSIVE USE?

6   AND WHAT I UNDERSTOOD THE DISTINCTION IN *DOWLING* BEING IS

7   INTELLECTUAL PROPERTY IS INHERENTLY DIFFERENT BECAUSE THE ONLY

8   THING TO PREVENT OR MAINTAIN EXCLUSIVITY IS THE STATE'S

9   RECOGNITION OF THE INTELLECTUAL PROPERTY.  ARIN IS NOT CREATING

10   SOMETHING BY ITS RECOGNITION.  ARIN IS A TRAFFIC COP WHO IS

11   SAYING YOU CAN GO FORWARD AND YOU CAN'T.  BUT THEY ARE

12   FUNCTIONING IN A WAY THAT'S SIMILAR TO OTHER THIRD PARTIES THAT

13   CAN KIND OF REGULATE AND MAINTAIN A REGISTRY.

14           IF WE DO TAKE A STEP BACK AND LOOK AT THE PHONE

13:27:16   15   NUMBERS, AGAIN, THEY HAVE A VERY, VERY DIFFERENT REGULATORY

16   HISTORY SO WE NEED TO BE CAREFUL ABOUT THEIR TECHNICAL

17   SIMILARITIES.  BUT THE REASON WHY WE'RE SAYING THIS IS VERY

18   DIFFERENT THAN *DOWLING* IS THAT ARIN DOESN'T CREATE THE

19   INTELLECTUAL PROPERTY, AND IT DOESN'T RECOGNIZE IT, AND

20   THEREFORE, CONFER SOME BENEFIT.  ARIN IS A SUCCESSOR AND

21   INTEREST TO MULTIPLE -- IACA AND BEFORE THAT YOU HAD DARPA.

22   AND THE FACT IS YOU COULD HAVE NONE OF THESE PEOPLE, BUT IT'S

23   JUST THAT THEN YOU WOULD HAVE CHAOS.  YOU WOULD HAVE SOME

24   PEOPLE WHO WOULD ANNOUNCE IP'S AND THEN OTHER PEOPLE WHO WOULD

25   TRY TO HIJACK THEM, AND THEN THERE WOULD BE NO REGISTRY WHERE

13:27:56  1   PEOPLE COULD GO LOOK WHO IS THE RECOGNIZED REGISTRY.

2       THE COURT:  I GUESS AT THIS POINT THE FACT WE'RE EVEN

3   TALKING ABOUT ARIN WE ARE IN FACT GOING OUTSIDE THE FOUR

4   CORNERS OF THE INDICTMENT WHICH LEADS ME THEN TO ASK THE

5   DEFENSE -- AND BY THE WAY, THIS ARGUMENT WITH RESPECT TO

6   WHETHER OR NOT WE HAVE ENOUGH FACTS HERE, WHETHER OR NOT

7   THERE'S SUFFICIENT UNDISPUTED FACTS AND THAT WE WOULD REQUIRE

8   SO MUCH MORE AS FAR AS FACTS IS SOMETHING THAT I DID NOT

9   OBSERVE IN THE GOVERNMENT'S RESPONSE.

10      BUT I DO APPRECIATE THAT AS A THRESHOLD MATTER THAT

11  THAT IS SOMETHING THAT THE COURT WOULD HAVE TO ENTERTAIN AND

12  HAVE TO PROVIDE A SUFFICIENT FACTUAL PREDICATE TO SUPPORT AN

13  ORDER DISMISSING THE INDICTMENT.  AT THE SAME TIME, SINCE

14  EVERYONE WAS FOCUSED ON THE SUBSTANCE OF THESE ISSUES, THAT'S

13:28:55 15  WHY I BEGAN MY QUERY WITH THAT; BUT HAVING SAID THAT, LET ME

16  HEAR FROM THE DEFENSE WITH RESPECT TO THIS THRESHOLD QUESTION

17  OF WHETHER OR NOT THERE IS SUFFICIENT FACTS BEFORE THE COURT SO

18  THAT IT COULD ISSUE A RULING ON THIS MOTION.

19      MS. MUNK:  YES, YOUR HONOR.  I'M LOOKING AT THE PHONE

20  BECAUSE I PULLED UP RULE 12 BECAUSE THE GOVERNMENT SAID RULE 12

21  SAYS THE COURT MUST STAY WITHIN THE FOUR CORNERS OF THE

22  INDICTMENT.  IT DOES NOT SAY THAT ANYWHERE.  IN FACT, IF YOU

23  LOOK AT RULE 12(D), WHAT IT SAYS IS THE COURT MUST DECIDE EVERY

24  PRETRIAL MOTION BEFORE TRIAL UNLESS IT FINDS GOOD CAUSE TO

25  DEFER RULING.  IT THEN SAYS, WHEN FACTUAL ISSUES ARE INVOLVED

13:29:34   1    IN DECIDING A MOTION, THE COURT MUST STATE ITS ESSENTIAL

2    FINDINGS ON THE RECORD.  SO THE RULE ACTUALLY CONTEMPLATES

3    CERTAIN PRETRIAL MOTIONS WHERE THE COURT MAY HAVE TO MAKE

4    FINDINGS OF FACT.

5         WE DID ADDRESS THIS IN OUR REPLY, BUT I WILL JUST

6    KIND OF SUMMARIZE WHAT THE CASES IN THE NINTH CIRCUIT HAVE SAID

7    ABOUT THIS.  IT'S TRUE THAT THE COURT SHOULD TAKE THE

8    ALLEGATIONS IN THE INDICTMENT AS TRUE IN A PRETRIAL MOTION

9    WHERE THE COURT IS BEING ASKED TO DECIDE AN ISSUE OF LAW.  AND

10   I WANT TO MAKE THAT CLEAR THAT THIS IS WHAT WE'RE DEALING WITH.

11   THE QUESTION OF WHETHER AN IP ADDRESS IS PROPERTY UNDER WIRE

12   FRAUD STATUTE, THAT'S AN ISSUE OF STATUTORY CONSTRUCTION AND IT

13   IS AN ISSUE OF LAW.  IT'S NOT A QUESTION FOR THE JURY.  IT'S

14   NOT A QUESTION THAT WILL EVER GO TO THE JURY.  THE JURY DOES

13:30:24  15   NOT GET TO DECIDE WHETHER OR NOT SOMETHING IS QUOTE, UNQUOTE,

16   PROPERTY AND WE KNOW THAT FROM, FIRST -- WELL, I WON'T CITE ALL

17   THE CASES.

18        BUT ALL OF THE CASES WHERE THE SUPREME COURT HAS

19   ADDRESSED THESE QUESTIONS OR SIMILAR QUESTIONS -- *MCNALLY*,

20   *SKILLING*, *DOWLING* -- THE COURT IS CONSIDERING AS A MATTER OF

21   LAW WHETHER COPYRIGHTS OR INTANGIBLE OBJECTS ARE PROPERTY AND

22   THOSE ARE NOT QUESTIONS THAT THEY DEFERRED TO THE JURY.  SO

23   BECAUSE THIS IS A QUESTION OF LAW, IF THERE ARE ANY FACTS THAT

24   THE COURT NEEDS TO MAKE THIS DETERMINATION, THE COURT CAN

25   CONSIDER THOSE FACTS.  IF THEY'RE UNDISPUTED, WE DON'T NEED TO

13:31:09  1    HAVE AN EVIDENTIARY HEARING.  IF THEY ARE DISPUTED, THAT MAY BE

       2    SOMETHING THAT THE COURT FINDS NECESSARY.

       3         THE COURT:  LET ME HAVE YOU RESPOND TO THE ARGUMENT

       4    THAT WE DON'T HAVE A DETERMINATIVE CASE, WE DON'T HAVE

       5    PRECEDENT, THAT STANDS FOR THE PROPOSITION THAT THESE

       6    IP/NETBLOCKS DO NOT QUALIFY AS PROPERTY AND THAT, IN FACT, YOU

       7    HAVE ONE MAGISTRATE, I BELIEVE, IN A CASE PROVIDING THE VIEW

       8    THAT THESE NETBLOCKS WOULD CONSTITUTE PROPERTY; SO THAT, GIVEN

       9    THE STATE OF THE LAW, THAT WE OURSELVES DON'T HAVE ENOUGH FACTS

      10    BEFORE US WITH RESPECT TO THINGS LIKE ARIN AND LEGACY AND WHAT

      11    ALL THAT TRANSLATES INTO.  WHY DO YOU THINK WE HAVE SUFFICIENT

      12    FACTS ON THE RECORD BASED UPON WHAT'S IN THE INDICTMENT WHEN

      13    THERE'S NO REFERENCE TO ARIN AND THE LIMITATIONS THAT OTHERWISE

      14    ARIN MAY PLACE ON BENEFICIARIES OF THESE ADDRESSES?

13:32:27 15         MS. MUNK:  YES, YOUR HONOR.  THERE IS A LOT TO

      16    ADDRESS THERE.  FIRST, I WANT TO ADDRESS THIS ISSUE OF THE

      17    MAGISTRATE DECIDING THAT AN IP ADDRESS IS PROPERTY.  THERE'S NO

      18    SUCH DECISION.  THE GOVERNMENT CHARACTERIZED A DECISION IN A

      19    CASE CALLED *KREMEN V. COHEN*.  THIS IS A CASE THAT WENT ON FOR

      20    YEARS AND YEARS ABOUT A DOMAIN CALLED SEX.COM.  I HAVE THE

      21    ORDER HERE THAT THE GOVERNMENT CITED.  IT DOESN'T RULE THAT IP

      22    ADDRESS ARE PROPERTY.  IT SIMPLY SAYS THAT THEY CAN BE

      23    TRANSFERRED.  I CAN HAND A COPY TO THE COURT AND ALSO THE

      24    GOVERNMENT.

      25         THE COURT:  DIDN'T THEY RELY ON *GLOBAL NAPS VERSUS*

13:33:02   1   *VERIZON*?

