UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB BYCHAK, et al.,<br><br>Defendants. | Case No.: 18-CR-4683-GPC<br><br>**ORDER DENYING MOTION TO (A) DISMISS COUNTS 2 THROUGH 5 OF THE INDICTMENT AND (B) STRIKE WIRE FRAUD ALLEGATION FROM COUNT 1.**<br><br>**(ECF No. 149.)** |

On January 23, 2020, Defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr Pacas ("Defendants") filed a motion to dismiss counts two through five of the Indictment charging four instances of wire fraud in violation of 18 U.S.C. §1343. (ECF No. 149.) On February 10, 2020, the Government filed a response. (ECF No. 150.) On February 14, 2020, Defendants filed a reply. (ECF No. 151.) On February 20, 2020, the Court held a hearing on the motion. (ECF Nos. 152, 157.)

Defendants argue that IP addresses are not "property" as the term is used under the wire fraud statute and that, in the alternative, the IP addresses were not obtained by means of a material misrepresentation directed at victims of the scheme. (*Id.*) Defendants also argue that the Court should strike all wire fraud allegations in Count 1 of the

1

Indictment for failure to state a wire fraud offense and lack of specificity. (*Id.*)

Following a full briefing and hearing schedule, the Court **DENIES** the motion to dismiss counts two through five of the Indictment for failure to state an offense and the motion to strike wire fraud allegations contained in count one. First, the Court finds that, at this time, it lacks the factual record necessary to determine whether IP addresses assigned prior to creation of the American Registry of Internet Numbers (ARIN) on December 22, 1997 are "property" for the purposes of the wire fraud statute. 18 U.S.C. § 1343. Second, assuming *arguendo* that IP addresses are "property", the Court finds that the Indictment adequately alleges "an intent to obtain money or property from the victim of the deceit," i.e., the legacy IP address registrants. Lastly, the Court finds that the charges of the Indictment are alleged with sufficient specificity.

## I. Background

### A. The Indictment

On October 31, 2018, the Government filed the Indictment which charges that, from December 2010 to September 2014, Defendants conspired with each other to commit wire fraud and felony electronic mail fraud. (ECF No. 1.) Defendants are each charged with one count of conspiracy to commit offenses against the United States, specifically, wire fraud and electronic mail fraud, in violation of 18 U.S.C. § 371; four counts of wire fraud, in violation of 18 U.S.C. § 1343; and four counts of electronic mail fraud, in violation of 18 U.S.C. §§ 1037(a)(5), (b)(2)(C), and 18 U.S.C. § 2. (ECF No. 1.)

As to the conspiracy, the Indictment charges three "objects of the conspiracy": identifying or paying to identify "blocks of Internet Protocol (IP) addresses called 'netblocks' that were registered to others and appeared to be inactive," creating and sending "letters to Internet hosting companies fraudulently stating the letter bearer had been authorized by the registrants of the inactive IP addresses to use the IP addresses," and using "the fraudulently acquired IP addresses to send commercial email ('spam') messages." (*Id.* at ¶ 2(a)-(c)).

The Indictment sets out two overt acts of the conspiracy. First, the Indictment charges that, "[o]n or about August 25, 2013, in San Diego, California defendant MOHAMMED ABDUL QAYYUM created a letter which fraudulently purported to authorize the use of a netblock not registered to the conspirators and emailed the letter to defendants MARK MANOOGIAN and JACOB BYCHAK." (*Id.* at ¶ 3(a)). Second, the Indictment charges that "[o]n or about January 13, 2014, in San Diego, QAYYUM emailed BYCHAK, MANOOGIAN, and others that he was preparing network connections and would advise when a netblock purchased from a company employing Daniel Dye was ready to send commercial emails." (*Id.* at ¶ 3(b)).

