```
 1                    UNITED STATES DISTRICT COURT

 2                FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,       .
                                     .
 5             Plaintiff,            . No. 18-cr-4683-GPC
                                     .
 6                  v.               . April 8, 2020
                                     . 1:00 p.m.
 7   JACOB BYCHAK,                   .
     MARK MANOOGIAN,                 .
 8   MOHAMMED ABDUL QAYYUM,          .
     PETR PACAS,                     .
 9                                   .
               Defendants.           . San Diego, California
10   . . . . . . . . . . . . . . . .

11
              TRANSCRIPT OF TELEPHONIC STATUS HEARING
12             BEFORE THE HONORABLE GONZALO P. CURIEL
                    UNITED STATES DISTRICT JUDGE
13

14

15   APPEARANCES:

16   For the Plaintiff:     United States Attorney's Office
                            By: MELANIE K. PIERSON, ESQ.
17                          880 Front Street, Room 6293
                            San Diego, California 92101
18
     For the Defendant      Law Office of David W. Wiechert
19   JACOB BYCHAK:          By: DAVID W. WIECHERT, ESQ.
                            115 Avenida Miramar
20                          San Clemente, California 92672

21   For the Defendant      Mintz Levin
     MARK MANOOGIAN:        By:  RANDY K. JONES, ESQ.
22                          3580 Carmel Mountain Road, Suite 300
                            San Diego, California 92130
23

24   ///

25
```

```
 1  APPEARANCES (CONTINUED):

 2

 3  For the Defendant        Bienert, Miller & Katzman, P.L.C.
    MOHAMMED ABDUL           By:  WHITNEY Z. BERNSTEIN, ESQ.
 4  QAYYUM:                       JAMES RIDDET, ESQ.
                             903 Calle Amanecer, Suite 350
 5                           San Clemente, California 92673

 6
    For the Defendant        Bird Marella Boxer Wolpert
 7  PETR PACAS:                Nessim Drooks & Lincenberg
                             By:  NAEUN RIM, ESQ.
 8                                GARY S. LINCENBERG, ESQ.
                             1875 Century Park East
 9                           Suite 2300
                             Los Angeles, California 90067
10

11

12

13

14

15

16

17

18

19

20

21

22  Court Reporter:          Chari L. Bowery, RPR, CRR
                             USDC Clerk's Office
23                           333 West Broadway, Suite 420
                             San Diego, California 92101
24                           chari_bowery@casd.uscourts.gov

25  Reported by Stenotype, Transcribed by Computer
```

```
 1            SAN DIEGO, CALIFORNIA; APRIL 8, 2020; 1:00 P.M.
 2                              -o0o-
 3            THE COURT:  Good afternoon.  May I please have
 4   appearances by defense counsel.
 5            MR. WIECHERT:  Good afternoon, Your Honor.  This is
 6   David Wiechert on behalf of defendant Jacob Bychak, who is also
 7   present on the call.
 8            THE COURT:  All right.
 9            MR. JONES:  Good afternoon, Your Honor.  Randy Jones
10   on behalf of Mark Manoogian.  He is also on the phone.
11            THE COURT:  All right.  Good afternoon, Mr. Jones.
12            MS. RIM:  Good afternoon.  Naeun Rim and Gary
13   Lincenberg on behalf of Petr Pacas, who is also on the call.
14            THE COURT:  All right.
15      And Ms. Bernstein, are you also on the line?
16            MS. BERNSTEIN:  Yes, Your Honor.  Good afternoon.
17   It's myself and Mr. Riddet on behalf of Mr. Qayyum, who is not
18   present; you waived his appearance.
19            THE COURT:  All right.  And on behalf of the
20   government?
21            MS. PIERSON:  Melanie Pierson on behalf of the United
22   States.
23            THE COURT:  All right. Good afternoon.  And is that
24   it, Ms. Pierson?
25            MS. PIERSON:  Yes.  That's it.
```

