1                  UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4    UNITED STATES OF AMERICA,      .
                                    .
5                   Plaintiff,      . No. 18-cr-4683-GPC
                                    .
6                   v.              . July 16, 2020
                                    . 2:19 p.m.
7    JACOB BYCHAK,                  .
     MARK MANOOGIAN,                .
8    MOHAMMED ABDUL QAYYUM,         .
     PETR PACAS,                    .
9                                   .
                    Defendants.     . San Diego, California
10   . . . . . . . . . . . . . . . .

11
                     TRANSCRIPT OF MOTION HEARING
12              BEFORE THE HONORABLE GONZALO P. CURIEL
                    UNITED STATES DISTRICT JUDGE
13

14

15   APPEARANCES:

16   For the Plaintiff:     United States Attorney's Office
                            By: SABRINA L. FEVE, ESQ.
17                              RANDY S. GROSSMAN, ESQ.
                                ASHLEY GOFF, ESQ.
18                              MELANIE K. PIERSON, ESQ.
                            880 Front Street, Room 6293
19                          San Diego, California 92101

20   For the Defendant      Law Office of David W. Wiechert
     JACOB BYCHAK:          By: DAVID W. WIECHERT, ESQ.
21                          115 Avenida Miramar
                            San Clemente, California 92672
22
     For the Defendant      Mintz Levin
23   MARK MANOOGIAN:        By:  RANDY K. JONES, ESQ.
                            3580 Carmel Mountain Road, Suite 300
24                          San Diego, California 92130

25   ///

```
1   APPEARANCES (CONTINUED):

2

3   For the Defendant        Bienert, Miller & Katzman, P.L.C.
    MOHAMMED ABDUL           By:  WHITNEY Z. BERNSTEIN, ESQ.
4   QAYYUM:                  903 Calle Amanecer, Suite 350
                             San Clemente, California 92673
5

6   For the Defendant        Bird Marella Boxer Wolpert
    PETR PACAS:                Nessim Drooks & Lincenberg
7                            By:  NAEUN RIM, ESQ.
                                  GARY S. LINCENBERG, ESQ.
8                            1875 Century Park East
                             Suite 2300
9                            Los Angeles, California 90067

10

11

12

13

14

15

16

17

18

19

20

21  Court Reporter:          Chari L. Bowery, RPR, CRR
                             USDC Clerk's Office
22                           333 West Broadway, Suite 420
                             San Diego, California 92101
23                           chari_bowery@casd.uscourts.gov

24  Reported by Stenotype, Transcribed by Computer

25
```

```
 1              SAN DIEGO, CALIFORNIA; JULY 16, 2020; 2:19 P.M.

 2                                -o0o-

 3              THE CLERK:  Calling Item Number 3 on the calendar,

 4    Case Number 18-cr-4683, U.S.A. v. Defendant Number 1, Jacob

 5    Bychak, if I could have the appearances of counsel, please.

 6              MS. RIM:  Good afternoon, Your Honor.  Naeun Rim for

 7    Petr Pacas, present in court.

 8              THE CLERK:  Sorry.  I was looking for -- start with

 9    Mr. Bychak's parties.

10              MR. WIECHERT:  For defendant one, Jacob Bychak, David

11    Wiechert appearing for Mr. Bychak, and Mr. Bychak is here in

12    court today.

13              THE CLERK:  Defendant two, Manoogian.

14              MR. JONES:  Good afternoon, Your Honor.  Your Honor,

15    Randy Jones, appearing on behalf of Mr. Manoogian, and he is in

16    court today.

17              THE CLERK:  Defendant three, Mohammed Abdul Qayyum.

18              MS. BERNSTEIN:  Good afternoon.  This is Whitney

19    Bernstein appearing telephonically on behalf of Mr. Qayyum, who

20    is present in court.

21              THE CLERK:  And defendant four, Petr Pacas.

22              MS. RIM:  Good afternoon, Your Honor, again.  Naeun

23    Rim, on behalf of Mr. Petr Pacas, present in court.

24              MR. LINCENBERG:  And Gary Lincenberg appearing

25    telephonically.  Good afternoon, Your Honor.
```

1          THE COURT:  Good afternoon to all of you.

2      And then, on behalf of the government?

3          MS. FEVE:  Good afternoon, Your Honor.  Sabrina Feve

4  and Randy Grossman are here at counsel table, and joining us by

5  telephone are Melanie Pierson and Ashley Goff for the United

6  States.

7          THE COURT:  Good afternoon to government counsel.

8      We are here on a motion to dismiss wire fraud counts for

9  violating the Fifth Amendment, due process, and Sixth Amendment

10  fair notice protections.  And there's a certain part of this

11  which returns to the prior motion to dismiss the indictment for

12  a failure to detail each element of the wire fraud charge, and

13  then there's some new, newly crafted, designed arguments that

14  also challenge the indictment for related types of issues.

15      But at the beginning of this, let me address a portion

16  of -- or take up where we left off.

17      The Court had previously denied the motion to dismiss,

18  finding that there was inadequate factual predicate and

19  inadequate factual record in order to allow the Court to rule

20  on the motion to dismiss.  What had been offered consisted of a

21  number of documents that were attached to the motion and

22  argument that, at the end of the day, the Court determined that

23  the attached exhibits, including excerpts of RSA template, FCC

24  Staff Working Paper, articles from *Business Law Today* and

25  *Bloomberg*, letters from the National Telecommunications and

1    Information Administration, a letter from Canada's Department

2    of Industry, were materials, were evidence, were facts that the

3    Court could not consider because they were not squarely within

4    the four corners of the charging indictment.

5         In order to avoid a similar result in this case, the

6    defense has asked the Court to take judicial notice of these

7    documents and the ninth document that has been submitted, which

8    is an excerpt from a Blackline Amended Purchase Agreement.

9         And it appears to me that the Court is able to take

10   judicial notice of a number of these documents for one reason

11   or another, either that they are government documents, public

12   documents; but that only gets the defense so far, because as

13   far as the contents of these documents, they appear to be

14   matters that are not stipulated to by the government, and the

15   government has asserted that they dispute the contents.

16   Although, at the same time, the disputes are not identified

17   specifically, but instead, generally.  So it is difficult to

18   determine at this point exactly what portions of these

19   materials are disputed.

20        At the same time, the Court, in reviewing this motion,

21   reviewing the last motion, is left with certain questions in

22   terms of how trial will look like, what will happen at trial

23   with respect to how is a jury supposed to determine whether or

24   not something is property or not for purposes of 1343?

25        And let me begin with that question for the government.

1    How does the government intend to demonstrate to the jury

2    that what we have here is IP address netblocks that qualify as

3    property?

4         MS. FEVE:  Your Honor, we will be presenting evidence

5    that I will describe in a moment, but far as we understand the

6    legal process, there are numerous cases -- and I am prepared to

7    cite them -- that say if there is an element of the offense --

8    and in this case, the courts have repeatedly held property is

9    an element -- that the jury has to reach the issue of any

10   element, whether it is jurisdictional or an essential element.

11   The Supreme Court and the Ninth Circuit both said all elements

12   have to be addressed by the jury, and I will address those

13   cases in a moment.

14   But as far as how we envision it going forward, which is

15   we will put on our evidence, and that evidence with regard to

16   what is going on here -- for the IP addresses, I would

17   generally categorize it as falling into roughly four broad

18   buckets.  There will be evidence about what IPs are from a

19   technical perspective.  What is an IP address?  How does it

20   work?  How do you use it to send email?  How do you assign it

21   to a server?

22   There will be distributional aspects of IP addresses.  How

23   do you register for it?  Who do you register with?  What

24   information needs to be provided when you register?  How is it

25   transferred?  How is it announced?  What is an LOA?  How common

1    is it to use LOAs?  What other techniques are there?

2        Because LOAs were what were used here, but LOAs are

3    actually not a common way in which you would announce an IP

4    block.  And that will bear on why the defendants were on notice

5    that they were not doing things in an aboveboard manner.

6        So, in addition to, as I mentioned, the technical and

7    distributional, you are also going to have the historical,

8    because we recognize that there are significant distinctions

9    between pre-ARIN and post-ARIN blocks.  So that will get into

10   ARIN.  It will get briefly into the history of how did the

11   internet get created?  Who was initially responsible for

12   allocating IP addresses?  How did they keep track of that?  Was

13   that registry transferred over to ARIN, so that someone post

14   1997 could still be aware of it?

15       And then we are just going to get into the economic

16   aspects of IP addresses, which is how much does it usually cost

17   to acquire them?  And does it depend on whether you are buying

18   them or whether you're leasing them?  Is there a premium that

19   you have to pay if you want to use those IP addresses to send

20   commercial email?  In this case, how much money could an email

21   marketing company, like the company that the defendants worked

22   for, make by having IP netblocks, especially those IP netblocks

23   that were pre ARIN and, the term the defendants use, virgin,

24   meaning they had never been associated with spam before.

25       So, getting into the pricing will actually bear on their

1    state of mind, because as you saw in one of the excerpts from

2    the emails that we obtained from the defendants' employer, one

3    of the selling points of these hijacked netblocks that

4    Defendant Bychak brought to his boss's attention is, under

5    normal circumstances, they would pay $85,000 for a month's

6    worth of IP addresses, whereas they were getting a much larger,

7    fresher, virgin netblock from the codefendant, that was only

8    going to cost $50,000.

9        It will also bear noting that, on the open market, that

10   netblock, if acquired legitimately, would have sold for

11   millions of dollars.

12           MS. RIM:  Your Honor, I just wanted to note an

13   objection for the record so I don't have it deemed waived that

14   we object to statements being made by counsel on evidentiary

15   grounds.

16           THE COURT:  All right.  It's overruled.

17       I am just trying to get a sense of how it is that the

18   government will establish that these IP netblocks are property.

19   And, listening to you, I hear now you would intend to present

20   your case because, as you are providing this information, I am

21   trying to ascertain how will the jury make the determination?

22   We are going to give them an instruction, and the instruction

23   is "property is" blank?

24           MS. FEVE:  Just like you instruct them on

25   materiality, it is going to be the same thing.  We have a stock

1    definition from the courts that says "Materiality is this."

2    And you say, "This is the legal definition of 'materiality.'"

3    Your job, as the Court, is to instruct them on the law.

4          THE COURT:  Not materiality so much, but the

5    threshold question is is this property?  The defense makes, I

6    think, a fair argument that, in order for something to qualify

7    as property, it has to have long been recognized as property.

8    And they quote *Carpenter*, at 484 U.S. at 26.

9       And they make the argument that certainly as of the time

10   frame referenced in the indictment, there's no clear indication

11   that IP netblocks, address netblocks, constitute property; and

12   if anything, the information that they are trying to have me

13   consider under judicial notice would suggest the contrary.

14      But in any event, even if you don't consider that, even if

15   the Court doesn't accept the contents, the truth of the matters

16   contained within these exhibits, the question still becomes is

17   what we have something that has been traditionally recognized

18   as property?

19        MS. FEVE:  Your Honor, I believe the law does not

20   support this argument, so I would just like to go through it

21   case by case.

22      The Ninth Circuit's decision in *Ali*, specifically engages

23   this argument, and I am going to give the direct quote.  They

24   say, "Defendants contend that these cases stand together for

25   the proposition that only," quote, "'traditionally recognized

1    forms of property,'" unquote, "constitute property under the

2    statutes.  Defendants then argue that the right to be paid is

3    not traditionally recognized as a form of property.

4    *Pasquantino* prevents us from accepting their argument."

5        If you then turn to *Pasquantino* -- I read *Ali* as saying

6    that is not the proper standard.  There is no legal precedent

7    out there that says property is defined by tradition or

8    history.  And I would submit there are many reasons to be leery

9    of looking at whether an item itself is traditional, versus the

10   concept.  Because the concept of property, which is a valuable

11   entitlement, that tracks with the statute.

12       And that's why, when you look at *Pasquantino* and you look

13   at *Kelly*, and you look at *Cleveland*, they refer to the *Black's*

14   *Law Dictionary* definition of property in 1952, because that's

15   when the wire fraud statute was enacted.

16       So, when we look at *Pasquantino*, they say, "We begin with

17   the statute's ordinary and natural meaning to find that

18   property, under the 1951 edition of *Black's Law Dictionary*, is

19   defined as," quote, "every species of valuable right and

20   interest."  And that's on page 356.

