Gary S. Lincenberg - SBN 123058
  glincenberg@birdmarella.com
Naeun Rim - SBN 263558
  nrim@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

*Attorneys for Petr Pacas*

David W. Wiechert - SBN 94607
  dwiechert@aol.com
Jessica C. Munk - SBN 238832
  jessica@wmgattorneys.com
William J. Migler - SBN 318518
  william@wmgattorneys.com
WIECHERT, MUNK & GOLDSTEIN, PC
27136 Paseo Espada, Suite B1123
San Juan Capistrano, California 92675
Telephone: (949) 361-2822

*Attorneys for Jacob Bychak*

Randy K. Jones - SBN 141711
  rkjones@mintz.com
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, California 92130
Telephone: (858) 314-1510

*Attorney for Mark Manoogian*

Whitney Z. Bernstein - SBN 304917
  wbernstein@bienertkatzman.com
Thomas H. Bienert, Jr. - SBN 135311
  tbienert@bienertkatzman.com
James Riddet – SBN 39826
  jriddet@bienertkatzman.com
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700

*Attorneys for Mohammed Abdul Qayyum*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JACOB BYCHAK, MARK MANOOGIAN, MOHAMMED ABDUL QAYYUM, AND PETR PACAS, <br><br> Defendants. | CASE NO. 3:18-cr-04683-GPC <br><br> **DEFENDANTS' JOINT SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** <br><br> Hrg. Date: December 17, 2020 <br> Hrg. Time: 2:30 p.m. <br><br> Assigned to Hon. Gonzalo P. Curiel, Courtroom 2D |

The Government's failure to respond to Defendants' arguments or to address the Court's questions speaks for itself. The law is clear—unless IP addresses were traditionally recognized as property during the timeframe alleged in the Indictment, the wire fraud counts must be dismissed. After a year of litigating this issue, and multiple rounds of briefing, the Government has not found a single case or treatise showing traditional recognition of IP addresses as property. The property-status of IP netblocks was instead described as a "largely unsettled threshold issue" by a court in 2015, a year after the alleged offense conduct. *See Glob. NAPS, Inc. v. Verizon New England, Inc.*, No. CV 02-12489-RWZ, 2015 WL 12781223, at *2-3 (D. Mass. Mar. 10, 2015). This defect is fatal to the wire fraud counts.

The Government regurgitates old arguments and cites to inapposite cases about *other* intangible interests (taxes, domain names, software) to maintain that this Court should force four men to stand trial on wire fraud without first determining whether IP addresses are "property." By urging this Court to kick the can down the road, the Government hopes to infect the trial with a host of irrelevant, unduly prejudicial allegations and evidence relating to wire fraud, thereby increasing the chances of securing convictions, no matter how unconstitutional or unfair. The law does not support the Government's proposed approach —and constitutional principles of fair notice and due process forbid it.

### A. The Court Must Look to Whether *the Law* Has Traditionally Recognized IP Addresses As Property, Not At Their Characteristics

While the question of whether IP addresses are "property" is a novel one, the *approach* the Court must take to consider the question is not. The Supreme Court and appellate courts have developed a firmly-established roadmap on how to resolve the "property" question when it comes to intangible interests alleged in federal criminal fraud cases. Not one of these cases suggests that the question comes down to a factual/evidentiary issue, as the Government insists here. Instead, the pertinent question has always been whether the law has long recognized, or traditionally treated, the intangible interest as property. *See, e.g.*, *Pasquantino v. United States*, 544 U.S. 349, 356 (2005) ("right to be paid money has long been thought to be a species of property"); *Cleveland v. United States*, 531 U.S. 12, 24 (2000) (among

other things, construing license as property would "stray from <u>traditional concepts of property</u>") (emphasis added); *Carpenter v. United States*, 484 U.S. 19, 26 (1987) ("[c]onfidential business information has <u>long been recognized as property</u>") (emphasis added); *United States v. Bruchhausen*, 977 F.2d 464, 468 (9th Cir. 1992) (while confidential business information "<u>has long been recognized as property</u>," there is "no comparable understanding that a manufacturer has a property interest in the destination of its products") (emphasis added); *United States v. Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004) ("the object of the alleged scheme or artifice to defraud must be a <u>traditionally recognized property right</u>") (emphasis added); *United States v. Henry*, 29 F.3d 112, 115 (3d Cir. 1994) ("to determine whether a particular interest is property for purposes of the fraud statutes, we look to <u>whether the law traditionally has recognized and enforced it as a property right</u>"); *United States v. Baldinger*, 838 F.2d 176, 179 (6th Cir. 1988) (Supreme Court "clearly intended to exclude from the reach of the mail fraud statute claims which did not involve a direct intention to deprive another of <u>a recognized and traditional property right</u>") (emphasis added).

