1                   UNITED STATES DISTRICT COURT

2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3

4    UNITED STATES OF AMERICA,      .
                                    .
5                   Plaintiff,      . No. 18-cr-4683-GPC
                                    .
6                   v.              . December 17, 2020
                                    . 2:40 p.m.
7    JACOB BYCHAK,                  .
     MARK MANOOGIAN,                .
8    MOHAMMED ABDUL QAYYUM,         .
     PETR PACAS,                    .
9                                   .
                    Defendants.     . San Diego, California
10   . . . . . . . . . . . . . . .  .

11                   TRANSCRIPT OF MOTION HEARING

12            BEFORE THE HONORABLE GONZALO P. CURIEL
                   UNITED STATES DISTRICT JUDGE

13

14

15   APPEARANCES:

16   For the Plaintiff:    United States Attorney's Office
                           By: SABRINA L. FEVE, ESQ.
17                              ASHLEY GOFF, ESQ.
                                MELANIE K. PIERSON, ESQ.
18                         880 Front Street, Room 6293
                           San Diego, California 92101
19
     For the Defendant     Law Office of David W. Wiechert
20   JACOB BYCHAK:         By: JESSICA C. MUNK, ESQ.
                           115 Avenida Miramar
21                         San Clemente, California 92672

22   For the Defendant     Mintz Levin
     MARK MANOOGIAN:       By:  RANDY K. JONES, ESQ.
23                         3580 Carmel Mountain Road, Suite 300
                           San Diego, California 92130
24   ///

25

```
 1   APPEARANCES (CONTINUED):

 2

 3   For the Defendant      Bienert, Miller & Katzman, P.L.C.
     MOHAMMED ABDUL          By:  JAMES D. RIDDET, ESQ.
 4   QAYYUM:                 903 Calle Amanecer, Suite 350
                             San Clemente, California 92673
 5

 6   For the Defendant      Bird Marella Boxer Wolpert
     PETR PACAS:               Nessim Drooks & Lincenberg
 7                           By:  NAEUN RIM, ESQ.
                                  GARY S. LINCENBERG, ESQ.
 8                           1875 Century Park East
                             Suite 2300
 9                           Los Angeles, California 90067

10

11

12

13

14

15

16

17

18

19

20

21   Court Reporter:        Chari L. Bowery, RPR, CRR
                            USDC Clerk's Office
22                           333 West Broadway, Suite 420
                             San Diego, California 92101
23                           chari_bowery@casd.uscourts.gov

24   Reported by Stenotype, Transcribed by Computer

25
```

```
 1              SAN DIEGO, CALIFORNIA; DECEMBER 17, 2020; 2:40 P.M.

 2                              -o0o-

 3              THE CLERK:  Calling Item Number 8 on the calendar,

 4   Case Number 18-cr-4683, if we can start with the parties for

 5   Mr. Jacob Bychak.

 6              MS. MUNK:  Good afternoon, Your Honor.  Jessica Munk,

 7   on behalf of Jacob Bychak, who is on the call.

 8              THE COURT:  All right.  Good afternoon.

 9              MR. JONES:  Good afternoon, Your Honor.  Randy Jones,

10   on behalf of Mark Manoogian, who is also on the call.

11              THE COURT:  Good afternoon.

12              MR. RIDDET:  Good afternoon, Your Honor.  James

13   Riddet for Mr. Qayyum, who is also on the phone.

14              THE COURT:  Good afternoon.

15              MS. RIM:  Good afternoon, Your Honor.  Naeun Rim and

16   Gary Lincenberg, on behalf of Petr Pacas, who is on the call.

17              THE COURT:  Good afternoon, ladies and gentlemen.

18        And then, on behalf of the United States, may I please

19   have appearances.

20              MS. FEVE:  Your Honor, Sabrina Feve, Melanie Pierson,

21   and Ashley Goff, appearing by telephone, for the United States.

22              THE COURT:  Good afternoon, Ms. Feve, Pierson, Goff.

23        We are here for a further motion hearing relating to the

24   motion to dismiss based upon Fifth Amendment, due process, and

25   Sixth Amendment fair notice protections.
```

1    The Court, as you all have come to see, has had a number

2    of issues and questions that it has had regarding the issues

3    before the Court, and I think it's because the issue is one of

4    first impression; it involves a form of intellectual property

5    that has not been addressed for purposes of the wire fraud

6    statute to date.

7        In the case of *Dowling*, *United States v. Dowling*, the

8    Court had begun recognizing that copyrights are no ordinary

9    chattel, and certainly that applies to IP addresses.

10       In *Dowling*, the Court also recognized that copyrights are

11   a form of IP that comprise a series of carefully defined and

12   carefully delineated interests, and I think that that does

13   apply here.  But, unlike *Dowling*, the law does not afford

14   correspondingly exact protections, at least from what this

15   Court has seen.  So, I want to narrow the Court's focus on what

16   remains for the Court, so I am going to do that partially by

17   addressing matters that both parties agree are not before the

18   Court.

19       So, with respect to the challenge of 1343, this is not a

20   facial challenge of the wire fraud statute; is that correct?

21           MS. RIM:  Your Honor, it is not a facial challenge.

22           THE COURT:  And the parties agree that the motion to

23   dismiss does not involve First Amendment considerations; is

24   that also the view of the defense?

25           MS. RIM:  Correct, Your Honor.

5

```
 1              THE COURT:  And, primarily, it raises an
 2    as-applied-to-the-facts challenge; is that also true?
 3              MS. RIM:  No, Your Honor.
 4         This is Naeun Rim for Petr Pacas.
 5         We are not raising an as-applied challenge.  This is not a
 6    challenge where we are stating that a statute is being vaguely
 7    applied to the particular facts of our case.
 8         What we are arguing is that the Supreme Court has given
 9    courts instructions on how to interpret the word "property" in
10    this specific statute, in 1343, 1341, and the Court has said
11    that you have to give the word "property" a narrowing
12    construction, and that avoids any vagueness issues at all.
13         And, in order to interpret the statute in accordance with
14    the Supreme Court precedent, we are arguing that the Court must
15    apply the traditional recognition rule and limit "property" to
16    intangible interests that have been long recognized as property
17    by the law in order to fall in line with the Supreme Court
18    directive that you narrowly construe the word "property" to
19    avoid vagueness challenges at all.
20              THE COURT:  At the same time, when the Court uses
21    this phrase, "long recognized," it does not require that the
22    article, the thing itself, have been long recognized.  Do you
23    agree with that?
24              MS. RIM:  I would -- I hesitate to say yes or no.
25              THE COURT:  And, I guess, by that I mean there's a
```

1    certain amount of room for courts to operate with, as far as

2    applying this long-recognized property interest, that if the

3    property interest before the Court is analogous or closely

4    situated similar to other property interests that have passed

5    muster, that in those cases, the Court finds that there's

6    sufficient similarity that one can conclude that the interest

7    involved is one that has been recognized and has been long

8    recognized.  Would you agree or disagree with that view?

9            MS. RIM:  Your Honor, I don't disagree that the Court

10   can make analogies.  What I would disagree with here is that

11   there's ever been an analogous situation with IP addresses,

12   which is very unique.  And just going back to the way that they

13   are allocated, the way that the government has dealt with IP

14   addresses, obviously both sides have made analogies, and we

15   have argued that the closest analogy is telephone numbers, as

16   well as copyrights.  That is how -- those are the particular

17   intangible interests that have been found to not be property.

18       And just in terms of going back to the principles of

19   statutory construction, both *Cleveland* and *Dowling* recognize

20   not only do you have to look at how an interest has been

21   traditionally treated, but you also need to look at how

22   Congress has treated that particular interest.  And on that

23   particular area, the Court need not find the analogy because

24   Congress has made specific statements about the internet and

25   specifically IP addresses.  And we briefed this -- I don't have

1    the cite right in front of me -- in one of our briefs, that

2    Congress was making statements in 2012, reemphasizing the fact

3    that they wanted an internet free from government interference.