2              MS. MUNK:  YES, YOUR HONOR.  THAT'S A CASE WE CITED

3        AS WELL.  MAY I APPROACH, YOUR HONOR?

4              THE COURT:  YES.

5              MS. MUNK:  ALL OF THE CASES THAT DEALT WITH THE ISSUE

6        OF WHETHER IP ADDRESSES, WHETHER THERE IS ANY KIND OF RIGHT TO

7        AN IP ADDRESS, THEY HAVE NOT COME TO THE CONCLUSION THAT THEY

8        ARE PROPERTY.  THERE'S NOT A CASE THAT SAYS, WELL, A BANKRUPTCY

9        CODE REQUIRES THAT ONLY PROPERTY CAN BE, YOU KNOW, TRANSFERRED

10       IN AN ASSET SALE, SO IN ORDER FOR SOMETHING TO BE TRANSFERRED

11       IT HAS TO BE PROPERTY.  THAT'S NOT WHAT THESE CASES HOLD.  THEY

12       HOLD THAT SOMEONE HAS A RIGHT TO TRANSFER AN IP ADDRESS WHEN

13       THEY GO BANKRUPT, AND THOSE IP ADDRESSES CAN HAVE VALUE.

14             THAT IS NOT A HOLDING THAT IP ADDRESS ARE PROPERTY.

13:33:55  15   THIS IS WHY SEVENTH CIRCUIT CASE THAT WE CITED IN OUR REPLY

16       REGARDING *1-800-FLOWERS* IS SO IMPORTANT BECAUSE WHAT THAT CASE

17       EXPLAINS IS THAT YOU CAN HAVE A RIGHT TO SELL SOMETHING SUCH AS

18       A PHONE NUMBER, SUCH AS AN IP ADDRESS, AND HAVE A RIGHT TO GET

19       MONEY FOR THAT, BUT THAT DOESN'T MAKE THAT IP ADDRESS OR PHONE

20       NUMBER A PROPERTY RIGHT.  IT'S THE EXACT ISSUE HERE.  JUST LIKE

21       -- AND THE ANALOGY THE SEVENTH CIRCUIT GAVE WAS A FOOTBALL

22       TEAM.  YOU HAVE A RIGHT TO TRADE A FOOTBALL PLAYER FOR VALUE,

23       BUT YOU DON'T OWN A FOOTBALL PLAYER.  THE FACT YOU CAN TRANSFER

24       SOMETHING IN EXCHANGE FOR MONEY DOES NOT MAKE IT A PROPERTY

25       RIGHT FOR THE PURPOSES OF CRIMINAL WIRE FRAUD.

13:34:39 1    OBVIOUSLY, OVERARCHING THAT ENTIRE ANALYSIS IS THE

2   FACT WE'RE NOT DEALING WITH BANKRUPTCY CASES.  WE'RE DEALING

3   WITH A FELONY CRIME, AND WE HAVE FOUR YOUNG MEN SITTING IN HERE

4   WITH HAVING COMMITTED A CRIME, AND IF THEY ARE TO BE HELD TO A

5   JURY TRIAL ON WHETHER OR NOT THEY COMMITTED WIRE FRAUD, THERE

6   NEEDS TO BE ABSOLUTE CLARITY AS TO WHETHER OR NOT AN IP ADDRESS

7   IS PROPERTY.  THAT'S A BIG DISTINCTION BETWEEN NOT JUST THE

8   BANKRUPTCY CASES BUT ALSO THE NINTH CIRCUIT CASE *KREMEN*.

9    BUT JUST GOING BACK TO THE COURT'S QUESTION ABOUT

10   WHAT'S IN THE INDICTMENT THAT'S SUFFICIENT FOR THE COURT TO

11   RULE ON THIS ISSUE, FIRST, OBVIOUSLY OUR POSITION IS THAT THE

12   COURT CAN CONSIDER ALL THE EXHIBITS THE DEFENSE SUBMITTED ALONG

13   WITH MOTION, BUT SECOND, IF THE COURT DETERMINES IT CANNOT,

14   THEN GOVERNMENT RUNS INTO A DIFFERENT PROBLEM UNDER RULE 12,

13:35:27 15   RULE 12(B)(3) LOWER CASE ROMAN NUMERAL THREE, WHICH REQUIRES

16   THE INDICTMENT TO BE SUFFICIENT, AND IF IT'S NOT, THEN THE

17   COURT MUST DISMISS IT FOR LACK OF SUFFICIENCY.

18    THE CASE, THE SEMINAL CASE ON THIS IS *US V. CECIL*,

19   C-E-C-I-L, ALSO CITED IN THE REPLY, WHICH SAID THAT IF THE

20   INDICTMENT -- THAT THERE ARE MULTIPLE FACTORS, BUT IT'S ON PAGE

21   14 OF THE REPLY.  I'M SORRY.  I'M ACTUALLY ON THE WRONG PAGE

22   WHICH IS WHY I'M HAVING TROUBLE.  IT'S ON PAGE 13 OF THE REPLY,

23   AND WHAT IT SAYS IS THAT IN ORDER FOR AN INDICTMENT TO BE

24   SUFFICIENT IT MUST HAVE A SUFFICIENT DESCRIPTION OF THE CHARGES

25   TO ENABLE HIM TO PREPARE HIS DEFENSE, TO ENSURE THAT HE IS

13:36:18   1    PROSECUTED ON THE BASIS OF FACTS PRESENTED TO THE GRAND JURY,

2    TO ENABLE HIM TO PLEAD JEOPARDY AGAINST A LATER PROSECUTION AND

3    TO INFORM THE COURT OF THE FACTS ALLEGED SO THAT THE COURT CAN

4    DETERMINE THE SUFFICIENCY OF THE CHARGE.

5         SO IF THE FACTS IN THE INDICTMENT AS ALLEGED ARE NOT

6    ENOUGH FOR THE COURT TO DECIDE IS AN IP ADDRESS PROPERTY, AND

7    AT THIS POINT THEY'RE NOT BECAUSE THE INDICTMENT DOES NOT

8    EXPLAIN WHAT AN IP ADDRESS REALLY IS; IT CERTAINLY DOESN'T

9    ADDRESS ANY FACTS THAT WOULD SATISFY THE PROPERTY AS THEY CLAIM

10   APPLIES WHICH IS THE THREE-PART TEST IN *KREMEN*; IF NONE OF

11   THOSE FACTS ARE ALLEGED, THEN IT CAN'T BE THAT THE COURT

12   DOESN'T GET TO DECIDE THE ISSUE.  IT MEANS THAT THE COURT

13   EITHER MUST HEAR UNDISPUTED FACTS TO ALLOW THE COURT TO MAKE

14   THIS DECISION OR THE COURT MUST DISMISS THE INDICTMENT FOR

13:37:08   15   INSUFFICIENCY.  SO EITHER WAY, THE WIRE FRAUD CHARGES HAVE TO

16   BE DISMISSED UNDER EITHER OF THE RULE 12 PROCEDURES.

17         I WANT TO ADDRESS OTHER POINTS BUT I --

18         THE COURT:  ALL RIGHT.  LET ME HEAR FROM THE

19   GOVERNMENT WITH RESPECT TO UNDER WHAT CIRCUMSTANCES, IF ANY,

20   THE COURT COULD DIRECT AN ADDITIONAL RECORD TO BE DEVELOPED

21   WITH RESPECT TO ARIN AS TO THE AGREEMENTS THAT -- WELL, I GUESS

22   PRE-1997 THERE WEREN'T AGREEMENTS -- BUT THE UNDERSTANDINGS

23   THAT EXISTED AS TO WHAT RIGHTS WERE CONFERRED AND WHAT

24   OBLIGATIONS ALSO EXISTED BY BEING CONFERRED THESE IP ADDRESS

25   RIGHTS.

13:38:22   1          MS. FEVE:  YOUR HONOR, ON PAGE FIVE OF OUR BRIEF WE

2   TALKED ABOUT THE LEGAL STANDARD AND DIRECTED THE COURT TO

3   SEVERAL DECISIONS -- THE 2002 *BOREN* DECISION, THE 1996 *JENSEN*

4   DECISION AND 1982 *BUCKLEY* DECISION, ACTUALLY AS WELL *INRYCO*.

5   IN ALL OF THOSE DECISIONS, WHAT THE COURTS WERE REALLY ADAMANT

6   ABOUT IS THAT WE LOOK IN A PRETRIAL MOTION TO DISMISS -- THE

7   DISTRICT COURT IS BOUND BY THE FOUR CORNERS OF THE INDICTMENT.

8   THAT WAS *BOREN*.  AND IN *JENSEN*, THE QUOTE WAS THE COURT SHOULD

9   NOT CONSIDER EVIDENCE NOT APPEARING ON THE FACE OF THE

10  INDICTMENT.  THEY ALSO ADDED IN *JENSEN* THERE IS NO SUMMARY

11  JUDGMENT PROCEDURE IN CRIMINAL CASES WHICH IS FUNCTIONALLY WHAT

12  I BELIEVE THE DEFENDANTS ARE ARGUING FOR.

13          AND IF WE KEEP GOING AND WE LOOK AT *BUCKLEY* AND WE

14  LOOK AT *INRYCO*, WHAT WE SEE IS THAT CONSISTENTLY THE NINTH

13:39:15  15  CIRCUIT SAYS THAT WHEN YOU BRING A MOTION TO DISMISS THE CHARGE

16  IT'S BECAUSE YOU HAVE FAILED TO SUFFICIENTLY PLEAD THE CHARGE.

17  NO ONE IS ARGUING THAT WE INSUFFICIENTLY FAILED TO PLEAD THE

18  CHARGE.  AND EVEN IF WE LOOK AT SOME OF THE CASES THE

19  DEFENDANTS HAVE CITED LIKE *BONALLO*, THE 1988 DECISION NINTH

20  CIRCUIT DECISION, THEY SAY IF THE INDICTMENT SETS FORTH THE

21  ELEMENTS OF THE ILLEGAL SCHEME AND THE TIME AND PLACE WHERE THE

22  WITHDRAWALS OCCURRED -- WHICH IN OUR CASE WOULD BE IF YOU

23  LOOKED AT THE MANNER AND MEANS -- THE DEFENDANT, THEREFORE,

24  KNEW OF THE CONDUCT HE WAS BEING ACCUSED OF AND COULD

25  ADEQUATELY PREPARE A DEFENSE.

13:39:47   1          WE HAVE ADEQUATELY ALLEGED THIS, AND AS FAR AS IF WE

2      ARE GOING TO START LOOKING AT FACTS THAT ARE OUTSIDE OF THE

3      RECORD, THE ONLY LEGAL AUTHORITY THAT THE DEFENDANTS HAVE PUT

4      FORWARD FOR THAT POSITION WAS IN THEIR REPLY BRIEF WHICH WE

5      OBVIOUSLY RECEIVED OVER THE LONG WEEKEND.  I HAVE NOT HAD A

6      CHANCE TO EXHAUSTIVELY REVIEW IT, RESEARCH THE CASES CITING IT,

7      BUT THIS -- LET ME PULL UP THE CASE -- THIS 1985 DECISION,

8      *SHORTT ACCOUNTANCY CORPORATION* WHICH IS THE FIRST TIME THAT

9      THEY HAVE RAISED IT --

10          MS. MUNK:  IT'S ACTUALLY IN THE MOTION AS WELL.

11          MS. FEVE:  YOUR HONOR, WHAT *SHORTT* SAYS IS ACTUALLY I

12     DON'T BELIEVE SO STRONG FOR THEM.  IT SAYS THAT A MOTION

13     REQUIRING FACTUAL DETERMINATIONS MAY BE DECIDED BEFORE TRIAL

14     IF, QUOTE, TRIAL OF THE FACTS SURROUNDING THE COMMISSION OF THE

13:40:38  15     ALLEGED OFFENSE WOULD BE OF NO ASSISTANCE IN DETERMINING

16     VALIDITY OF THE DEFENSE, AND THAT QUOTE IS TO *UNITED STATES*

17     *VERSUS COVINGTON* WHICH IS A 1969 SUPREME COURT DECISION.  THE

18     NINTH CIRCUIT IN *SHORTT ACCOUNTANCY CORP* GOES ON TO SAY, IF AN

19     ISSUE RAISED IN A PRETRIAL MOTION IS NOT ENTIRELY SEGREGABLE

20     FROM THE EVIDENCE TO BE PRESENTED AT TRIAL BUT ALSO DOES NOT

21     REQUIRE REVIEW OF A SUBSTANTIAL PORTION OF THAT EVIDENCE, THE

22     DISTRICT COURT HAS DISCRETION TO DEFER DECISION ON THE MOTION.

23     SO I BELIEVE --

24          THE COURT:  DISCRETION TO DEFER UNTIL?

25          MS. FEVE:  TO DEFER DECISION ON THE MOTION.

13:41:13  1          THE COURT:  UNTIL TRIAL?