As to the wire fraud counts, the Indictment charges that Defendants "devised a material scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did . . . transmit and cause to be transmitted by means of wire communication in interstate commerce the writings, signs and signals below for purposes of executing the scheme and artifice to defraud." (*Id.* at ¶ 4.) The Indictment alleges four acts in furtherance of the scheme, namely, that Defendants (a) "searched for IP addresses registered to third parties that appeared to be inactive;" (b) "created and sent letters to Internet hosting companies fraudulently making it appear that the registrant of the IP addresses had authorized the defendants' use of the IP addresses;" (c) "used the IP addresses to send commercial email messages knowing they did not obtain control of the IP addresses from the true registrant or the legitimate successor in interest;" and (d) "concealed their use of the IP addresses to send 'spam' emails by using business names, post office boxes, and email addresses under different names." (*Id.* at ¶¶ 5–8.)

The Indictment charges four interstate wire communications:

| Count | Date | From | To | Description |
|-------|------|------|-----|-------------|
| 2 | 11-11-13 | San Diego | Oklahoma | PayPal wire transfer of $600 for hosting of ECT netblock. |

3

| 3 | 1-9-14 | San Diego | Oklahoma | PayPal wire transfer of $600 for hosting of Telalink netblock. |
| 4 | 2-28-14 | San Diego | Oklahoma | PayPal wire transfer of $600 for hosting of MooreSolutions netblock. |
| 5 | 3-10-14 | San Diego | Oklahoma | PayPal wire transfer of $600 for hosting of Telalink netblock. |

(*Id.* at ¶ 8.) The Indictment further charges four counts of electronic mail fraud and criminal forfeiture allegations not at issue here. (*Id.* at ¶¶ 9–14.)

## II. Legal Standard on Motion to Dismiss for Failure to State an Offense

Federal Rule of Criminal Procedure ("FRCP" or "Rule") 7 requires that an indictment contain a "plain, concise, and definite written statements of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). An indictment must also "furnish the defendant with a sufficient description of the charges against him to enable him to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge." *United States v. Cecil*, 608 F.3d 1294, 1297 (9th Cir. 1979).

Under Rule 12, a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v). An indictment's failure to detail each element of the charged offense generally constitutes a "fatal defect." *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979); *United States v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at *12 (N.D. Cal. Feb. 11, 2020) (quoting *United States v. Carroll*, 2015 WL 2251206, at *1 (N.D. Cal. May 13, 2015) ("An indictment fails to state an offense if it does not allege facts which, if proven, would constitute a violation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.")).

On a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged."

4

*United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.* A motion to dismiss an indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

**III. Discussion**

  **A. The Court Lacks the Necessary Facts to Adjudicate Whether IP Addresses Are "Property" Under the Wire Fraud Statute.**

  Counts 2 through 5 allege four acts of wire fraud in violation of 18 U.S.C. § 1343. (ECF No. 1.) To commit the offense of wire fraud, a defendant must use a wire in "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. The Parties dispute whether the IP netblocks at issue in the Indictment constitute "property" for the purposes of wire fraud. (*Compare* ECF No. 149-1 at 12–17 *with* ECF No. 150 at 5–11.)

  The Court's ability to adjudicate this dispute, however, is frustrated by an antecedent issue: the need for an adequate factual record. Defendants provide what they view as facts necessary to make this determination through the attachments to their motion. (*See generally* ECF No. 149-2.)[1] The Government objects to Defendants' attachments, arguing that the Court's scope of review on a motion to dismiss the Indictment for failure to state an offense is limited to the "four corners" of the Indictment. (ECF No. 150 at 5–6.) Defendants reply that the Court can properly consider undisputed facts in the record and must decide Defendants' motion if it finds the disputed factual issues are entirely segregable from the evidence to be presented at trial. (ECF No. 151 at

---

[1] Defendants' motion includes 145 pages of attachments: an affidavit from Defense Counsel Naeun Rim, three Registry Service Agreements ("RSA") with the American Registry for Internet Numbers, Ltd ("ARIN"), five papers, articles, and letters, and one transcript from a hearing in this matter dated April 30, 2019. (ECF No. 149-2, Exs. A–I.)