1    THE COURT: All right. So, then, we are here on a
2 telephonic status hearing, and we issued an order this morning
3 addressing the motion that was under submission. And given
4 that order and that ruling, at this point, are there discovery
5 issues to address? Is there a trial date that is being sought
6 by either side?
7    MS. RIM: Your honor, Naeun Rim on behalf of
8 Mr. Pacas.
9    We are wanting to discuss those items, but before we go
10 there, we had discussed raising with the Court a discrepancy
11 between, respectfully, the Court's order from this morning and
12 the CAN-SPAM order in terms of what the Court was willing to
13 consider that was outside of the indictment.
14    And I think the consensus is that we would like to submit
15 some briefing on that issue. Specifically, the extraneous
16 documents for both motions were eventually disclaimed. For the
17 CAN-SPAM motion, which was a question about statutory
18 construction regarding the word "registrant" and a question of
19 law, the Court considered documents from ARIN, documents from
20 ARIN's website, documents from articles written by
21 representatives of ARIN.
22    And then, in this current order, the Court considered the
23 question of the definition of "property," which is also a
24 question of law and a statutory construction, and the Court
25 declined to consider the same category of documents.

1      So, to provide some clarity, we wanted to propose a
2 briefing schedule on that issue.
3           THE COURT: Ms. Pierson, you are in agreement with
4 that?
5           MS. PIERSON: Well, this is the first I have heard of
6 it, so, no. I mean, I think that the Court's order was well
7 thought out, and you know, we are prepared to defend it, and
8 you know, we will -- if there's further briefing, that would be
9 the province of the Court. So, we will defer to the Court on
10 that.
11          THE COURT: Well, I don't see the value of further
12 briefing on this issue.
13     Ultimately, the CAN-SPAM issues and motion and the present
14 one, relating to what constitutes "property," are two separate
15 issues. It may employ the same vehicle as far as a motion to
16 dismiss, but with respect to what the Court is being asked to
17 do, in the face of clear instruction to look at the four
18 corners of the indictment, I cannot imagine that further
19 briefing would affect my ultimate final decision on this, given
20 the nuances, given the disputes that exist, as to what the
21 precise conditions of these pre-ARIN registrants was.
22     So, unless there was some joint agreement between the
23 government and defense counsel that you believe that it was
24 imperative, that it was necessary in order to put this matter
25 to rest, I am not at this point prepared to entertain further

1    briefing.
2         MR. WIECHERT:  And I think, Your Honor -- this is
3    David Wiechert on behalf of Mr. Bychak -- one of the reasons we
4    were thinking is, since the order came out this morning and we
5    are still digesting it, the first points in terms of denying
6    the motion, the Court finds that at this time it lacks the
7    factual record necessary to determine whether IP addresses
8    assigned prior to the creation of the ARIN on December 22,
9    1997, are property for purposes of wire fraud statutes.
10        And if there was supplemental briefing to expand that
11   factual record, that might at least preclude the need for a
12   trial on of all those issues if it was determined that really
13   there was no basis for dispute as to what these IP addresses
14   are and what they aren't.
15        THE COURT:  And I think that's a different issue or
16   question, which is what is the best fashion to proceed with
17   respect to this open question.  Because, certainly, the Court
18   hasn't made a final determination that the IP blocks are or are
19   not property.  I haven't done that.
20        But, instead, I have followed the law that limits what the
21   Court can consider, and then it does leave open the question,
22   all right; so, then, how will we confront this question?  How
23   will we decide it?  Is it best left to occur at trial, after
24   the government's case in chief?  Is this something that should
25   rest in the jury's determination following the Court's

1  instruction on what qualifies as property?  Or is this one of
2  those cases where a pre-trial evidentiary hearing would be
3  appropriate?
4       So, if that's the essential -- the gist of what you all
5  want to take up, I think that's appropriate.
6            MR. WIECHERT:  And I think Your Honor is following up
7  on what our thought was -- and this was put in our brief --
8  which is that the decision -- the issue of whether or not an IP
9  address is property or not is not going to be one that is for
10 the jury's determination; it is going to be the Court
11 instructing the jury that it is property under the wire fraud
12 statute, and that is going to be part of the jury instruction.
13 And I am sure the government is going to propose that is part
14 of the jury instruction.
15      So, whether we have that debate in the context of a jury
16 instruction debate or whether we have that in the context of
17 this motion, I think it is an issue that we should decide
18 earlier rather than later because it pretty much is (inaudible)
19 in the case.  And if we are right, that these IP addresses that
20 are pre-ARIN are not property under the statute, that those
21 issues should not be placed in front of the jury.  But we
22 should know that before this jury is ever impaneled because we
23 will have decided one way or the other whether it is a matter
24 of law -- you will have decided one way or another whether it
25 is a matter of law they are property.