21       They then apply that definition to the facts before them,

22   and in doing so, they find that the object of the petitioner's

23   scheme was to deprive Canada of money legally due, and that

24   that money that was legally due qualified under this definition

25   of property.

1          So they are looking at the concept, the definition of

2     property, which is historically the right from when the statute

3     was enacted.  They are not saying, "I look at whether or not

4     tax revenue was due, or software code was available."  They are

5     saying, "I look at the definition."

6          And the reason why this traditional argument doesn't make

7     sense -- other than, again, the fact that the cases completely

8     do not stand for it, and I will go through them one by one to

9     illustrate that point -- but it is to say that we know that the

10    courts in this country have repeatedly found that things that

11    did not exist in 1952, like software code, is property subject

12    to wire fraud.  Similarly, all of the cryptocurrencies are

13    property subject to wire fraud.

14         None of those items existed in 1952.  And to take this

15    argument to its logical conclusion would require that the only

16    types of property that could be subject to wire fraud had to

17    exist before 1952, and there's nothing in the statute or the

18    statute's language to suggest that.  There's nothing in the

19    principles of statutory construction to say that as well.

20         If you look at the Second Circuit's decision -- I am not

21    going to pronounce it correctly; I apologize -- *Blaszczak*, they

22    engage in the exact same argument.  And they say *"Cleveland*'s

23    particular selection of factors did not establish rigid

24    criteria for defining property but instead provided permissible

25    consideration."

1    So *Cleveland* -- and I will go back to *Cleveland* in a

2    moment -- did look to history.  There's no dispute that you can

3    look to history to decide that something falls within the legal

4    definition of property.  But the notion that tradition is the

5    gatekeeper is unsupported by either the statute or by the case

6    law.

7    And continuing, the Second Circuit found that, quote, "The

8    considerations relied upon by the Court in *Cleveland* are in

9    addition to considerations recognized in other cases, such as

10   the right to exclude, that was deemed crucial in defining

11   property in *Carpenter*."

12   And they cited another Second Circuit case, the *Flowers*

13   decision for this.  This is consistent with what we see in *Ali*,

14   and it's consistent with the fact that if we turn to the list

15   that the government provided in its brief, on page 9 and pages

16   43 and 44, we gave the Court a sample of all of the different

17   types of property that can exist under this definition, this

18   concept of property.

19   And that was the right to full payment.  It was a mining

20   claim.  It was software source code.  It was jobs.  And it can

21   also be employment.  It can be a copyrighted computer program.

22   It could be computer text files.  It could be a software

23   application.  It could be bitcoin, or it could be bitcoin and

24   an additional cryptocurrency called lightcoin.

25   Again, I think that if we push on this notion that the

1   only property subject to wire fraud had to be property prior to

2   1952, or prior to some indeterminate notion of what makes

3   something historical or traditional versus not, we are

4   disregarding the canons of statutory construction that require

5   we give language its plain and ordinary meaning, and that is to

6   say that property is not defined as a particular item; it is

7   defined as a concept, which is something of value or a valuable

8   entitlement.

9          THE COURT:  So, let me ask you.  Do you agree, then,

10  with the defense on their position that this Court should not

11  employ *Kremen v. Cohen*, in any guise, in any way in arriving at

12  the determination of whether or not these IP blocks are

13  property?

14         MS. FEVE:  No, I think that the Court can engage in

15  the same type of analysis you see the Court doing in *McNally*,

16  in *Cleveland*, *Carpenter*, *Pasquantino*, *Kelly*, *Ali*, invoking the

17  prior four, as well as in several district court decisions

18  which the Court has already referred to -- I am thinking of --

19  I believe it is -- I believe that the Court has previously, in

20  some of its other decisions, referred to the Northern District

21  of Illinois case of *Riggs*, and that you also referred, perhaps,

22  to the Colorado decision, called *Wang*.

23         But that what you do, and what I believe would be

24  appropriate in this trial and what they did in the Second

25  Circuit's *Blaszczak* trial, as with other concepts, to the

1   extent the language is not deemed plain enough on its face, you

2   would tell the jury, "Property is a valuable entitlement or

3   something of value.  You need to determine whether or not the

4   government has put evidence before you of whether or not IP

5   addresses are something of value or valuable entitlement."

6       And that's why the defendants make much of this notion of

7   question of law or question of fact, but there's this gaping

8   silence on the fact that most questions that come before the

9   Court are mixed questions of fact and law.  And this is a mixed

10  question of fact and law.

11      We didn't dispute that we look to the statute and we look

12  to the case law, and that, by its very nature, is legal

13  analysis.  But if you look at every single one of these

14  canonical Supreme Court cases, they were extremely fact-driven.

15      So, for example, in *Kelly*, Justice Kagan makes a very

16  strong point that you can be guilty of wire fraud if you target

17  and usurp government employees' labor.  And one of the things

18  that she said was --

19          THE COURT:  And, by the way, I understand that,

20  generally speaking, these determinations are going to be

21  fact-intensive.  But specifically, I wanted to get an

22  understanding of how you intended to proceed at trial on this

23  question of property and proving that there is in fact

24  property, and then how the jury would be instructed as to

25  property.  So I think that answers my question.

```
 1         With that being said, let me turn to the defense, and I am

 2    not sure if Ms. Bernstein will be speaking on behalf of the

 3    government -- or you will, Ms. Rim?

 4         My opening comments observed that it's one thing for the

 5    Court to take judicial notice of the existence of certain

 6    documents and certain propositions relating to them, but it is

 7    another to accept the factual content as part of the judicial

 8    notice process.  So, let's turn to what you have asked the

 9    Court to take judicial notice of.

10         The excerpt of RSA templates.  It appears that these, the

11    contents have been disputed.  Given that assertion, how is it

12    that the Court should take the content of those templates as

13    true?

14              MS. RIM:  Yes, Your Honor.

15         First, for the record, this is Docket 164-3.  I think we

16    forgot to attach the exhibit to our corrected document, so I

17    just want to make sure we are talking about the same document.

18              THE COURT:  Okay.

19              MS. RIM:  So, the first, I want to say, three

20    exhibits, Exhibits A, B, and C, are excerpts from the

21    Registration Services Agreements from ARIN.  And specifically,

22    we chose these because they came around or just before the time

23    frame alleged in the indictment.

24         What we are asking the Court to take judicial notice of is

25    these statements were made.  That is different from asking the
```

1    Court to decide IP addresses are not property because these

2    contracts say so.  That's a legal conclusion.

3        What we are asking -- the fact that we are asking the

4    Court to take judicial notice of is ARIN wrote these statements

5    in these Registration Service Agreements.  That's not being

6    offered for the truth of the matter asserted.

7            THE COURT:  And how do they help you in your argument

8    that, recognizing that ARIN wrote them, then, so what?  How

9    does that work?

10           MS. RIM:  That goes back to our understanding of what

11   ARIN is.  It is the nonprofit organization that Congress has

12   delegated the responsibility of policing IP addresses to.  It

13   is not just some random company that said, "Oh, IP addresses

14   aren't property."  It is not Microsoft.  It is an authoritative

15   organization even though it is not a government entity.

16       And these facts are not disputed.  I believe the

17   government relied on the same facts in their arguments on the

18   vagueness motion, in their opposition.  They concede and agree

19   with the fact that ARIN is the nongovernmental entity that

20   creates IP policy.

21       And that is not something that can -- not only is

22   it -- well, let me just say, it is not only indisputable, but

23   it's also evidence that is clearly segregable from the facts

24   that would be disputed at trial.

25           THE COURT:  So, is that the take-away and the purpose

1    of these three exhibits, A, B, C, so that the Court can

2    conclude that ARIN is this authoritative entity that you speak

3    of?

4            MS. RIM:  Well, the take-away is that ARIN, the

5    authoritative entity, was taking the position the IP addresses

6    were not property at the time frame alleged in the indictment.

7            THE COURT:  Then it's asking me to take note of more

8    than just they are an authoritative entity but as to what their

9    respective position was at a particular time.

10           MS. RIM:  Right.  So, again, to say that we are

11   offering them for the truth of the matter is to say -- that's

12   as if we were arguing, "The Court should conclude IP addresses

13   are not property because ARIN said so."  That's not what we are

14   arguing.

15       We are arguing that the Court should take judicial notice

16   of the fact that ARIN took that position at the time.  And from

17   that fact, the Court can then make a determination as to

18   whether that would put an ordinary person of reasonable

19   intelligence on notice that an IP address was property for the

20   purposes of a wire fraud statute.

21       That latter step, Your Honor, is not a factual

22   determination.  That is a legal --

23           THE COURT:  All right.  Let me ask for a response to

24   that, Ms. Feve, to the extent that's why it's being offered,

25   not for the truth of the matter, but in order to demonstrate

 1   what someone in a position of the defendants would have

 2   understood.

 3           MS. FEVE:  Your Honor, I don't see how you could

 4   possibly do this under Rule 201.  The ordinary way that we do

 5   this is we have a hearing and we put someone on the stand, and

 6   then I get to cross-examine them and say to them, "These

 7   documents, for example, these don't apply to legacy rights

 8   holders, do they?"

 9       And they would probably say, "No, they do not."  And we

10   would be already in a very different situation where they would

11   be seeking to admit a document that doesn't apply to the

12   netblocks that are at issue here.

13       We would also subject them to cross-examination about,

14   "Are you a government agency?"

15       "No."

16       "Do you have regulatory authority?"

17       "No."

18       "Are you actually underneath the umbrella of ICAM?"

19       "Yes."

20       "Are you one of five regional authorities?"

21       "Yes."

22       "Do you have more authority than the other four to

23   regulate the internet?"

24       "No."

25       "Are you actually driven by this in multi-stakeholder

1  model that is supposed to be deliberately collaborative where

2  you seek the input of various shareholders above you, lateral

3  to you, and below you?"

4       And the answer will be "Yes."

5       "And do all of those stakeholders have input in the policy

6  that you put forth?"

7       "Yes."

8       "Do you have an ability to compel people to follow this

9  policy?"

10      "No."

11      They have absolutely no independent enforcement.  They

12  have carrots.  They can say, "You can sign up for ARIN.  If you

13  sign up, you will have these carrots."  They can say, "There

14  are sticks.  If you don't sign up, then you won't have the

15  benefit of being in our registry," et cetera, et cetera.

16      And we could put all of that on the record, except that

17  then we would be having an evidentiary hearing, and this is a

18  motion to dismiss, and it goes to one of the elements of the

19  offense, and we have properly pled them elements, and so that's

20  why we are saying we want to have a hearing if we are going to

21  do this, but we think a hearing is inappropriate.

22          MR. JONES:  This is Randy Jones, on behalf of

23  Mr. Manoogian.

24      I am a little confused by counsel's argument.  In the

25  CAN-SPAM argument, they relied wholeheartedly on ARIN.

```
 1           THE COURT:  No, and, in fact, I was going to ask

 2    Ms. Feve.

 3           MR. JONES:  And this sounds like a Dr. Fauci

 4    discredit going on for ARIN.  All of a sudden, they want to

 5    cross-examine their witness, the one that they presented a

 6    declaration on, and say, "Don't believe anything that they say.

 7    They are just one of a few agencies out there.  They are not

 8    the authoritative agency that sets policy for that" --

 9           THE COURT:  At the same time, at the CAN-SPAM stage

10    of these proceedings, to the extent that the government relied

11    on ARIN and any materials relating to ARIN, there was no

12    objection or push-back from the defense, was there?

13           MR. JONES:  Yes, there was.

14           THE COURT:  That the Court should not consider any of

15    that information regarding ARIN --

16           MR. JONES:  No.  No.  That's what they argued.  We

17    argued a different -- we had a different argument with respect

18    to CAN-spam.  But what we are saying now is -- they can't now

19    say that ARIN is insignificant.

20           THE COURT:  I am not sure that's what they are

21    saying.  I think what they are saying is that ARIN may be

22    significant, but as to what is being offered by the defense, it

23    may be judicially noticed, but it can't be used in the way

24    that's being offered.

25         But, at the same time, let me inquire, Ms. Feve, there are
```

```
 1   certain parts of this, I take it, that you don't have a problem

 2   with or that you don't object to?

 3            MS. FEVE:  Your Honor, we don't dispute that the

 4   document exists.  But as you have got to --

 5            THE COURT:  You don't dispute that ARIN exists?  You

 6   don't dispute that ARIN has a particular role?

 7            MS. FEVE:  No.  No.

 8            THE COURT:  But, then, I guess, what part of

 9   Exhibits A, B, and C, are disputed?  Because you have indicated

10   that the government's position is that the contents are

11   disputable.

12            MS. FEVE:  Your Honor, I think that we are not just

13   saying it's disputable, but we are looking, again, at rule --

14   the Rule 201 legal standard.  And I just want to go back to it

15   so that I don't misstate it.

16       But it's generally known in this territorial jurisdiction,

17   like, is there a stop sign at this intersection?  We are not in

18   the category of one.  We are, can it be accurately and readily

19   determined from sources whose accuracy cannot reasonably be

20   questioned?

21       If the only question before you was, "Did this RSA exist

22   at this point in time?"  We would say it was completely

23   irrelevant.  We would make other objections to the extent that

24   we were, again, having a hearing, which we are not.  But it's

25   to say that what they want is to evade any sort of
```

1    cross-examination or any sort of hearing where the government

2    gets to put in its own evidence.