In the face of the overwhelming case law applying the traditional-recognition rule, the Government pivots and attempts to reframe the question as one that involves a factual dispute that must be resolved at trial. Unsurprisingly, the Government does not even mention *Bruchhausen*, which soundly refutes this argument and is directly on point. In *Bruchhausen*, the Ninth Circuit made clear that construing "property" within the meaning of wire fraud is a *question of law* that impacts the *sufficiency of an indictment. See* 977 F.2d at 468 ("we hold that the second indictment was insufficient as a matter of law"). The court also concluded that the right of a manufacturer to control the destination of its products could not be "property" under wire fraud because, unlike confidential business information, it had not "long been recognized as property." *Id.* at 468 (quoting *Carpenter*). The court did not remand the case and order the district court to make factual determinations about the characteristics of the intangible interest—it applied the traditional-recognition rule and the rule of lenity. That is the same approach the Court must apply here.

### B. The Government Cites No Cases Treating IP Addresses As Traditionally-Recognized Property During the Relevant Timeframe

The Government cites no new cases dealing with IP netblocks prior to 2014. Without basis, it claims that *Kremen v. Cohen*, No. C 98-20718, 2006 WL 8443063 (N.D.Cal. Dec. 20, 2006) "recognized the traditional property rights embodied in IP addresses, namely use, registration, and transferability." Opp. at 10. The district court's order in *Kremen* did nothing of the sort. In *Kremen*, as part of a judgment, the court had ordered that certain IP netblocks be transferred from the defendant and registered in the name of plaintiff Gary Kremen. *Id.* at *1. ARIN filed a motion for clarification, arguing that Kremen had to sign ARIN's Registration Services Agreement—which clearly states that IP addresses are not property—before any IP addresses could be registered in his name, even if the IP addresses he was to receive had not previously been subject to an RSA. *Id.* at *2 ("ARIN is willing to transfer the IP Resources within its control to Kremen once Kremen signs a Registration Services Agreement"). Kremen argued that IP addresses were "monies and properties" that should undergo "no substantive change or transformation," and that he should receive the netblocks "with the same rights and restrictions (no more and no less)" as the defendant. *Id.* at *2. The district court *rejected Kremen's argument* and granted ARIN's motion for clarification, requiring Kremen to enter into an RSA before any IP address could be registered to him. *Id.* at *3. Thus, the district court in *Kremen* refused the plaintiff's request to treat IP netblocks as it would traditional "monies and properties." This can hardly be characterized as a recognition of the "traditional property rights embodied in IP addresses." At most, the district court's decision in *Kremen* confirmed the ambiguity around the property question.

Neither do the characteristics of "use, registration, and transferability" convert IP addresses into property. Copyrights can also be used, registered, and transferred for value, but the Supreme Court has nonetheless held that they are not "property" when it comes to federal criminal fraud. *See Dowling v. United States*, 473 U.S. 207, 216-17 (unauthorized sale of copyrighted music did not constitute theft of "property" for purposes of 18 U.S.C. § 2314). *The Government's own witness John Curran, the CEO of ARIN, confirms this very point*. Even as the

Government tries to have it both ways by submitting another declaration from Mr. Curran, this extrinsic evidence only undercuts its argument. Mr. Curran states, "ARIN's corollary assertion that ARIN registrants do not have 'ownership' of the underlying IP number resources is not in any way inconsistent with the registrants' exclusive rights to utilize the resources and transfer their rights in the registry to another qualifying party for monetary compensation." (Dkt. 222-2 ¶ 4.) In other words, even though a registrant may have an exclusive right to use, transfer, and register their IP address, *that does not mean they own it*. There is nothing new here to support the Government's position. Mr. Curran does not retract his previous sworn statement: "When a registry allocates a[n IP] number to an entity, it is giving that entity the ability to use that number; **no property right is conferred to the recipient**." (Dkt. 107-1 ¶14 (emphasis in original).)

## C. The "Characteristics" of IP Addresses Are Closer to Telephone Numbers and Copyrights than Domain Names

The Court has heard these arguments before. In brief, because the Government cannot find supportive case law involving IP addresses, it argues the Court should treat IP addresses like domain names, which the Ninth Circuit has held are "property" for purposes of conversion. *See Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003).[1] Defendants maintain that the correct inquiry is the one this Court has identified: whether IP addresses themselves have been traditionally treated as property. But even if it were appropriate for the Court to look to cases dealing with interests that are merely *similar* to IP addresses, the correct line of cases to apply are those involving phone numbers and copyrights, not domain names.