4        And with IP addresses, what makes them unique, distinct

5    from, even, phone numbers, is that phone numbers are regulated

6    by each country.  Each country issues their own phone numbers,

7    and that's why we have to use country codes when we call

8    people.  IP addresses are connected to the World Wide Web, and

9    governments have taken an interest in making sure that the web

10   remains free and that no particular government, especially

11   governments that may not have honorable intentions, can say

12   they own any part of it.

13       So, IP addresses, if the Court looks at the way Congress

14   has decided we are keeping the government out of it and leaving

15   it in the hands of nonprofits, like ARIN, that have the

16   expertise to allocate it and have policies that determine how

17   IP addresses should be treated, that is something that we would

18   assert the Court can consider and must consider when

19   determining whether IP addresses are properly under the wire

20   fraud statute.

21           THE COURT:  One thing that you said a moment ago was

22   the need to determine how IP netblocks are allocated, how they

23   are delegated.  And I agree with you that is part of the

24   inquiry.  And let me ask you, do you believe that, in

25   determining whether or not something is property, and

 1   specifically with respect to legacy IP addresses, would it be

 2   necessary to determine how these netblocks are assigned, how

 3   they are used, what limitations exist with respect to the

 4   registrant's use of an IP address, whether the assignee had

 5   exclusive control and use of the netblocks, whether the legacy

 6   address can be transferred, whether or not there's a market for

 7   the transfer?  Aren't these all relevant considerations in

 8   determining whether or not IP netblocks are, in fact, something

 9   of value?  And that is, of course, before we get to the issue

10   of whether or not they have been long recognized as a property

11   interest.

12        But would you agree there's a number of considerations

13   that the Court or the trier of fact would be required to take

14   into account to decide whether or not something is a property

15   interest?

16             MS. RIM:  Your Honor, our position is that the Court

17   does not need to consider the individual characteristics of how

18   an IP address works.  The Court need only look at how the law

19   has treated the interest and how Congress has signaled how it

20   will regulate that interest.  And that's consistent with how

21   the cases have decided this issue.

22             THE COURT:  Wouldn't we want to know how it works?

23   Because in terms of whether or not the registrant or the

24   assignee has lost anything, whether or not they have had their

25   use commandeered and taken over or exactly what impact the

1    assignee has had, wouldn't the trier of fact need to know how

2    these IP addresses are assigned, what restrictions are provided

3    at the time that they are assigned, and what it allows the

4    assignee to do?

5          MS. RIM:  Your Honor, again, our position is no.  If

6    you look at *Dowling*, they address this issue.  Copyrights, when

7    they are used without authorization -- which is what is being

8    alleged here -- there is damage to the copyright holder.  There

9    is some amount of loss that's happening.  That's what the basis

10   of the wire fraud allegation was.  And the Supreme Court held,

11   in *Dowling* -- which was a travel fraud case -- that this is not

12   a property interest that would be something that you would

13   consider in the context of the federal fraud statute.

14         THE COURT:  Wasn't part of that because the law was

15   so precise in terms of what was permitted under the copyright

16   law and what restrictions and what remedies existed for a

17   violation such that, based upon those carefully delineated

18   interests, with correspondingly exact protections, then the

19   Court didn't need to proceed to -- well, did not need to go any

20   further?

21         And I -- I have concerns about these IP netblocks, and I

22   would think that is clear by now.  And part of it is based upon

23   what academic scholars, what a number of courts have observed

24   with respect to these netblocks.  But the question is whether

25   or not the point in these proceedings to address this issue is

```
 1   before trial or after trial.  And it's hard for me to imagine
 2   that we would be in a position to prevent the government from
 3   offering its case in chief.  And it seems to me that this case
 4   is not much unlike United States v. Nukida, where the district
 5   court ended up finding, as a matter of law, that the
 6   complained-of acts did not affect interstate commerce, and that
 7   related to an element.  And I believe it was Judge Wallace.  He
 8   acknowledged that, certainly, Rule 12, by allowing pretrial
 9   motions, encourages and fosters, advances judicial efficiency;
10   but, at the same time, you can't do that in violation of
11   Rule 7; you can't end up depriving the government of the right
12   to offer their case, where I think the issues that are being
13   presented at this point are intertwined with the ones that
14   would be considered by the jury.
15        Would you respond to what effect the Court should give or
16   what weight the Court should give United States v. Nukida?
17             MS. RIM:  Your Honor, I am not sure I am familiar.  I
18   can't recall that case off the top of my head.
19             THE COURT:  Well, it's 8 F.3d. 665-668, and it was a
20   case where the defendant was charged with tampering with
21   consumer products affecting interstate commerce.  Nukida filed
22   a Rule 12(b) motion seeking dismissal of the indictment on the
23   grounds that the district court lacked subject-matter
24   jurisdiction because the acts did not affect interstate
25   commerce, so the Court dismissed.
```

1     The Ninth Circuit reversed, finding that the motion to

2   dismiss amounted to a premature challenge to the sufficiency of

3   the government's evidence tending to prove a material element

4   of the offense defined by Section 1365.

5     And so, in some ways, what you are presenting is there's

6   insufficient facts to demonstrate what these -- to support the

7   conclusion that the netblocks qualify as property, and that is

8   one of the elements of the wire fraud statute.

9     Do you have any position on whether or not this case is

10   distinguishable from *Nukida*?

11         MS. RIM:  Yes, Your Honor.  This case is

12   distinguishable.  Now I remember the case Your Honor is talking

13   about and it involved, I think, water and where something had

14   happened.

15     So, first, again, the word "property" has not been treated

16   as an element that is left to the jury.  So, a factual dispute,

17   such as where something happened, that would be left to a

18   finder of fact.

19         THE COURT:  And that's an interesting question

20   because, in reviewing the case law yesterday relating to these

21   issues -- I don't know if it was the Third Circuit or another

22   circuit, but it did have an element involving -- the second

23   element, relating to money or property.  So the first element

24   was a scheme to defraud, and then the second made reference to

25   money or property.

But the Ninth Circuit doesn't have that same structure, although I think that the Ninth Circuit wire fraud statute states, "First, the defendant knowingly participated in a scheme or plan for obtaining money or property" -- they kind of lump it all together -- "by means of false or fraudulent pretenses."  And so it doesn't make it up, break it out on its own, but certainly it is included in the first element.  Do you agree with that?

MS. RIM:  The word "property" is inherent in the phrase "scheme to defraud."  Yes.

THE COURT:  Yes.  So, I am sorry.  I interrupted you.

MS. RIM:  That's all right, Your Honor.

I guess what I -- I, a little bit, lost my train of thought, but just a few things.

Going back to the basics, we don't agree that the Court has to consider the characteristics of IP addresses or whether they could be sold for value because these are not dispositive elements to whether something is property.  However, if the Court believes it has to consider those things, then they should have been alleged in the indictment.  The fact that they weren't means that then the wire fraud counts are insufficient and have to be dismissed.  Those facts were not alleged.

THE COURT:  But don't we have two different things here?  One is a Rule 7 and what that requires as far as sufficiency of the indictment and where, generally speaking,

 1    just tracking the language of the statute is enough.  That's

 2    one thing.  And then, with respect to a challenge to due

 3    process, void for vagueness, that sets up a totally different

 4    set of rules, standards, and considerations.  Aren't we talking

 5    about two different rules and two different forms of analysis?

 6            MS. RIM:  If the Court is bringing in a factual

 7    question, then we would argue that Rule 7 is where the issue

 8    lies, because the indictment has to allege those facts so we

 9    know what the government is exactly alleging about the

10    characteristics of, quote/unquote, "IP addresses."