        2          MS. FEVE:  YES, UNTIL TRIAL, YOUR HONOR.

        3          THE COURT:  DO YOU BELIEVE THAT THIS QUESTION ABOUT

        4   AN IP AND NETBLOCKS CONSTITUTING PROPERTY IS THAT PROPERLY

        5   PRESENTED TO THE JURY FOR CONSIDERATION, OR DO YOU AGREE THAT

        6   IT'S A MATTER OF LAW DETERMINATION?

        7          MS. FEVE:  LOOK, IN AN ABUNDANCE OF CAUTION, I WOULD

        8   ALWAYS ARGUE THAT IT'S A MIXED QUESTION OF FACT AND LAW BECAUSE

        9   HERE WE ARE GOING TO HAVE TO PUT FACTS BEFORE THE COURT

        10  REGARDING THE HISTORY OF ARIN, WHO ARIN IS, WHAT IT IS, WHAT IT

        11  DOESN'T DO, HOW DOES THE INTERNET WORK, WHAT HAVE OTHER CASES

        12  IN DISTRICTS DONE THAT HAVE ADJUDICATED THIS.  AND JUST SO I

        13  CAN MAKE SURE I'M TRACKING THE JUDGE'S ARGUMENT, YOU REFERENCED

        14  A MAGISTRATE JUDGE.  THE MASSACHUSETTS DECISION WE RELIED ON,

13:41:58  15  *GLOBAL NAPS*, JUDGE ZOBEL IS A DISTRICT JUDGE WHO ISSUED THAT

        16  DECISION.

        17         THE COURT:  YOU'RE CORRECT.

        18         MS. FEVE:  AND IN THERE, SHE CLEARLY SPENT A GREAT

        19  DEAL OF TIME FAMILIARIZING HERSELF WITH IP ADDRESSES WITH HOW

        20  THEY WORKED, WITH WHAT A NETBLOCK IS, WITH HOW VALUABLE THEY

        21  COULD BE, AND IF WE'RE GOING TO HAVE THAT TYPE OF HEARING, THE

        22  DEFENDANTS ARE THE MOVING PARTY WHERE IT'S INCUMBENT UPON THEM

        23  TO FRAME WHY THEY BELIEVE THE FACTS ARE ENTIRELY SEGREGABLE.

        24  WE'RE NOT UNWILLING TO HAVE THE HEARING IF EVERYONE AGREES THE

        25  FACTS ARE ENTIRELY SEGREGABLE AND IF EVERYONE AGREES THAT THIS

13:42:39  1    IS NOT GOING TO BE A QUESTION SUBMITTED TO THE JURY.  WE WANT

        2    TO BE EFFICIENT WITH THE COURT'S TIME, AND IF THIS WILL

        3    STREAMLINE THE TRIAL, TO THE EXTENT WE GET TO TRIAL, WE'RE

        4    CERTAINLY OPEN TO DOING IT.  BUT AS FAR AS A MOTION TO DISMISS,

        5    THIS IS NOT THE PROPER WAY TO DO IT, TO SAY THERE ARE A HUNDRED

        6    PAGE THAT YOU CAN JUDICIALLY NOTICE UNDER A VARIETY OF

        7    THEORIES; PARTICULARLY WHERE, AGAIN, THE FCC DOCUMENT THEY RELY

        8    ON SPECIFICALLY SAYS ON ITS FACE THAT IT IS NOT BINDING.

        9              AND SO TO THE EXTENT THAT THE COURT IS CONCERNED THAT

       10    BECAUSE THERE'S A NON-GOVERNMENTAL ORGANIZATION THAT BY ITS OWN

       11    TERMS ARGUES IT HAS CERTAIN POSSESSORY INTERESTS, WE CAN GO

       12    THERE; BUT PART OF WHY I'M SAYING THERE'S CONTEXT FOR ARIN IS

       13    THAT THAT HAS BEEN ARIN'S POSITION.  FOR BETTER OR WORSE, IT

       14    HAS ALSO BEEN A VERY UNSUCCESSFUL POSITION.  ARIN SOUGHT TO

13:43:34 15    BLOCK THE TRANSFER THAT IS THE SUBJECT OF THE *GLOBAL NAPS*

       16    DECISION ASSERTING THE RIGHTS THAT THE DEFENDANTS NOW QUOTE.

       17    AND THE PARTIES TO THAT TRANSACTION SAID, WE DISAGREE AND WE'RE

       18    GOING TO GO FORWARD AND THREATEN LITIGATION.  AND ULTIMATELY

       19    ARIN BLINKED AND SAID, FINE, WE'LL BLESS THIS TRANSACTION.  BUT

       20    ALL OF THOSE FACTS, ALL OF THAT BACKGROUND, ALL OF THE WAYS IN

       21    WHICH ARIN MAY OR MAY NOT ACTUALLY HAVE THIS RIGHT THAT IT

       22    ASSERTS ARE FAR OUTSIDE THE SCOPE OF THE INDICTMENT.

       23              THE COURT:  I AGREE.

       24              MS. BERNSTEIN:  YOUR HONOR, MAY I RESPOND TO A COUPLE

       25    OF THE POINTS?

13:44:18  1         THE COURT:  YES.  WOULD YOU DO ME A FAVOR?  WOULD YOU

2  PLACE THAT MICROPHONE CLOSER?

3         MS. BERNSTEIN:  IS THAT BETTER?

4         THE COURT:  YES.

5         MS. BERNSTEIN:  THE IDEA THAT THE COURT WOULD BEGIN

6  CONSIDERING ALL THIS BACKGROUND ABOUT THE PRE-LITIGATION

7  HISTORY OF THE CASE THE GOVERNMENT IS CITING IS PART OF, I

8  THINK, THE PROBLEM.  I THINK WE'VE GONE TOO FAR ASTRAY.  NO ONE

9  IS DISPUTING WHAT THE LEGAL STANDARD IS FOR COURT TO CONSIDER

10  UNDER RULE 12.  WHAT WE ARE SAYING, THOUGH, IS THAT WHETHER OR

11  NOT AN IP ADDRESS CONSTITUTES PROPERTY IS PURELY A LEGAL

12  QUESTION, AND THE GOVERNMENT -- IT'S NOT FOR A JURY

13  DETERMINATION.  THIS ISN'T SOMETHING WE'D HAVE A SPECIAL

14  VERDICT FORM AND MAKE THESE SAME ARGUMENTS TO THE JURY.

13:44:50 15         THE COURT:  WHAT ABOUT A MIXED QUESTION OF LAW AND

16  FACT?

17         MS. BERNSTEIN:  I DON'T THINK IT'S THAT EITHER, YOUR

18  HONOR.  I MEAN, WHETHER OR NOT AN AN IP ADDRESS -- IT'S AN

19  ISSUE OF STATUTORY CONSTRUCTION WHICH ALSO IMPLICATES THE RULE

20  OF LENITY.  BUT EVEN IN THE GOVERNMENT'S PLEADING, I WAS STRUCK

21  ON PAGE SIX HOW THE GOVERNMENT ARGUES IN ITS DISCUSSION OF THE

22  LEGAL STANDARD THAT WE ALSO HAVE TO TAKE INTO ACCOUNT, QUOTE,

23  EXISTING REALITIES WHICH INCLUDE COMMON UNDERSTANDINGS OF IP

24  ADDRESSES AND DOMAIN NAMES.  I THINK THE GOVERNMENT TOOK THAT

25  POSITION BECAUSE THEY WANTED TO DISCUSS DOMAIN NAMES AND

13:45:26  1    ANALOGIZE DOMAIN NAMES.  NOW THE GOVERNMENT IS SEEMINGLY TAKING

2    THE POSITION THAT THIS IS NOT A QUOTE, UNQUOTE, EXISTING

3    REALITY.  AND THAT FLIP-FLOPPING IS A PROBLEM AND HAS BEEN A

4    PROBLEM THAT PLAGUED EVERY MOTION IN EVERY STAGE OF THIS

5    PROCEEDING.

6           HERE, WHAT WE HAVE ARE UNDISPUTED FACTS.  I THINK WE

7    LAID THOSE OUT PRETTY CLEARLY ON PAGE SIX OF OUR MOTION.

8    THEY'RE OUTSIDE OF THE INDICTMENT, BUT THEY'RE NOT IN DISPUTE.

9    UNDER *PHILLIPS* AND UNDER *COVINGTON,* THEY ARE THINGS THAT THIS

10   COURT CAN RELY UPON AS A BASIS FOR AN ORDER TO DISMISS ON THIS

11   MOTION AND THOSE FACTS ARE THAT, IN SUPPORT OF ITS PROSECUTION,

12   THE GOVERNMENT SUBMITTED ITS DECLARATION FROM ARIN THAT TOOK

13   THE POSITION THAT IP ADDRESS ARE NOT PROPERTY; TWO, THAT ARIN

14   HAS PUBLICLY TAKEN THE POSITION THAT IP ADDRESSES ARE NOT

13:46:11 15   PROPERTY IN VARIOUS DOCUMENTS, PUBLICATIONS AND LEGAL

16   PROCEEDINGS; THREE, FEDERAL AGENCIES REPEATEDLY AFFIRM THAT IP

17   ADDRESS ARE NOT PROPERTY AND STATE THAT THEY AGREE WITH ARIN'S

18   POLICIES; FOUR, THE IP ADDRESS IN THE INDICTMENT ARE LEGACY

19   THAT WERE NOT EVEN SUBJECT TO A LEGACY REGISTRATION AGREEMENT.

20   AND THE GOVERNMENT DOESN'T DISPUTE THESE BECAUSE THE ACCURACY

21   CANNOT BE REASONABLY QUESTIONED.  AND UNDER FEDERAL RULE OF

22   EVIDENCE 201(C)(2), THE COURT MUST TAKE JUDICIAL NOTICE, AND

23   THERE IS NOTHING THAT EXEMPTS JUDICIAL NOTICE FROM A MOTION

24   UNDER RULE 12.

25           SO TO THE COURT'S EARLIER QUESTION OF WHAT CAN FORM

13:46:53  1    THE BASIS OF AN ORDER, IT'S THOSE FACTS.  AND THE GOVERNMENT IS

        2    TRYING TO MUDDY THE WATERS BY SUGGESTING THAT ARIN'S POSITION

        3    HASN'T BEEN SUCCESSFUL IS NEITHER HERE NOR THERE.  IT'S A

        4    POSITION THAT THE GOVERNMENT HAS PROFFERED TO THE COURT,

        5    REPEATEDLY STAKED OUT, AND IF WE'RE NOT GOING TO DISPOSE OF

        6    THIS MOTION ON QUESTION ONE AS TO OUR ARGUMENT THAT IP

        7    ADDRESSES LEGALLY AS A MATTER OF LAW DO NOT CONSTITUTE

        8    PROPERTY, THEN WE GET TO THE ISSUE THAT WAS RAISED BY MY

        9    CO-COUNSEL EARLIER WHICH IS THAT THERE ARE A LOT OF CONFLICTING

        10   POSITIONS THAT ARE BEYOND DISPUTE, AND THIS IS VAGUE.  SO WE'RE

        11   IN ANOTHER REALM UNDER A DIFFERENT SECTION OF RULE 12 FOR

        12   DISMISSAL.

        13        THE COURT:  WELL, THE OTHER ISSUE THAT I FLAGGED, AND

        14   WE HAVEN'T HAD AN OPPORTUNITY TO ADDRESS IS THE QUESTION OF *LEW*

13:47:40  15   AND TO WHAT EXTENT *LEW* REQUIRES THAT THE THING OF VALUE, THE

        16   PROPERTY, BE TAKEN FROM THE PERSON WHO WAS THE VICTIM, RIGHT,

        17   THE ISSUE OF CONVERGENCE.  AND I KNOW THE GOVERNMENT HAS SOUGHT

        18   TO DISTINGUISH *LEW* BASED ON THE FACTS, HAS TRIED TO, IF NOT

        19   DISTINGUISH *LEW,* TO PERHAPS CALL THE COURT'S ATTENTION TO THE

        20   FACT THAT IT IS AN OUTLIER WITH RESPECT TO HOW COURTS OF APPEAL

        21   HAVE VIEWED THIS; BUT AT THE SAME TIME, FROM WHAT I CAN TELL,

        22   *LEW* THE STATE OF THE LAW ON THIS QUESTION AT THIS TIME.

        23        LET ME HEAR FROM MS. FEVE WITH RESPECT TO *LEW* AND WHY

        24   UNDER *LEW* THE COURT SHOULD NOT FIND THAT AT THIS POINT THE

        25   GOVERNMENT HAS NOT SUFFICIENTLY ALLEGED THE CONVERGENCE BETWEEN

13:48:47   1   THE FALSE REPRESENTATION AND THE INDIVIDUAL WHO WAS THE

  2   VICTIM.

  3          MS. FEVE:  YOUR HONOR, SO I CAN TRACK, WHEN YOU SAY

  4   "CONVERGENCE" -- I KNOW THE DEFENDANTS' MOTION CHALLENGED THE

  5   MATERIALITY.  THAT WAS MY UNDERSTANDING OF HOW THEY WERE

  6   FRAMING IT.

  7          THE COURT:  WHICH I THINK IS ADDITIONAL ARGUMENT --

  8          MS. FEVE:  JUST SO I'M TRACKING, WHAT DO YOU MEAN BY

  9   "CONVERGENCE" THEN?

10          THE COURT:  SO AS I UNDERSTAND *LEW*, IT PROVIDES THAT

11   IT'S NECESSARY FOR THE GOVERNMENT TO PROVE THAT THE DEFENDANT

12   OBTAINED MONEY OR PROPERTY FROM THE VICTIM OF THE DECEIT.  SO

13   HERE, AS I UNDERSTAND IT, YOU'RE SAYING THAT THE VICTIM OF THE

14   DECEIT IS THE HOSTING COMPANY; IS THAT WHAT YOU'RE SAYING?

13:49:29 15          MS. FEVE:  SO YOUR HONOR, THIS IS WHERE I WANT TO BE

16   CAREFUL BECAUSE THERE ARE SERIOUS ALLEGATIONS ABOUT USING THE

17   WORD "VICTIM" IN THE CONTEXT OF THE CONFIDENTIAL SOURCE

18   LITIGATION.  WHEN WE'RE LOOKING AT THE MOTION TO DISMISS THE

19   WIRE FRAUD CHARGE, I'M LOOKING AT "VICTIM" PURELY FOR -- BY THE

20   WAY, "VICTIM" IS NOT ONE OF THE ELEMENTS WE HAVE TO PLEAD IN

21   THE WIRE FRAUD CHARGE.  SO I'M TRYING TO MAKE SURE I TRACK IT,

22   AND I WANT TO MAKE IT CLEAR THAT THE GOVERNMENT IS MINDFUL THAT

23   HOW WE DISCUSS A VICTIM FOR PURPOSES OF THE WIRE FRAUD STATUTE

24   IS NOT GOING TO BE THE SAME AS IT IS FOR THE MANDATORY VICTIMS'

25   RESTITUTION OR THE CRIME VICTIMS' RESTITUTION ACT OR FOR

13:50:10  1   PURPOSES OF SENTENCING. SO I DON'T WANT US TO BE SANDBAGGED.