5

5–6). Thus, as a threshold matter, the Court must determine if it can go beyond the indictment and properly consider outside facts necessary to decide this issue pre-trial. The Court finds that it cannot.

As previously explained, in deciding a pre-trial motion to dismiss an indictment for failure to state an offense, "the district court is bound by the four corners of the indictment." *Boren*, 278 F.3d at 914 (citations omitted). That is because the challenge to an Indictment does not assess the veracity of its claims or test the evidence, but merely challenges whether an alleged charge is "sufficient on its face." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996). In other words, "[t]he indictment either states an offense or it doesn't." *Boren*, 278 F.3d at 914. Accordingly, the Court "should not consider evidence not appearing on the face of the indictment." *Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (quoting *United States v. Marra*, 481 F.2d 1196, 1199–1200 (6th Cir. 1973)).

As such, the Court cannot consider the documents attached to Defendants' motions. *See, e.g.*, *United States v. Yang*, No. 16-CR-00334-LHK, 2019 WL 5684527, at *4 (N.D. Cal. Nov. 1, 2019) (declining to consider visa documents in a prosecution for visa fraud under 18 U.S.C. 1546(a) which were not included in the indictment and which would have to be judicially noticed); *United States v. Kail*, No. 18-CR-00172-BLF, 2018 WL 6511154, at *2 (N.D. Cal. Dec. 11, 2018) (declining to consider search warrants unsealed at prior hearing, and interrogatories from a parallel civil case, in deciding a motion to dismiss the indictment of a wire fraud prosecution for deprivation of honest services because those documents were outside the four corners of the indictment); *United States v. Franklin*, No. 1:15-cr-00242-BLW, 2016 WL 4033105 (D. Idaho July 27, 2016) (declining to "scrutinize the grand jury transcript" as beyond the four corners of the indictment in a prosecution for wire fraud).

In addition, though the Indictment "must be read to include facts which are necessarily implied and construed according to common sense with an appreciation of

6

existing realities," *see United States v. Inryco, Inc.*, 642 F.2d 290, 294 (9th Cir. 1981), the Court finds that the instant subject matter – the contours of how legacy IP addresses function – requires a technical, factual predicate than cannot be simply inferred from "existing realities." (*See* ECF No. 160 at 6.) Likewise, the facts cited by Defendants as "undisputed" are insufficient to decide the instant motion now, and themselves run afoul of *Boren*'s mandate that the Court not look beyond the "four corners" of the Indictment. (ECF No. 151 at 6); *cf. United States v. Phillips*, 367 F.3d 846, 855 (9th Cir. 2004) (noting that a court may consider undisputed facts in deciding a pre-trial motion).

Without an agreed upon technical or factual predicate, the Court is unable to determine whether IP address netblocks qualify as property under the *Kremen* multi-factor test. *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) ("First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity.") Here, the Indictment does not provide facts necessary to adequately assess how IP addresses assigned prior to the creation of ARIN function with reference to traditional principles of property law. *Cf. Carpenter v. United States*, 484 U.S. 19, 25 (1987) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001–04 (1984)) (evaluating whether confidential business information had "long been recognized as property"); *United States v. Sadler*, 750 F.3d 585, 592 (6th Cir. 2014) ("Nor can it plausibly be said that the right to accurate information amounts to an interest that has long been recognized as property") (quotation omitted); *United States v. Henry*, 29 F.3d 112, 115 (3d Cir. 1994) ("[T]o determine whether a particular interest is property for purposes of the fraud statutes, we look to whether the law traditionally has recognized and enforced it as a property right.").