1      Given the, kind of, what has been going on health-wise,
2 quarantine-wise, it may be a good use of our time, since we
3 can't do things in open court or in front of juries at this
4 point, to set up a schedule to have an evidentiary hearing on
5 the question of whether or not these IP addresses are property.
6           THE COURT:  So, I don't have a problem with allowing
7 the parties to propose a means to address this issue and for
8 all sides to be heard on this.  And then, in that way, we can
9 have a well-thought-out and considered means of addressing
10 this.  I may not agree with defense counsel or I may agree with
11 defense counsel.  But I think, certainly, it does make sense to
12 think about this a little bit closer given what is at stake,
13 given the questions.
14      So, how much time would you like?
15      Ms. Pierson, did you want to be heard?
16           MS. PIERSON:  Well, I guess I wanted to jump in here
17 and say, you know, having given more than 10 seconds of thought
18 to it now, listening to the discussion, it does seem that, you
19 know, that the Court's consideration of the material outside
20 the record in the first instance was correct because it was a
21 motion to void for vagueness, so the Court needs, then, to look
22 at ordinary definitions of words and stuff that are outside the
23 indictment to find meaning.
24      This is -- this was different.  And now that they are
25 proposing, again, essentially trying to get a second bite at

1   the apple, I would think that what we are talking about here is
2   a motion in limine; in other words, should this be presented to
3   the jury or should it be decided by the Court.
4         So I think that do we need a separate substantive motion,
5   or is this simply something that we could do with motions in
6   limine in advance of trial?
7               THE COURT:  That is one way to describe it, as a
8   motion in limine.  It is a threshold determination.  And as far
9   as the timing of it, I don't see any problem with having this
10  entertained well in advance of trial versus a month before
11  trial.
12        So, whatever we want to call it, either an in limine
13  motion or a motion regarding proposed resolution of this
14  issue -- I think the motion in limine is probably the thing
15  that's most, you know, similar to what we are talking about
16  here.
17        I am prepared to allow the defense to essentially file
18  this motion in limine, focusing -- if not exclusively, almost
19  exclusively on these kind of fact-dependent questions, these
20  issues regarding at what point would the Court be invading the
21  province of the jury, what all is agreed upon, what more is
22  needed in order to allow the Court to render a decision
23  regarding the multi-factor test that the Ninth Circuit has
24  employed.
25        So, with that said, is there anything else that the

1   defense wants to bring to my attention before we talk about a
2   briefing schedule?
3          MR. WIECHERT: I think, Your Honor, in terms of the
4   briefing schedule -- well, we should discuss with the
5   government the briefing schedule.
6       And before we go into other things, such as a trial date
7   down the road, one of the things that we will be discussing
8   with the government is if the Court was to rule in our favor
9   that the IP addresses that are at issue in this case are not
10  properly under the wire fraud statute, whether that is an issue
11  that the government would want to take up with the Ninth
12  Circuit or whether the government would just want to go to
13  trial on the remaining CAN-SPAM counts. That's kind of up to
14  them. But if they were to take it up, then that would push out
15  things significantly.
16      So, from our standpoint, we think we should tee up the
17  property issue sooner than later because it affects
18  substantially how we try this case, half the counts in this
19  case.
20         THE COURT: All right.
21         MR. WIECHERT: And the notion that we are trying to
22  get a second bite at the apple I think, just based on the
23  Court's comment, that's not the way the Court sees it.
24         THE COURT: No, I don't see it as that, because I
25  see, ultimately, I kicked the can down the road. And what you