3         Everyone seems to think that because we haven't dumped all

4    of our evidence on the Court that we don't think there's other

5    evidence out there.  It is not.  We are trying to practice what

6    would we preach, which is this is a motion to dismiss.  The

7    question is have we properly alleged the elements.  If we have

8    properly alleged the elements and the dispute goes to whether

9    or not we have evidence that IP addresses are property, it goes

10   to the jury.

11        We are not trying to try our case, especially when there

12   is no procedural tool, there's no hearing under 104, there's no

13   hearing under Rule 12, there's no hearing that gets us to a

14   place where the government is putting its evidence on about IP

15   addresses in this case.  There is just no precedent out there

16   for saying we want the Court to invade this problem.

17        The Court cited the Ninth Circuit's *Nukida* decision in one

18   of its prior decisions.  And as you saw there, the question

19   went to subject matter jurisdiction, which is an element,

20   slightly distinguishable from an essential element, but what

21   happened there is strikingly similar to here, and the Ninth

22   Circuit said it was in no way okay, which is that the question

23   was and the defense was the defendant needs to have this case

24   dismissed because the government can't show there was

25   interstate nexus.

1          And the Court heard evidence on whether or not there was

2     an interstate nexus over the government's objection and found

3     that there wasn't.  And it went up to the Ninth Circuit, and

4     the Ninth Circuit said, "That was never your inquiry to make.

5     Yes, the Court always has jurisdiction to determine

6     jurisdiction, but to the extent that a question ever goes to

7     the element, it always goes to the jury."

8          And here, again, if there was actually a contested hearing

9     and not this handful of cherry-picked documents --

10          THE COURT:  When you say "it always goes to the

11     jury," to the extent that there was a stipulation, or it was

12     contained within the government's indictment, that there was a

13     certain allegation, certain information, that the Court could

14     review and from that review determine that, no, the crime

15     charged here is not a crime and that the defendant's motion to

16     dismiss should be granted, that's permitted under Rule 12,

17     isn't it?

18          MS. FEVE:  That would.  But that scenario would be

19     very distinguishable from here.  One of two scenarios -- to

20     answer your question, could there be stipulated facts?  Yes.

21     In *Ali*, there was a stipulated-facts bench trial, but there was

22     still a trial.

23          The other scenario that you were contemplating would be if

24     the government's indictment alleged there was a material scheme

25     to defraud or obtain money or property by means of false

1    pretenses, to wit, the property was honest services, or, to

2    wit, it was a regulatory interest, namely the ability to decide

3    where traffic cones are placed -- if we pled our indictment in

4    a way that made it clear that the property we were referring to

5    was, as a matter of law, insufficient, to wit, we had said it

6    is a regulatory interest, or, to wit, it is honest services

7    fraud, and there was directly controlling precedent, but even

8    then --

9            THE COURT:  And that's essentially what Judge Benitez

10   did in the *United States v. Saathoff* case; is that right?

11           MS. FEVE:  I was actually analogizing more to *Kelly*.

12   That's where Judge Benitez was going in the *Saathoff* case,

13   which is even if we take --

14           THE COURT:  He, as I understand it, ruled on that

15   prior to trial, correct?

16           MS. FEVE:  Yes, Your Honor, he did.

17           THE COURT:  And what allowed him to do it in that

18   case is he had a much more ample indictment with respect to

19   what the government alleged?

20           MS. FEVE:  I believe that that case was exceptional

21   in its procedural posture, which is there had already been a

22   parallel and many people would argue identical factual

23   proceeding in state court.  I would have to go back to compare

24   it.

25           Notably, the defendants did not argue *Saathoff* in their

```
 1    reply brief.  They walked away from it.  Because again, other
 2    than Judge Benitez, it's very clear if you bring a voidness
 3    challenge on its face, or it's as applied.  And both of the
 4    decisions they cite in their reply brief for why this is a pure
 5    question of law are inapposite.
 6         They cite two decisions.  The first involved the Canadian
 7    Association of Duck and Geese Growers in a civil action where
 8    they were saying that this California statute regulating, blah,
 9    blah, was void for vagueness.
10         The second decision they cite, which -- I think it might
11    be Vasquez-Romero, but let me just pull it up so I have it.
12         That is a First Amendment challenge, and it's notable
13    there that there were two things going on.  First, it was the
14    First Amendment challenge.  We don't dispute if they were
15    bringing a First Amendment challenge, they could bring a facial
16    attack on a statute.
17         But the second thing that was going on in the case that
18    they rely on is that it was a First Amendment challenge whose
19    facts were indistinguishable from a prior First Amendment
20    challenge where both the criminal statutes at issue in those
21    two cases were identical, and they involved the
22    criminalization, for the protection of endangered species, and
23    defendants who came forth and said that they, as Native
24    Americans, were having their religious freedom encroached upon
25    by that criminal statute, so it was a First Amendment
```

1    challenge.

2         And here, the Ninth Circuit said it might not have been

3    enough, given that there were some factual questions that

4    needed to be addressed, like whether they were truly in the

5    tribe, et cetera, et cetera.  But they said, "But we don't have

6    to reach that issue because these facts are identical to this

7    prior decision."

8         Again, it's notable that the one criminal case they cite

9    is a First Amendment challenge, and the other decision they

10   cite is a civil action.  But then --

11              THE COURT:  Let me return to Ms. Rim, because we were

12   talking about judicial notice and we were addressing Exhibits A

13   through C and whether or not they are being offered for the

14   truth of the matter asserted.  And then there was assertion or

15   argument that they are not being offered for the truth of the

16   matter asserted, but it does go to whether or not the

17   defendants were placed on notice, which led me to ask you,

18   Ms. Feve, with respect to what your response was to that point.

19   You have given the Court your response to that.

20        And let me inquire, then, back to you, Ms. Rim, at this

21   juncture, given that, in order for this to even come into play,

22   it sounds like you would need to have your client or a

23   defendant testify that, "I had no idea that this would

24   constitute property because I had reviewed these RSA templates

25   and, from what they told me, along with everything else that I

 1   reviewed, this IP address netblock didn't qualify as property."

 2       So, to the extent that that is the way it would play out,

 3   how is the Court supposed to take all that into account here

 4   now at this point?

 5           MS. RIM:  Yes, Your Honor.  I would also like the

 6   opportunity to address all of the arguments that opposing

 7   counsel made.

 8           THE COURT:  There were quite a few.

 9           MS. RIM:  But let me answer the Court's question

10   directly.

11       That is not what we understand the process to be.  What

12   the Court is talking about is what our client might have known,

13   what the defendants might have subjectively known.  That goes

14   on the question of *mens rea*, whether there was an intent, what

15   that intent was, what that knowledge was.

16       And the Court has gotten to that question because the

17   government has put in those facts as if they go to the issue of

18   property.  But that is not the set of facts that courts have

19   ever considered to decide whether something is property.

20       A house is not property one day because one person thought

21   it was property and then not property another day because

22   someone else didn't think it was property.

23       What a person subjectively knew does not have anything to

24   do with the fair notice inquiry.  And I believe we cited that

25   in our motion papers.  I don't have the case off the top of my

1    head.  But it is an objective standard.

2        So the question here is simply not whether the defendants

3    individually believed that these IP addresses were property.

4    The question is what Congress intended when it crafted the wire

5    fraud statute and whether the word "property," if it applies to

6    IP addresses, can comport with the standard of due process.

7        And here, what we are arguing is that the Court -- it

8    cannot be consistent with due process, where the authoritative

9    agency that regulates IP addresses has said it is not property.

10       I know that we are going back to the ARIN statement, and

11   that's because that's the pertinent inquiry.  I think what is

12   driving the confusion here is that property is an element.

13   That's correct.  However, Courts have treated the question of

14   what falls under property as a question of definition.

15       So, what that means is that when, for example -- if the

16   Court goes back to the Supreme Court cases on this issue, the

17   Court doesn't have to go back to the general principles of,

18   "Oh, is it an element, something a jury decides, or not,"

19   because the Supreme Court had addressed the issue of "Is this

20   intangible object property?  Is this intangible object

21   property?"  The Supreme Court has applied the law and given the

22   Court guidance on how it is to analyze the issue.

23       When you read *Carpenter*, *Cleveland*, *Pasquantino*, in each

24   of those cases, what the Supreme Court does is think, "Okay.

25   Does this fall within the plain meaning?  Is the plain meaning

1    so clear that we don't have to look to the history and what

2    Congress might have intended?"

3        And it's clear that, for the word "property," the answer

4    is it is not clear enough.  So the Court has to go into, "What

5    did Congress intend?"  And not only, "What did Congress

6    intend," but, "Was that intention clear enough to the person of

7    average intelligence such that, objectively, from an objective

8    standard, would a reasonable person have known that an IP

9    address is property?"

10            THE COURT:  I guess, in the government's response to

11   my question of, "How are you going to prove your case, and how

12   are you going to demonstrate there's property involved in this

13   case," they stated that they would provide a view of the

14   technical aspects of IP addresses; they would educate the jury

15   on the distribution standpoint, historical and the economic

16   standpoint.  Then, in providing that full picture, then the

17   jury would be in a position to determine whether or not what

18   was involved in this case involved a valuable right so as to

19   qualify as property.

20       So, with that, it sounds like what we are talking about,

21   then, is fact-dependent, is fact-based, and would not lend

22   itself to a pretrial sort of determination.

23       How do you respond to that?

24            MS. RIM:  Your Honor, the premise of the question is

25   what we object to.

1          What if property is not a jury question?  It has never --

2              THE COURT:  But it's one of the elements, isn't it,

3     an instruction that the jury has to find that it's property?

4              MS. RIM:  Property is an element in the sense that

5     the object of the crime has to be to obtain money or property,

6     and the jury does have to find that.

7          But the Court is the one that has traditionally defined

8     what constitutes property if there is a dispute.

9          And that's the issue, Your Honor.  Usually, there's no

10    dispute because, in fraud cases, it's usually money.  So it's

11    only a rare situation where we have an intangible right or

12    intangible object where the dispute comes up, and those are the

13    cases that end up going to the Supreme Court, *McNally*,

14    *Cleveland*, *Carpenter*, *Pasquantino*.

15         And never has the Court said, "This should be remanded so

16    that the jury can decide whether the right to have a video

17    poker license is property."  That's not what the Court decided

18    in *Cleveland*.  The Court said, "It was wrong for the Court to

19    allow this" -- "the right to have a video poker license, to

20    construe that to be property."

21         And the error at issue in *Cleveland* was the motion to

22    dismiss.  The defendant can't challenge, on a motion to dismiss

23    the wire fraud count by saying, "The right to have a poker

24    license is not property."  The trial court denied that; allowed

25    it to go to trial; the defendant was convicted; and the Supreme

1    Court reversed it.

2         When the Supreme Court decides that the something like

3    property is a jury question, it doesn't decide that the right

4    to have a video poker license is not property, which is what

5    the Court decided here.  It would say, "This should be remanded

6    because it is something the jury should have decided."