Phone numbers, which are similar to IP addresses in that they are a series of numbers that enable devices to communicate over a network, have long been held *not* to be property

---

[1] Defendants previously addressed the *Kremen* factors at Dkt. 169-1 at 24. A key fact distinguishing the Ninth Circuit's decision in *Kremen* is that the domain name registry, Network Solutions, had conceded that "the right to use a domain name is a form of intangible personal property." 337 F.3d at 1029-30. In contrast, the IP address registry, ARIN, made no such concession and fought the plaintiff's claim that IP addresses were "monies and properties." *See Kremen*, 2006 WL 8443063 (N.D.Cal. Dec. 20, 2006).

3686803

in the context of civil conversion. *See, e.g., Rotstein v. Cable & Wireless, Inc.,* No. G027549, 2002 WL 691458, at *6 (Cal. Ct. App. Apr. 24, 2002) (telephone number not property for purpose of conversion); *Teleco, Inc. v. Sw. Bell Tel. Co.*, 392 F. Supp. 692, 697 (W.D. Okla. 1974), *aff'd*, 511 F.2d 949 (10th Cir. 1975) ("The right to telephone service is not . . . personal property which is capable of being converted"); *see also In re StarNet, Inc.*, 355 F.3d 634, 637 (7th Cir. 2004) ("No one has a property interest in a phone number"). Importantly, in *Jahn v. 1-800-FLOWERS.com, Inc.*, 284 F.3d 807, 811 (7th Cir. 2002), the Seventh Circuit held that the subscriber of a telephone number could sell the right to use the number, even if it was "not the subscriber's property." The court explained that even though phone numbers were not property, that "did not mean that subscribers were forbidden to transact about whatever interest they enjoyed in the use of the numbers currently assigned." *Id.*

Courts have also held that copyrights are not "property" in the federal criminal fraud context, even though they are considered to be a "bundle of exclusive rights." *See Dowling,* 473 U.S. at 216-17; *United States v. LaMacchia*, 871 F. Supp. 535, 543 (D. Mass. 1994) (copyright confers a limited property interest to the copyright holder but is not "property" for the purposes of the wire fraud statute). The same reasoning applies to IP addresses.[2]

Notably, in response to *LaMacchia*, Congress modified the criminal copyright statute to encompass infringement for a noncommercial purpose—but it *did not modify the wire fraud statute* to broaden the definition of "property." *See* H.R. Rep. 105–339, at 5 (1997), 1997 WL 664424. Congress thus confirmed its intent to regulate copyright infringement *through the copyright statute*, not through the expansion of federal fraud. Likewise, Congress has never expressed an intent to insert itself into the regulation of IP addresses—and certainly not through the expansion of wire fraud.[3] "If Congress desires to go further, it must speak more clearly than it has." *McNally v. United States*, 483 U.S. at 360. Until then, there is no indication that IP addresses can be the object of wire fraud. The wire fraud counts must be dismissed.

---

[2]   *See* Dkts. 151 at 7-10 and 169-1 at 17-18 for full briefing on these issues.

[3]   *See* Dkt. 169-1 at 15-18 for full briefing on this issue.

Respectfully submitted,

DATED:  December 7, 2020

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:  _____*s/ Naeun Rim*_____
Naeun Rim
Attorneys for Petr Pacas

DATED:  December 7, 2020

David W. Wiechert
Jessica C. Munk
William J. Migler
Wiechert, Munk & Goldstein, PC

By:  _____*s/ Jessica C. Munk*_____
Jessica C. Munk
Attorneys for Jacob Bychak

DATED:  December 7, 2020

Whitney Z. Bernstein
Thomas H. Bienert, Jr.
James Riddet
BIENERT | KATZMAN PC

By:  _____*s/ Whitney Z. Bernstein*_____
Whitney Z. Bernstein
Attorneys for Mohammed Abdul Qayyum

DATED:  December 7, 2020

Randy K. Jones
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

By:  _____*s/ Randy K. Jones*_____
Randy K. Jones
Attorney for Mark Manoogian

3686803

# CERTIFICATE OF AUTHORIZATION TO SIGN ELECTRONIC SIGNATURE

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to counsel for the Defendants and that I have obtained authorization from Randy K. Jones, Jessica C. Munk, and Whitney Z. Bernstein to affix their electronic signatures to this document.

Respectfully submitted,

DATED: December 7, 2020

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By: _____*s/ Naeun Rim*_____
Naeun Rim
Attorneys for Petr Pacas

## CERTIFICATE OF SERVICE

Counsel for Defendants certify that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

Sabrina L. Feve

Assistant U.S. Attorney

sabrina.feve@usdoj.gov


Melanie K. Pierson

Assistance U.S. Attorney

melanie.pierson@usdoj.gov


Ashley E. Goff

Assistant U.S. Attorney

Ashley.Goff@usdoj.gov


Respectfully submitted,

DATED:  December 7, 2020

Gary S. Lincenberg
Naeun Rim
Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.


By:  *s/ Naeun Rim*
　　　　Naeun Rim
Attorneys for Petr Pacas