11        They can't just say that they are suddenly an exclusive

12    right or, you know, these aren't things that are precisely

13    defined in the indictment.

14        But going beyond that, Your Honor, this is simply not a

15    question that requires a start-from-scratch legal analysis

16    because the Supreme Court has answered this question.  So has

17    the Ninth Circuit, specifically this statute, this word.  And

18    the approach that the cases have taken over and over again is

19    looking at the law and the Congressional legislative history of

20    how that interest is treated.

21        So, it is not about does the interest -- can you sell the

22    interest?  If you look at *McNally*, they could sell the interest

23    of honest services.  They could -- the intangible interest at

24    issue was something that somebody was willing to pay for.  That

25    simply was not dispositive of whether or not it was property,

1   and, as we all now know, in *Skilling*, the Supreme Court held

2   that it was not.

3            THE COURT:  It may not be dispositive, but I think

4   every case, from what I can tell, involves a unique set of

5   facts, and then, based upon sizing up those unique facts, then

6   the Court has arrived at a determination whether or not this

7   universe of facts supports a conclusion that something is

8   property.  And I think, in *McNally*, one of the concerns was

9   that you would have the defendant, who was engaged in dishonest

10  activities, profiting, but you wouldn't necessarily have the

11  person who was deceived having lost anything, and so it was

12  kind of a one-way street.

13       And I think here, there's that element that may support

14  the defendant's position that this isn't property, because we

15  have something that was evidently abandoned or not being

16  utilized at the time of these alleged offenses, so then that

17  would raise the question of whether or not this was just kind

18  of a one-way benefiting or profiting, without the lawful

19  registrants experiencing any loss.

20       And from what I have seen, a number of cases have looked

21  to whether or not the holder of the property has incurred a

22  loss or has incurred a liability.  And here, from what I can

23  tell, the registrant did not incur loss; they did not have a

24  loss to their reputation, a loss in money.  And so it seems to

25  me that those are considerations that should be presented to

1    the trier of fact.

2            MS. RIM:  Your Honor, the question of loss is

3    separate from whether or not the intangible interest charged is

4    property.  If it were property, then yes, the trier of fact

5    would have to determine what is the loss, what is the nature of

6    the loss.  But those are two separate issues.

7        Again, it is the same as copyright infringement.  And I

8    know the Court said that there was a specific law, the

9    Copyright Act, that made a more precise delineation of how to

10   address the copyright infringement issue.  And here -- we

11   briefed this as well -- that statute is the CAN-SPAM Act.  The

12   CAN-SPAM Act creates a separate criminal statute that this

13   U.S. Attorney's office charged that says that one cannot

14   falsely represent oneself to be the IP registrant to the IP

15   registry, which is ARIN.  That is what the facts that the

16   government is alleging are.

17           THE COURT:  But I don't see the -- I don't see how

18   those two match up, the copyright laws and CAN-SPAM, because,

19   one, the copyright laws aren't criminal statutes.  They don't

20   prohibit actions; instead, they afford a mechanism where people

21   can obtain protection for their intellectual property.  So

22   that's what the copyright laws do.  And then it sets out in a

23   very defined manner what remedies are available for infringers.

24       CAN-SPAM is something that came into effect years after

25   these legacy IP netblocks came into existence, and it seeks to

```
 1    stop the proliferation of the use of these IP addresses, having

 2    been obtained through fraud, for purposes of sending out spam.

 3    So I don't see the connection.  I just think that they are two

 4    different sets of laws.

 5              MS. RIM:  Your Honor --

 6              THE COURT:  Yes.

 7              MS. RIM:  -- first, the copyright statute does have a

 8    criminal component.  But I understand what the Court is saying,

 9    and I think, you know -- I guess this is where I do want to get

10    into the fact that there are two sets of facts here.  One set

11    of facts is ARIN's policies.  That would be the analogy for the

12    copyright -- the copyright law that delineated exactly what you

13    are getting here.  And the Court -- our argument is that the

14    Court can consider those facts before trial and has to because

15    they are entirely segregable.  In fact, the government itself

16    had argued that ARIN's statements would be irrelevant and

17    inadmissible during trial.  So if those are --

18              THE COURT:  I am sorry.  The government has indicated

19    that they are irrelevant or relevant?

20              MS. RIM:  The government has argued in previous

21    hearings that the statements of ARIN and ARIN's policies, that

22    they could be the subject of a motion in limine and have stated

23    that those statements, particularly -- ARIN has said multiple

24    times this is not property.  The government has argued they

25    would likely seek to exclude those statements from trial, which
```

1    is an admission that these are segregable facts the Court has

2    to consider if the government is going to take that position,

3    because --

4              THE COURT:  I don't know if I agree that the ARIN

5    position does not have some relevance and salience in terms of

6    determining whether or not netblocks have value.  At the same

7    time, given that, from what I understand in this case, we are

8    talking about legacy netblocks; is that correct?

9              MS. RIM:  Yes.

10             THE COURT:  All right.  And so, legacy netblocks

11   would have preceded, in time, the existence of or the formation

12   of ARIN.  Is that true?

13             MS. RIM:  Yes.

14             THE COURT:  All right.  And so, as a result, there is

15   a question, there's a live question, as to what right ARIN

16   would have to attempt to control and manage pre -- pre-ARIN

17   legacy IP netblocks.  Isn't that one of the swirling

18   considerations that makes this whole area somewhat less than

19   clear?

20             MS. RIM:  Your Honor, yes.  That issue, which the

21   Court just stated, is what makes this base and why the Court

22   has to find that IP addresses are not legacy IP addresses and

23   themselves are not property.

24             THE COURT:  At what point -- is the Court in a

25   position to entertain all of these facts that are not contained

1    in the indictment?

2          MS. RIM:  We don't believe the Court has to.  We

3    believe that the cases that we cited are pretty clear,

4    especially *Global NAPS*, which happened after the alleged

5    incidents in the indictment and expressly states that this was

6    an unsettled legal issue.  The fact that it is unsettled means

7    that it is ambiguous and the rule of lenity applies.  And

8    neither this Court nor the jury can decide, through this trial,

9    that legacy IP netblocks are property and have that suddenly be

10   a crime now.  It's not clear.

11         THE COURT:  All right.  So, let me --

12         MS. RIM:  And so --

13         THE COURT:  So, with that, let me allow Ms. Feve to

14   respond because I am sure she is chomping at the bit at this

15   point.

16      Ms. Feve, what is your position as to, at this point,

17   whether or not the Court should take into account those

18   debates, those observations about the lack of clarity with

19   respect to property rights related to IP netblocks and -- yes.

20   I will leave it at that.  Ms. Feve?

21         MS. FEVE:  Your Honor, we begin by pointing to

22   *Nukida*.  And, obviously, the Court relied on it; in its April 8

23   order, when you first denied the motion to dismiss the wire

24   fraud counts, you found you would have had to reach issues of

25   fact.  And then we discussed it on pages 16 through 18 of the

1   brief we filed this summer for why we believe that reaching

2   this issue would invade the province of the finders of fact

3   because it bears on an element; and that, in *Nukida* -- I

4   believe counsel was confusing *Jensen* and *Nukida.* *Jensen*

5   involves a maritime venue issue; *Nukida* involves tampering with

6   the bags of saline.

7        But, in *Nukida*, the issue that the District Court

8   improperly felt it could reach as a matter of statutory

9   construction was the economic impact that would bear on the

10   interstate commerce nexus.

11        And this goes -- this is actually quite similar to what we

12   are dealing with here, which is what is the economic impact,

13   what is the economic value of the rights at issue here for the

14   netblocks.  Because all of the cases that everyone is citing

15   all come back to is there an economic interest that undergirds

16   the conventional, historical, traditional -- whatever you want

17   to call it -- common law notions of property.  And I don't

18   think you can go beyond the elements to reach those issues

19   because you have to go into questions of fact.