2   WHICH IS TO SAY, I'M TRYING TO ADDRESS THIS PARTICULAR

3   ITERATION ABOUT THE COURT'S QUESTION ABOUT "VICTIM."  AND

4   AGAIN, LOOKING AT THE FRAUD STATUTE, WE HAVE PROPERLY PLEAD THE

5   STATUTE, AND THERE'S NOTHING IN *LEW* THAT REQUIRES US TO PLEAD A

6   CAUSALITY OR DIRECTIONALITY THAT I UNDERSTAND IT TO BE STATING

7   AND THAT'S CERTAINLY NOT WHAT THE NINTH CIRCUIT MODEL JURY

8   INSTRUCTION HOLD.

9         SO KIND OF DIGGING DOWN INTO THE COURT'S CONCERN WITH

10   WHAT I THINK YOU'RE EQUATING WITH CONVERGENCE, IF I'M NOT

11   MISTAKEN, THE SECTION OF *LEW* THAT THE PARTIES ARE RELYING ON IS

12   ON PAGE 221 UNDER CAPTIONS ENTITLED DISCUSSION ONE, MAIL FRAUD.

13   AND IT SAYS, SEVERAL PARAGRAPHS DOWN WHERE IT SAYS, WHILE IT IS

14   TRUE THAT AFTER *MCNALLY* THE ELEMENTS OF MAIL FRAUD REMAIN

13:51:08  15   UNCHANGED EXCEPT THE INTENT OF THE SCHEME MUST BE TO OBTAIN

16   MONEY OR PROPERTY, THE COURT MADE IT CLEAR -- AND THIS IS

17   REFERRING TO *MCNALLY*, SUPREME COURT -- THAT THE INTENT MUST BE

18   TO OBTAIN MONEY OR PROPERTY FROM THE ONE WHO IS DECEIVED,

19   QUOTE, THE WORDS TO DEFRAUD COMMONLY REFERRED TO WRONGING ONE

20   IN HIS PROPERTY RIGHTS BY DISHONEST METHODS OR SCHEMES AND

21   USUALLY SIGNIFY THE DEPRIVATION OF SOMETHING OF VALUE BY TRICK,

22   DECEIT, CHICANE OR OVERREACHING.  I OMITTED THE INTERNAL

23   QUOTES, BUT THE INTERNAL QUOTES, AS THE CITATION IN *LEW* MAKES

24   CLEAR ARE TO *HAMMERSCHMIDT*.  SO IF WE ACTUALLY TURN TO *MCNALLY*

25   AND THE PRECISE CITATION THAT *LEW* IS RELYING ON, IT IS ON PAGE

13:51:45  1    358 OF THE *MCNALLY* DECISION, AND WE KNOW EXACTLY WHERE TO GO

2    BECAUSE WE KNOW IT'S WHERE *MCNALLY* IS DIRECTLY CITING

3    *HAMMERSCHMIDT* AND THAT PARAGRAPH, WHICH IF YOU HAVE A WESTLAW

4    COPY IS GOING TO HAVE THE BOLD 1 NEXT TO IT, BEGINS:  AS THE

5    COURT LONG AGO STATED, HOWEVER, THE WORDS, QUOTE, TO DEFRAUD,

6    END QUOTE, COMMONLY REFER TO WRONGING ONE IN HIS PROPERTY

7    RIGHTS BY DISHONEST METHODS OR SCHEMES, AND QUOTE, AND USUALLY

8    SIGNIFY THE DEPRAVATION OF SOMETHING OF VALUE BY TRICK, DECEIT,

9    CHICANE OR OVERREACHING.  AND THAT'S THE ENTIRETY OF THE QUOTE

10    AND REFERENCE TO *HAMMERSCHMIDT*.  WHAT'S NOTABLE HERE IS THAT AT

11    NO POINT DOES *MCNALLY* INTRODUCE THIS NEW ELEMENT OF BUT, LIKE,

12    WHO YOU HAVE TO DIRECT THE DECEIT AT.

13         AND I BELIEVE IN LOOKING AT LEW AND LOOKING AT LEW'S

14    INTERPRETATION OF THIS PARTICULAR QUOTE FROM *MCNALLY* THAT THE

13:52:41  15    NINTH CIRCUIT'S *ALI* DECISION IS INSTRUCTIVE BECAUSE THERE *ALI*

16    SPENT CONSIDERABLE TIME DISCUSSING *MCNALLY, CARPENTER*,

17    *PASQUANTINO* WHICH FORM THIS QUAD OF SUPREME COURT CASES GETTING

18    INTO THE MEAT OF WHAT DOES MONEY OR PROPERTY MEAN FOR PURPOSES

19    OF MAIL OR WIRE OR BANK FRAUD STATUTES.  AND HERE WHAT THEY

20    REALLY EMPHASIZE IS THIS QUOTE FROM *CLEVELAND* THAT THE RIGHT TO

21    PAYMENT DEPENDS ON, QUOTE, PROPERTY IN THE HANDS OF THE VICTIM,

22    END QUOTE.  AND WHAT WE SEE IN MANY OF THESE DECISIONS,

23    PARTICULARLY I BELIEVE IN JUDGE GINSBURG'S DECISION IN

24    *PASQUANTINO,* BUT ALSO IN *CLEVELAND,* IS THAT IN ASSESSING

25    WHETHER OR NOT SOMETHING IS PROPERTY DEPENDS ON WHO IS THE

13:53:29  1  PROPERTY HOLDER BECAUSE A LICENSE ISSUED BY THE GOVERNMENT IS

2  NOT PROPERTY, BUT A LICENSE HELD BY AN INDIVIDUAL IS.

3  AND THIS IS PART OF WHY WE KEEP SEEING THROUGHOUT THE

4  CASE LAW THIS PHRASE WHICH *ALI'S* QUOTE FROM *CLEVELAND* OF

5  PROPERTY IN THE HANDS OF THE VICTIM, LOOKING AT WHO IS THE

6  HOLDER OF THE PROPERTY INTEREST TO ASSESS WHETHER OR NOT THAT

7  PROPERTY INTEREST IS COGNIZABLE UNDER THE FRAUD STATUTES.  AND

8  THAT IS ONE OF THE REASONS, YOUR HONOR, WHY WE BELIEVE *LEW* IS

9  DISTINGUISHABLE BECAUSE FIRST AND FOREMOST, IF YOU LOOK JUST AT

10  THE PARAGRAPH AFTER THE ONE I READ TO YOU THE NEXT LINE SAYS,

11  THIS CASE IS INDISTINGUISHABLE FROM *MCNALLY.*  IN *MCNALLY,* AS

12  HERE, THE DEFENDANTS DID OBTAIN MONEY IN CONNECTION WITH THE

13  WRONGDOING TOWARD THE GOVERNMENT.

14  AGAIN, WHAT *LEW* IS SAYING IS JUST LIKE IN *CLEVELAND*

13:54:22  15  AND THE SIMILAR DECISIONS WHERE THE FRAUDULENT

16  MISREPRESENTATION IS DIRECTED TO THE GOVERNMENT AND THE THING

17  OBTAINED FROM THE GOVERNMENT IS ARGUABLY OR ARGUABLY NOT

18  PROPERTY, THAT WHAT WE SEE THE COURT ADDRESSING REPEATEDLY IS

19  DOES THIS THING QUALIFY AS PROPERTY WHEN HELD BY THE

20  GOVERNMENT; AND DISTINGUISHING, SAYING, YES, WELL, THE LICENSE

21  COULD BE PROPERTY IF HELD BY A PRIVATE PARTY -- THAT'S WHAT WE

22  SEE IN *CLEVELAND* -- BUT NOT IF IT'S HELD BY THE GOVERNMENT.

23  BUT *PASQUANTINO* GOES ONE STEP FURTHER AND IT SAYS ACTUALLY

24  BEING THE GOVERNMENT ISN'T ENOUGH; IT CAN STILL BE A PROPERTY

25  INTEREST.  THE QUESTION IS, IS IT A REGULATORY INTEREST LIKE A

13:55:03  1  LICENSE OR IS IT A REVENUE INTEREST LIKE ANTICIPATED TAX

2  PROCEEDS.  THAT'S WHY IN *PASQUANTINO,* UNLIKE IN *CLEVELAND,* THE

3  SUPREME COURT ACTUALLY DOES RECOGNIZE A PROPERTY RIGHT, BUT

4  WHAT WE SEE IN THIS RECITATION IN *MCNALLY* AND THIS EXPRESS

5  INVOCATION OF *MCNALLY* WHERE THE NINTH CIRCUIT SAYS THERE IS NO

6  DAYLIGHT BETWEEN US AND *MCNALLY* IS BECAUSE WE ARE ONLY

7  ANALYZING WRONGDOING DIRECTED TOWARD THE GOVERNMENT.

8        AND I BELIEVE THAT IF YOU UNDERSTAND THAT, THAT IS

9  WHY IN THE HANDS OF SOMEONE IS TO SAY THEY ARE REFERENCING ALL

10  OF THESE CASES TO SAY, IS A VISA IN THE HANDS OF THE GOVERNMENT

11  PROPERTY?  NO.  COULD IT BE PROPERTY IN THE HANDS OF A PRIVATE

12  PARTY?  YES, BUT WE ONLY ADDRESS FOR PURPOSES OF THE FACTS

13  BEFORE US WHETHER OR NOT IT'S PROPERTY IN THE HANDS OF THE

14  GOVERNMENT.  THAT'S WHY, YOUR HONOR, WE THINK IT'S

13:55:52 15  DISTINGUISHABLE.  WE ALSO THINK IT'S INSTRUCTIVE THAT JUDGE

16  KAGAN'S DECISION IN *LOUGHRIN* DIRECTLY ADDRESSES THIS ISSUE, IS

17  ALSO DISPOSITIVE AND CERTAINLY CONTROLLING ON THIS COURT, AND

18  THAT THERE THE FACTS WERE A DEFENDANT PRESENTED FRAUDULENT

19  CHECKS TO TARGET.  TARGET HONORED THE CHECKS, LET THE DEFENDANT

20  USE THEM TO BUY THINGS.  THE DEFENDANT THEN LEFT THE STORE,

21  THEN PROMPTLY TURNED AROUND, CAME BACK, RETURNED THEM AND GOT

22  THE RETURN FOR CASH.  THEN JUDGE KAGAN GOES THROUGH THIS

23  LENGTHY DISCUSSION OF WHETHER OR NOT IT IS FATAL TO THE CHARGE

24  THAT THE MISREPRESENTATION WAS MADE TO TARGET AND NOT TO THE

25  BANK BECAUSE THE DEFENDANT WAS CHARGED WITH BANK FRAUD.

13:56:39 1    ULTIMATELY, WHAT SHE SAID IS THAT'S OKAY.

2                  AND LET ME PULL UP THE DECISION SO I GET THE RIGHT

3    QUOTE FOR YOU, YOUR HONOR.  BUT SHE SPECIFICALLY ADDRESSES THE

4    SITUATION WHERE THIRD PARTIES ARE HOLDING THE PROPERTY FOR

5    ANOTHER AND WHETHER OR NOT UNDER DEFENDANT'S ARGUMENT THAT IS

6    SOMEHOW FATAL AND BASICALLY SAYS THAT CAN'T BE THE CASE, AND IN

7    FACT, IT ISN'T BECAUSE THAT'S WHAT THE DECISION REACHES.  BUT

8    LET ME JUST PULL IT UP.  SO IF WE LOOK AT -- IT'S PAGE 357, AND

9    IF YOU'RE LOOKING AT THE ACTUAL DECISION IT WILL HAVE THE HEAD

10   NOTE FOR FOUR, WHERE SHE SAYS THE TEXT OF THE BANK FRAUD

11   STATUTE PRECLUDES *LOUGHRIN'S* ARGUMENT.  THE CLAUSE FOCUSES

12   FIRST ON THE SCHEME'S GOAL, OBTAINING BANK PROPERTY, AND

13   SECOND, ON THE SCHEME'S MEANS, A FALSE REPRESENTATION.

14                  IN THE SAME PARAGRAPH SHE SAYS, BUT NOTHING IN THE

13:57:36 15   CLAUSE ADDITIONALLY DEMANDS THAT A DEFENDANT HAVE A SPECIFIC

16   INTENT TO DECEIVE A BANK.  IN PARTICULAR, THE CLAUSE COVERS

17   PROPERTY OWNED BY THE BANK BUT IN SOMEONE ELSE'S CUSTODY AND

18   CONTROL, SAY, A HOME THAT THE BANK ENTRUSTED TO A REAL ESTATE

19   COMPANY AFTER FORECLOSURE; THUS, A PERSON VIOLATES THE BANK

20   FRAUD'S PLAIN TEXT BY DECEIVING A NON-BANK CUSTODIAN INTO

21   GIVING UP BANK PROPERTY THAT IT HOLDS.  THERE IS NO WAY TO

22   SQUARE THE ARGUMENT BEING SUBMITTED TO THE COURT WITH JUSTICE

23   KAGAN'S DECISION IN LOUGHRIN.  AND IMPORTANTLY, ONE PLACE ON

24   WHICH THE PARTIES HAVE FULL AGREEMENT IS THAT THE MAIL FRAUD,

25   THE BANK FRAUD AND THE WIRE FRAUD CASES ARE ALL PRECEDENTIAL

13:58:21   1    AND INFORMATIVE WITH RESPECT TO ONE ANOTHER.