The Court also declines to supplement the evidentiary record pre-trial by ordering a hearing on the issue of whether IP addresses constitute property for the purposes of 18 U.S.C. § 1343. It is not common practice for district courts to order such hearings when

deciding whether a wire fraud Indictment alleges "property." *See, e.g.*, *United States v. Middendorf*, No. 18-CR-36-JPO, 2018 WL 3443117, at *9 (S.D.N.Y. July 17, 2018) (finding pre-trial, and without an evidentiary hearing, that the Public Company Accounting Oversight Board's confidential list of planned audits constitutes intangible "property" for the purposes of wire fraud); *United States v. Alkaabi*, 223 F. Supp. 2d 583, 588 (D.N.J. 2002) (finding pre-trial, and without an evidentiary hearing, that a testing company had no property interest in "maintaining the integrity of its testing process"); *United States v. Riggs*, 739 F. Supp. 414, 416–17 (N.D. Ill. 1990) (finding pre-trial, and without an evidentiary hearing, that a computer text file containing information pertaining to the Bell South Telephone Company's enhanced 911 system for a handling emergency calls was "property" for the purpose of a wire fraud indictment).

Holding an evidentiary hearing in this context, moreover, would require the Court to consider factual issues "substantially founded upon and intertwined with evidence concerning the alleged offense." *Shortt Accountancy Corp.*, 785 F.2d at 1452. For example, in considering whether legacy IP addresses are property, the Court might assess, among other questions, what limitations exist on a legacy registrant's use of an IP address, to what extent such use is not "exclusive," how third parties necessary to the transfer of information on the internet (e.g., holding companies, internet service providers) may interfere with a legacy registrant's use of an IP address, how a legacy IP address can be transferred, what it means for an IP address to be active or inactive, and what one would need to know to engage in the use, transfer, or activation of a legacy IP address. These factual questions are a far cry from issues typically segregable for consideration pre-trial. *See United States v. Sharma*, No. 2:17-CR-00055-TLN, 2019 WL 2285393, at *2 (E.D. Cal. May 29, 2019) (quoting *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993)) (cataloguing such issues, including "former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction"). And, by Defendants' own account of the likely

8

issues at trial,[2] it is difficult to see how an evidentiary hearing entailing these questions would not lead the Court to engage in factfinding that "invade[s] the province of the ultimate finder of fact." *Nukida*, 8 F.3d at 669 (*quoting Shortt Accountancy Corp.*, 785 F.2d at 1452).

Limiting itself to the four corners of the Indictment, the Court is unable to determine whether the IP netblocks at issue in the Indictment constitute "property" for the purposes of the wire fraud statute at this time. Consequently, the Court **DENIES** Defendants' motion to dismiss counts two through five for failure to state an offense.

### B. Defendants Obtained the IP Addresses from the Victims of the Deceit.

Defendants offer an alternative argument to support their motion to dismiss which focuses on the adequacy of allegations of the charged scheme to defraud.

Claims of wire fraud under 18 U.S.C. § 1343 require three elements: (i) the formation of a scheme to defraud, (ii) the use of the mails or wires in furtherance of that scheme, and (iii) the specific intent to defraud. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Here, Defendants also attack the third element by contending that the Indictment fails to allege that Defendants "intended to obtain money or property *from the victim of the deceit*." (ECF No. 149-1 at 17 (quoting *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) (emphasis added)). Specifically, Defendants assert that the two allegedly deceptive acts offered by the Indictment – (1) providing letters of agreement to hosting companies and (2) using domain names to "conceal" their use of the IP addresses from the internet service providers – are targeted towards entities who do not have property rights over the IP addresses. (*Id.* at 17–19.)

---

[2] Defendants offer that the "dispute at trial will revolve around whether Defendants were duped into believing they were legitimately purchasing IP addresses from the Government's cooperating witness Daniel Dye, or whether, as the Government alleges, Defendants decided to jeopardize their jobs and reputations (and in the case of Mr. Qayyum and Mr. Pacas, their immigration status) by purchasing IP addresses they knew to be stolen, even though doing so afforded them no personal benefit or economic gain." (ECF No. 149-1 at 6.)