1  all are asking me to do is take a closer look at the can before
2  trial, and I don't think that's unreasonable.
3           MR. WIECHERT:  So, perhaps we should meet and confer
4  with the government on a briefing schedule on whether we call
5  it a motion in limine or motion to supplement the record or
6  motion to instruct the jury that these -- that this isn't
7  property under the fraud statute.  The motion can be
8  constituted a number of different ways or called a number of
9  different things, but we all know what the issue is.
10          THE COURT:  But what I don't want is a second bite at
11 the apple.  I don't want it to be a situation where, then, the
12 arguments that have been made are being repeated.
13      What I want to focus on is, given the prohibition, the
14 general prohibition on just looking at the four corners, within
15 the four corners of the indictment, what do we have here that
16 can be agreed upon and stipulated?  What do we have here that
17 is otherwise available through a very circumscribed, limited
18 hearing, which would allow the Court to take up this issue
19 without invading the province of the jury?  So that's what I am
20 focused on.  Again, I don't want to rehash the earlier
21 arguments that have already been made.
22          MS. PIERSON:  See, I see this, frankly, as inviting a
23 mini trial.
24          THE COURT:  That could be the government's response.
25 And I get that.  And I am not looking for a mini trial, and I

1  think I kind of suggested that in our order.
2      But at the same time, we haven't had this fully fleshed
3  out.  And I am prepared -- and, granted, I have thought about
4  this in terms of, "Okay.  What will this look like going
5  forward?"
6      So, to the extent that you all want to help me get a
7  better view of what the future looks like, I am good with that.
8      Why don't we -- go ahead.  I am sorry.
9           MS. RIM:  I'm sorry.  Naeun Rim on behalf of Petr
10 Pacas.
11     I just wanted to ask if maybe once -- one of the first
12 steps could be what part of our factual record the government
13 disputes because that's never really been specified, and it
14 might --
15          THE COURT:  And perhaps that's the meet and confer.
16 The defense is going to have to identify what in their mind
17 does the job, what carries the day for you being able to show
18 that these netblocks are not property.  And then see to what
19 extent the government is prepared to agree to one or more of
20 the facts in that factual predicate.  And as to the remaining
21 facts, what the defense believes it would take in order for
22 that to be presented to the Court in a manner consistent with
23 the law.
24     And then, you know, the government will respond and say,
25 "No, what is being contemplated is, essentially -- if not a

1  mini trial, it is a pretrial, full presentation of all of the
2  evidence, which under the circumstances is unjustified."
3     So, is there any reason why we can't have a briefing
4  schedule where the defense will meet and confer with the
5  government, look at what they have in hand and what they need,
6  and file something by the second or third week of May?
7         MS. PIERSON:  That's acceptable to the United States.
8         THE COURT:  All right.  Can the defense file this
9  motion in limine by May 15?
10        MS. RIM:  That's fine for Mr. Pacas.  We can confer
11 with the government, if the Court would like, about the
12 specific date, since there's so many of us.
13        THE COURT:  For right now, since nature abhors a
14 vacuum, let me give you a date of 5/15 for the moving papers.
15 And then the government can have until June 5th for a response.
16 And then a reply can be filed by June 12.  And we can set the
17 matter for a hearing on June 26th.
18    And if the parties, after meeting and conferring, end up
19 with something that's different from this but you agree upon, I
20 am happy to entertain that.
21        MS. BERNSTEIN:  Thank you, Your Honor.  This is
22 Whitney Bernstein.
23    In terms of the June 26 hearing, are we setting that date
24 in time or do you want to wait on that?
25        THE COURT:  Let's make it June 26 at -- let's do

```
 1  this.  Make it June 25, a Thursday, at 1:00 p.m.  And keeping
 2  in mind that that may end up -- go ahead.
 3          MS. BERNSTEIN:  I am sorry.  I am looking at my
 4  calendar.  I have a hearing in Sacramento at 10:00 a.m. that
 5  day, assuming the world is back to normal.
 6          THE COURT:  And that's a big "if."
 7      But we will do it June 26 at 2:30.
 8          MS. BERNSTEIN:  Okay.
 9          THE COURT:  And then I will grant you the ability to
10  waive your clients' appearance at that hearing.  As of this
11  moment, that will be an in-person hearing.
12      Is there anything else to address at this moment?
13          MR. JONES:  Your Honor, this is Randy Jones on behalf
14  of Mark Manoogian.
15      I know that the bigger issue is the issue of property, but
16  I wanted to go back to the government's contention that the
17  Court's consideration of material facts outside of the record
18  of the CAN-SPAM motion to dismiss was different than what is in
19  this motion.
20      Does the Court agree with that?
21          THE COURT:  Certainly, it was different.  And keeping
22  in mind that there was a lot that was filed and presented and,
23  at the end of the day, the Court saw that what we had was this
24  dispute between these experts as to what was and what wasn't.
25  And, at the end of the day, I relied essentially on dictionary
```