7         So this is not an issue that goes to a jury.  There's

8    issues of -- I am sorry.  Let me just explain.  There's -- I

9    think the confusion here is that there's a difference

10   between -- it is the Court's obligation to instruct the jury as

11   to matters of law, and that is why the courts have been the

12   ones to instruct the jury that such-and-such is or is not

13   property.  Obviously, when the Court decides as a matter of law

14   something is not property, it doesn't go to the jury at all.

15   The counts get dismissed.

16        But I think just going back to -- and I wanted to address

17   the issue of the cost of IP addresses and how IP addresses

18   work, so on, so forth.

19        Again, from our perspective, that is not -- those are

20   facts that may go to intent.  They may go to other parts of the

21   crime.  But they are not critical or relevant for the Court to

22   decide whether or not an IP address is property.

23        Again, what the Court needs to think about is what did

24   Congress intend and was there fair notice.  Those are legal

25   determinations.

1         So, going back to the request for judicial notice -- which
2    is the Court's original question -- I want to simplify the fact
3    that we are offering to the Court.  We are offering to the
4    Court -- we are offering that the Court accept that, in 2011,
5    ARIN said in their RSA IP addresses are not property.  We are
6    asking the Court to accept that, in 2004, ARIN said in their
7    RSA IP addresses are not property.  They said the same thing in
8    2007.
9         We are asking the Court to accept that the FCC published a
10   paper -- whether in its official policy statement or not, that
11   it is available on a website -- that also agreed that IP
12   addresses are not property.
13        That ARIN published an article, Exhibit E, which I believe
14   the Court relied on in its order previously, that IP addresses
15   are not property.  And that set forth all the reasons why.
16        So, these facts, that ARIN said these things, that the FCC
17   took these positions, that the Canadian government said these
18   things, there's no dispute that those things were said at the
19   time that they were said.  And that's why I think, coming back
20   to the difference between saying, "You are asking the Court to
21   accept this as the truth of the matter asserted," what the
22   government is really saying --
23             THE COURT:  I am sorry.  You had run through A, B, C,
24   D, and did you also describe the E, F, the articles in the
25   *Business Law Today* and *Bloomberg*?  Are they also offered for

1    the same proposition?

2            MS. RIM:  Yes, that ARIN made these statements; that

3    ARIN issued these articles, and in them, not only stated that

4    IP addresses are not property, but, you know, put forth legal

5    arguments as to why they were not property.

6            THE COURT:  Is that true, also, as to, then,

7    Exhibit G, the letter from the NTIA and the -- certainly, it is

8    as to Canada's Department of Industry letter?

9            MS. RIM:  Yes, as to Exhibit G and H, and I.  In I --

10   well, "I" was part of the case.  It was an exhibit to the case.

11           THE COURT:  And let me ask you, quickly, Ms. Feve,

12   with respect to these letters, what is your view as to whether

13   or not the defense would be entitled to offer those at trial?

14           MS. FEVE:  I think almost -- I think very few of them

15   would be admissible.

16       First, they would actually have to authenticate them,

17   which they haven't done here.  There would obviously then be

18   relevance objections.  And in particular, for the RSAs, there

19   would be a huge relevance objection because saying something

20   from 2007 is relevant to a conspiracy that begins in 2011, on

21   its face, to me, makes no sense.

22       Furthermore, pushing back on just the RSAs, do the RSAs

23   apply to the netblocks at issue here?  Is there evidence the

24   defendants ever saw these RSAs?

25           There would be all of this predicate evidence that would

1   go in before it would be either authenticated or deemed

2   relevant, as opposed to right now, which is in this somewhat

3   convenient vacuum.

4           THE COURT:  Your position is the fact that in 2004,

5   2007, 2010, there was a consensus throughout this industry that

6   IP netblocks are not property --

7           MS. FEVE:  We would dispute that.  We would say there

8   was not a consensus, actually.

9           THE COURT:  Then, to the extent that there was

10  disagreement but some took the view it was not property, then

11  is that something that the jury should be informed about?

12          MS. FEVE:  No.  I think it really is up to the

13  defendants.  If the defendants get up on the stand -- it's

14  similar to why they didn't know.

15      Counsel alluded to the fact that, yes, one of our

16  obligations by bearing the burden of proof is the *mens rea*.  We

17  have to show this was knowing and deliberate to make sure

18  there's no due-process issue with the criminal statute.  We

19  understand that we have to prove the state of mind for these

20  defendants.  That's part of why the pricing information is

21  going to be so important.  It's part of why the contract is

22  going to be --

23          THE COURT:  I guess I keep coming back to this

24  question of property and how will we determine property and

25  what is the proper evidence to consider on this question.

```
 1              MS. FEVE:   There are two cases that I really want to
 2    emphasize for a moment.   The first is Nukida, and I will talk
 3    about that in a second.   That's the Ninth Circuit decision.
 4         But the other decision is the Supreme Court case called
 5    United States v. Gaudin, G-A-U-D-I-N, and it's 515 U.S. 506,
 6    1995.   And it affirmed an en banc Ninth Circuit decision, which
 7    is AF.3d. 943, Ninth Circuit, 1994.
 8         And the issue there, which I did not know, is that prior
 9    to 1994, in 1001 prosecutions, materiality was determined by
10    the judge.   It was exactly the situation that counsel is
11    arguing to you here, which is that, "Yes, this is an element.
12    If you look at the model elements" -- which, by the way, Your
13    Honor, I saw you looking for them; you may have found them; if
14    not, they are at the bottom of page 18 of our brief, is the
15    Ninth Circuit model jury instruction for wire fraud.
16         But prior to 1994, in a 1001, you submitted the elements
17    to the jury, except that the Court told the jury what to find,
18    whether or not the statement was material.
19         And there was an interesting split, where the Ninth
20    Circuit went against the grain of everyone else, and said, "No,
21    absolutely not.   The Fifth and Sixth Amendments require that
22    all elements be submitted to the jury.   Materiality is an
23    element; therefore, it must go to the jury."
24         And the Ninth Circuit en banc decision went up to the
25    Supreme Court, and the Supreme Court affirmed.   They said,
```

1   "Whether a statement is material requires the determination of

2   a least two subsidiary questions of purely historical fact:

3   What statement was made, and what decision was the agency

4   trying to make?"  They were so banal that it seemed like, "Why

5   bother submitting it to a jury?"

6          But what the Court said, unequivocally, is, "If it is an

7   element, it goes to the jury."

8          And the Ninth Circuit since then -- mind you, it was a

9   Ninth Circuit case to begin with -- has repeatedly and

10  consistently applied *Gaudin* across the board, whether it is a

11  jurisdictional element or an essential element.  The test is,

12  if it is an element, the Court cannot decide it.  The Court can

13  unequivocally instruct the jury.  That is, in fact, the Court's

14  role.

15         And *Gaudin* and its progeny are very quick to note that, in

16  many ways, this preserves each institution's vital role, which

17  is it is the Court's role to instruct the jury on the law; it

18  is the jury's role to apply that law to the facts.

19              THE COURT:  I don't think anyone disagrees that, in

20  general, the jury is tasked, is required to make its findings

21  with respect to each of the elements.

22         But here, the arguments being presented are ones couched

23  on due-process considerations, on notice.  And then, beyond

24  that, as I am looking at this, I am trying to determine how is

25  it that we are going to have this question of property

1    addressed by a trier of fact.

2         Looking at 8.121, the mail fraud instructions, the first

3    element does reference the scheme to defraud or obtaining money

4    or property.  It doesn't appear there's anything --

5              MS. FEVE:  Your Honor, wouldn't it be 8.124, for wire

6    fraud?

7              THE COURT:  Yes.

8              MS. FEVE:  Just so the record is clear.

9              THE COURT:  There is not an actual instruction there.

10             MS. FEVE:  Okay.

11             THE COURT:  So I expect that they probably kind of

12   borrow 121.  Instead, there's just a bunch of comments for

13   8.124.  So I expect, because they are so similar, that at the

14   end of the day, you would have something like this.

15        But in any event, you don't have any reference to

16   property.  Are you familiar with a Ninth Circuit instruction

17   that defines property?

18             MS. FEVE:  Your Honor, we set forth the Ninth Circuit

19   model jury instruction, but I actually did research this

20   element, about the Ninth Circuit and about it being an element.

21        I also notice that I believe I heard counsel say they do

22   recognize property is an element because there's no question

23   that we have to prove that it's property as opposed to a

24   regulatory interest or a money interest.

25        But I have a cite for you, so if you give me a moment -- I

1    do see that my colleague across the bench is very eager to talk

2    to you, so I can find that cite, if you want, while he

3    addresses the Court.

4         MR. WIECHERT:  I was going to tag in for a minute.

5         THE COURT:  Sure.

6         MR. WIECHERT:  I think the question the Court posed

7    at the outset of the hearing is the totally right question,

8    which is how do we present to the jury, if this actually is a

9    jury question, the factors that the jury is to consider in

10   making a determination under 1343 whether or not an IP address

11   is property?

12        And before I came to the hearing, I was thinking, "All

13   right.  Are we are going to set forth, like, ten factors?  Can

14   it be transferred?  Does it have value?  Historically, how has

15   it been treated?  How is it dissimilar or similar to telephone

16   numbers, which aren't property?  How is it similar or

17   dissimilar to copyrights, which aren't property?  How is it

18   similar or dissimilar to licensing, which is not property?"

19        And then, "How do you take into account the statement by

20   the agency?"  And it is not a federal agency, but it is about

21   as close or akin to an administrative agency as there is in

22   this case.  "How do you take into account what ARIN says as to

23   whether or not it's property?"  And then you list those 10 or

24   12 factors.

25        Do you have, at the end of the day, part of the

 1    instruction being, "Well, each of these factors can be
 2    considered, but it's up to you, Jury, to decide how much weight
 3    to give each of these factors because none of those factors are
 4    determinative"?
 5         And that morass that we are going to ask the jury to get
 6    involved in, at the end of the day, could consume weeks because
 7    it would go into the entire history of how an IP address was
 8    created.  Was it utilized?  Were they typically abandoned after
 9    a certain period of time?  What all -- is the fact that they
10    can be purchased determinative?  Because you can purchase
11    telephone numbers, and that wasn't determinative.
12         So the Ninth Circuit doesn't have an instruction with
13    regard to what is property.  It has an instruction that defines
14    that -- the elements of mail fraud and wire fraud, but it
15    doesn't define what property is.  And if you go to the
16    commentary to the Ninth Circuit instruction, it cites a case
17    that says that licensing registration is not.  So that's the
18    only guidance the Ninth Circuit gives.
19         What this Court will be doing is creating an instruction
20    out of whole cloth as to whether or not -- what a jury can
21    decide is property or not.
22         And the notion that a judge cannot, pre-trial, determine
23    whether or not an element of the offense is satisfied, I just
24    don't agree with.
25         And I think that the cases that are cited by the Court in

1    its original ruling in April are helpful on this.  The Court

2    cited three cases, *United States v. Riggs*, *United States v.*

3    *Alkaabi*, and *United States v. Middendorf*.  And in all three of

4    those cases, there were motions to dismiss made on the basis of

5    whether or not the certain item in play was property under the

6    statute.  And in two of those cases, the Court found that it

7    was property.

8        The Court didn't find, "No, this is a jury question.  It

9    can go to the jury."  The Court found that trade secrets that

10   were held by Bell South were property, and the Court found that

11   information about inspections to be done on audits by the

12   Public Company Accounting Oversight Board were also property.

13       And then, in *Alkaabi*, the Court finds that information --

14   that, basically, the taking of tests by people who aren't the

15   people actually reporting the scores, that didn't decline or

16   didn't impede on a property right that was held by the

17   educational testing service.  And again, the Court there looked

18   outside the record to see how the educational testing service

19   operated.  It looked outside the record to see what use was

20   made by colleges of ETS scores on the TOEFL exam, so Courts do

21   look outside the record and do make the determination.

22       If this were a case where it was alleged that a crime

23   occurred in Yellowstone Park, and the indictment alleged that a

24   crime occurred in Yellowstone National Park within the federal

25   jurisdiction, and there's venue in the Southern District of

1    California, it would be incumbent upon this Court to say, "I am

2    sorry.  An element of the offense is venue.  This indictment

3    alleges that the offense took place in Yellowstone National

4    Park.  I can go outside the record and not make the jury look

5    at a map to determine indeed Yellowstone Park is not within the

6    Southern District of California," and dismiss the case.

7         In this case, we are saying to the Court that the Court

8    needs to make the same kind of determination.