20        And throughout the conversation that you and counsel have

21   just been having, there are a flurry of facts going back and

22   forth, including whether or not IP addresses are more like

23   copyrights or, obviously, we would argue, more like domain

24   names, because we are going to the factual characteristics of

25   what each of those are.  And so, as far as all of these

1    issues -- what it's more like; what it is less like -- those

2    all require facts.

3        Now, for the purposes of making a coherent argument, we

4    can all cite to cases that have previously defined domain

5    names, previously defined IP addresses, or even defined

6    telephone numbers.  But the point is, as far as this case,

7    which is what are the rights at issue and do they track with

8    conventional, historical, common law notions of property

9    rights, those are going to require factual issues to determine

10   what the characteristics are.

11       And so, for those reasons, we don't think you can

12   determine this case on a motion to dismiss.  We do believe that

13   *Nukida* is prevailing.  But I also think that *Dowling* is readily

14   distinguishable.  First of all, it doesn't involve the Wire

15   Fraud Act; it involves on the National Stolen Property Act.

16       Second of all, what the Supreme Court pointed out is that

17   there were three elements that needed to be proven to sustain

18   the charge under Section 2314, and that was, one, was it a

19   good, ware, or merchandise, security, or money; it was not the

20   word "property"; two, was it worth $5,000 or more; and three,

21   was that item stolen, converted, or taken by fraud.  And the

22   issue was whether the bootleg recordings were, in fact, stolen,

23   converted, or taken by fraud.

24       It was not about, now, at least, the logical questions of

25   what is property or what is not property.  And there, what the

 1    Court found was that, simply, these bootleg recordings weren't
 2    stolen.  The defendants themselves had created the recordings,
 3    and so they could not prove the third element about whether or
 4    not it was stolen, converted, or taken by fraud.  There was not
 5    this expansive, global definition of "property" for every
 6    criminal statute ever.
 7         And, in fact, while the defendants relied on *LaMacchia*,
 8    the 1994 district court decision, where they said "Hey, we
 9    think maybe, under *Dowling*, we can't do copyright for wire
10    fraud," Congress was sufficiently disturbed by this that they
11    passed the NET Act, in 1987, which expressly superseded the
12    *LaMacchia*.  And the fact that copyright is expressly supposed
13    to be permissible for wire fraud was recognized by two
14    different decisions, one of which is one of the predecessor for
15    the Third Circuit case, which defendants have relied on,
16    *Hedaithy*.  And there -- I can give you the cite -- but in
17    *U.S. v. Alsugair*, 356 F.Supp.2d. 306, the District of
18    New Jersey specifically recognized that the NET Act had
19    preempted the *LaMacchia* and that copyright was expressly
20    covered by the wire fraud statute.
21         *Alsugair* also recognized a prior decision out of Illinois,
22    *U.S. v. Rothberg*, 222 F.Supp.2d. 1009.  That's a 2002 decision,
23    where it says, quote, "It was partly a desire to plug the
24    perceived *LaMacchia* gap that motivated Congress to pass the NET
25    Act" --

```
1              THE COURT:  Ms. Feve, let me ask you.  Ms. Feve, let
2    me ask you.  Are all of these cases in your papers?
3              MS. FEVE:  *Alsugair* and *Rothberg* are not.  Everything
4    else is.
5         Unfortunately, Your Honor, they raised some of that in
6    their reply brief.
7              THE COURT:  All right.  And so, let me ask you a
8    question.
9         In *Saathoff*, Judge Benitez, right before he arrived at his
10   decision granting the motion to dismiss, he looked around and
11   he said the charges in that case are out of the heartland of
12   cases that have interpreted the honest services statute.
13        My question to you is, here, the cases you believe are
14   instructive or provide guidance or are analogous are those that
15   involve the telephone numbers and domain names?
16             MS. FEVE:  No.  Domain names, Your Honor.
17             THE COURT:  I am sorry?
18             MS. FEVE:  Domain names.
19        There are important factual and regulatory differences
20   between how phone numbers are handled and domain names.  As we
21   have pointed out and quoted in our brief, the Ninth Circuit has
22   specifically said domain names are nothing more than an
23   alphanumeric shorthand for IP addresses.  They are two faces of
24   the same coin.  There is no legal or factual way to distinguish
25   them that is ultimately coherent.
```

1          THE COURT:  And so, because domain names are

2    recognized as property -- is that right?

3          MS. FEVE:  Yes, Your Honor.  They are recognized as

4    property.

5          THE COURT:  And they have been recognized since when?

6          MS. FEVE:  Your Honor, they have been -- in

7    California, unequivocally since 2003, when Judge Kozinski

8    issued his very high-profile *Kremen* decision.

9       There's also an IP analog, which is that if you look at

10   the legacy of *Kremen*, in 2006 --

11         THE COURT:  I am sorry.  Say that again.  Look at

12   what?

13         MS. FEVE:  So*, Kremen* has many iterations; but, in

14   2006, the District Court, in seeking -- in that case, the

15   plaintiff was seeking to offset the $65 million judgment he had

16   acquired in *Kremen III* against the defendant.  And because the

17   defendant had absconded with most of his liquid cash, what

18   Kremen sought, to offset that loss, was to have the IP

19   netblocks that were assigned to the defendant reassigned to

20   him, and, in fact, they were.

21      ARIN did intercede in that case and asked for some

22   clarification about what agreement, if any, it could require

23   the defendant to sign, and the Court was ultimately,

24   whatever -- and they were forced to sign an agreement.  But the

25   fact is they were still transferred.  And the Court still

1   recognized that, with or without an agreement, this was still a

2   valuable asset that could be used to offset a monetary

3   judgment, and it ordered them transferred, and ARIN complied.

4   And that was in 2006.

5           THE COURT:  But it seems like that's outside of the

6   question of whether or not there's a market in netblocks.

7       Are you prepared to introduce evidence that --

8           MS. FEVE:  I would disagree with that.

9           THE COURT:  Because you have a creditor who is

10  unwilling, unable to meet a financial obligation, and so then

11  you have a Court determine that, well, out of fairness and out

12  of equity, the Court will order the creditor -- I am sorry --

13  the debtor to transfer his interest.  And to the extent that

14  ARIN can come in to provide further support and has a request

15  to impose certain conditions, then, fine.  But the Court, in

16  that situation, is aiming to make the creditors -- if not

17  whole, to provide them with some compensation that they are

18  entitled to.  And so, in the process of doing that, they were

19  creative and did this.

20      But I am not sure that that necessarily stands for the

21  proposition that, across the board, that this was a legally

22  recognized property interest that could be transferred at the

23  discretion of the assignee.

24          MS. FEVE:  I think the problem there, Your Honor, is

25  that there's -- you seem to be saying -- you are kind of

1    reverting to a focus on the form, which is the IP address, as

2    opposed to the right and the interest.  And part of why both

3    common law and the wire fraud statute can evolve, even though

4    common law is hundreds of years old and the wire fraud statute

5    was passed in 1952, is because we don't look at the form that

6    the right takes; we look at the right and the interest that is

7    involved in this particular case.  And that's --

8            THE COURT:  That's easier said than done, though.

9    Aren't we required, pretty much, to look at a number of

10   considerations, as I had mentioned to Ms. Rim; that we look at

11   how the interest was created, what these addresses are, what

12   they entitle someone to do, what limitations exist, what

13   restrictions, whether or not an assignee has an exclusive

14   control, how and when a legacy IP address can be transferred,

15   whether or not there's a market?  Aren't these all relevant

16   considerations in determining whether, in fact --

17           MS. FEVE:  Yes.

18           THE COURT:  So, it is not just kind of a

19   one-size-fits-all, that you look at one thing, does it have

20   value?  Or one thing, that it has no control.  It is just a

21   totality of the circumstances.