2              THAT IS WHY WE GIVE SO MUCH WEIGHT AND DO NOT SIT

3    HERE AND SAY, WELL, THAT WAS A MAIL FRAUD STATUTE, THIS IS A

4    BANK FRAUD STATUTE, THIS IS WHY THEY'RE DISTINGUISHABLE.  WE

5    UNDERSTAND THAT AS A BODY OF LAW WE ARE TO TREAT THEM AS HAVING

6    VERY LITTLE DAYLIGHT BETWEEN THEM.  SO THAT IS WHY I SAY IF YOU

7    ACTUALLY READ *LEW* AND THE CITATION IT RELIES ON IN *MCNALLY,* IF

8    YOU GIVE CREDENCE TO THE FACT THAT THE NINTH CIRCUIT PANEL IN

9    *LEW* FOUND THAT THERE WAS NO DISTINGUISHING FACTUAL

10   CIRCUMSTANCES BETWEEN *LEW* AND *MCNALLY,* AND IF YOU APPRECIATE

11   THAT OUR SITUATION IS DISTINGUISHABLE FROM *MCNALLY* BECAUSE

12   THERE IS NO ARGUMENT THAT THERE WAS ANY FRAUDULENT

13   MISREPRESENTATION DIRECTED TO THE GOVERNMENT, AND WHEN YOU LOOK

14   AT THE *MCNALLY* LINE OF CASES, THAT IS THE HALLMARK OF *MCNALLY.*

13:59:09  15             WE ARE IN *CARPENTER* TERRITORY BECAUSE AT NO POINT IS

16   ANYONE ARGUING THAT THE GOVERNMENT WAS DECEIVED OR WAS SOMEHOW

17   A PARTY OR AN ACTOR TO DECEIT.  THE GOVERNMENT IS NOT PART OF

18   THE FRAUDULENT SCHEME.  AND THAT IS WHY OUR CASE IS MORE, IS

19   BETTER ADDRESSED UNDER *CARPENTER* AND ITS PROGENY AND NOT UNDER

20   THE *MCNALLY* LINE OF CASES.  BUT FINALLY, EVEN IF YOU WERE TO

21   LOOK AT THIS *LEW* AND THIS DECISION FROM THE NINTH CIRCUIT, WE

22   ARE BOUND BY THE 2014 SUPREME COURT DECISION IN *LOUGHRIN*.

23             SO FOR THOSE REASONS, YOUR HONOR, THAT IS WHY,

24   FALLING BACK ON MY ORIGINAL POSITION WHICH IS THE GOVERNMENT

25   HAS PROPERLY PLEAD MATERIALITY.  IF YOU LOOK AT THE FACE OF THE

13:59:54   1    INDICTMENT, ON THE FACE OF THE INDICTMENT, THERE IS NO ARGUMENT

2    THAT THERE IS A DEFECT IN THE PLEADING.  TO THE EXTENT

3    THE DEFENDANTS WOULD LIKE MORE SPECIFICITY, THEY HAVE FILED A

4    MOTION FOR A BILL OF PARTICULARS THAT THE COURT HAS ALREADY

5    ADJUDICATED, AND THAT IS ONE OF THE REASONS WHY THE PROPER

6    RESPONSE THERE IS TO SAY, DO YOU KNOW WHAT THE ELEMENTS ARE?

7    YES.  HAVE WE GIVEN VOLUMINOUS DISCOVERY?  YES.  HAVE WE TOLD

8    THE DEFENDANTS AS OF NOVEMBER 2018 WHEN WE DID OUR FIRST ROUND

9    OF PRODUCTION, HERE ARE ALL OF THE GRAND JURY EXHIBITS THAT

10    WERE SUBMITTED TO THE GRAND JURY WITH REGARD TO SPECIFICITY,

11    WITH REGARD TO DETAILS, WITH REGARD TO QUESTIONS ABOUT WHAT THE

12    FACTS ARE, WE MADE THOSE GRAND JURY EXHIBITS WITHIN WEEKS OF

13    THEIR ARREST.  THEY'VE HAD OVER A YEAR TO REVIEW THEM.  AND IF

14    THEY LOOK AT THEM CLOSELY, THEY'LL SEE IN GRAND JURY EXHIBIT

14:00:41   15    68, IN GRAND JURY EXHIBIT 69, THAT WHAT THEY WILL SEE IS THERE

16    ARE LOA'S AND THEN --

17         MR. JONES:  OBJECTION, YOUR HONOR.  I'M SORRY.  THIS

18    HAS NOTHING TO DO WITH THE MOTION HERE.  WE'RE GETTING INTO

19    ARGUMENT THAT HAS NOTHING TO DO WITH THIS MOTION.  I'LL OBJECT

20    TO COUNSEL DIVERGING THE COURT EVEN FURTHER OFF THE POINT.  THE

21    COURT ASKED A SIMPLE QUESTION AND COUNSEL HAS NOT ANSWERED A

22    SIMPLE QUESTION, NOT ONE OF THE SIMPLE QUESTIONS YOU'VE ASKED

23    HER.

24         THE COURT:  THANK YOU, MR. JONES.  THE OBJECTION IS

25    OVERRULED.  TO THE EXTENT THAT AT SOME POINT I CONCLUDE THAT

14:01:13  1    WHAT'S BEEN PROVIDED ISN'T EITHER SALIENT OR HELPFUL, I'LL LET

       2    YOU KNOW.  BUT AT THIS POINT, LET ME HEAR FROM THE DEFENSE WITH

       3    RESPECT TO *LOUGHRIN* AND WHETHER OR NOT *LOUGHRIN* DOES WHAT MS.

       4    FEVE ASSERTS THAT IT DOES, THAT IT SOMEHOW OR ANOTHER, IF NOT

       5    AMENDS IT, PROVIDES FURTHER NUANCE AS TO HOW THE COURT SHOULD

       6    REVIEW THE *LEW* CASE.  WHO WOULD LIKE TO TAKE UP THE EXCHANGE?

       7              MS. RIM:  I'M GOING TO SPECIFICALLY ADDRESS *LOUGHRIN*.

       8    THEN I'LL ALLOW MS. MUNK TO ADDRESS THE REST OF THE COURT'S

       9    INQUIRY ABOUT *LEW*.  SO *LOUGHRIN* IS A RECENT SUPREME COURT CASE

      10    ABOUT THE BANK FRAUD STATUTE WHICH IS SLIGHTLY DIFFERENT.  THE

      11    COURT DISCUSSES THE ACTUAL TEXT OF THE STATUTE, AND THERE'S A

      12    DISTINCTION BETWEEN DEFRAUDING A BANK AND THEN THE STATUTE OF

      13    WIRE FRAUD WHICH CRIMINALIZES TAKING PROPERTY FROM ANYONE BY

      14    MEANS OF DECEIT.  AND I THINK THAT THE KEY DISTINCTION HERE IS

14:02:25 15    THE DIFFERENCE BETWEEN A FALSE STATEMENT SLASH

      16    MISREPRESENTATION AND DECEIT.  IT'S ACTUALLY, *LOUGHRIN* IS NOT

      17    INCONSISTENT WITH *LEW.*  IT'S NOT INCONSISTENT WITH NINTH

      18    CIRCUIT LAW.  *LOUGHRIN* SIMPLY STATES WHAT OTHER NINTH CIRCUIT

      19    DECISIONS HAVE STATED WHICH IS THAT IN ORDER TO DECEIVE

      20    SOMEBODY YOU DON'T HAVE TO HAVE MADE THE MISREPRESENTATION TO

      21    THEM DIRECTLY.

      22              SO IN THE EXAMPLE THAT THE GOVERNMENT DISCUSSED

      23    REGARDING THE FACTS IN *LOUGHRIN,* AND THE DEFENDANT HAD PROVIDED

      24    A CHECK TO TARGET INSTEAD OF THE BANK, AND THE DECEIT IN THE

      25    CHECK WAS DIRECTLY GIVEN TO TARGET.  BUT THAT DOESN'T MEAN THAT

14:03:04   1    THE BANK WAS NOT THE TARGET -- SORRY, NO PUN INTENDED -- WAS

  2    NOT THE TARGET OF THE DEFENDANT'S DECEIT. THE DEFENDANT KNEW

  3    THAT THE BANK WOULD HAVE TO, WOULD RELY ON WHATEVER INFORMATION

  4    IT WAS GOING TO RECEIVE FROM TARGET. AND SO THAT'S ACTUALLY

  5    NOT DIFFERENT FROM OTHER NINTH CIRCUIT CASE THAT'S HAVE

  6    DISCUSSED THIS ISSUE. THE CASE, US V. *ALI*, REGARDING MICROSOFT

  7    TALKS ABOUT THIS AND TALKS ABOUT THIS SPECIFICALLY WITH RESPECT

  8    TO *LEW.* THE CASE HELD THAT IT DIDN'T OVERRULE *LEW.* IT SAID

  9    THAT IN THAT CASE ALSO THE DEFENDANTS HAD NOT MADE A DIRECT

10    MISREPRESENTATION TO MICROSOFT; THEY HAD MADE A

11    MISREPRESENTATION TO THE PEOPLE THAT PURCHASED MICROSOFT RETAIL

12    STORES FROM. AND *ALI* SAID IT DOESN'T MAKE A DIFFERENCE BECAUSE

13    YOU WERE STILL TARGETING THE DECEIT TOWARDS MICROSOFT.

14    THAT'S THE DISTINCTION HERE, YOUR HONOR. THE QUOTE,

14:04:04 15    UNQUOTE, VICTIM WHO OWNED THE PROPERTY, THE ALLEGED PROPERTY

16    HERE WHICH IS AN IP ADDRESS, ARE THE LEGACY HOLDERS OF THESE

17    NETBLOCKS. AND THERE'S NO ALLEGATION IN THE INDICTMENT, NOR IN

18    FACT OR IN ANY OTHER EVIDENCE THAT THE DEFENDANTS KNEW THESE

19    LEGACY HOLDERS WERE STILL IN EXISTENCE OR WERE TARGETING THEM

20    AS THE OBJECT OF THEIR DECEIT. AND THAT BEGS THE QUESTION AS

21    TO WHETHER THEY WERE DECEIVING ANYONE AT ALL BECAUSE, BRINGING

22    IT BACK FULL CIRCLE TO MATERIALITY, IT'S NOT CLEAR THAT THE

23    HOSTING COMPANY THAT RECEIVED THE LOA BELIEVED IT WAS AUTHENTIC

24    OR WAS DECEIVED.

25    BUT I DON'T WANT TO GET OFF TRACK. THAT'S THE

14:04:44  1  DIFFERENCE BETWEEN *LOUGHRIN* AND *LEW* WHICH IS THAT ONE IS

2  TALKING ABOUT THE MEANS OF A DECEIT WHICH IS AN ACTUAL

3  AFFIRMATIVE STATEMENT DIRECTLY TO THE PERSON OR ENTITY WHERE

4  THE PROPERTY IS COMING FROM WHICH IS DISTINCT FROM BEING THE

5  TARGET OF DECEIT ITSELF WHICH DOES NOT REQUIRE A FALSE

6  STATEMENT DIRECTLY TO THAT PERSON, AND I CAN RESTATE THAT IF IT

7  WAS CONFUSING.

8         THE COURT:  SO WAS THE FOCUSING OF *LOUGHRIN*

9  MATERIALITY OR THE ELEMENT OF INTENT TO DEFRAUD THE BANK?

10         MS. RIM:  I BELIEVE THE ELEMENT -- I MEAN, IT'S NOT

11  AN ELEMENT AS IN A PHRASE SPECIFICALLY IN THE STATUTE.

12  ACTUALLY, LET ME TAKE THAT BACK.  THE PHRASE IS, BY MEANS OF.

13  YOU HAVE TO HAVE OBTAINED THE PROPERTY BY MEANS OF DECEIT.

14  THIS IS WHAT'S STATED IN THE NINTH CIRCUIT JURY INSTRUCTIONS ON

14:05:38  15  WIRE FRAUD AS WELL; THIS IS THE SAME FOR BANK FRAUD.  IT'S NOT

16  BY MEANS OF A FALSE STATEMENT OR MISREPRESENTATION ONLY.  IT'S

17  BY MEANS OF DECEIT, CHICANERY, AN INTENT TO DECEIVE AND CHEAT

18  SOMEBODY.  THAT DECEIT AND THAT INTENT TO DECEIVE HAS TO BE

19  TARGETED AT THE ENTITY OR PERSON WHOSE PROPERTY IS THE OBJECT

20  OF THE FRAUD AND IS GOING TO BE DEPRIVED OF THAT PROPERTY OR

21  OBJECT.

22         MS. MUNK:  AND YOUR HONOR, I WILL ADDRESS *LEW.*  THE

23  COURT IS CORRECT THAT *LEW* IS BINDING ON THIS COURT.  IT IS GOOD

24  LAW, AND I THINK IT'S VERY CLEAR THE GOVERNMENT KNOWS THEY'RE

25  GOING TO LOSE UNDER *LEW;* SO THEY'RE TRYING TO BACK PEDAL AND

14:06:24  1    TRY TO MAKE ALL THESE DISTINGUISHING THINGS THAT ACTUALLY DON'T

2    EXIST.  I THOUGHT WHAT MS. FEVE HAD READ TO THE COURT WAS VERY

3    TELLING BECAUSE THIS IS BINDING LAW ON THIS COURT.  THE COURT

4    DISCUSSING *MCNALLY* MADE IT CLEAR THE INTENT MUST BE TO OBTAIN

5    MONEY OR PROPERTY FROM THE ONE WHO IS DECEIVED.

6         THEN IT GOES TO SAY:  THE WORDS TO DEFRAUD COMMONLY

7    REFER TO WRONGING ONE AND HIS PROPERTY RIGHTS BY DISHONEST

8    METHODS OR SCHEMES.  THIS IS CRUCIAL, YOUR HONOR, BECAUSE

9    ESSENTIALLY THE GOVERNMENT'S ARGUMENT IS THAT THE IP NETBLOCKS

10   ARE PROPERTY AND THE OWNER OF THOSE NETBLOCKS WHO HAVE THE

11   PROPERTY INTEREST IN THOSE NETBLOCKS, THEY ARE THE ORIGINAL IP

12   HOLDERS, THE LEGACY IP HOLDERS BACK IN THE EARLY '90S.

13   ACTUALLY, MS. FEVE IN THIS COURT IN APRIL TALKED ABOUT HOW THEY

14   WOULD BE THE VICTIMS, BUT THERE'S NO ALLEGED DECEIT ON THE IP

14:07:25 15   HOLDERS IN THE INDICTMENT; AND IN FACT, THE GOVERNMENT HAS

16   NEVER EVEN MADE THAT REPRESENTATION.  THEY MADE THE OPPOSITE.

17         AND LOOKING AT OUR EXHIBIT "I," IT'S PAGE 29, AND

18   JUST FOR THE RECORD, YOUR HONOR, EXHIBIT "I" IS I THINK MAYBE

19   60 PAGES.  IT'S A TRANSCRIPT FROM THE HEARING THAT WE HAD ON

20   THE CONFIDENTIAL INFORMANT MOTION BACK IN APRIL.  I THINK IT

21   WAS APRIL 30TH, 2019.  AND THAT'S ONE OF THE REASONS WHY OUR

22   BRIEFING WAS SO LENGTHY BECAUSE WE WANTED TO PUT THIS HEARING

23   TRANSCRIPT IN THE RECORD BEFORE THE COURT.  BUT ON PAGE 29,

24   LINE 4, MS. FEVE TALKS ABOUT:  I THINK THE MOST OBVIOUS VICTIMS

25   ARE THE INDIVIDUALS WHO ARE THE REGISTRANTS OF THESE IP

14:08:14  1    NETBLOCKS WHO HAD THEIR PROPERTY USED WITHOUT THEIR CONSENT.

2          AND THEN IF YOU GO DOWN A LITTLE BIT MORE AT LINE 13

3    SHE SAYS:  THEY HAVE BEEN INDIVIDUALS WHOSE IDENTITIES AND

4    PROPERTIES WERE USED WITHOUT PERMISSION.  THAT IS DIFFERENT

5    THAN DECEIT.  DECEIT IS INDUCING SOMEBODY TO GET PROPERTY OR

6    MONEY.  SO WHEN YOU LOOK AT THE INDICTMENT -- ACTUALLY, THE

7    ONLY, THE ONLY FRAUD ALLEGED IN THE INDICTMENT UNDER THE WIRE

8    FRAUD COUNTS IS AT PARAGRAPH 6, AND THE ONLY ALLEGED RECIPIENT

9    OF THAT DECEIT AND FRAUD IS THE HOSTING COMPANIES.  IT SAYS, IT

10   WAS FURTHER PART OF THE SCHEME AND ARTIFICE TO DEFRAUD THAT THE

11   DEFENDANTS CREATED AND SENT LETTERS TO INTERNET HOSTING

12   COMPANIES, FRAUDULENTLY MAKING IT APPEAR THAT THE REGISTRANT OF

13   THE IP ADDRESS HAD AUTHORIZED THE DEFENDANTS TO USE THE IP

14   ADDRESSES.  THAT'S ALSO WHAT THE GOVERNMENT ARGUES IN ITS

14:09:13 15   BRIEF.