9

The Government responds that the "fact that the true registrants [of the IP netblocks] and the upstream providers were both 'victims' of Defendants' fraud is legally inconsequential." (ECF No. 150 at 13.) Rather, because the IP addresses require an intermediary hosting company to be used, Defendants' deception of the hosting companies furthers a scheme ultimately intended to defraud the IP registrants. (*Id.* at 12–15.) Here, for the subsequent reasons, and assuming without deciding that IP addresses are "property," the Court agrees with the Government that IP registrants are also "victims" of the scheme and finds that, as described in the Indictment, Defendants' alleged deceptive conduct was intended to deprive IP registrants of their exclusive use of their assigned IP addresses.

To delineate the proper scope of wire fraud in this instance, it is helpful to set out the relevant precedents informing the Court's conclusion. In *McNally*, the Supreme Court originally recognized that the conduct penalized by the wire fraud statute was "the deprivation of something of value by trick, deceit, chicane or overreaching." *McNally v. United States*, 483 U.S. 350, 358 (1987) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)). In *Lew*, the Ninth Circuit applied the *McNally* rule to reverse an immigration attorney's conviction for wire fraud on the basis that the deceitful conduct at issue – a fraudulent visa application to the government – was not directed at the person or entity from whom the property (here, attorney fees) was obtained, i.e., the defendant's clients. *Lew*, 875 F.2d at 221. In other words, the Court found that the attorney lacked "an intent to obtain money or property from the victim of the deceit," i.e., the United States government. *Id.* at 222.

The Ninth Circuit has not applied that rule, however, to limit and require a defendant to make the false representation to the property holder. Rather, as the Ninth Circuit explained in *Ali*, defendants may be liable if their deceitful conduct was "part of a larger scheme to defraud" a person of his property, even if they did not make a specific false statement to that person. *United States v. Ali*, 620 F.3d 1062, 1070–71 (9th Cir.

10

2010) (finding defendants deprived Microsoft of revenue by acquiring its software licenses for re-sale under false pretenses, "even if there were no specific false statements made to Microsoft.") After all, under "the [wire] fraud statute the government is not required to prove any particular false statement was made" because "there are alternative routes to a [wire] fraud conviction, one being proof of a scheme or artifice to defraud, which may or may not involve any specific false statements." *Id.* (quoting *United States v. Munoz*, 233 F.3d 1117, 1131 (9th Cir. 2000) (citations omitted), *superseded by statute*, 18 U.S.C. § 1341); *Carpenter*, 484 U.S. at 25 ("The mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses here.").

Likewise, if a defendant's deceitful conduct indirectly deprives a victim of money or property, the defendant's conduct is chargeable as wire fraud. *See United States v. Bonallo*, 858 F.2d 1427, 1434 (9th Cir. 1988) (affirming defendant's conviction on the basis that he indirectly deprived a bank of its money because "the Bank . . . was obliged to reimburse [its] customers" after defendant fraudulently withdrew money from various customer accounts and misrepresented those transactions to the Bank by manipulating its data.); *see also United States v. Dowie*, 411 F. App'x 21, 28 (9th Cir. 2010) (citations omitted) ("A defendant may be guilty of fraud where the deceived party is indirectly deprived of money or property as a result of the fraud.")

In light of *Lew* and *Ali*, Defendants acknowledge that a person "can be the target of deceit even without being the recipient of a direct misrepresentation," but argue that the Indictment fails to allege as much here. (ECF No. 151 at 13 n.8.) The Court disagrees with Defendants. Here, the Indictment properly alleges a scheme wherein Defendants' deceitful conduct indirectly deprived the legacy IP registrants of their IP addresses. In other words, Defendants' charged misconduct was "part of a larger scheme to defraud" and thus indirectly defrauded the legacy IP registrants. *Ali*, 620 F.3d at 1070–71; *Bonallo*, 858 F.2d at 1434.

In the instant case, the Indictment tracks the language of 18 U.S.C. § 1343 in charging that Defendants "devised a material scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises . . ." (ECF No. 1 at ¶ 4.) The Indictment then offers four steps to the scheme: (1) searching for inactive IP addresses, (2) sending letters to hosting companies while "making it appear that . . . defendants' use of the IP addresses" had been "authorized," (3) sending spam with those IP addresses, and (4) hiding their misconduct. (*Id.* at ¶¶ 5–8.)