1  definitions, which are wholly appropriate where there's a
2  void-for-vagueness argument.
3       So, like I said before, that was a motion to dismiss on
4  different grounds.  There were different considerations.  And
5  the Court had different prohibitions and different
6  considerations to take into account.
7       So, that's why, at this point, the fact that I did it then
8  or that I allowed any number of things to be filed -- and
9  keeping in mind that I didn't rely upon 98 percent of them --
10 to me, doesn't change the conclusion.  All right?
11          MR. JONES:  Okay.
12          THE COURT:  All right.  So, then, with that, that
13 will conclude these proceedings.
14      If something comes up between now and May or June and we
15 need to have another status conference, just reach out to
16 Kimmi, and we will put you on calendar for a teleconference.
17 All right?
18          MS. PIERSON:  Can I just ask one thing?
19          THE COURT:  Yes.
20          MS. PIERSON:  There was some -- there was a
21 suggestion by the defense that there might be a motion to
22 suppress statements from one of the defendants, and I just want
23 to be sure, is that something that is still looming out there,
24 or is that something we can also address at this time?
25          THE COURT:  Yes.  Is that something that's looming?

1            MS. BERNSTEIN:  Yes, Your Honor.  This is Whitney
2   Bernstein.  And that is something that we do intend to file.
3            THE COURT:  All right.  Well, let me give you the
4   same briefing schedule for that that I just gave for this
5   motion in limine.  Okay?
6            MS. BERNSTEIN:  Okay.
7            THE COURT:  All right.
8            MS. PIERSON:  Sure.
9            MR. JONES:  Your Honor, this is Randy Jones again.
10     I wanted to note, there was some discussion somewhere
11   along the line that we should be thinking of superseding the
12   indictment.  Is that something that the government is intending
13   to do?
14            THE COURT:  Ms. Pierson?
15            MS. PIERSON:  At this point, we are unable to do that
16   because of the absence of the grand jury, so I don't see that
17   happening.
18            THE COURT:  You don't see that happening in the
19   foreseeable future; but that is something you are still
20   contemplating that you could do?
21            MS. PIERSON:  At this stage, I don't see it
22   happening.
23            THE COURT:  All right.  Well, if you change your mind
24   and if the circumstances change, then please inform defense
25   counsel as soon as that happens.

1           MS. PIERSON:  Absolutely.
2      Can I ask one more question?
3           THE COURT:  Yes.
4           MS. PIERSON:  Are there any other defense motions out
5  there looming besides this motion to suppress statements?
6           MS. BERNSTEIN:  Since the discovery production
7  continues to be rolling, I think in order for us to know if
8  there's any further motions we intend to bring, we need to know
9  if there's any further discovery that you intend to produce.
10          THE COURT:  At this point, there's none that have
11 been identified, and you are reserving the right to raise
12 something else if discovery disclosures --
13          MS. PIERSON:  If there's new discovery, that would be
14 fine, if you have to file something based on that.  But we are
15 not -- in gathering information to prepare for trial, there
16 will be additional information.  But as I sit here now, I can't
17 think of anything.  We have -- everything we have, we have been
18 turning it over immediately.
19          THE COURT:  Very good.
20     I have a sentencing to -- a change of plea and sentencing,
21 and I have the parties in court right now.  So, stay safe and
22 take care and hope to see you soon.  Bye-bye.
23          ALL:  Thank you, Your Honor.
24     (End of proceedings at 1:30 p.m.)
25                              -o0o-

```
 1                      C-E-R-T-I-F-I-C-A-T-I-O-N
 2
 3            I hereby certify that I am a duly appointed,
 4   qualified and acting official Court Reporter for the United
 5   States District Court; that the foregoing is a true and correct
 6   transcript of the proceedings had in the aforementioned cause;
 7   that said transcript is a true and correct transcription of my
 8   stenographic notes; and that the format used herein complies
 9   with rules and requirements of the United States Judicial
10   Conference.
11            DATED:  May 22, 2020, at San Diego, California.
12
13                             /s/  Chari L. Bowery
                               _____
14                             Chari L. Bowery
                               CSR No. 9944, RPR, CRR
15
```