9         And the other reason the Court needs to make the

10   determination is not only if the Court decides that it's not

11   property, that issue shouldn't go to the jury.  But even if the

12   Court does decide that it's property, it should make the

13   determination that, as a matter of notice and a matter of

14   fairness and under the rule of lenity, that the case should not

15   go to the jury.

16        The *Alkaabi* case, which was a case cited by the Court,

17   quotes that the rule of lenity serves to ensure fair warning

18   and that legislature is not -- that legislatures, not the

19   courts, define criminal liability.

20        Most of the time Courts cite to the rule of lenity is

21   after they have already decided, in the property context, that

22   the item that the government alleging is property is actually

23   not property.

24        But from our standpoint, Your Honor, that's really kind

25   of, in this case, shirking the ultimate obligation.  Because,

 1   here, the obligation is to look at all of the material that we

 2   have submitted and make the determination that there could not

 3   have been fair warning to anyone, in the 2011, 2012, 2013 time

 4   period, that IP addresses were property.  And the reasons are

 5   legion, between the fact that the closest thing to an IP

 6   address is a telephone number, the fact that the agency that's

 7   required to basically be the gatekeeper on IP addresses says

 8   they are not property.

 9       And under those circumstances, even if the Court was to

10   make the determination that it was property, I don't think the

11   Court can make the determination that there was fair warning to

12   anyone that these were property because the whole idea of an IP

13   address came up in the early '90s, and we are talking about

14   maybe two decades with no cases, none at all, that have ever

15   addressed the issue.  So, from a fair warning, lenity

16   standpoint, I think this is a really easy decision.

17           THE COURT:  But the argument made by Ms. Feve is that

18   since 1953, or whenever this wire fraud statute was enacted,

19   new types of property have come into existence, including

20   bitcoins, cryptocurrency, different types of computer-related

21   software.  And certainly, Congress could not have imagined that

22   these things would develop.

23       So, until they did come into existence, there was no law

24   that this is property.  Instead, the meaning of property came

25   to encompass, came to include things like bitcoin.

1    So, for purposes of notice, it is not required that a

2    defendant know precisely as to every type of object, item,

3    intellectual property, that it qualifies as property so much as

4    the nature of what it is would inform somebody that it is

5    property.  It does have value.  And it is that value that

6    qualifies it as property for purposes of 1343.

7    How do you respond?

8         MR. WIECHERT:  I really like the bitcoin example,

9    because the Court is right.  It is a novel asset.

10   But the SEC to bitcoin is ARIN to IP addresses.  And the

11   SEC came out, basically immediately, and said that, "Bitcoin is

12   securities, and we are going to regulate it."  And that's

13   totally contra to what happened with regard to IP addresses.

14   In IP addresses, the SEC of IP addresses said they are not

15   property.

16   And so, to the extent that the Court is going to, kind of,

17   look at all of the attributes of property and look at bitcoin,

18   and see how bitcoin is traded, and what was done with bitcoin,

19   and whether or not you can go into a store and use bitcoin to

20   buy a typewriter -- I guess you don't buy typewriters

21   anymore -- but a computer or paintings or whatever, yeah.  But

22   that's far different than this.

23   And, again, in my mind, the closest thing to an IP address

24   is a telephone number.  An IP address is a number.  That's it.

25   And to the extent that telephone numbers are not property, the

1    closest thing to -- in my mind, the closest analogy is

2    something that should be dispositive for the defendants.

3        But if you say to the jury, "Here are ten factors, and one

4    of the factors is telephone numbers aren't property.  You

5    consider that," who knows what the jury does with that?

6        And the suggestion that Rule 29 is, kind of, the best way

7    to ferret all this out, it just doesn't.  It hasn't happened.

8    We know it didn't happen from the *Kelly* case.  You know that

9    Rule 29 motions were made in *Kelly* after the government's case,

10   after the close of evidence.  When the jury comes back, there's

11   going to be a motion for new trial.  That district court upheld

12   the convictions.  They would have given a definition of

13   property to the jurors that basically said that somebody has a

14   right to two more lanes on a bridge going between New Jersey

15   and New York.  And then it goes up to the Second Circuit,

16   and -- I am sorry -- Third Circuit.  And the Third Circuit

17   agrees.  And then nine justices of the Supreme Court say, "All

18   you judges, you are all wrong.  I mean, you aren't even close

19   to being right."

20       And so -- but the standard that was being applied by those

21   judges is the Rule 29, we are going to take every inference in

22   favor of the government's case and use the standard of could a

23   reasonable juror make the determination that this was property?

24       And to me, that's just not a standard that's going to get

25   us anywhere.  Because if the jury comes back and convicts, they

```
 1     will have that list of factors.  The Court will look at those
 2     factors and say, "Well, sure.  Some reasonable juror could
 3     focus on this factor and say, because money was paid for IP
 4     addresses, that that he must be property, and consider that
 5     dispositive."  And then the case goes up to the Ninth Circuit.
 6         And maybe the Ninth Circuit, the most reversed circuit in
 7     the country, agrees.  So we are back before the Supreme Court
 8     asking for a nine-zero decision in our favor.
 9         But we don't want to take these gentlemen up there.  I
10     don't feel like traveling to Washington in the next couple of
11     years, just given what the circumstances are in terms of the
12     virus.  So that's why we are asking the Court to do what I
13     think should have been done in Cleveland, asking the Court to
14     do what should have been done in McNally, what should have been
15     done in Kelly, and that is, take the bull by the horns.
16             THE COURT:  Thank you.
17         Ms. Feve, the cases referenced, Cleveland, for example,
18     are ones -- and Carpenter -- are ones where the facts are much
19     more limited in terms of what was at stake, what was being
20     obtained?
21         And here, the fact that we have this large amount of
22     information relating to the technical standpoint evidence, the
23     distribution standpoint evidence, the historical, the economic
24     aspects, all of that going to this issue of property, it does
25     seem somewhat unruly as far as how we expect the jury to sort
```

1    through all of that and arriving at the determination of

2    whether or not we have property, given that IP address

3    netblocks weren't things that most people are familiar with,

4    and, certainly, I wasn't familiar with before this case and,

5    little by little, have learned more about it, where at least I

6    can say "IP address netblocks."

7        But having said that, to place on the jury the

8    determination of determining whether all of this evidence

9    qualifies as property, it seems like it could be confounding.

10   And more so, given what we appear to have at this point as to

11   any number of opinions that these netblocks are not property.

12       So, then, the question is going to be one of evidence at

13   trial, what parts of this will be admissible.  And then, to the

14   extent that it is not admissible or parts of it are admissible,

15   then how we will instruct the jury.

16       Because I expect that the jury is going to have a

17   question:  "How do we determine what property is?"  And then I

18   will be calling all of you here, and go, "All right.  This is

19   the question.  We gave them the stock instruction about

20   property.  They want to know, 'How do we determine if something

21   is property?'"  Because these IP addresses, they exist in the

22   ether.  I can't put my hands on them.  And I understand what

23   you are saying, what your theory is, but is that enough?  So

24   they are going to want to know.  What am I going to tell them?

25              MS. FEVE:  I hear that you think our case lacks jury

 1   appeal, and I get that.  I have been doing crypto/cyber cases

 2   long enough to understand it is technical.

 3        My point as far as this is hard, and it's much easier to

 4   understand drugs and guns and money than it is to understand IP

 5   addresses, absolutely.  It's one of the really hard cases to

 6   bring, but we do patent cases and submit patent cases to

 7   juries.  So, at some point, our system has decided that it is

 8   on the litigators to figure out a way to make things that are

 9   not accessible --

10             THE COURT:  But with patent cases, though, there's

11   laws, and there's interpretation of how to construct terms.  It

12   is hard.  It is probably the hardest thing I do.  But at least

13   there, you have the definitions as a starting point.

14        Now we are talking about trying to marry 1343 and IP

15   addresses, where currently we do have laws that address what

16   the defendants allegedly did, with respect to the CAN-SPAM.

17   And then the question becomes whether or not that, then, is

18   something that can be grafted onto or extended to 1343.

19             MS. FEVE:  Well, the Court had the case I brought for

20   a computer-hacking case a little while ago, and you remember

21   that you had to hear evidence about fuzzing.  You had never

22   heard about fuzzing -- which is a computer-intrusion

23   technique -- before then.

24        Then, as now, my job is going to be to prep witnesses, put

25   them on the stand, and make sure that somebody who has no

1   technical background can leave that hearing or trial

2   understanding what a fuzzing computer-intrusion attack is.

3        I get that these cases are not for everybody.  But at the

4   end of the day, we don't dismiss cases because they lack jury

5   appeal or they are technical.  We dismiss them because there's

6   a procedural tool that warrants the dismissal.

7        And you asked me before I, perhaps foolishly, yielded the

8   floor --

9             THE COURT:  No, I think I granted him.

10            MS. FEVE:  -- let me recall that the question was

11   where is the element and how can I show you that --

12            THE COURT:  Right.

13            MS. FEVE:  So, on page 18 of our brief, we quote

14   model jury instruction 8.124.  I see that you have a book in

15   front of you.  I got mine from the Ninth Circuit website.

16       What I included on page 18 was the model jury instruction.

17            THE COURT:  What page is this in your papers?

18            MS. FEVE:  18.

19            THE COURT:  One second.

20            MS. FEVE:  The bottom half of the page.

21       The first element says, "First, the defendant knowingly

22   participated in, devised, intended to devise, a scheme or plan

23   to defraud or a scheme or plan for obtaining money, or

24   property, by means of false or fraudulent pretenses,

25   representations, or promises."

1    Now, you then asked me what case law do you have to

2    support this?  And I have *Pasquantino*.

3           THE COURT:  I am not sure if I asked you what case

4    law.

5           MS. FEVE:  You me what legal support I had for

6    property being an element, so if I could direct the Court's

7    attention --

8           THE COURT:  Well, I think it is part of this element.

9           MS. FEVE:  Right.  And the Supreme Court has

10   confirmed property is an element.

11          THE COURT:  I get that.  That's why we are here.

12          MS. FEVE:  I agree.  But what I would like to address

13   is, first of all, property is an element, so it needs to go to

14   the jury.

15      Second of all, the defense's argument that the Court rules

16   on jurisdiction does not actually accurately capture the case

17   law.  There are two Ninth Circuit decisions that speak to

18   exactly the situation envisioned by the defense, which is where

19   you have to determine is it Yellowstone National Park or is it

20   Anchorage Correctional Facility or is it subject to U.S.

21   maritime law.

22      In *United States v. Mujahid*, 799 F.3d. 1228, the charges

23   were for sexual abuse, so they had to occur within a place

24   subject to federal jurisdiction, in this case, a prison.  So

25   the Court had to define for the jury, what is "subject."  And

1   in this case, they did take judicial notice -- excuse me --

2   they did hear facts to determine jurisdiction, but the Ninth

3   Circuit said you still have to submit the question to the jury.

4   You, the Court, can rule on your jurisdiction, and you can

5   assess it as a preliminary threshold question, but *Mujahid*

6   specifically said, quote, "The jury determines each element of

7   the crime."

8            THE COURT:  At the same time, it's clear that "An

9   indictment's failure to detail each element of the charged

10  offense generally constitutes a fatal defect under Rule 12."

11           MS. FEVE:  That's true.

12           THE COURT:  And the question is whether or not what

13  we have here can be viewed as a fatal defect.

14       And the defense is arguing that, yes, because property is

15  an element and what the government has offered as to the

16  alleged property, IP address netblocks, does not qualify for

17  property, it has not been viewed as property, that it is a

18  fatal defect, and as a result, a motion to dismiss can be

19  granted at this time.

20           MS. FEVE:  I don't think that's what Rule 12 says

21  though --

22           MS. BERNSTEIN:  Your Honor?

23           MS. FEVE:  -- is it says, "Did you use the correct

24  words?"

25           THE COURT:  I am sorry?  Did somebody speak on the

1    phone?

2            MS. BERNSTEIN:  Yes.  This is Whitney Bernstein.  I

3    wanted to make known, when there's an appropriate pause, I

4    would like to address what the Court just asked.

5        I didn't mean to speak over Ms. Feve --

6            THE COURT:  Ms. Feve.

7            MS. BERNSTEIN:  -- I just wanted to raise my hand

8    telephonically.