22       Do you agree with that?

23           MS. FEVE:  I wouldn't frame it as totality of the

24   circumstances.  What I would frame it as is does the evidence

25   show that there were interests that are recognized that

1    conveyed something of value.  I agree with you, we would look

2    at exclusive use in this case.  There are potential aspects of

3    property.

4         So, as far as the facts of this case, yes, you are right;

5    this is going to be a factually intensive inquiry, and it is

6    going to be up to the government to put the evidence before the

7    Court, before the jury.  And for you, in a Rule 29 motion, to

8    assess whether or not the facts that we have put into evidence

9    rise to the level of being a property interest, I don't think

10   that there's -- the Court was going through different

11   iterations, and I believe that some but not all of those would

12   be sufficient in various scenarios.

13        But we are all getting ahead of ourselves because I think,

14   ultimately, at this time, on this very limited issue, that the

15   government and the Court agree this is a fact-intensive

16   inquiry, and the facts are not currently before the Court.

17             THE COURT:  But, one of the arguments that the

18   defendants make is that we have to have a long-recognized

19   property interest at play.  And that, in this case, certainly,

20   there is not an equivalent; that is, there is not a case that

21   stands for the proposition that the wire fraud statute

22   definition of "property" covers IP netblocks.  We don't have

23   that.  And I agree that we don't need to have it that precise.

24        But to the extent that it is such that it is not necessary

25   to be that precise to allow the government to go forward, then

1   we look at how property rights have been ascertained by courts.

2   And one of the things that has come up frequently is this

3   notion of "long recognized as a property right."  And, again, I

4   understand that it is not a question of that IP netblocks has

5   to have been long recognized specifically, but that something

6   very close to IP netblocks.  And the government is of the

7   position that, I believe, that domains are very similar and

8   that would have given notice to the world, given notice to the

9   defendants, that IP netblocks would be treated in a similar

10  fashion.  The defendants take the view that there is nothing

11  that's similar enough in nature to have placed them on notice.

12      Other than the domain names and *Kremen*, what do you

13  believe would have provided that notice?

14          MS. FEVE:  I dispute that premise, Your Honor.

15      If you look at the cases that we have all been discussing,

16  in *Pasquantino*, there was no reference to a prior case

17  involving excise tax.  At no point did the Supreme Court say,

18  "You know what?  To do this, we really need to find a prior

19  case that has also held that foreign excise tax" --

20          THE COURT:  But it seems to me, we are not talking

21  about taxes; we are talking about money and entitlement to

22  money.

23          MS. FEVE:  But it not money; it is entitlement.  That

24  is part of the issue, is that each time -- what you are

25  saying -- and this is part of the disconnect.  You say, "In

1    that case, I, the Court, find it easy to toggle between foreign

2    excise taxes and whatever it is the right that makes you

3    comfortable," which is, in that case, the right to collect

4    money.  But you are saying, "It's very easy, it's very

5    comfortable to collapse foreign excise taxes into this bundle,

6    which is actually the right to collect money."  But -- that

7    might be easy and more comfortable and familiar to the Court,

8    but that's not the analysis.  The analysis is not "How good

9    does this feel, how comfortable?"; it is "What is the

10   interest?"

11       And it was because it was the interest that matters that

12   the Supreme Court says, "To us, we believe there is no

13   difference between foreign excise taxes and embezzling money

14   from the Canadian government because what matters is the

15   interest and not the form it takes."

16       If you look at some of the things that Judge Kozinski said

17   in the *Kremen* decision, when he said, "Look, the law here is

18   hard; this is the hard part about this case, is understanding

19   the internet," he said, but -- "The facts are what is hard, not

20   the law.  The technology and the internet are what makes this

21   hard for us to chew on; but what is easy is the law, because we

22   just go back to the same law we always used."

23       And the Ninth Circuit, again, in 2010, in the *CRS Recovery*

24   case, did exactly the same thing when they said, "You know

25   what?  We just take traditional copy law and we just apply it

1   to these new things that are proliferating on the internet.

2   That's what we do."

3        And so, there's not -- it is not that "We have to have

4   something that's on all fours," or, "We didn't have to have

5   something on all fours there, but you do here."  That's not the

6   standard.  The standard is what is the interest.

7        And, yes, there's a recognition that, as technology is

8   evolving, kind of, the experience base between potentially some

9   of the jurists and some of the hard facts that are coming

10  before them, it may be a little bit less comfortable, but the

11  point of the analysis is really what is the interest.

12       And here, what we are saying is it is the right to

13  exclusive use; it is the right to register it; and it is the

14  right to transfer it, including for money, which even ARIN

15  recognizes.  But as the Court is pointing out, we are dealing

16  with legacy blocks.  These are pre ARIN.

17       And part of the why the government has really been

18  cautious about trying to say, "Look, ARIN is one thing, but it

19  is not the whole picture," is that what we understand and

20  apparently is not as clear is that some of these legacy

21  netblocks are registered with different registries.  Like, not

22  every netblock that's at issue in this case is registered with

23  ARIN.  They all predate ARIN.  Like, they all predate the other

24  registries as well.  That's why they are all legacy blocks.

25       But what we are really looking at here is did you have

1    something that's an asset that you can control, that you can

2    use, that you can transfer, that was worth something valuable,

3    and the answer is yes.

4         And why there's no due process is that we don't -- we

5    never expect defendants to be familiar with the case law.  That

6    would be completely unworkable if we had to prove that, before

7    we could convict you, you had to know there was a prior case

8    out there holding X, Y, and Z.  The reason why *Pasquantino* and

9    *Leocal* (phonetic) and all the other cases say "We look to the

10   statute's plain and ordinary meaning," is because what we

11   expect the defendants to know is, "Did that netblock belong to

12   you?  Yes or no?  Did you know it was valuable?  Yes or no?  If

13   the answer is you knew who it belonged to and you knew it was

14   valuable and you took it anyway, that is property and that was

15   something you shouldn't have done."

16        And that's how you got past the due process issue, which

17   is simply the common-sense notion of was it valuable and was it

18   yours.

19             THE COURT:  So, with respect to how this will play

20   out at trial, to the extent that I know Ms. Rim at this point

21   is chomping at the bit and she would like to respond to a

22   number of points that you have made, but they don't agree with

23   all of the arguments and observations that you have made with

24   respect to what a registrant or what an assignee is entitled to

25   do.  So, to the extent that they don't agree and that they

1    have -- they seek to -- if not correct, to balance the record

2    at trial regarding restrictions and regarding the lack of

3    clarity, Ms. Rim had noted that you planned to move *in limine*

4    to exclude information regarding ARIN.

5        Is it your position that these questions that commentators

6    have observed, from 2010 through 2015, that the defense should

7    not be allowed to have an expert witness provide these

8    circumstances that creates this lack of clarity?

9            MS. FEVE:  Your Honor, I think that, for us, the

10   objections here are more about foundation and relevance, which

11   is this is an as-applied challenge.  I understand there's --

12   Judge Benitez has his decision and that's what the defendants

13   are going with.  But the Ninth Circuit and the Supreme Court

14   are really clear it is on its face or it's as applied.  And in

15   an as-applied challenge, it has to pertain to the defendant.

16   You don't get to say, "Well, somebody else could have been

17   confused even if I wasn't confused."

18       So if there's a foundation where the defendants are coming

19   forward and saying, "I had advice of counsel," or, "I

20   specifically referred to ARIN's website and I specifically saw

21   this and I will point you to exactly what I was relying on when

22   I did so," and then we can battle back and forth about whether

23   or not that was reasonable or whether or not it was credible.

24       But there, there is a foundation that's being laid for why

25   it is relevant and then we will talk about whether or not they

 1   properly authenticated it.

 2        But if the whole point is their clients knew exactly

 3   everything they stated that they knew but they want to throw

 4   sand and confuse the jury, that's what 403 is about, which is

 5   to say, "That's nice that somebody else could have been

 6   confused, but these guys were not."  And until they put forward

 7   the foundation to show us why it's relevant and they are just

 8   trying to create confusion, that's what 403 is for.