16          THE ENTIRE OPPOSITION NEVER TALKS ABOUT THE ORIGINAL

17   IP HOLDERS BEING DECEIVED OUT OF THEIR PROPERTY.  THERE'S NO

18   FACTS TO THAT.  THE GOVERNMENT KNOWS THERE'S NO FACTS TO THAT.

19   THE GOVERNMENT DOESN'T ALLEGE THAT IN THE INDICTMENT.  IT'S NOT

20   ALLEGED BY THE GOVERNMENT IN COURT.  IN FACT, THE OPPOSITE IS

21   TRUE, YOUR HONOR.  SO IT'S JUST VERY CLEAR THE INDICTMENT

22   DOESN'T -- IT FAILS TO STATE AN OFFENSE.  AND I BELIEVE MS.

23   FEVE EARLIER SAID WE'RE NOT CHALLENGING WHETHER THE INDICTMENT

24   IS SUFFICIENTLY PLEAD THIS.  THAT'S ALSO INCORRECT.  WE

25   ABSOLUTELY ARE.  WE REPEATEDLY BRIEFED THAT THE INDICTMENT

14:09:52  1    FAILS TO STATE AN OFFENSE, AND IT FAILS TO STATE THAT THE ONE

2    WHO ACTUALLY HAD THE PROPERTY, THE IP NETBLOCKS, IS THE ONE WHO

3    IS DECEIVED.

4          THEY'RE NOT ALLEGING IT.  THE INDICTMENT DOESN'T SAY

5    THAT.  AND YOUR HONOR IS BOUND BY *LEW*, AND UNDER *LEW*, THE

6    GOVERNMENT LOSES.  THE INDICTMENT FAILS TO STATE AN OFFENSE FOR

7    WIRE FRAUD BECAUSE THERE'S NO ALLEGATION THAT THE PROPERTY WAS,

8    THE DECEIT OCCURRED FROM THE ONE WHO HELD THE PROPERTY.  SO I'M

9    HAPPY TO ANSWER ANY QUESTIONS ON THAT, YOUR HONOR.  BUT I

10    ACTUALLY THINK UNDER THIS SPECIFIC ISSUE, THE PROPERTY ISSUE, I

11    UNDERSTAND IS A LITTLE BIT MORE CHALLENGING, BUT THIS IS PRETTY

12    CLEAR.  AND IF THE COURT DOESN'T EVEN WANT TO DECIDE WHETHER OR

13    NOT THIS IS PROPERTY, I DON'T THINK THE COURT HAS TO BECAUSE

14    THE COURT CAN DISMISS UNDER *LEW* AND I THINK SHOULD DISMISS

14:10:42 15    UNDER *LEW* BECAUSE THE INDICTMENT FAILS TO STATE AN OFFENSE FOR

16    WIRE FRAUD.

17          THE COURT:  ALL RIGHT.  MS. FEVE, YOUR RESPONSE?

18          MS. FEVE:  YOUR HONOR, THE PARTIES BOTH AGREE THAT

19    *ALI*, THE NINTH CIRCUIT 2010 DECISION, IS INSTRUCTIVE.  AND I

20    APPRECIATE MS. RIM JUST GAVE YOU HER PERSPECTIVE ON IT.  WHAT'S

21    CHALLENGING FOR THE COURT IS THAT WE ACTUALLY AGREE ON --

22    THERE'S NO DISPUTE ABOUT THE FACTS OF *ALI*.  WHAT I DON'T

23    UNDERSTAND AND I READ DIFFERENTLY IS THAT IN *ALI* I READ AS

24    CHALLENGING THEIR ENTIRE PREMISE BECAUSE WHAT HAPPENS IN *ALI* IS

25    THE DEFENDANTS SAY, WE DID NOT MISLEAD MICROSOFT, WE DID NOT

14:11:23  1    SUBMIT THE MISREPRESENTATION TO THEM.  AND THE NINTH CIRCUIT

2    SAYS, THAT DOESN'T MATTER.  AND IF THAT ISN'T WHAT MATTERS,

3    THEN WE'RE CORRECT TO INTERPRET *LEW* AS REFERENCING *MCNALLY* AND

4    ITS DEFINITION OF PROPERTY.

5            THE COURT:  WALK ME THROUGH THAT AGAIN IN TERMS OF

6    WHY YOU THINK *MCNALLY* SOMEHOW OR ANOTHER WATERS DOWN OR --

7            MS. FEVE:  SURE.  AND WE CAN TIE IT BACK TO *MCNALLY*

8    AS WELL.  SO WANTING TO UNDERSTAND *LEW* I WENT TO WHAT I BELIEVE

9    -- AND THE DEFENDANTS WILL NO DOUBT CORRECT ME IF I'M WRONG --

10   IS THE RELEVANT CITATION, AND I UNDERSTOOD THE RELEVANT

11   CITATION TO BE ON PAGE 221 AND FOR IT TO BE --

12           THE COURT:  IT'S THE PARAGRAPH THAT BEGINS, WHILE IT

13   IS TRUE THAT AFTER *MCNALLY* THE ELEMENTS OF MAIL FRAUD REMAIN

14   UNCHANGED EXCEPT THAT THE INTENT OF THE SCHEME MUST BE TO

14:12:26 15  OBTAIN MONEY OR PROPERTY, THE COURT MADE IT CLEAR THAT THE

16   INTENT MUST BE TO OBTAIN MONEY OR PROPERTY FROM THE ONE WHO IS

17   DECEIVED.

18           MS. FEVE:  RIGHT.  AND SO HERE THEY ARE DESCRIBING

19   *MCNALLY,* AND I DON'T KNOW THAT THEY ARE ACTUALLY REACHING A

20   DISPOSITIVE QUESTION OF LAW WHICH WOULD BE BINDING ON THE

21   COURT, BUT AGAIN, I'M LOOKING AT THEIR WORDS AND WHAT THEY ARE

22   SAYING *MCNALLY* SAYS; AND SO I TAKE THEIR QUOTE AND I LOOK AT

23   *MCNALLY* AND THAT'S ON PAGE 358, BY THEIR OWN TERMS, OF *MCNALLY,*

24   AND IT'S EASIER FOR US BECAUSE SINCE THEY ARE QUOTING

25   *HAMMERSCHMIDT* WE KNOW EXACTLY WHERE TO GO ON PAGE 358 OF

14:13:06  1    *MCNALLY,* AND WE LOOK AND FIND THE PARAGRAPH.  AGAIN, IT'S HEAD

2    NOTE NUMBER ONE.  I'M SURE THE COURT HAS IT BEFORE YOU SO I

3    WON'T READ IT TO YOU AGAIN. BUT I'M LOOKING AT THAT PARAGRAPH

4    WHERE IT SAYS NOTHING ABOUT THIS NEW AND SOMEHOW ALLEGEDLY

5    BINDING PRECEDENT THAT YOU CANNOT COMMIT WIRE FRAUD IF YOU DO

6    NOT DECEIVE THE PROPERTY RIGHTS HOLDER, THE DECEPTION MUST BE

7    TARGETING THEM.

8              AND PART OF WHY I THINK *ALI* SAYS, HEY, WE CAN ALL GET

9    ALONG AND THIS CAN ALL MAKE SENSE IS THAT THEY ARE REFERENCING

10   *MCNALLY,* AND THEY ARE THE ONES WHO ARE DRAWING SIGNIFICANT

11   INFERENCES AND SPENDING CONSIDERABLE TIME ON THAT PHRASE I

12   BROUGHT TO THE COURT'S ATTENTION FROM *CLEVELAND* ABOUT, QUOTE,

13   PROPERTY IN THE HANDS OF THE VICTIM.  SO THEY SPEND SEVERAL

14   PARAGRAPHS -- FIRST, THEY KIND OF VERY METHODICALLY GO THROUGH

14:14:05  15   *MCNALLY*, *CARPENTER*, *CLEVELAND*, *PASQUANTINO*.  AND THEY TALK

16   ABOUT HOW *PASQUANTINO* IS SIGNIFICANT BECAUSE IN THAT CASE --

17             THE COURT:  I GUESS IT TAKES SO LONG TO UNPACK YOUR

18   VIEW OF *MCNALLY* THAT I'M HAVING PROBLEMS LATCHING ON TO

19   SOMETHING FROM *MCNALLY* THAT WOULD CONVINCE ME THAT THIS

20   STRAIGHTFORWARD LANGUAGE IN *LEW* SHOULD BE GIVEN EFFECT.

21             MS. FEVE:  FIRST, I WOULD SAY 2010 NINTH CIRCUIT

22   --THAT'S NOT WHAT THE NINTH CIRCUIT SAYS BECAUSE THEY SAID YOU

23   DID NOT HAVE TO DECEIVE MICROSOFT.  SO IF THEY'RE RIGHT IF *LEW*

24   IS BINDING PRECEDENT  --

25             THE COURT:  I'LL BE FRANK.  I HAVE NOT REVIEWED THE

14:14:55  1   MICROSOFT CASE.  I HAVE ABOUT 12 CASES HERE, AND THERE'S A LOT

        2   HERE, AND I WILL LOOK CLOSELY AT MICROSOFT AND SEE WHETHER OR

        3   NOT MICROSOFT, IN FACT, AFFECTS THE CONTINUED EFFECT OF THE *LEW*

        4   CASE.

        5          MS. FEVE:  ONE OTHER POINT THAT I'M CONCERNED ABOUT

        6   IS THAT THEY MAKE ONE CHALLENGE ON PROPERTY; THEY MAKE ANOTHER

        7   CHALLENGE ON MATERIALITY.  BUT IN THEIR ARGUMENT ABOUT

        8   MATERIALITY, THEY'RE NOT RELYING ON MATERIALITY CASES.  THEY'RE