In light of this language, Defendants' allegedly deceptive letters had the ultimate objective of perpetuating a fraud against the legacy IP address registrant. Under this theory, the inactive IP addresses could not have been used to send spam but for the hosting companies' authorization. (*Id.* at ¶ 6.) Hence, the letters were a necessary step towards the completion of the scheme. That Defendants also allegedly concealed their misconduct "by using business names, post office boxes, and email addresses under different names" likewise furthers the overall scheme. Even if not directly conveyed to the legacy IP address registrants, Defendants' concealment would tend to reduce the likelihood that the scheme would be discovered. (*Id.* at ¶ 8.) And, that Defendants allegedly acted "knowing they did not obtain control . . . from the true registrant or the legitimate successor in interest," (*Id.* at ¶ 6), underscores how each step charged in the Indictment – including the four listed wire transfers, (*Id.* at ¶ 8) – are all "part[s] of a larger scheme to defraud" the legacy IP address registrants. *Ali*, 620 F.3d at 1070–71.

Contrary to Defendants' arguments, this conclusion comports with the holdings of *Lew* and *Avis*, as well as *Carpenter*, *Bonallo*, and *Downey*. In *Lew*, the Ninth Circuit observed that nothing in the jury charge required the jury to find that the defendant attorney had made any misrepresentations to his clients. *Lew*, 875 F.2d at 222. Consequently, the conviction punished conduct not within the reach of § 1341 in that the attorney did not necessarily obtain his clients' fees by fraud. In contrast, in *Ali*, the Court

12

found that, even though defendants did not make any misrepresentations to Microsoft, their conduct necessarily, and indirectly, deprived Microsoft of "revenue when the products were sold at a discount as a result of the fraud." *Ali*, 620 F.3d at 1068. Hence, the scheme necessarily resulted in a deprivation of Microsoft's property. The facts in the present case are similar to *Ali* in that the result of Defendants' deceitful conduct was to deprive the legacy registrants of their exclusive use of the IP addresses – even if the deceptive conduct was immediately directed at a third party, like the hosting companies or the internet service providers. The Court is thus satisfied that the third element of wire fraud, a specific intent to defraud the victim, is adequately charged in the Indictment. *Eclectic Props. E., LLC*, 751 F.3d at 997.

Defendants' other arguments are unavailing. First, because the Indictment properly charges that Defendants fraudulently and indirectly deprived the legacy IP registrants of their IP addresses, the Court need not consider whether the upstream providers (i.e., the hosting company, ISPs, or webmail companies) also have property interests in the IP addresses under *United States v. Bruchhausen*, 977 F.2d 464, 468 (9th Cir. 1992). (*Cf.* ECF No. 149-1 at 19–20; ECF No. 151 at 13.) Likewise, the Court is unpersuaded by Defendants' assertion that the Government's theory of wire fraud fails because "neither [defendants' letters] nor a misleading domain or DBA name can be a means by which one *acquires* an IP address." (ECF No. 149-1 at 20) (emphasis in original). Rather, the gravamen of the alleged scheme was to deprive the legacy IP address registrants of their right to exclusively use the subject IP addresses, and that is sufficient to allege wire fraud here as "exclusivity is an important aspect" of how IP addresses function. *See Carpenter*, 484 U.S. at 26–27 ("Petitioners cannot successfully contend . . . that a scheme to defraud requires a monetary loss . . . it is sufficient that the Journal has been deprived of its right to exclusive use of the information . . ."). Wire fraud, moreover, does not require "an intent to permanently deprive a victim of money or property." *United States v. Miller*, No. 17-50338, 2020 WL 1317275, at *6 (9th Cir. Mar. 20, 2020) (citation omitted).