9            MS. FEVE:  The second decision I just point to is

10   Genora (phonetic)-- and I hear the Court saying it is a fatal

11   defect, except there is literally no precedent that says

12   property has this legal definition that requires no facts, even

13   in *Kelly*, which everyone keeps saying, "Oh, it should have just

14   gone back."

15       Justice Kagan said, "We first consider whether

16   petitioner's conduct falls within the literal terms of the wire

17   fraud statute."

18       And what we see is they don't refer to a list of what's

19   been property in the past.  You know, was it a house?  Was it a

20   horse?  Was it money?  There's no list of you are either in or

21   out.  It is a category.  Is it a valuable entitlement or is it

22   something of value?  And this notion that we have improperly

23   alleged that it's something of value, is just -- it is --

24   there's no legal support for saying we don't get to put the

25   facts before the jury and to simply argue about what is the

1    legal definition of property for purposes of wire fraud.

2         Because, again —— what ARIN thinks property is for

3    purposes of their civil contracts is in no way dispositive as

4    to what Congress believed property to be for purposes of 1343.

5    And that's why, when the Supreme Court is looking at it, they

6    don't look at examples of property; they look at *Black's Law*

7    *Dictionary* for what is this word's common meaning.

8         There's an chicken/egg paradox with this argument, which

9    is to say you cannot bring wire fraud cases unless there has

10   already been a wire fraud case for that very thing.

11              THE COURT:  And I get that, and I am beyond that.

12        And I am just trying to focus on this question of

13   property.  And to the extent that the jury has a question, how

14   is it that you believe we will be able to instruct the jury on

15   how it is they are to go about concluding that ——

16              MS. FEVE:  I believe that you will do what was

17   affirmed in the Second Circuit decision in *Blaszczak*, which is

18   you will advise them what is the definition of property, and

19   then the question will be did we show that IP addresses are

20   something of value or valuable entitlement.

21              THE COURT:  Ms. Bernstein —— is it okay if I let

22   Ms. Bernstein speak?

23              MS. RIM:  Yes.

24              THE COURT:  Ms. Bernstein, did you want to say

25   something?

1          MS. BERNSTEIN:  Thank you.  Yes, Your Honor.

2      I think I just heard Ms. Feve say that she has the right

3  to argue to the jury what the legal definition of property is,

4  and that's the point, that we are now an hour into this

5  hearing, and it is still not clear how this will proceed if

6  these charges go to a jury, because it is not clear what the

7  jury definition of property would be, what the Court's

8  instruction of property would be, because it is unprecedented

9  to have the jury argue about the statutory construction and the

10  legal definition of property.

11      The defense is not here --

12          THE COURT:  I think --

13          MS. BERNSTEIN:  I am sorry.

14          THE COURT:  I think Ms. Feve is basically breaking it

15  down to, I guess, its essence; that is, that, in the event that

16  the jury had a question, "How do we go about determining if

17  something is property," that the Court would instruct them that

18  it is an item of value.  It is something with inherent value.

19  It will be something along those lines, which I recognize is

20  general.

21      And then, in response to that, I expect that the defendant

22  would argue, "No, that's not good enough," or, "No, that's not

23  correct," or that, you know, "Given all of these other facts

24  that you have to the effect that this isn't property, that we

25  can't just leave it to the jury to make these important

1    determinations."

2        Ms. Bernstein --

3            MS. BERNSTEIN:  Yes, Your Honor.

4        That's never been left to the jury, to make a

5    determination as to whether the threshold crime that is charged

6    rises to the level of an offense under the law, under the

7    statute charged, one for which there are not due-process or

8    fair-notice concerns.

9        And I think that what the issue -- we submitted a number

10   of documents for the Court to take judicial notice of, and it

11   seems that the government is not disputing the accuracy of

12   those documents, but just saying that they would have some

13   objections based on relevance or other objections.  And even

14   when the government explains how the government can demonstrate

15   to the jury that IP addresses are property, the government is

16   running through various things that are what the defendant saw

17   or what the defendants might have known, but not things that go

18   to the legal definition of property.

19       There is no self-definition of property.  It is nowhere in

20   the Ninth Circuit's entire book of jury instructions because it

21   is not left to the jury to decide.  It is not about

22   materiality.  It is not patent cases that there are traditional

23   definitions.

24       And as the Court noted, there are laws that reach

25   (inaudible) and the government, as the government has in many

1    cases before, as the Courts have recently and continuously

2    recognized, applying wire fraud to these facts is a stretch.

3        And it's important to understand, I think, that when we

4    get down to this definition, our point is that there is no --

5    there is no precedent for this Court's deeming IP addresses as

6    property.  There's no precedent for the jury to do that either.

7        Not only is there no precedent for that, but particularly

8    during the context of the IP indictment, our clients were not

9    on notice of it.

10       As Mr. Wiechert said earlier, the issue back and forth

11   about what is or isn't property, the fact that we are all

12   here --

13           THE COURT:  Ms. Bernstein, you agree that Congress

14   was not required to identify every possible form of property

15   when it devised 1343, in that there's a certain kind of

16   commonsense application determining what is property; and that,

17   with that, the jury, over the course of time, would be able to

18   find things like bitcoin and source code as property, even

19   though it might not have even been in existence ten years ago.

20           MS. BERNSTEIN:  I do agree that Congress has no

21   obligation to define every single imaginable form of property

22   that can be reached by the statute, but I do not agree it would

23   be for the jury to define that.  And I don't think there's a

24   single case that anyone has proffered to the Court suggesting

25   that the jury, in fact, made the determination that a contested

1  item was, in fact, property for purposes of the statute.   I

2  think those decisions, as the case law has demonstrated, have

3  always rested with the Court pretrial.

4           MS. RIM:   Your Honor, just to add to that, it is a

5  perfect segue to the point I would like to make, which is this.

6  The government is arguing that juries can determine property

7  rights, and that has never been the case in criminal cases, in

8  civil cases, in any context.   Property rights are a matter of

9  law to be decided by the Court.   It is not up to the jury

10 whether something is or is not property.

11     The government talks about, "Oh, it is an element," you

12 know, "and the statute doesn't have to have a list of what is

13 and isn't property."   We are not arguing any of that.

14     What we are saying -- and actually, the case that is

15 probably the most on point on this is *Carpenter* and maybe even

16 *Pasquantino*.   Those are cases in which the Supreme Court found,

17 as a matter of law, that something was property.

18     In *Carpenter*, the Court found confidential business

19 information is property, and it found that based upon the fact

20 it has long been recognized as property, and it went back into

21 the history and the law and how confidential business

22 information has been treated.

23     That doesn't mean that the wire fraud statute and mail

24 fraud statute listed confidential information as a statutory

25 definition of property.

1            THE COURT:  But in *Carpenter*, there wasn't a

2    requirement for the Court to make that threshold determination,

3    correct, that confidential business information is property?

4            MS. RIM:  That was the issue before the Court, Your

5    Honor.

6            THE COURT:  That was the issue in front of the

7    Supreme Court.

8            MS. RIM:  Correct.  But if this were a jury question,

9    then the Supreme Court would have reversed the conviction in

10   *Carpenter* and said, "District Court, you should have allowed

11   the jury to decide whether confidential business information

12   was property."  It wouldn't have decided as a matter of law

13   that it is property.  That's what the Supreme Court did in

14   *Carpenter*.

15       And it's actually, when the government cites *Gaudin*,

16   G-A-U-D-I-N -- we cited that case as a contrast.  What the

17   government does, when it argues that property can go to the

18   jury, it doesn't actually rely on Supreme Court cases or Ninth

19   Circuit cases about property.  What it relies on are cases

20   about other elements that are jury questions.

21       Materiality -- in *Gaudin*, what happened is that the

22   District Court made a finding that a false statement was

23   material as a matter of law and instructed the jury that way.

24   The Supreme Court reversed and said, "That's a jury question."

25   It didn't say, "Oh, it is not material as a matter of law."  It

1    said, "That's a jury question."  It said that "The elements of

2    materiality is a question for the jury and, therefore, this

3    conviction is reversed and remanded," and I assume they had a

4    new trial or there was some negotiation.  But the proper

5    procedure in *Gaudin*, because materiality is a jury question,

6    was a remand.

7        In *Carpenter* and *Pasquantino*, the Supreme Court affirmed

8    the conviction and said, "As a matter of law, the right to

9    payment based on a tax statute, where this is an entitlement,

10   that is property, because we have always treated statutory

11   obligations to get money as property."

12            THE COURT:  But it didn't require the Supreme Court

13   to make a conclusion for the lower Court to arrive at that

14   conclusion or for the jury to arrive at that conclusion,

15   correct?

16            MS. RIM:  Your Honor, no, that's not correct.  In

17   neither *Pasquantino* or *Carpenter* was the issue that the jury

18   made that decision.

19            THE COURT:  But, ultimately, that responsibility was

20   given to the jury, and they made the determination, and then

21   the Court thereafter found that that was proper.

22            MS. RIM:  Your Honor, I don't agree, respectfully.

23            THE COURT:  So, you are saying that after that

24   decision, the Court concluded that, given what was involved,

25   that, then, the jury should have been instructed that that was,

1    in fact, property?

2          MS. RIM:  What I am saying is, Your Honor, if this

3    were a jury question, we wouldn't have decisions where the

4    Supreme Court finds as a matter of law that some things are

5    property and some things are not property, and that's the line

6    of cases that we have when we are talking about property.

7          The Supreme Court says licenses are not property, or they

8    say the confidential business information is property.  They

9    don't say, "Actually, Courts shouldn't be the one to decide

10   this; the jury should decide it."  And that's how they treat

11   elements, like materiality, where the Court has made a

12   determination that this is a jury question.

13         So all of this is to say, this is -- we are talking about

14   a definition.  We are talking about a legal definition.  It is

15   a question that the Court must decide.  There is not one case

16   that has said that it's proper for a jury to decide whether

17   something is property.  Juries do not decide property rights.

18         In fact, *Kremen v. Cohen*, even in the --

19         THE COURT:  I don't know that I agree with that

20   argument.

21         To the extent that the instruction says, "You must find as

22   part of this scheme that money or property was obtained,"

23   there's no requirement that a jury cannot determine whether

24   money or a horse or bitcoin is property.  They can make that

25   determination.  In this case, the question is whether or not,

1   based upon information they will be provided, whether or not

2   they can conclude that, in fact, IP address netblocks

3   constitute property.

4        So, my primary concern here is with respect to this

5   question of how this case will go forward to trial, because

6   frankly, as I said at the beginning, I am prepared to take

7   judicial notice of any number of these documents, but I am not

8   prepared to take judicial notice of what you are offering them

9   for, which is that each of these documents stands for the

10  proposition that IP addresses are not property.  I don't think

11  I can do that.

12       And so, to the extent that I am not prepared to do that,

13  then, next, it is required of the Court to determine whether or

14  not there's something about the indictment, which implicates

15  the defendants' due-process rights, such that there's

16  inadequate notice provided to them by virtue of what we have

17  before us.

18       But, again, as a starting point, in terms of the facts

19  that are properly before the Court, I still lean towards where

20  I left off with our last order, which is that the factual

21  record before the Court does not permit it to reach the

22  determinations that are sought.

23       Mr. Jones?

24            MR. JONES:  If that's the case, I think the Court

25  should dismiss.  That's what we are saying.  The indictment is

1    insufficient to put on notice what this crime is, and that's

2    what we are saying.

3        But going back to your other point, Your Honor, with

4    respect to the --

5                MS. BERNSTEIN:  Your Honor?

6                MR. JONES:  Hold on a second.

7                MS. BERNSTEIN:  Go ahead, Randy.

8                MR. JONES:  -- with respect to the judicial notice

9    piece of those documents, is the Court saying that it will take

10   judicial notice that these different agencies and companies

11   have said clearly and unequivocally that IP addresses are not

12   property?

13               THE COURT:  No.

14               MR. JONES:  Why not, Your Honor, if I may ask?

15               THE COURT:  Ultimately, number one, these contents

16   are disputed.  So, the Court can take into account that these

17   documents exist, that they were presented or filed at a certain

18   point in time, but as far as the contents of those, the law

19   doesn't permit the Court to take those facts as being proven.