 9        So I can't say what we would be doing or not because --

10             THE COURT:  Let me ask -- stop.

11        So, to the extent that no one disputes this notion that a

12   property interest needs to have been traditionally recognized

13   as property, is that something that you believe should be

14   considered at all by the jury?  Or is that something that the

15   Court would address in the course of the determining whether or

16   not there's a void for vagueness, a due process issue?

17             MS. FEVE:  Well, I don't think there is a void for

18   vagueness because they have already said they are not

19   challenging the statute, Your Honor.

20        And as far as the as-applied, we have done it in a

21   confusing way, again, we would have to go to the facts of this

22   particular case.

23        And so, looking back at the various exhibits that the

24   defendants have tried to introduce, they have given you, kind

25   of, LRSAs that they have randomly selected from the internet.

1    If there is a connection between a particular LRSA and a

2    particular netblock, I start to understand the argument.

3         All we are saying is that, when we see the evidence, like,

4    we can make a response.  But if you are asking me, "Will I

5    never," or, "Do I promise to file a motion *in limine*," I can't

6    tell you that because I don't know what the evidence is, and I

7    haven't gotten any reciprocal discovery.  So I am really -- I

8    am completely blind as to what I should or should not be doing

9    at this point.  And I also think that this is putting the cart

10   way before the horse because this is a motion to dismiss, and

11   the central issue is are there facts in dispute.  And, clearly,

12   there are if we are arguing about whether or not there's going

13   to be a motion *in limine*.

14            THE COURT:  So, let me ask Ms. Rim again.

15        So, you are saying that you are not proceeding on void for

16   vagueness as applied to the IP addresses?

17            MS. RIM:  Your Honor, that is a defense we could

18   raise later, perhaps, at trial, but what we are -- the

19   vagueness comes from how the Supreme Court has treated the

20   interpretation of the word "property" in the mail and wire

21   fraud statute.

22            THE COURT:  The reason I ask is because at page 7 of

23   your moving papers, at line 12, it says, "First, the Court

24   should address the constitutional challenge.  Where an

25   indictment alleges as a property interest something which is

1    not recognized as a property interest, defendants are not

2    provided fair notice that their alleged conduct constituted a

3    wire fraud.  As such, the indictment is void for vagueness as

4    applied to IP addresses."

5         So, I looked at this, and I took from that that the

6    defense was asserting a void-for-vagueness challenge.  So, you

7    are telling me that you are not making a void-for-vagueness, as

8    applied to the IP address, challenge?

9              MS. RIM:  What I said earlier, Your Honor, was that

10   we weren't making a void-for-vagueness challenge as to the

11   specific facts of this case that will be in dispute at trial.

12        We are arguing that the indictment on its face is -- is --

13   if the Court were to not determine this question of whether or

14   not a IP address is property, it would run into vagueness

15   issues, the same vagueness issues that have been discussed in

16   all the Supreme Court and Ninth Circuit cases that have

17   discussed this word, not -- not a different element, not

18   interstate commerce, not jurisdiction, not a separate element,

19   but this particular word, "property," in this wire fraud

20   statute.

21             THE COURT:  All right.

22             MS. RIM:  And, Your Honor, I just want to note, the

23   Supreme Court has also said on lenity, multiple times, this is

24   not what the defendants knew subjectively.  This is an

25   objective, what -- "what notice was given to the world"

question.

THE COURT:  I would tend to agree with you, Ms. Rim, because in terms of "long recognized," it is not looking at, "Was it long recognized by the defendant?"  It is, "Was it long recognized in the industry, in the business community?"  So I agree with you on that.

But let me follow up.

Then, in your moving papers, right after the portion that I read, is, "Whether a statute is vague as applied to the allegations on the face of an indictment is a matter of law that must be decided pretrial," and that's when you referred to *Saathoff*.

So, then, so I understand clearly, there is a component of vague as applied, but it's limited, vague as applied to the allegations on the face of an indictment.  Is that correct?

MS. RIM:  Correct.  And that's why we believe, and *Saathoff* I think supports this, that a vagueness challenge can be brought on a motion to dismiss.  And the Ninth Circuit case *Bruckhausen* (phonetic) also supports that because, in that case, the Ninth Circuit held that the word "property" did not apply to a manufacturer's control over the destination of its product, and the Ninth Circuit said that was a defect in the indictment.  The Court didn't say it was a sufficiency-of-evidence problem.  The Court said that made the indictment insufficient as a matter of law, and that's the

1    challenge we are bringing here.

2          THE COURT:  But, at the end of the day, be it

3    *Saathoff* or the case relating to the export of these goods to a

4    Soviet block nation, the Court's focus has to be on what

5    preliminary findings of fact are being sought and whether or

6    not these preliminary findings of fact intersect or overlap

7    with issues that will be determined by the trier of fact.  And

8    based upon Judge Benitez's view in *Saathoff*, he had,

9    essentially, a 44-page indictment; he had a Supreme Court

10    proceeding involving the conflicts-of-interest issue that was

11    before them; and that he had enough information between that

12    and a number of hearings so as to be able to compare what he

13    had with other cases and found that his case was so much out of

14    the heartland, was so different from those other cases, that he

15    was able to conclude that the indictment did not provide fair

16    notice.

17       But we don't have that here, do we?

18          MS. RIM:  Your Honor, I believe we do.  We cited all

19    the cases that do address IP addresses.  And I think the real

20    issue here is the question of traditional recognition.  I

21    think -- our position is that there should not be -- the Court

22    should be permitted to consider the positions of ARIN and its

23    making the traditional recognition question.  We didn't grab

24    LRSAs off the internet.  We subpoenaed them from ARIN, as the

25    government is well aware.

 1          LRSAs, RSAs, many statements from ARIN, specifically

 2     during this time period, stated that these IP netblocks, which

 3     ARIN regulates, are not property.  And ARIN is not a government

 4     agency, it is a nonprofit, just like FINRA is a nonprofit, but

 5     they are both delegated by the government to regulate this

 6     area.

 7          So that fact, Your Honor, the Court should consider, and

 8     the Court can and actually must consider it outside of the

 9     presence of the jury, especially if the government is going to

10     try to argue that that is not relevant in the trial itself.

11          THE COURT:  Well, that would only be the case if I

12     granted the government's motion *in limine*, correct?

13          MS. RIM:  Not necessarily, Your Honor, because even

14     by arguing it, the government is saying that if the defendants

15     weren't subjectively aware of these statements, they wouldn't

16     be relevant.  That's really not -- that's really not how the

17     statute interpretation can work and it has nothing to do with

18     what the defendants knew.

19          THE COURT:  Ms. Rim, I agree with you.

20          But I don't agree with you that the Court must take this

21     evidence into account, at least to the extent that the Court

22     "must" take it into account and they otherwise interface or

23     intersect with what the finder of fact, the trier of fact would

24     have to find.  I think that is why Rule 12 dictates that the

25     Court let this matter proceed to trial.

1          For the same reasons that you are saying that I must

2     consider ARIN's positions or ARIN's practices, that is what the

3     Court is of the view that the jury should be entitled to

4     consider.  What is it that existed back in 2010 to 2014

5     relating to ARIN's restrictions, conditions, or directives?