        9   RELYING ON PROPERTY CASES.

       10          THE COURT:  I'M NOT EVEN ON THE MATERIALITY.

       11          MS. FEVE:  BUT YOUR HONOR, *LEW* IS THE MATERIALITY

       12   ARGUMENT.  THAT'S THE ONLY MATERIAL ARGUMENT THEY MAKE IN THEIR

       13   BRIEF, UNLESS I'M WRONG.

       14          THE COURT:  I GUESS YOU DESCRIBE IT AS MATERIALITY

14:15:47 15   WHEREAS I'M LOOKING AT IT IN TERMS OF WHAT'S DESCRIBED BY THE

       16   SEVENTH CIRCUIT AS CONVERGENCE, AND THE CONVERGENCE LOOKS AT

       17   THE FALSE STATEMENT, WHERE IT'S DIRECTED; AND WITH RESPECT TO

       18   WHERE IT'S DIRECTED IS THAT THE VICTIM, IS THAT WHERE THE

       19   PERSON ENDED UP LOSING SOMETHING?  AND SO HERE, FROM WHAT I

       20   UNDERSTAND, YOU'RE INDICATING THAT THE FALSE STATEMENT WAS MADE

       21   TO THE HOST, BUT THE PROPERTY INTEREST IS THE ONE FROM THE IP

       22   NETBLOCK OWNER.  AND SO WE HAVE ALL OF THIS SPACE BETWEEN THEM

       23   THAT WE DON'T HAVE THIS CONNECTION, AND UNLIKE SOME OF THE

       24   OTHER CASES EVEN WITH THE TARGET AND THE BANK CASE WHERE YOU

       25   MAYBE DON'T HAVE AN ACTUAL MISREPRESENTATION TO THE BANK, BUT

14:16:41   1   CERTAINLY WITH RESPECT TO THE BANK IT IS THE BANK THAT HAS LOST

2   SOMETHING AS A RESULT OF THE FALSE REPRESENTATION THAT I THINK

3   IN SOME WAY IS CONSTRUCTIVELY VIEWED AS BEING EXTENDED TO THE

4   BANK.  HERE, THE PARTY -- NOT THE PARTY -- THE ENTITY THAT HAS

5   THE STAKE, THAT HAS THE PROPERTY INTEREST IS NOT IN ANY WAY

6   AFFECTED IN TERMS OF THE FALSE REPRESENTATION BEING DIRECTED AT

7   THEM.  AND SO I'M JUST TRYING TO WRAP MY HEAD AROUND HOW THESE

8   CASES SUPPORT YOUR POSITION.

9           MR. JONES:  IT'S OUR POSITION THAT THEY DO NOT

10   SUPPORT THE POSITION.

11           MS. RIM:  MAY I CLARIFY SOMETHING ABOUT THESE CASES?

12           THE COURT:  YES.

13           MS. RIM:  I DO AGAIN WANT TO MAKE THE DISTINCTION.

14   WE'RE NOT ARGUING THAT THERE HAS TO BE CONVERGENCE BETWEEN A

14:17:37   15   FALSE STATEMENT TO THE VICTIM DIRECTLY.  THAT'S NOT WHAT THE

16   LAW SAYS.  BUT THE DECEIT HAS TO BE DIRECTED AT THE QUOTE,

17   UNQUOTE, VICTIM.  THAT'S CONSISTENT WITH *ALI* WHICH IS THE

18   MICROSOFT CASE, AND *LOUGHRIN.*  I'LL EXPLAIN WHY.  *LOUGHRIN*, IF

19   YOU LOOK AT THE LANGUAGE, I WANT TO SAY, ON 2395 OR 366

20   DEPENDING ON WHICH STAR YOU'RE LOOKING AT --

21           THE COURT:  WHAT PAGE AGAIN?

22           MS. RIM:  ONE STAR 366 OR DOUBLE STAR 2395.  ON

23   WESTLAW, IT'S PAGE EIGHT, ON THE MIDDLE OF THE RIGHT COLUMN.

24           THE COURT:  DID YOU SAY 366?

25           MS. RIM:  366 OR 2395.  I WANT TO DIRECT THE COURT'S

14:18:48  1   ATTENTION TO THE SECOND TO THE LAST SENTENCE OF THAT PARAGRAPH

2   WHICH SAYS, *LOUGHRIN'S* OWN CRIME AS WE HAVE EXPLAINED IS ONE

3   SUCH SCHEME BECAUSE HE MADE FALSE STATEMENTS IN THE FORM OF

4   FORGED AND ALTERED CHECKS THAT A MERCHANT WOULD IN AN ORDINARY

5   COURSE OF BUSINESS FORWARD TO A BANK FOR A PAYMENT.

6           AND THAT'S THE SAME AS THE MICROSOFT CASE.  I WILL

7   JUST SUMMARIZE FOR YOU, YOUR HONOR, BUT BASICALLY IN THAT CASE,

8   *ALI*, THE NINTH CIRCUIT NOTED THAT DEFENDANTS HAD MADE

9   MISREPRESENTATIONS DIRECTLY TO MICROSOFT BEFORE.  WHEN THAT

10  DIDN'T WORK, THEY WENT THE ROUND ABOUT WAY AND PURCHASED STORES

11  THAT MICROSOFT HAD GIVEN LICENSE TO SELL THEIR PRODUCTS AT A

12  DISCOUNT PREVIOUSLY.  THEY DIDN'T INFORM MICROSOFT THAT THESE

13  DEFENDANTS WHO MICROSOFT HAD REJECTED BEFORE ARE NOW PURCHASING

14  THOSE STORES.  WHAT THE COURT WAS FINDING, IN BOTH OF THESE

14:19:36 15  CASES, EVEN THOUGH THE MISREPRESENTATION WASN'T STATED DIRECTLY

16  TO MICROSOFT OR THE BANK, IT WAS INDIRECTLY ESSENTIALLY

17  CONVEYED TO THEM, OR THE RESULT WAS THAT THERE WAS DECEIT OF

18  THE BANK AND MICROSOFT EVEN THOUGH THE STATEMENT WAS NOT

19  DIRECTLY STATED.  SO THAT'S A CRUCIAL POINT BECAUSE WE'RE NOT,

20  WE DON'T WANT THE COURT TO THINK THAT WE'RE CLAIMING THE LAW IS

21  SOMETHING DIFFERENT.  YOU'RE GOING TO FIND CASES THAT CLEARLY

22  STATE THIS.  YOU DON'T HAVE TO HAVE THE FALSE STATEMENT

23  DIRECTED TOWARDS THE VICTIM.  BUT --

24          THE COURT:  BUT NOT THE STATEMENT, BUT IN TERMS OF

25  THE SCHEME THAT IT ENDS UP BEING DIRECTED AT THE VICTIM, AT THE

14:20:16  1   HOLDER WHO LOSES SOME PROPERTY OR MONEY.

2          MS. RIM:   CORRECT.   AND THERE'S NO ALLEGATION HERE

3   THAT THE LOA, WHICH AGAIN THERE IS A DISPUTE AS TO WHETHER IT

4   WAS AN INSTRUMENT OF DECEIT, BUT LET'S SAY THAT IT WAS FOR THIS

5   ARGUMENT, THERE IS NO ALLEGATION THAT BY PROVIDING THE

6   ALLEGEDLY FORGED LOA TO THE HOSTING COMPANY THAT SOMEHOW IN THE

7   ORDINARY COURSE OF BUSINESS WOULD HAVE GONE TO THE LEGACY IP

8   HOLDER OR ASSUMES THAT THE DEFENDANTS EVEN KNEW THE LEGACY IP

9   HOLDER ORGANIZATIONS WHICH WHICH WERE ALL CORPORATIONS WERE

10  STILL IN EXISTENCE AT ALL.  SO THAT, IN OUR VIEW, IS A CRUCIAL

11  DISTINCTION BETWEEN THIS AND *LOUGHRIN,* FOR EXAMPLE, AND IT'S

12  WHAT PUTS IT SQUARELY IN THE AMBIT OF *LEW.*

13         AND JUST BEYOND THAT, YOUR HONOR, WE'RE MAKING THIS

14  ARGUMENT UNDER THE ASSUMPTION THAT THE PROVIDING OF THE LOA IS

14:21:11 15  SOMEHOW A MEANS BY WHICH ONE CAN ACQUIRE THE PROPERTY RIGHT,

16  AND THAT'S ALSO IN DISPUTE BECAUSE PROVIDING THE LOA SIMPLY

17  ALLOWS A PERSON TO HAVE THAT IP ADDRESS, QUOTE, UNQUOTE,

18  ANNOUNCED ON THE INTERNET; AND FIRST, IT'S PROBLEMATIC THAT THE

19  INDICTMENT DOES NOT EXPLAIN WHAT ANNOUNCEMENT IS.  IT'S

20  PROBLEMATIC THAT EXPLAINING WHAT ANNOUNCEMENT IS WILL PROBABLY

21  TAKE AN EXPERT.  BUT WHAT'S NOT IN DISPUTE IS THAT THE

22  ANNOUNCEMENT DOESN'T TRANSFER AN IP ADDRESS FROM ONE PERSON TO

23  ANOTHER.  IT MAY BE WHAT ALLOWS ONE TO USE AN IP ADDRESS, BUT

24  THAT IS NOT A TRANSFER OF PROPERTY.  IT'S NOT THE MEANS BY

25  WHICH SOMEONE OBTAINS PROPERTY.  SO I MEAN THAT'S A SEPARATE

14:21:58  1   ISSUE BUT IT'S ALSO -- YOU KNOW, I'LL JUST STOP.  THANK YOU.