13

Lastly, Defendants are mistaken that the charged misrepresentations were immaterial because the hosting company was "indifferent to the LOAs' authenticity." (ECF No. 149-1 at 19.) "'[T]he government does not have to prove actual reliance upon the defendant's misrepresentations' to satisfy materiality." *United States v. Lindsey*, 850 F.3d 1009, 1014 (9th Cir. 2017) (*Neder v. United States*, 527 U.S. 1, 16 (1999)). Rather, a misrepresentation is "material" where it has "a natural tendency to influence, or [is] capable of influencing" the recipient, *id.* at 1014, and the Indictment's allegations satisfy this threshold. (*See* ECF No. 1 at ¶¶ 2.b, 3.a, 6, 7.)

### C. The Indictment Does Not Fail for Lack of Specificity.

Defendants attack the indictment for a third reason: a perceived lack of specificity. Defendants' motion confines the argument to a single footnote:

> That Defendants are unable to discern from the Indictment the identity of the alleged victim is in itself improper. At minimum, an indictment must set forth "a sufficient description of the charges against [a defendant] to enable him to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge." *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979). An indictment that does not meet these requirements must be dismissed for lack of specificity. *See Id.*; FED. R. CR. P. 12(b)(3)(B)(iii).

(ECF No. 149-1 at 18 n.11.); *see also* (ECF No. 151 at 13–14.)

Federal Rule of Criminal Procedure 7 requires that an indictment contain a "plain, concise, and definite written statements of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). That standard is satisfied where the Indictment "furnish[es] the defendant with a sufficient description of the charges against him to enable him to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge." *United States v. Cecil*, 608 F.3d 1294, 1297 (9th Cir. 1979).

14

Thus, an Indictment survives where the it "adequately alleges the elements of the offense and fairly informs the defendant of the charge;" the Government need not "prove its case" at this stage. *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982).

As noted, the essential elements of wire fraud are threefold: (1) a scheme to defraud; (2) the use of a wire, radio, or television to further the scheme; and (3) a specific intent to defraud. *Lindsey*, 850 F.3d at 1013. Here, the Indictment adequately puts Defendants on notice of those elements.

A fair reading of the Indictment conveys that the Defendants are charged with depriving the legacy IP registrants of their right to use the subject IP netblocks by deceptive means, including letters sent to hosting companies and subsequent efforts to conceal the scheme, and with the object of using the IP netblocks to send spam. (*Id.* at ¶¶ 5–8.) The Indictment further notes the specific wire transfers at issue, identifies the subject IP netblocks, and details specific acts in furtherance of the scheme as "overt acts" of the conspiracy. (*Id.* at ¶¶ 3, 8, 9.) In contrast to the indictment in the matter cited by Defendants, this Indictment plainly charges Defendants' alleged misconduct in more detail. *See Cecil*, 608 F.2d at 1294 (finding indictment inadequate where it provided no detail above the language of the statute, except for providing the names of the conspirators and the locations of the conspiracies); *see also United States v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at *6 (N.D. Cal. Feb. 11, 2020) (stating that "the Government need not allege in the indictment its case theory or the evidence underlying the charges. The Government must only provide enough facts to apprise a defendant of what defense should be prepared for trial. Hence, the Government need not allege specific misstatements to meet the 'fair notice' requirement.").

Thus, in sum, the Court finds that the Indictment provides sufficient detail to pass muster under Federal Rule of Criminal Procedure 7 and *United States v. Cecil*.

IV. **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss

15

counts two through five for failure to state an offense and the motion to strike wire fraud allegations from count one. The Court finds that the factual record is currently inadequate to adjudicate whether IP addresses constitute property. Also, assuming *arguendo* that IP addresses are "property" under 18 U.S.C. § 1343, the Court finds that the Indictment adequately alleges an intent to defraud the legacy IP address registrants. Lastly, the Court finds that the Indictment provides sufficient specificity to allege the elements of the wire fraud and permit Defendants the opportunity to prepare a defense.

Consequently, the Court further **DENIES** Defendants' motion on these grounds, noting that Defendants' first argument is denied without prejudice.

**IT IS SO ORDERED.**

Dated: April 7, 2020

Hon. Gonzalo P. Curiel
United States District Judge