20               MR. JONES:  But they are not disputed, Your Honor.

21   The accuracy of those statements are not disputed by the

22   government.  The government does not dispute that those folks

23   said what they said when they said it.

24               THE COURT:  No, and that is probably true, but at the

25   same time, as to what they said, the content of what they said,

1   they are disputing.  And, specifically, this notion that IP

2   address netblocks are not property, they dispute that.

3            MR. JONES:  Well, maybe I missed it.  I don't know

4   what they are disputing.

5            MS. BERNSTEIN:  Your Honor --

6            MR. JONES:  Go ahead.  I am sorry, Ms. Bernstein.

7            MS. BERNSTEIN:  I am sorry.  It's hard to hear

8   because you are not exactly at a microphone.

9        But, Your Honor, this is Whitney Bernstein again.

10       But I think it's important to not lose sight of the fact

11   that what precipitated this initial motion from the defendants

12   was the government's own declaration offered at document 107-1.

13   This was a declaration that the government offered into the

14   record in support of its opposition to our motion against the

15   CAN-SPAM Act, another statute that has due-process and notice

16   concerns.  And in that, the government's own affidavit, own

17   declaration, that no one sought, that no one solicited -- the

18   government put this into evidence.  And it says, at paragraph

19   14, on page 5, in bold, italicized letters, "No property right

20   is conferred to the recipient from IP addresses."

21       So, not only is what Mr. Jones just said accurate, but the

22   government is not disputing any of the documents that we

23   submitted.  The government simply says that they are also going

24   to tell the jury, "Well, the price was different.  They should

25   have known this.  They were on notice of that."  None of which

1    goes to the legal definition of property.  All of which goes to

2    whether they had *mens rea* to commit a crime.

3         But this all started because the government itself offered

4    this into evidence.  And then we have supplied the Court with

5    documents that support this view because this is in fact the

6    articulated proper view.

7              THE COURT:  Ms. Feve?

8              MS. FEVE:  Your Honor, we directed everyone to the

9    briefing to remind them, in our brief.  But if anyone actually

10   looks at the record -- two things.  It's ARIN's declaration.

11   We did submit it.  But we also, in advance of the hearing and

12   before the Court could rely on it, made it very clear to the

13   Court that we specifically were directing -- asking the Court

14   not to consider the statements about property.

15        Mr. Ciaffa filed the briefing.  I have summarized it.  I

16   don't want to belabor the point because I know the hearing has

17   gone on.

18        But every time I hear the defense say that we are wedded

19   to this statement, I don't understand what else we could have

20   done other than to say we are asking the Court to not consider

21   this statement.  This statement should not be before the Court.

22             MS. BERNSTEIN:  Your Honor, it is not about --

23             THE COURT:  Ms. Bernstein, let me let Ms. Feve

24   finish.

25             MS. FEVE:  The other thing I would like to point out

1    is that ARIN is not the government.  They are also not a law

2    enforcement agent.  If they prepare a declaration and we asked

3    them to delete things from that declaration and that later

4    emerges, what kind of discovery challenges do you think would

5    arise?  Particularly if that statement was as material and

6    important as the defendants clearly believe it to be?  So what

7    we did is we left the statement in, and we made it clear that

8    we do not agree with it and we did not want the Court to

9    consider it.

10          THE COURT:  I guess that's the problem, right?

11   Because, notwithstanding how it first came to light and what

12   manner it was offered, we are talking about intangible

13   property, intangible something, and we are trying to deal with

14   the question of whether or not it qualifies as property.

15       And to have this information available from ARIN that, at

16   one point or another or repeatedly, they have taken the

17   position that IP address netblocks are not property, it seems

18   to me that, one way or another, as an officer of the Court, as

19   a proponent of a particular view or proposition, that it's

20   salient that ARIN, who -- they may not be a government agency,

21   but they are darned important in terms of this concept of

22   netblocks -- that they have articulated a view, and perhaps a

23   view that can be tempered in any number of ways, that, "Well,

24   it wasn't contemplating 1343; it wasn't considering property in

25   this different light."

1          But at the same time, it strikes me that this is salient

2     and this is something that makes this particular motion so

3     difficult to address because even though, as of this moment,

4     just falling back on more simple concepts, such as judicial

5     notice and what I can consider under the guise of judicial

6     notice, that's the easy part.  And my view is that, no, I can't

7     take the truth of these matters.

8          But when I look beyond that and I look around that, I see

9     these other pieces of information regarding this intangible

10    object.  And that makes this whole prosecution on 1343 -- if

11    not challenging, which you have acknowledged, but for the

12    Court, it makes it hard for me to wrap my head around it and

13    try to figure out how can I address this.

14         I know certain cases have had the judge direct the

15    government to file a further bill of particulars in order to

16    provide further information that, then, perhaps could round out

17    the record, and then the Court could decide issues prior to

18    trial.  But -- and I also recognize that pretty much 80, 90,

19    95 percent of the cases that tackle these questions of property

20    are reviewed after the fact, after they have already gone to

21    trial, after the jury has found guilt, and then it's gone up on

22    appeal.

23         And so that appears to have been the common course in

24    these cases, and so, I am being asked to do something different

25    from that.  At the same time, what I have been handed in terms

1    of how to do it, I don't see that I can take that route, but I

2    am concerned.

3           MS. RIM:  Your Honor, may I just address the

4    procedural question?

5        First, all the cases the Court has been looking at have

6    been after a conviction because we can't appeal an acquittal,

7    so that's why the cases end up in the posture that they are.

8        We are asking the Court to not make the error of putting

9    this to the jury.  We are asking the Court to make the right

10   decision before trial.

11       And I understand the Court's question is, "How do I do

12   that?  What is the right way?"

13       What we would suggest is the government has now indicated

14   that it would argue that the statements that ARIN has made are

15   not admissible at trial.  That means that the facts are

16   entirely segregable from the trial.  And that means this falls

17   squarely under Rule 12B, which states the Court can make

18   factual findings, and must, prior to trial, unless there's good

19   cause.  And this falls within *Shotts*, S-H-O-T-T-S.

20           THE COURT:  Let me ask, are these facts segregable to

21   the extent that you are taking a position they are not

22   admissible at trial and they otherwise have no --

23           MS. FEVE:  Your Honor, I don't believe we have said

24   there is no scenario under which ARIN may have made statements

25   that are admissible.  I said with regard to these --

1          MR. JONES:  Your Honor, there was a question you

2     asked.  You asked a question, and she is not answering the

3     question.

4          THE COURT:  Mr. Jones, I am trying to conduct these

5     proceedings, sir.

6          MR. JONES:  Okay.

7          MS. FEVE:  Your Honor, I understood that I was

8     speaking to Exhibits A, B, and C of the request for judicial

9     notice with regard to whether those three documents were

10    admissible.

11       I don't believe I have ever said there's no circumstances

12    under which any of ARIN's statements would be admissible.

13         THE COURT:  All right.  What is your position as to

14    D, the FCC -- I think that one, that was preliminary materials

15    circulated to stimulate discussion, so I acknowledge that

16    that's problematic.

17         MS. FEVE:  We disclose that there's a disclaimer on

18    the front page.

19         THE COURT:  And I would be prepared to agree.

20       What about the articles in *Business Law Today* and

21    *Bloomberg*?

22         MS. FEVE:  Your Honor, the only legal precedent for

23    taking judicial notice of the contents of a news article is for

24    the fact that a piece of information was in the general

25    currency; otherwise, there's no precedent, and we would dispute

1   it.  Because there's many articles out there that say many

2   things.

3       The Court saw that we submitted our own exhibits, which

4   included news articles and John Curran's response to them.  And

5   you would see, if you looked at those articles, which we are

6   not submitting for the truth of the matter asserted; we are

7   submitting simply to show that, contrary to the

8   representations, this issue was very much subject to debate

9   within the internet community, as well as the fact that John

10   Curran has taken a much more nuanced position than the

11   defendants.

12       So we are not asking the Court to judicially notice those

13   exhibits or to take the truth of the matter asserted, but those

14   exhibits show why, under Rule 201, it is improper to take

15   judicial notice of these particular news articles.

16        MS. RIM:  Your Honor, the government is saying it

17   would object to the admissibility of this evidence to a jury.

18   That makes it segregable.

19       And the government is not accurately portraying our

20   position.  We are not saying that there was no debate.  We are

21   actually saying there was a heavy debate whether IP addresses

22   were property, and that the official organization that was to

23   police IP addresses said that they were not.  We are

24   acknowledging there was a debate.  That's why there's a record

25   of it.  That's why these articles were published.

1      And they were specifically about pre-ARIN IP addresses.

2  Because post ARIN, there's a contract.  But pre ARIN, there

3  wasn't.  And that's why there was a debate, and it was going on

4  at the time that is alleged in the indictment.

5      If these facts are facts that the government is going to

6  say should not go to the jury, then that means the Court can

7  consider them, whether through judicial notice, through an

8  evidentiary hearing, whatever the Court prefers, but they are

9  entirely segregable from trial.  Because there is no universe

10 in which the Court must disregard these facts.  That would be

11 reversible error.

12         THE COURT:  What is your response to that, Ms. Feve,

13 that to the extent that the most salient parts of this, which

14 is that ARIN has gone on record as stating that these IP

15 netblocks are not property; that even if, at this point, we

16 can't accept these under judicial notice, that we can hold an

17 evidentiary hearing because they are segregable?

18         MS. FEVE:  But I guess -- so, you are saying that you

19 want to have a hearing just on what ARIN's position is?

20         THE COURT:  I expect if we had an evidentiary

21 hearing, is that what you would be offering, these positions

22 from ARIN?

23         MS. RIM:  I guess, Your Honor, our official position

24 is that the Court can take judicial notice of these papers.

25     But if the Court needs to have a hearing on it in order to

```
 1    consider them, then we are saying that because the government
 2    is saying these specific exhibits, they would object to their
 3    admissibility in front of the jury, the statements that ARIN
 4    has made, that they are entirely segregable and the Court can
 5    conduct a hearing and consider the documents.
 6              MS. FEVE:  Your Honor, we are not saying they can't
 7    call ARIN in their own case in chief.
 8              MS. RIM:  No, but they are objecting to us submitting
 9    the fact that ARIN took the position that IP addresses are not
10    property.  That's what they are objecting to.  And that
11    evidence should go to the jury.
12              THE COURT:  Is that correct, Ms. Feve?
13              MS. FEVE:  Your Honor, what we have said is that --
14    do these RSAs exist?  I have already said today, we don't
15    dispute the RSAs exist.
16              THE COURT:  No, but answer my question.
17        With respect to the proposition that's being offered by
18    the defense, which is that ARIN has gone on record as stating
19    that IP address netblocks are not property, do you believe that
20    that information, either through any of these documents or
21    through a representative from ARIN, is admissible at trial?
22              MS. FEVE:  It would depend if there was relevance
23    to -- it being relevant to these particular defendants.  You
24    would have to lay a foundation that these defendants knew what
25    ARIN's belief was.
```

```
 1            THE COURT:  So, then, you would have a condition
 2   precedent before you believe it would be relevant and that,
 3   absent that condition precedent, then you would object to the
 4   admission of this information at trial for the purposes of
 5   educating the jury on whether or not this can qualify as
 6   property at all?
 7            MS. FEVE:  I need to think about it, Your Honor, but
 8   what I am thinking about right now as I try to answer this
 9   question, and we state in the brief, is Defendant Bychak found
10   a Computer World article which we included as an exhibit.
11            MS. RIM:  Your Honor, I object to the facts.
12            MS. FEVE:  I can't explain my logic if I don't get to
13   explain.
14            MS. RIM:  She is putting foundational facts in
15   evidence to the Court.
16            THE COURT:  I am the Court, though.
17            MS. RIM:  I understand that.
18            THE COURT:  And I entertain all sorts of facts, and I
19   am able to compartmentalize them and find that certain
20   information is objectionable and should be excluded.
21        I think I don't understand what the objection is.
22            MR. JONES:  Well, Your Honor, the objection I was
23   going to make is that it's irrelevant.  She's answered the
24   question.  She says, "No, I am going to have to think about
25   it."  She didn't say yes or no.  She answered your question.
```

```
 1              THE COURT:  And, Mr. Jones, as you have seen, for the
 2    last two hours, I have allowed you all to be heard.  Sometimes
 3    you have taken little detours, sometimes great detours, but to
 4    the extent that I have decided to proceed in that way, then --
 5              MR. JONES:  I apologize, Your Honor.
 6              THE COURT:  Ms. Feve?
 7              MS. FEVE:  I am sorry.  What was the question?
 8              THE COURT:  I don't know.  I don't know.  It's
 9    getting late.
10              MS. FEVE:  I think --
11              THE COURT:  Ultimately, the key point at this point
12    is Ms. Rim is asserting the position that this information from
13    ARIN is segregable because ultimately, at this point, you have
14    not conceded that it's admissible absent one of the defendants
15    testifying in a certain way.
16         So, to the extent that you have that reservation, then it
17    seems to me that you are objecting to the admission or
18    admissibility of this evidence as it relates precisely to the
19    question that will be presented to the jury on whether or not
20    IP address netblocks are property.
21              MS. FEVE:  If I understand the Court's --
22              THE COURT:  I thought that was clear.
23              MS. FEVE:  What I am missing -- we don't -- I don't
24    want to waive our right to object because relevance and
25    authentication are generally understood to be principles.  And
```

1  part of why judicial notice is so artificial here --

2          THE COURT:  All right.

3          MS. FEVE:  -- and so problematic is there's none of

4  the normal gatekeeping functions.  There's no

5  cross-examination.  There's no right to confrontation.