6               MS. RIM:  Your Honor, respectfully, I guess that goes

7     back to the ultimate question of whether this is a question of

8     law that the Court must decide, and we have not seen one case

9     that has suggested that "property" is a factual question for

10    the jury.  That is literally allowing a jury to create a crime

11    by making -- leaving it as a -- them to decide as to whether

12    something has been legally, traditionally treated as property;

13    what notice that would have put the objective, ordinary person

14    of reasonable intelligence -- these are questions for the

15    Court.

16         So when I say that the Court must consider those facts, to

17    the extent that they are relevant to how IP netblocks have been

18    treated, what notice an ordinary person would have and whether

19    the statements of the agency regulating them would be relevant

20    to that legal inquiry, that is what I am suggesting that the

21    Court must consider because it is ultimately a legal question.

22         And the problem here, Your Honor, is that, by the

23    practical matter, we have got four men who are going to be --

24    if the government is allowed to introduce all of this

25    irrelevant, prejudicial evidence and allegations about wire

1    fraud, that will prejudice and taint their CAN-SPAM trial,

2    which -- and that's the issue.  Even by allowing this issue to

3    go forward when it's ultimately going to be a matter for the

4    Court to decide, all of that evidence is going to harm their

5    constitutional right to a fair trial.  And ultimately, at the

6    end, if the Court decides these are not property as a matter of

7    law, we will have a whole mess on our hands in terms of what

8    was allowed in in terms of the CAN-SPAM count and having to

9    move for a new trial.

10       I would submit to the Court that if the Court wants to

11   have a hearing on what ARIN's statements have been, especially

12   given that the government has acknowledged they are,

13   essentially, segregable, then the Court should have such a

14   hearing and then make a determination, but the Court should do

15   it before there is a trial.

16       In terms of the characteristics of IP addresses, Your

17   Honor, again, the issue there is let's say the jury does find

18   that IP addresses could be sold for value.  Are we -- is

19   there -- are we saying that, if the jury decides that, that the

20   jury can suddenly create a property right in IP addresses by

21   answering that question "yes"?  That's not how the law works.

22   That's not how the cases have determined this issue.

23       That's not -- and, frankly, the issue with the

24   government's continued reference to *Kremen* is that *Kremen* was a

25   civil case.  Civil cases, and the way that they determine what

 1   a property is -- and by the way, Your Honor, the Ninth Circuit

 2   also, in *Kremen*, stated very emphatically that determining

 3   whether a domain name was property was a matter of law for the

 4   Court.  It stated that very, very expressly.

 5        But, again, it was a civil case.  So, in a civil case,

 6   yes, you would look at the characteristics of something to

 7   determine whether it is a property right.  But you are not

 8   creating a crime when you determine that it is.

 9             THE COURT:  I understand that.  Ms. Rim, I wanted to

10   ask you a question about five minutes ago but I didn't want to

11   cut you off, but I do take issue with something you said.

12        You stated that property and the determination of property

13   is not an issue for the jury.

14        Did you say that?

15             MS. RIM:  Yes, Your Honor.  It is not.

16             THE COURT:  Okay.  And here is where I disagree.

17   Because I read to you the element from the Ninth Circuit

18   instruction, and it clearly provides that a defendant has to

19   knowingly participate in a scheme to defraud for obtaining

20   money or property, and that is in the instructions.  That is an

21   element.  The jury trial is required to find that there is;

22   there's money or property.

23        And as to what property, what makes up property or what

24   constitutes property, the Court is prepared to essentially move

25   that forward in terms of the admission of evidence.  I am going

1    to admit evidence that bears on the matter of a thing of value.

2    And at the same time, the Court will be called upon to

3    determine at the appropriate time whether or not, in view of

4    the government's case in chief, whether or not they have

5    offered sufficient evidence not only to the question of

6    property but also whether or not it has long been recognized as

7    property.

8        And you are right, potentially, to the extent that the

9    Court grants the Rule 29, there may be some concerns that you

10   justifiably have as to the jury having been exposed to this

11   additional evidence.  At the same time, keeping in mind that

12   most of this evidence as to property rights is not particularly

13   salacious.  It is not evidence that really places anyone in a

14   bad light.  It is just more about what these netblocks are,

15   which the jury would undoubtedly learn about in any event, even

16   for the CAN-SPAM.  Then they would have learned about some

17   additional characteristics about netblocks.

18       And so I don't think at the end of the day it would

19   necessarily be unduly prejudicial; but, at the same time, I

20   don't want to prejudge any of this.  But it doesn't seem to me

21   that it is a situation where you have somebody charged with

22   robbery, and then you have them charged for some other type of

23   offense that isn't less -- another offense that is less

24   prejudicial because it doesn't involve violence.

25       But I do understand your position, Ms. Rim, and I have

1    taken that into account.

2        At the same time, my reading of the Ninth Circuit law at

3    this point leaves me with the view that *Nukida* would not permit

4    the Court at this juncture to entertain the evidence that is

5    offered in the form of judicial notice such that as to rule on

6    this.  But I will state that I do have concerns whether or not

7    we have something that is a long-recognized property right, and

8    I will continue to look at this issue before trial.

9        The one benefit of these protracted proceedings relating

10   to this motion are that it has given me an opportunity to look

11   closer at the issues that will undoubtedly come up at trial,

12   and I know I have continued to ask questions about what trial

13   will look like because I have had a number of questions about

14   that, and I want to be confident as to what I am prepared to

15   admit at trial and how I will instruct the jury with respect to

16   property and what part of this long-recognized property right

17   will go to the jury, if at all, and how that fits into the

18   equation.

19       But, ultimately, at this point, I thank you for your

20   additional briefing and your responses here in this hearing.

21       Do you have anything else that you would like to offer,

22   Ms. Rim?

23          MS. RIM:  Your Honor, I just want to -- just on the

24   Ninth Circuit jury instruction, Your Honor, I know the way we

25   read that is that the jury has to find that the object of the

1    fraud has to have been money or property, but not that the jury

2    gets to decide whether something is property.  That is our

3    understanding of the how the law works, and it is sort of

4    discussed in *Kelly*.  So I just wanted to note that it is about

5    what is the object, the intent of the defendant; that's what

6    the jury question is.  But I will just note that for the

7    record.

8        And of course, just to the extent that -- I assume that

9    the Court is not going to make a decision as to whether an IP

10   netblock is the same thing as a domain name.  There are a

11   number of problems with that argument.  I think, just common

12   sense-wise, we all know Google.com but do not know what IP

13   addresses support that.  There are so many differences with

14   domain names and IP addresses, first and foremost being that,

15   in *Kremen*, the domain name registry Network Solutions had taken

16   the position that domain names were property, and Network

17   Solutions, as the Court may be aware, was ARIN's predecessor

18   because it used to regulate IP addresses.  And ARIN, in the

19   *Kremen* case -- it is the same case, but it came back to the

20   district court -- took the position that IP addresses were not

21   money or property.  So I just wanted to put that in the record

22   because I wanted to argue against what Ms. Feve said.

23       And on that, I submit.

24           THE COURT:  Okay.  And, Ms. Rim, I had asked the

25   government about what trial would look like and how the

1    defendants counter-offerings would look.  At this point, are

2    you prepared to call witnesses that would discuss issues

3    regarding the characteristics of IP addresses and how they are

4    utilized, whether or not they are exclusively controlled by,

5    one, the registrant or not?  Do you anticipate providing -- and

6    you don't have to answer this -- but to the extent that there's

7    going to be an expert witness, I guess I could ask you that.

8         Do you anticipate calling expert witnesses?

9         MS. RIM:  Your Honor, it depends on who the

10   government calls.  On those facts, frankly, we are probably not

11   going to be in dispute.  We have said that all along.  I think

12   we all will probably agree on what -- how an IP address is

13   allocated and assigned.  The conclusion is what will be

14   disputed.  We may call an expert.  With respect to some of the

15   statements by ARIN, we would probably just -- we may just call

16   Mr. Curran.

17        THE COURT:  That's the expert that the government has

18   relied upon?

19        MS. RIM:  The CEO of ARIN.  Yes.

20        THE COURT:  And then, anything further?  Anything in

21   addition from the government, Ms. Feve?

22        MS. FEVE:  No, Your Honor.  Not unless you have

23   further questions.