2        THE COURT:  SO IN MICROSOFT, YOU STATED THAT THERE

3   THE COURT FOUND THAT THIS FALSE REPRESENTATION WAS IN DIRECTLY

4   CONVEYED TO THE VICTIM WHICH WAS MICRO SOFT.

5        MS. RIM:  YES.  AND YOU KNOW, LET'S NOT FORGET THAT

6   FOR WIRE FRAUD IT'S NOT JUST MISREPRESENTATIONS; ONE CAN ALSO

7   DECEIVE THROUGH OMISSIONS.  WHAT HAPPENED IN THE *ALI* CASE WAS

8   THAT DEFENDANTS WERE TRYING TO SELL MICROSOFT SOFTWARE AT THE

9   TEACHER/STUDENT DISCOUNT, EVEN THOUGH THEY WERE NOT SELLING

10  THEM TO TEACHERS AND STUDENTS.  AND WHEN MICROSOFT FOUND OUT,

11  THEY TERMINATED THEIR AGREEMENT WITH THEM.  SO THEN WHAT THE

12  DEFENDANTS DID IS THEY WENT AND BOUGHT OTHER STORES THAT

13  ALREADY HAD THAT AGREEMENT, DIDN'T TELL MICROSOFT AND SO

14  MICROSOFT HAD ALREADY ALLOWED THOSE STORES TO GET

14:22:57 15 STUDENT/TEACHER DISCOUNTS.  THEN THE DEFENDANT CONTINUED TO

16  SELL THEM WITHOUT INFORMING MICROSOFT, HEY, WE'RE THE SAME

17  PEOPLE THAT YOU KIND OF CUT OFF BEFORE.  SO THAT'S CLEARLY A

18  DIFFERENT SITUATION BECAUSE IN THAT SCENARIO, EVEN IF THE

19  DEFENDANTS ARE NOT STATING A MISREPRESENTATION AFFIRMATIVELY TO

20  MICROSOFT, THEY ARE CLEARLY TARGETING MICROSOFT AS THE OBJECT

21  OF DECEIT.

22        THE COURT:  THAT CORRESPONDS TO *LEW* TO THE EXTENT

23  THAT *LEW* SAYS THE INTENT MUST BE TO OBTAIN MONEY OR PROPERTY

24  FROM THE ONE WHO IS DECEIVED, AND SO THEN, THERE'S AN INTENT TO

25  OBTAIN MICROSOFT'S PROPERTY, THAT IS, THEIR SOFTWARE, FROM THE

14:23:43  1    ONE WHO IS DECEIVED.  HOW DO YOU RECONCILE THAT LAST PART OF

2    THAT?

3            MS. RIM:  YOUR HONOR, THE PROPERTY RIGHT IN *LEW* WAS

4    THE ADDITIONAL MONEY THAT MICROSOFT WOULD HAVE BEEN ENTITLED TO

5    HAD THE SOFTWARE BEEN SOLD AT THE RETAIL VALUE AS OPPOSED TO

6    THE DISCOUNTED TEACHER/STUDENT VALUE.  SO IT'S NOT THE SOFTWARE

7    ITSELF THAT WAS THE PROPERTY.  IT WAS THE MONEY, THE ADDITIONAL

8    MONEY THAT MICROSOFT ITSELF WOULD HAVE BEEN ENTITLED TO.

9            THE COURT:  I THINK I GET THAT.  BUT IT SAYS, FROM

10    THE ONE WHO IS DECEIVED.

11            MS. RIM:  RIGHT.  AND SO WHAT *ALI* SAYS IS FURTHER, IT

12    ACTUALLY SAYS, UNDER *LEW* MICROSOFT MUST BE THE VICTIM FROM WHOM

13    PROPERTY WAS TAKEN.  AGAIN, WE HAVE NO TROUBLE FINDING

14    SUFFICIENT EVIDENCE TO SHOW THAT MICROSOFT WAS DEPRIVED OF ITS

14:24:31  15    RIGHT TO PAYMENT OR ITS SOFTWARE AND THAT DEFENDANTS DEPRIVED

16    MICROSOFT OF THIS MONEY OR PROPERTY.  SO THE COURT IN *ALI* IS

17    NOT OVERRULING *LEW,* IT'S DISTINGUISHING *LEW,* IT'S APPLYING *LEW.*

18    SO THERE'S NO INCONSISTENCY BECAUSE THE LANGUAGE IN *LEW* IS NOT

19    THAT THE PROPERTY MUST BE OBTAINED BY THE RECIPIENT OF THE

20    FALSE STATEMENT; IT'S BY THE VICTIM OF THE DECEIT.  AND *ALI* IS

21    ENTIRELY CONSISTENT WITH THAT AND SO IS *LOUGHRIN.*

22            THE COURT:  ANYTHING FURTHER?

23            MS. FEVE:  YOUR HONOR, THE PROPERTY WAS TAKEN FROM

24    THE LAWFUL HOLDERS.  ONLY ONE PERSON CAN EXERCISE CONTROL OVER

25    AN IP ADDRESS.  SO WHEN THEY OBTAINED CONTROL, THE DEFENDANTS

```
14:25:10   1    HAD TAKEN CONTROL FROM THE LAWFUL POSSESSORS OF THOSE IP

           2    NETBLOCKS.  IT WAS BY MEANS OF A MISREPRESENTATION TO A SERIES

           3    OF INTERVENING PARTIES, SIMILAR TO THE FACTS IN ALI AND

           4    LOUGHRIN.  WITH REGARD TO THE COURT'S FINAL QUESTION, I'VE BEEN

           5    FRAMING THIS SECOND ARGUMENT AS MATERIALITY BECAUSE WHEN I READ

           6    THE DEFENDANTS' OPENING BRIEF ON PAGE TWO, THEY VERY CRISPLY

           7    SET OUT TWO ARGUMENTS.  "A," WAS THAT WE FAILED TO PLEAD WIRE

           8    FRAUD AS A MATTER OF LAW BECAUSE IP ADDRESSES AREN'T A

           9    PROPERTY; AND "B," IS EVEN IF IP ADDRESS NETBLOCKS ARE

          10    PROPERTY, THE INDICTMENT DOES NOT ALLEGE THE DEFENDANTS

          11    OBTAINED THE NETBLOCKS MY MEANS OF MATERIAL MISREPRESENTATIONS.

          12         SO WE, FOR A MOTION TO DISMISS HAVE TO HAVE FAILED TO

          13    PROPERLY PLEAD THE INDICTMENT, AND I BELIEVE THAT WAS THE

          14    ARGUMENT THEY WERE MAKING AND THAT WAS THE ARGUMENT UNDER WHICH

14:26:06  15    THEY SUBMITTED LEW TO THE COURT'S ATTENTION.  SO I APPRECIATE

          16    THE CONVERGENCE, BUT JUST TO SAY FOR WHY WE'VE BEEN EMPHASIZING

          17    THERE WAS THE PROPERTY ARGUMENT AND THE MATERIALITY ARGUMENT,

          18    IT'S BECAUSE WE WERE TRYING TO TRACK THEIR BRIEF ITSELF.

          19         THE COURT:  ALL RIGHT.  THANK YOU.  ALL RIGHT.  SO --

          20         MS. BERNSTEIN:  IF I CAN JUST ADD ONE FINAL POINT, I

          21    THINK WHAT KICKED OFF THE MOST RECENT DISCUSSION WAS YOUR

          22    HONOR'S QUESTION THAT ASKED IF THE GOVERNMENT AGREED THAT THE

          23    VICTIM WAS THE HOSTING COMPANY.  AND I WOULD JUST DIRECT THE

          24    COURT VERY CLEARLY TO PAGE 12 OF THE GOVERNMENT'S OPPOSITION

          25    WHERE IT SAYS THAT THE INDICTMENT SUFFICIENTLY ALLEGES THAT THE
```

14:26:51  1   SCHEME WAS TO DEFRAUD BY SUBMITTING FALSE LETTERS TO INTERNET

2   HOSTING COMPANIES, THE ENTITIES THE DEFENDANTS DECEIVED.  SO

3   EVEN THE MOST RECENT STATEMENT THAT WANTS TO BROADEN THAT TO A

4   DIFFERENT GROUP OF PURPORTED VICTIM AND A DIFFERENT GROUP OF

5   PURPORTED RECIPIENTS OF THE DECEIT TO SATISFY THE ELEMENTS OF

6   WIRE FRAUD, THAT'S NEW.  AND EVERY TIME WE TALK ABOUT THIS,

7   IT'S NEW.  AND THERE IS SOME SERIOUS DUE PROCESS CONCERNS WITH

8   THE FACT THAT THIS IS AN EVER-EVOLVING THEORY THAT THE

9   INDICTMENT DOES NOT PLEAD, THAT IS INCONSISTENT WITH CASE LAW,

10   THAT IS INCONSISTENT WITH GOVERNMENT POSITIONS IN THIS CASE AND

11   ELSEWHERE.  THANK YOU.

12        MR. JONES:  YOUR HONOR, JUST ONE POINT TO ADD TO

13   THAT.  AND ALSO, WITH RESPECT TO SOME OF THE FACTS THAT THE

14   GOVERNMENT HAS PUT IN THEIR MOVING PAPERS CAUSES US CONCERN AS

14:27:41 15   WELL.  THE FACT THAT THEY'RE ALLEGING THAT OUR CLIENTS RECEIVED

16   MILLIONS OF DOLLARS FROM THIS SCHEME, THESE THINGS ARE JUST

17   BEING MADE UP, YOUR HONOR.  THERE'S NO FACTS TO THAT.  WE'VE

18   SEEN NO DISCOVERY, NO DISCOVERY THAT SHOW OUR CLIENTS MADE

19   MILLIONS OF DOLLARS FOR WHATEVER SCHEME THE GOVERNMENT PURPORTS

20   THAT THEY HAVE CONCOCTED.  SO WE BELIEVE THAT FOR ALL THE

21   REASONS CO-COUNSEL HAS STATED, WE BELIEVE THIS INDICTMENT MUST

22   BE DISMISSED.

23        THE COURT:  ALL RIGHT.  THANK YOU.  SO AS YOU ALL

24   KNOW, WE HAVE A LITTLE BIT OF A BACK UP.  THE ORDER ON THE

25   VAGUENESS QUESTION, ISSUES, THAT'S IN FINAL FORM.  WE

14:28:25   1    ANTICIPATE WE'LL ISSUE THAT WITHIN THE NEXT THREE OR FOUR DAYS.

           2    AND THEN AT THAT POINT THEN WE WILL TAKE THIS MATTER UNDER

           3    SUBMISSION -- WELL, AS OF THIS MOMENT WE WILL, BUT AS OF THE

           4    NEXT COUPLE OF DAYS WE'LL FOCUS OUR ATTENTION ON THIS.  BUT I

           5    AM AWARE THAT I OWE YOU AN ORDER, AND I WILL PROVIDE THAT TO

           6    YOU.  THE PRESS OF BUSINESS HAS BEEN PRETTY HEAVY LATELY.  SO

           7    AT THIS POINT, LET'S SET THE MATTER FOR FURTHER STATUS HEARING.

           8    WHAT MAKES SENSE?  YOU WANT TO KNOW THE COURT'S RULINGS ON BOTH

           9    SETS OF MOTIONS, AND SINCE I HAVE 30 DAYS TO TAKE THE MATTER

          10    UNDER SUBMISSION, WE'LL SET A STATUS AND PERHAPS WE CAN EVEN DO

          11    A TELECONFERENCE JUST SO WE CAN GET A SENSE OF WHERE WE ARE AND

          12    WHAT IS NEXT.  SO TODAY IS THE 20TH.  WE'LL SET IT FOR -- LET'S

          13    SET IT IN 27 DAYS ON THE 18TH OF MARCH AT 1 P.M.  THAT WILL BE

          14    A TELECONFERENCE, AND THEN KIMMI WILL GIVE YOU INSTRUCTIONS ON

14:30:05  15    HOW TO CALL IN.

          16              MS. MUNK:  YOUR HONOR, IS THAT SOMETHING THE

          17    DEFENDANTS SHOULD BE ON THE CALL AS WELL?

          18              THE COURT:  YOU CAN WAIVE THE APPEARANCE OF YOUR

          19    CLIENT IF THEY WANT TO PARTICIPATE.  OBVIOUSLY, THEY CAN, BUT

          20    IF THEY ARE OTHERWISE UNAVAILABLE, THAT'S FINE.  AND THEN IS

          21    THERE ANYTHING ELSE FROM THE GOVERNMENT?

          22              MS. PIERSON:  WE ASK THE COURT EXCLUDE TIME BETWEEN

          23    NOW AND THEN.

          24              THE COURT:  YES, THAT'S WHAT I SAID.  I'M TAKING THE

          25    MATTER UNDER SUBMISSION AND FINDING EXCLUDABLE TIME.  AND TO

14:30:46   1   THE EXTENT THAT WE NEED TO DO IT SPECIFICALLY, IT WILL BE UNDER

2   3161(H)(1)(D), AND ACTUALLY 3161(H)(1)(H), THE PROCEEDINGS ARE

3   UNDER ADVISEMENT.  ALL RIGHT.  THANK YOU, ALL.

4            (MATTER CONCLUDED.)

5

6

7                    C-E-R-T-I-F-I-C-A-T-I-O-N

8

9            I HEREBY CERTIFY THAT I AM A DULY APPOINTED, QUALIFIED
     AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES
10   DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
     TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE;
11   THAT SAID TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPTION OF MY
     STENOGRAPHIC NOTES; AND THAT THE FORMAT USED HEREIN COMPLIES
12   WITH THE RULES AND REQUIREMENTS OF THE UNITED STATES JUDICIAL
     CONFERENCE.

13            DATED: MARCH 6, 2020, AT SAN DIEGO, CALIFORNIA.

14

15                    /S/ JULIET Y. EICHENLAUB
                      JULIET Y. EICHENLAUB, RPR, CSR
16                    OFFICIAL COURT REPORTER
                      CERTIFIED SHORTHAND REPORTER NO. 12084

17

18

19

20

21

22

23

24

25