6      Also, the government has not had an opportunity to put in

7  any of its own evidence.  These are a handful of exhibits that

8  the defendants have collected because they support a position

9  they have put before the Court.  We have been trying to be

10  consistent with our practice and have not put many facts before

11  the Court.

12      On the rare occasion when I have tried to put facts before

13  the Court, I have been shouted down because some of our facts

14  involve the defendants' own statements.

15      And so what I am hearing is, "We want to have a hearing,

16  but we want to choose which evidence goes into that hearing."

17  And my concern here is that what I am telling you is my

18  evidence and why IP addresses are something of value and why

19  they knew that at the time is the evidence that I am going to

20  be putting on at trial.

21          MS. RIM:  Your Honor, again, this has nothing to do

22  with subjective knowledge.  The government is continuing to

23  confuse the issue.

24      The question is whether or not IP addresses fall under the

25  definition of property.  It is not about whether the defendants

1    knew the case law, knew this or that or -- it's got nothing to

2    do with subjective knowledge.  That goes to *mens rea*.  That

3    goes to intent, whatever the intent standard is in the wire

4    fraud statute.

5         The question before the Court is can an IP address be

6    considered property and comport with the principles of fair

7    notice and due process.  And we have been consumed here about

8    how to present the issue to the jury, but we haven't been

9    talking about the due-process problem, putting four men on

10   trial on an indictment where none of the lawyers or the Court

11   know if the indictment states a wire fraud offense.  That's a

12   due-process problem.

13        They should not have to go all the way through trial only

14   for the Court to decide at the end that actually five of the

15   ten counts are not actually crimes and that all of the evidence

16   with respect to those counts have come in; that this is ripe

17   for a motion for new trial.  We would have to redo the CAN-SPAM

18   trial.  All of the evidence that came in in favor of the wire

19   fraud counts, that didn't go to the CAN-SPAM counts -- it is

20   going to be a total mess.

21        And we are trying to prevent that because, at the end of

22   the day, the Court cannot decide that IP addresses are property

23   without going against ARIN's policies.  ARIN has decided and

24   stated that IP addresses are not property for a reason.  It is

25   not just because they wanted to have control over them.

1          They said that if IP addresses are found to be property,

2    it will allow for people to hoard IP addresses.  It will make

3    it harder for governments to track who has IP addresses, to

4    prevent identity theft and other crimes being committed on the

5    internet.

6          This is the position ARIN has taken, in Exhibit E.

7          I am not saying the Court has to adopt ARIN's position,

8    but what I am saying is that the Court needs to consider the

9    implications of whether or not Congress intended for federal

10   courts and federal prosecutors and juries to be the ones to

11   decide policy on IP addresses.  That is not what Congress has

12   signaled.  It has signaled that IP address policy should be

13   determined by ARIN experts, nongovernment experts, in how the

14   internet should work.

15         So, at the end of all this, if this Court is the first

16   Court to decide, under a criminal statute, that IP addresses

17   are property, it will be undoing years and decades of careful

18   litigation, where bankruptcy courts have expressly declined to

19   make that finding.  They have expressly shied away from saying,

20   "Well, this is a property right."  They have indicated that one

21   can transfer IP addresses and sell them, and they have -- but

22   they have also said that ARIN has to approve the transfers, and

23   they have expressly shied away from saying this is a property

24   right.

25         We keep getting bogged down in this issue because the

1   government is turning a legal question about property into a

2   question of did the defendants intend.  These are totally

3   separate issues.  They are not the same.  And at the end -- if

4   at the end of the day the Court gets to the question after the

5   evidence at trial, the Court is going to have to conclude that,

6   under the fair notice principles of how the Supreme Court has

7   treated the word "property" -- the Supreme Court, when it comes

8   to intangible rights, has said repeatedly, "There's an

9   ambiguity issue here."

10       When the Court asked can a jury find that a horse is

11   property, I don't know that the jury can find that a horse is

12   not property or that a house is not property.  I don't know

13   that the jury can decide something that has long been

14   recognized as property is suddenly not property because the

15   jury says so.  That's not what the case law says.

16       The case law says that, when it comes to intangible

17   rights, if it has long been recognized as property, then the

18   rule of lenity does not prohibit the Court from proceeding.

19       But, where there's a question -- and this doesn't require

20   the Court find that there has to have been a case that says IP

21   addresses are property.  That's not what we are arguing.  This

22   is a special situation where the organization that polices IP

23   addresses has expressly stated they are not property.  That is

24   what distinguishes this from the source code cases, the civil

25   rights claim cases, employment cases.

1       It is not the Court stepping back from scratch and

2   deciding, "Well, does it have this or that characteristic?"

3   The Court has to consider the fact that the official agencies

4   involved here took this position during the time alleged.  So I

5   keep coming back to that because we keep doing down this other

6   rabbit hole, which is really about a separate issue.

7       If the Court -- again, I don't want to repeat the

8   briefing, but when you construe a statute, that's where the

9   vagueness issue intersects.  Because what the Supreme Court has

10  said is we don't want to strike down the wire fraud statute as

11  vague.  The reality is the word "property" is a little vague,

12  especially if you define it as the government proposes, as

13  something of value.

14      If that were really the definition, then *McNally* wouldn't

15  have been decided.  A right to honest services is certainly

16  something of value.  Air is something of value.  There is any

17  number of definitions -- there is any number of intangible

18  things that be can be construed as something of value.

19      And what the Supreme Court said is "We can preserve the

20  statute and not strike it down as vague by construing it

21  narrowly and limiting it to intangible things that have long

22  been recognized as property."

23      And I want to put this in the record, because I didn't get

24  a chance to address it, but *Pasquantino* absolutely says this as

25  well, that the right to payment based on a statute is a

1    valuable entitlement.  That's because there's a legal

2    obligation created by a statute and that this has long been

3    recognized as property.  That language is in *Pasquantino*.

4        What *Ali* said was -- *Ali* did not -- absolutely did not say

5    that's not the issue.  *Ali* said because *Pasquantino* recognized

6    the right to payment has long been recognized as property, then

7    the right to payment at issue here, which came from a contract

8    between Microsoft and the defendant, is also property because

9    it has long been recognized as property.

10       That is consistently how these cases have come out.  They

11   have never thought, "Oh, well, did the defendants in *Ali* know

12   that this was property, or know about Microsoft's position?"

13   That's never been the inquiry.

14           THE COURT:  All right.  I think I have heard enough.

15   I think I have heard enough.

16       And I intend to review the papers closer.  I intend to

17   review these cases more closely.  And then the first question I

18   will ask myself is whether or not I am of the view that a

19   hearing of some type is warranted, or whether or not this will

20   play out the traditional way, and the matter will go to the

21   jury.

22       As I stated a couple of times now, I am not prepared to

23   embrace judicial notice as the means to get this information

24   before me.  I think that's the easiest question for me to

25   answer -- and there's a lot of them.  That's the easiest.

1   There's a lot of other ones that appear in this case because of

2   the unique nature of the facts.

3       And you have the government doing something that has not

4   been done before.  I don't think there is a case that stands

5   for the proposition that IP address netblocks are property.  If

6   there was, we wouldn't have been here for the last two hours

7   plus.  Because it is intangible, because it has this background

8   with ARIN and their observations, it does lead me to want to

9   address this earlier rather than later.  I don't know if that's

10  possible.

11      So I am going to take a closer look at all this.

12          MR. JONES:  Your Honor, just one thing -- two things.

13      One, with respect to ARIN's -- I forgot how you just

14  characterized the opinions -- those are policy statements.

15  Those were not just opinions.  Those were -- as my cocounsel

16  argued, these are policy statements that were debated,

17  discussed, deliberated on, and came to.  So it was not just

18  Mr. Curran's opinion.  It was a policy statement.

19      I don't want to lose sight of the fact that counsel says,

20  yes, this case, for the government, doesn't have jury appeal.

21  She knows it doesn't have jury appeal.

22          MS. FEVE:  That wasn't --

23          MR. JONES:  Quite frankly, we don't care what they

24  feel about their case.  We have four men here, four people

25  whose lives have been tied up in this for over two and a half

1   years.  So, our Constitution requires that they get due process

2   and that they get a fair hearing.  And what I am asking you to

3   do is to consider it from their point of view and from the

4   constitutional rights that they have and that you dismiss these

5   wire fraud counts.

6        The government still would have the CAN-SPAM Act, but

7   these wire fraud counts cannot and should not go forward to the

8   jury.

9            THE COURT:  Thank you.

10       That concludes these proceedings.  We will set the matter

11  for further proceedings.

12       As you all know at this point, we are not even in the

13  business of trying cases.  We will not be in the business of

14  trying cases in criminal matters until at least late August,

15  September.  Once the motions are decided, to the extent they

16  are not ruled in favor of the defense, it looks like the next

17  thing on -- not on the list, but the next thing that would

18  happen would essentially be a trial.  But I don't see this case

19  going to trial before the end of the year, if not the beginning

20  of next year.

21       I will look at this closely.  I think my questions that I

22  have posed reflect how I do have some concerns, and given those

23  concerns, I intend to look at all of this very closely and be

24  comfortable with my decision.

25       So, we are at July 16.  We will take the matter under

1    submission until August 20.  And at this time, we will have it

2    as a status hearing.

3        In any event, even if I were to grant the motion to

4    address the wire fraud, we would still have the CAN-SPAM.

5        But we will set a status hearing for August 20, at

6    1:00 p.m.

7        I will direct the defendants to -- let me ask the parties.

8    What is your view as to that hearing, whether or not it should

9    be in person or telephonic?

10            MS. FEVE:  If it's a status, why not make it

11   telephonic?  Especially, given the travel.

12            THE COURT:  Defense counsel agree?

13            MS. RIM:  Yes, Your Honor.

14            MR. JONES:  Yes, Your Honor.

15            MR. WIECHERT:  Telephonic is fine.

16            THE COURT:  So we will hold a telephonic conference

17   August 20 at 1:00 p.m.  I will direct the defendants to make

18   arrangements to appear telephonically.

19        And then the Court will find excludable time between now

20   and then, under 3161(h)(1)(D), the pending motion, and the

21   Court's taking it under submission.  That's (h)(1)(H).

22        All right.  Have a good weekend.  Stay safe.

23            ALL:  Thank you, Your Honor.

24        (End of proceedings at 4:17 p.m.)

25                        -o0o-

1                   C-E-R-T-I-F-I-C-A-T-I-O-N

2

3           I hereby certify that I am a duly appointed,

4   qualified and acting official Court Reporter for the United

5   States District Court; that the foregoing is a true and correct

6   transcript of the proceedings had in the aforementioned cause;

7   that said transcript is a true and correct transcription of my

8   stenographic notes; and that the format used herein complies

9   with rules and requirements of the United States Judicial

10  Conference.

11           DATED:  July 20, 2020, at San Diego, California.

12

13                         /s/  Chari L. Bowery

14                         _____
                           Chari L. Bowery
                           CSR No. 9944, RPR, CRR
15

16

17

18

19

20

21

22

23

24

25