24        THE COURT:  At this point, I am finalizing the order,

25   and you may have detected that at this point I am not prepared

1    to rule on this motion pre-trial.  I believe that, under

2    *Nukida*, that this case must proceed.  At the same time -- in

3    addition, the Court finds that the circumstances that we have

4    here are distinguishable from *Saathoff* -- I am mispronouncing

5    that -- it is *Saathoff*, that the facts here are different than

6    those encountered by Judge Benitez in *Saathoff*, and I will

7    explain my reasoning in the order.

8         And I am prepared to find, under Rule 7, the indictment

9    does not fail for lack of specificity.

10        At the same time, I do have a number of concerns, and

11   perhaps the government will be able to address those at trial.

12        And let me inquire, are the parties prepared at this time,

13   then, to have the Court set the matter for trial?  I will share

14   with you that, at this point, I think we have about 18 trials

15   scheduled.  For the most part, they are all bunched up in May,

16   June, and now starting in July.

17        Given the amount of time that we would need for this

18   trial, I would look to schedule it no earlier than the fall of

19   2021, but let me hear from defense counsel as to their position

20   as to the timing of the trial.

21        Ms. Rim, do you have any position or view?

22             MS. RIM:  Your Honor, I apologize.  I would have to

23   confer with my co-counsel.

24             THE COURT:  All right.

25             MR. LINCENBERG:  Your Honor, Gary Lincenberg is on

1    the line, co-counsel.

2        We weren't prepared to discuss trial dates, but I have no

3    opposition to the Court setting a date in, perhaps, October.

4    The Court, I am sure, is aware, from dealing with counsel in

5    other cases, that we have this tremendous backlog of trials

6    from 2020 that keep getting pushed into 2021, and they sort of

7    jump on top of each other.  And as courts have set -- for

8    example, five months ago, they were setting dates in January,

9    and I have multiple trials set at the same time.  I wasn't

10   necessarily objecting, just alerting the Court because who knew

11   there were going to be further COVID continuances and the like?

12       So I think it's fair to set the trial date for the fall.

13   We just, you know, ask the Court to keep in mind that there's

14   so many moving targets with other cases that we might have to

15   reconvene on that date.

16              THE COURT:  Let me inquire --

17              MS. MUNK:  Your Honor --

18              THE COURT:  Who is this?

19              MS. MUNK:  This is Jessica Munk.  Thank you.

20       Can I propose maybe we set a status conference for now and

21   that way defense counsel -- we can confer.  We do have a number

22   of trials, as Mr. Lincenberg mentioned, that keep getting

23   moved.  I would hate to schedule and then a bunch of us have

24   conflicts.  Maybe we could also confer with the government as

25   well and come back on a status conference.

```
 1          THE COURT:  Let's do that.  I know, even as far as
 2   motion hearings, we have had to do a lot of back-and-forth to
 3   come up with dates.  So, let's set the matter for a status
 4   hearing -- how about in about five weeks -- and let you take a
 5   little time off during the holidays and then get together and
 6   come up with some dates.  Is that -- does that sound like a
 7   good plan?
 8          MS. FEVE:  Your Honor, this is Sabrina Feve, for the
 9   United States.  And I believe, while the Court has issued a
10   tentative, it has not issued its order, so we could exclude
11   time based on the fact that motion is still pending.
12          THE COURT:  I am prepared to find excludable time,
13   period, given, at this juncture, the pandemic, the response to
14   the pandemic, the limitations and restrictions that it has
15   created.  At this point, the Court was able to hold one trial
16   since March because we were limited to one trial per month
17   because that was the only way that we would have the space to
18   select a jury with social distancing, so I had one trial in
19   November.  The one in December was continued given the surge in
20   cases.  At this point, I expect that this surge will remain
21   with us and may even grow larger after the Christmas holidays
22   so that we won't be in the position to select juries in our own
23   respective courtrooms until at least May or June of next year,
24   after the vaccine is distributed in such numbers that we can
25   have a full complement of courtroom staff, attorneys, and
```

1    jurors who are able to serve on a jury trial.

2         So, with that all being said, and keeping in mind that the

3    Court has given priority for trial to defendants who are in

4    custody, the soonest that this Court would able to try this

5    case would be next July.  That's the very soonest.  And keeping

6    in mind that, even then, there's a good chance it could get

7    bumped in order to allow a defendant who is in custody to

8    proceed to trial.

9         So, with that, the Court is prepared to find that, based

10   upon the judicial emergency that has been declared by Chief

11   Judge Larry Alan Burns, and the condition that the Court finds

12   itself in with respect to its calendar, that time is excludable

13   under 3161(h)(7)(B)(i).

14        And then, I throw in, then, in the mix this motion is

15   still under consideration, but I don't think that that is

16   necessarily the reason.  It is -- at this point, there is the

17   judicial emergency that we are dealing with.

18        Then, let me then set this matter for a status hearing in

19   five weeks.

20             THE CLERK:  January 21.

21        (Discussion between clerk and Court.)

22             THE COURT:  Let's schedule it for January 21 of 2021

23   at 2:00 p.m.  And I will conduct that hearing telephonically.

24        And let me obtain consent from the defendants to

25   participate in today's proceeding telephonically and the one on

1    January 21.

2        Mr. Bychak, Manoogian, Qayyum, and Pacas, we have

3    conducted today's hearing telephonically in order to reduce the

4    likelihood that any of us would contract COVID-19 as a result

5    of all of us being present in this enclosed space for an

6    extended period of time, and I want to assure myself that you

7    consent to proceeding in this manner, because you otherwise

8    have the right to be present in the courtroom for all court

9    proceedings.

10        Mr. Bychak, do you consent and do you waive your right to

11   be present?

12            MR. BYCHAK:  Yes, I consent.

13            THE COURT:  And that is for today and for

14   January 21st?

15            MR. BYCHAK:  Yes.  Correct.

16            THE COURT:  And then, Mr. Manoogian, do you also

17   consent to proceeding today and January 21st telephonically?

18            MR. MANOOGIAN:  Yes, Your Honor.

19            THE COURT:  And you waive your right to be present,

20   correct?

21            MR. MANOOGIAN:  Yes, Your Honor.

22            THE COURT:  And Mr. Qayyum, do you also waive your

23   right to be present at today's proceedings and those that will

24   be held on January 21st?

25            MR. QAYYUM:  Yes, Your Honor.

```
 1              THE COURT:  And finally, Mr. Pacas, do you also
 2    consent, and do you waive your right to be present here in
 3    court today and on January 21st?  Mr. Pacas?
 4              MR. PACAS:  Yes, Your Honor.
 5              THE COURT:  Then, the Court will accept the waiver
 6    and schedule the next hearing as a telephonic status hearing.
 7         And then, is there anything else to address from the
 8    government's side?
 9              MS. FEVE:  No, Your Honor.  Thank you.
10              THE COURT:  And so, then, with that, that will
11    conclude these proceedings.  Have a safe holiday, and I look
12    forward to talking to you in January.  Thank you.
13              ALL:  Thank you, Your Honor.
14         (End of proceedings at 4:02 p.m.)
15                            -o0o-
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C-E-R-T-I-F-I-C-A-T-I-O-N

 2

 3            I hereby certify that I am a duly appointed,

 4   qualified and acting official Court Reporter for the United

 5   States District Court; that the foregoing is a true and correct

 6   transcript of the proceedings had in the aforementioned cause;

 7   that said transcript is a true and correct transcription of my

 8   stenographic notes; and that the format used herein complies

 9   with rules and requirements of the United States Judicial

10   Conference.

11                 DATED:  December 29, 2020, at San Diego,

12   California.

13

14                          /s/  Chari L. Bowery
                            _____
15                          Chari L. Bowery
                            CSR No. 9944, RPR, CRR
16

17

18

19

20

21

22

23

24

25
```