1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9         SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 18-CR-4683-GPC |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS WIRE FRAUD COUNTS FOR VIOLATING THE FIFTH AMENDMENT DUE PROCESS AND SIXTH AMENDMENT FAIR NOTICE PROTECTIONS** |
| v. | |
| JACOB BYCHAK, et al., | |
| Defendants. | |
| | **[ECF No. 169.]** |

On May 28, 2020, Defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr Pacas ("Defendants") filed a Joint Motion to Dismiss Wire Fraud Counts for Violating the Fifth Amendment Due Process and Sixth Amendment Fair Notice Protections. (ECF No. 169.)  On June 8, 2020, the Government filed its original response, and on November 23, 2020 filed a further response. (ECF Nos. 176, 222.)  Defendants filed its reply on June 22, 2020 and sur-replies on November 2, 2020 and December 7, 2020. (ECF Nos. 188, 221, 223.)  Hearings on the motion were held on July 16, October 1, and December 17, 2020. (ECF Nos. 202, 214 and 225.)

The pending motion asserts that (1) the wire fraud statute is constitutionally vague

as applied to the allegations contained in the Indictment; (2) IP addresses are not "property" in light of properly considered extrinsic, preliminary facts, and (3) the Indictment fails to recite the essential element of "property" of the charged offense.

Upon reviewing the papers, the applicable law and the arguments of counsel, the Court concludes that (1) an "as-applied" challenge is confined to an attack based upon facts developed at trial and is therefore premature at this time; (2) Federal Rule of Criminal Procedure 12(b) does not allow the Court to decide whether IP addresses qualify as "property" prior to trial because the question relates to an element that must be decided by the trier of fact; and (3) the Indictment sufficiently recites the essential element of "property", provides sufficient specificity to allege the elements of the wire fraud and permits the Defendants the opportunity to prepare a defense. As such, the motion to dismiss is DENIED without prejudice for Defendants to renew their motion in the form of a Rule 29 motion at trial.

## I.    BACKGROUND

### A.    The Indictment

On October 31, 2018, the Government filed the Indictment which charges that, from December 2010 to September 2014, Defendants conspired with each other to commit wire fraud and felony electronic mail fraud. (ECF No. 1.) Specifically, Defendants are each charged with one count of conspiracy to commit offenses against the United States, specifically, wire fraud, (18 U.S.C. § 1343), and electronic mail fraud, (18 U.S.C. §§ 1037(a)(5) and (b)(2)(C)), in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2; four counts of wire fraud, in violation of 18 U.S.C. § 1343; and five counts of electronic mail fraud, in violation of 18 U.S.C. §§ 1037(a)(5) and (b)(2)(C), and 18 U.S.C. § 2. (*Id.*)

As to the conspiracy, the Indictment charges three "objects of the conspiracy": identifying or paying to identify "blocks of Internet Protocol (IP) addresses called 'netblocks' that were registered to others and appeared to be inactive," creating and sending "letters to Internet hosting companies fraudulently stating the letter bearer had

been authorized by the registrants of the inactive IP addresses to use the IP addresses," and using "the fraudulently acquired IP addresses to send commercial email ('spam') messages." (*Id.* at ¶ 2(a)-(c).)

The Indictment sets out two overt acts that relate to the conspiracy. First, the Indictment charges that, "[o]n or about August 25, 2013, in San Diego, California defendant MOHAMMED ABDUL QAYYUM created a letter which fraudulently purported to authorize the use of a netblock not registered to the conspirators and emailed the letter to defendants MARK MANOOGIAN and JACOB BYCHAK." (*Id.* at ¶ 3(a).) Second, the Indictment charges that "[o]n or about January 13, 2014, in San Diego, QAYYUM emailed BYCHAK, MANOOGIAN, and others that he was preparing network connections and would advise when a netblock purchased from a company employing Daniel Dye was ready to send commercial emails." (*Id.* at ¶ 3(b).)

As to the wire fraud counts, the Indictment charges that Defendants "devised a material scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did . . . transmit and cause to be transmitted by means of wire communication in interstate commerce the writings, signs and signals below for purposes of executing the scheme and artifice to defraud." (*Id.* at ¶ 4.) The Indictment alleges four acts in furtherance of the scheme, namely, that Defendants (a) "searched for IP addresses registered to third parties that appeared to be inactive;" (b) "created and sent letters to Internet hosting companies fraudulently making it appear that the registrant of the IP addresses had authorized the defendants' use of the IP addresses;" (c) "used the IP addresses to send commercial email messages knowing they did not obtain control of the IP addresses from the true registrant or the legitimate successor in interest;" and (d) "concealed their use of the IP addresses to send 'spam' emails by using business names, post office boxes, and email addresses under different names." (*Id.* at ¶¶ 5–8.)

The Indictment charges four interstate wire communications:

3

| Count | Date | From | To | Description |
|---|---|---|---|---|
| 2 | 11-11-13 | San Diego | Oklahoma | PayPal wire transfer of $600 for hosting of ECT netblock. |
| 3 | 1-9-14 | San Diego | Oklahoma | PayPal wire transfer of $600 for hosting of Telalink netblock. |
| 4 | 2-28-14 | San Diego | Oklahoma | PayPal wire transfer of $600 for hosting of MooreSolutions netblock. |
| 5 | 3-10-14 | San Diego | Oklahoma | PayPal wire transfer of $600 for hosting of Telalink netblock. |

(*Id.* at ¶ 8.) The Indictment further charges five counts of electronic mail fraud and criminal forfeiture allegations not at issue here. (*Id.* at ¶¶ 9–14.)

### B.    Prior Motion to Dismiss

Previously, on January 23, 2020, Defendants had filed a motion to dismiss counts two through five of the Indictment charging four instances of wire fraud in violation of 18 U.S.C. §1343. (ECF No. 149.)  In the earlier motion, Defendants argued that IP addresses are not "property" as the term is used under the wire fraud statute and that, in the alternative, the IP addresses were not obtained by means of a material misrepresentation directed at victims of the scheme. (*Id.*) Defendants also argued that the Court should strike all wire fraud allegations in Count 1 of the Indictment for failure to state a wire fraud offense and lack of specificity. (*Id.*) On April 8, 2020, the Court entered an order denying the motion. (ECF No. 160.) Among other things, the Court found that it "lack[ed] the factual record necessary to determine whether IP addresses assigned prior to creation of the American Registry of Internet Numbers (ARIN) on December 22, 1997 are 'property' for the purposes of the wire fraud statute, 18 U.S.C. § 1343." (*Id*. at 2.)

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure ("Rule") 7 requires that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1). An indictment must also "furnish the defendant with a sufficient description of the charges against him to enable him to

4

prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge." *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979). Whether a statute gives fair notice is a question of law.

Under Rule 12, a defendant may move to dismiss an indictment on the ground that the indictment "fail[s] to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment's failure to detail each element of the charged offense generally constitutes a "fatal defect." *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979); *United States v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at *12 (N.D. Cal. Feb. 11, 2020) (quoting *United States v. Carroll*, No. CR-13-0566 EMC, 2015 WL 2251206, at *1 (N.D. Cal. May 13, 2015) ("An indictment fails to state an offense if it does not allege facts which, if proven, would constitute a violation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.")).

On a motion to dismiss an indictment, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment." *Id.*

Rule 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citations and quotations omitted). "[A] district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not

5

invade the province of the ultimate finder of fact." *Id.* (citations omitted). In *Shortt*, the Ninth Circuit stated:

> As the ultimate finder of fact is concerned with the general issue of guilt, a motion requiring factual determinations may be decided before trial if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense. Under this standard, the district court must decide the issue . . . if it is entirely segregable from the evidence to be presented at trial. If the pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred.

*Id.* (internal quotations and citations omitted).  Generally, Rule 12(b) motions are appropriate to consider "such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction." *United States v. Smith*, 866 F.2d 1092, 1096 n. 3 (9th Cir. 1989).

## III.   JUDICIAL NOTICE

### A.      The Court Denies in Part and Grants in Part the Motion to Take Judicial Notice

Federal Rule of Evidence 201 provides that a court "may judicially notice a fact that is not subject to reasonable dispute," either because it is (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  A court can therefore "take judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records."  *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019).

"Just because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 399 F.3d at 999. That is true of court documents. *See GemCap Lending, LLC v. Quarles & Brady, LLP*, 269 F. Supp. 3d 1007, 1019 (C.D. Cal. 2017), *aff'd sub nom. GemCap Lending I, LLC v. Quarles & Brady, LLP*, 787 F. App'x 369 (9th Cir. 2019) (finding that a court may "take judicial notice of the existence of another court's opinion or of the filing of pleadings in related proceedings; the Court may not, however, accept as true the facts found or alleged in such documents."). It is also true of other government documents. *See In re UnumProvident Corp. Sec. Litig.,* 396 F. Supp. 2d 858, 875–76 (E.D. Tenn. 2005) (taking judicial notice of forms filed with the SEC, but noting "[i]t would be improper for the Court to rely upon these documents to determine disputed factual issues and by taking judicial notice of these documents at this time the Court in no way intends to make any determination as to the truth of any of the facts alleged or otherwise asserted in the documents themselves").

A court therefore must identify what facts it is judicially noticing from a document. *Id.* As a result, the requesting party should accordingly identify what facts within the document it seeks to have judicially noticed. *See Capaci v. Sports Research Corp.*, 445 F. Supp. 3d 607, 617 (C.D. Cal. 2020) ("Because defendant does not identify which facts within the exhibits it asks the court to judicially notice nor does it explain why the court can judicially notice those facts, the court denies defendant's request for judicial notice."); *Riley v. Chopra*, No. CV 18-3371 FMO (SKx), 2020 WL 5217154, at *2 (C.D. Cal. June 19, 2020) (finding requesting party's arguments "unpersuasive" given party's failure to identify what facts were to be judicially noticed).

Defendants have moved the Court to take judicial notice of nine documents that relate to IP addresses, netblocks, the right to use and control assigned netblocks and the American Registry of Internet Numbers (ARIN).  The Court DENIES in part and GRANTS in part the motion as described below. However, the Court DECLINES to take

judicial notice of any of the documents to determine disputed factual issues because (1) the documents are not all presumed to be authentic as government documents or matters of public record, and because (2) even if the authenticity of the documents was clear, the documents' contents are disputed such that judicial notice of the facts therein is improper.

### 1.   Exs. A, B, C: Excerpts of ARIN Registration Service Agreements ("RSA") templates dated March 10, 2011, June 18, 2004, and October 31, 2007.

Defendants argue that Exhibits A, B, and C are "generally known, especially in the internet marketing community," because "ARIN is the controlling authority when it comes to the administration of Internet Protocol addresses." (ECF No. 169-3 at 4.)

The Government responds that the "Court cannot judicially notice the RSA templates because the truth of their contents, particularly as it relates to property rights, is disputable." (ECF No. 176 at 22.) The Government also contends that the Court cannot take judicial notice merely because ARIN drafted the documents since "ARIN did not and cannot define 'property' for purposes of § 1343." (*Id.* at 23.)

As a general matter, a court can take notice of a contract if three factors are satisfied: that the subject contract (1) is between the parties, (2) a necessary part of the complaint, and (3) is authentic. *Daniels v. United States, No.* 3:16-CV-02077-BTM, 2017 WL 3478765, at *4 (S.D. Cal. Aug. 11, 2017); *see also Parrino v. FHP, Inc*., 146 F.3d 699, 706 (9th Cir. 1998);  *Scott v. Bluegreen Vacations Unlimited, Inc*, No. 19-CV-01807-AWI-JLT, 2020 WL 3296190, at *4 (E.D. Cal. June 18, 2020); *Neilson v. Union Bank of California, N.A*., 290 F. Supp. 2d 1101, 1114 (C.D. Cal. 2003).

Even where these factors are not spelled out separately, courts assess the contract's authenticity and reliability. For example, in *Infinite Financial Solutions, Inc*., the court took judicial notice of 11 documents, including various contracts. *Infinite Fin. Sols., Inc. v. Strukmyer, LLC*, No. 3:13-CV-00466-HDM, 2014 WL 12598866, at *2 (D. Nev. Jan.

28, 2014). The Court expressly noted that the documents were contracts "between the parties," were largely "matters of public record," and were not "subject to reasonable dispute." *Id.*, *see also Hall v. Washington Mut. Bank*, No. CV-10-01606-DMG, 2010 WL 11549664, at *1 n.2 (C.D. Cal. July 7, 2010) (court took notice of a Purchase & Assumption Agreement because one of the parties to the agreement was a government entity, and thus treated the contract as a "matter of public record.").

Thus, private entity contracts are not presumed to be authentic or matters of public record. However, Defendants point out that the standard, form service contracts used by ARIN are well known to the community, and thus may be considered sufficiently reliable for judicial notice. However, the Government asserts that the truth of the RSAs' contents are "disputable." (ECF No. 176 at 22.)  Also, the contracts are not between the Parties, but rather sample contracts used by a third party in managing other third parties' relationships to IP addresses/netblocks. And, the RSAs are not mentioned or relied upon in the complaint, as would be required to incorporate them by reference. As such, the Court cannot take judicial notice of these documents.

### 2. Ex. D: Federal Communications Commission ("FCC") Staff Working Paper.

Defendants argue that Exhibit D is a "publication[] from [a] federal agenc[y]" and thus "contain[s] facts that are accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (ECF No. 169-3 at 5.)

Under Rule 201, "government documents available from reliable sources on the Internet, such as websites run by governmental agencies" generally fall into this category as sufficiently authentic and well-known. *Gerritsen v. Warner Bros. Entm't Inc*., 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (citations and brackets omitted). Government documents, more generally, are "considered not to be subject to reasonable dispute." *L'Garde, Inc. v. Raytheon Space & Airborne Sys*., 805 F. Supp. 2d 932, 937–38 (C.D. Cal. 2011) (internal quotation marks omitted); *see also Daniels–Hall v. Nat'l Education*

9

*Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because they were government entities).

However, even with these cases, the same limitation applies that, to be noticeable, the information in the sources cannot be reasonably disputed. *See Daniels-Hall,* 629 F.3d at 998–99 (expressly noting that "neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein"). Here, the Court can take notice of the Working Paper for the undisputed facts that it exists and contains whatever it states. However, the Court cannot take judicial notice of what it states as fact because the contents of the Working Paper are disputed. Moreover, the paper is especially unreliable given its own admonition to the reader that its contents are only "preliminary materials circulated to stimulate discussion and critical comment" and "do not necessarily reflect the view of the FCC." (ECF No. 176 at 23); *Barrera v. Comcast Holdings Corp*., No. 14-CV-00343-TEH, 2014 WL 1942829, at *2 (N.D. Cal. May 12, 2014) (taking judicial notice of two petitions before the FCC and noting what is said in those petitions, but not expressly accepting their contents as fact).

### 3.   Exs. E & F: Articles in Business Law Today and Bloomberg BNA

Defendants argue that Exhibits E and F are generally well known because they are "articles written by ARIN in third-party publications regarding IP addresses." (ECF No. 169-3 at 4.) The Government responds that contents of these news articles "are neither generally known nor from sources whose accuracy cannot be questioned." (ECF No. 176 at 23.) Such publications can establish "what was in the public realm at the time but not the truthfulness of its fact." (ECF No. 176 at 23.) Both articles also provide legal analysis not proper for judicial notice. (*Id.*)

"Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt*., 435 F.3d 396, 401

n.15 (3d Cir. 2006)). As a result, the judicial notice of publications is often used by Courts for the purpose of establishing inquiry notice, and not to rely on a fact stated in the publication for its truth value. *See In re Am. Funds Sec. Litig.*, 556 F. Supp. 2d 1100, 1106 (C.D. Cal. 2008*), vacated and remanded on other grounds*, 395 F. App'x 485 (9th Cir. 2010) (taking notice of several news articles for the purpose of finding that they put a party on notice of a fraudulent scheme, not for the truth of that scheme); *Lane v. Page*, 649 F. Supp. 2d 1256, 1301 (D.N.M. 2009) (taking notice of articles on issue whether inquiry notice was triggered but not the truth of their notices).

Consequently, the Court can take notice of the Bloomberg BNA and Business Law Today articles (i.e., that they exist, were written by a specific person, and offer a specific perspective) and then refer to what they say. But, it cannot rely on the contents of the articles for any factual determination. Also, it is of no consequence that ARIN has written them because ARIN is not a government body, despite its close relationship to the Government and history. And, again, the documents' contents are disputed.

### 4.    Ex. G: Excerpt of letter from National Telecommunications and Information Administration ("NTIA")

Defendants argue that Exhibit G is a "publication[] from [a] federal agenc[y]" and thus "contain[s] facts that are accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (ECF No. 169-3 at 5.)

In sum, a document from a trusted source like a government website can be noticed, but its contents cannot be noticed if disputed. *See Daniels–Hall*, 629 F.3d at 999. Here, the Court has the authority to take judicial notice of the NTIA letter because it was posted to a government website. *Id.*

The Government asserts that the Court cannot take judicial notice of the NTIA Letter's contents as true because they are disputed. (ECF No. 176 at 23.) The Government asserts that the letter is merely a "blog posted on [NTIA] website from the NTIA Administrator describing the government's position on the development of internet

1  technical standards and policies." (*Id.*) Further, it points out that its contents reflect only

2  the opinion of the agency's administrator at the time, and not that of the Government.

3  (*Id.*)  Hence, the "validity of its contents is disputable, and it does not constitute an

4  admission of government record." (*Id.*) The Court agrees. *Cf. Patel v. Parnes,* 253 F.R.D.

5  531, 546 (C.D. Cal. 2008) ("It is appropriate for the court to take judicial notice of the

6  content of the SEC Forms 4 and the fact that they were filed with the agency. The truth of

7  the content, and the inferences properly drawn from them, however, is not a proper

8  subject of judicial notice under Rule 201.") (also discussing press releases).

9          **5.      Ex. H: Excerpt of a letter from Canada's Department of Industry.**

10          Defendants offer Exhibit H as a "a letter from Canada's Department of Industry

11  regarding Canada's position on whether IP addresses are property." (ECF No. 169-3 at

12  5.) It "contain[s] facts that are accurately and readily determined from sources whose

13  accuracy cannot reasonably be questioned." (*Id.*)

14          The Government contends that the Court cannot take judicial notice of the

15  Canadian Letter on Defendants' theory because (1) it does not relate to the parties, (2)

16  Defendants' "conflate the Court's ability to take judicial notice of the fact that such

17  documents were publicly filed with the ability to take judicial notice of the facts

18  contained therein," and (3) the "mere fact of the public filing of [this] document[] does

19  not change that [its] contents are not generally known or from a source that cannot

20  reasonable be questioned." (ECF No. 176 at 24.)

21          Here, the Government's second argument is on point. The Court simply cannot

22  take notice of the facts contained in a foreign government's document like this, though it

23  can notice the existence, date, name, and other adjudicative facts concerning the

24  document. *See Khoja,* 899 F.3d at 1000–02 (finding judicial notice of facts contained

25  within European Medical Agency report was an abuse of discretion and allowing instead

26  judicial notice of the date on which a foreign application was filed); *Color Switch LLC v.*

27  *Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1089 n.6 (E.D. Cal. 2019) (taking judicial

28

12

1   notice of foreign court documents and public records from a foreign government "for the

2   fact of their filing, but not for the truth of the matters asserted therein.").

3         **6.**    **Ex. I: Excerpt from a Blackline Amended Purchase Agreement**

4             **filed by the parties in *In re Nortel Networks Inc*., Case No. 09-**

5             **10138-CCS (Bankr. D. Del.)**

6         Defendants argue that Exhibit I "is subject to judicial notice because it is a matter

7   of public record that was filed on PACER." (ECF No. 169-3 at 5.)

8         "A court may take judicial notice of undisputed matters of public record, which

9   may include court records available through PACER." *United States v. Raygoza-Garcia*,

10   902 F.3d 994, 1001 (9th Cir. 2018); *Irvin v. Madrid*, No. CV-16-1198-DMG, 2016 WL

11   9132877, at *1 (C.D. Cal. Dec. 8, 2016) (taking notice of courts' docket and filings).

12   However, again, the Court is not permitted to take notice of facts in PACER documents

13   where they are "neither 'generally known within the trial court's territorial jurisdiction'

14   nor 'can [it] be accurately and readily determined from sources whose accuracy cannot be

15   reasonably questioned' as required under Federal Rule of Evidence 201(b)." *Raygoza-*

16   *Garcia*, 902 F.3d at 1001.

17         Hence, even though the Court may be able to take notice of the Purchase

18   Agreement document filed in *In re Nortel Networks Inc*. as sufficiently authentic, the

19   Court cannot assume the facts in the Agreement are sufficiently accurate or true. *See*

20   *Dimas v. JPMorgan Chase Bank, N.A*., No. 17-CV-05205-LHK, 2018 WL 809508, at *7

21   (N.D. Cal. Feb. 9, 2018) (looking to PACER and taking judicial notice only of the fact

22   that a party had filed for bankruptcy). The rules governing judicial notice of a contract

23   would also seem to apply. *See supra* Section III(A)(1) (discussing RSAs).

24         For the reasons stated above, the Court GRANTS in part and DENIES in part the

25   motion for judicial notice.  As to the requests that are granted, the Court finds that it will

26   only notice the existence of the document but will not accept as facts the information

27   contained therein. The Court DECLINES to take judicial notice of any of the documents

28

to determine disputed factual issues documents because even if the authenticity of the documents was clear, the documents' contents are disputed such that judicial notice of the facts therein is improper.

## IV.   LEGAL DISCUSSION

The Indictment alleges that Defendants used the wires in a scheme to defraud the registrant of IP addresses when they "used the IP addresses to send commercial messages knowing they did not obtain control of the IP addresses from the true registrant or legitimate successor in interest." (ECF No. 1, Indictment ¶¶ 5-7.)  Defendants move to dismiss the Indictment arguing it is constitutionally defective because it fails to allege a fraud involving "property," denies them fair notice that their conduct constituted wire fraud and is void for vagueness.  (ECF No. 169-1 at 6-7.) Further, Defendants claim that they are entitled to have their motion to dismiss granted before trial because the issue involves an issue of law and the Court may make preliminary findings of fact necessary to decide questions of law.  *Id*. at 24-27.

The Court finds that the indictment sufficiently details that IP netblocks are "property."  The question whether IP netblocks are "property" is one that requires the trier of fact to determine whether netblocks constituted "something of value" at the time of the alleged offense.  Further, given the Court's rulings on Defendants' requests for judicial notice, there is a lack of evidence or undisputed allegations in the Indictment for the Court to conclude that the netblocks are not "property."  Moreover, even if the Court were to judicially notice the nine exhibits offered by Defendants, the contested issue is not segregable from the evidence to be presented at trial. In other words, the Defendants' motion raises an issue that is substantially founded upon and intertwined with evidence concerning the alleged offense and thus falls within the province of the jury.

### A.   The Wire Fraud Statute

The wire fraud provides in relevant part:

14

1
2
3
4
5

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

6
7    18 U.S.C. § 1343.
8
9        The elements of wire fraud are "(1) a scheme or artifice to defraud for the purpose
10   of obtaining money or property, (2) participation by the defendant with specific intent to
11   defraud, and (3) use of the mails or wire transmissions in furtherance of the scheme."
12   *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012); 9th Cir. Model Crim. Jury Instr. §
13   8.124. Section 1343 reaches any scheme to deprive another of money or property by
14   means of false or fraudulent pretenses, representations, or promises. *Carpenter v. United
15   States*, 484 U.S. 19, 27 (1987).  "Additionally, the object of the alleged scheme or artifice
16   to defraud must be a traditionally recognized property right." *United States v. Hedaithy*,
17   392 F.3d 580, 590 (3d Cir. 2004); *United States v. Henry*, 29 F.3d 112, 115 (3d Cir.
18   1994) ("[T]o determine whether a particular interest is property for purposes of the fraud
19   statutes, we look to whether the law traditionally has recognized and enforced it as a
20   property right.").

21       **B.    "As-Applied" to the Facts Challenge**

22       Defendants assert that the Indictment is constitutionally defective because it denies
23   them fair notice that their conduct constituted wire fraud and is void for vagueness.  (ECF
24   No. 169-1 at 6-7.)  Further, Defendants contend that the question should be decided
25   before trial because the issue involves a question of law. The Court concludes that the
26   void for vagueness challenge is premature in that it is not a facial challenge of the wire
27   fraud statute, it does not implicate the First Amendment, and, it is a challenge "as-applied
28   to the facts" that must await trial.

1      Under the Sixth Amendment, "[i]n all criminal prosecutions the accused shall

2  enjoy the right … to be informed of the nature and cause of the accusation." U.S. CONST.

3  amend. VI. Under this provision, "no man shall be held criminally responsible for

4  conduct which he could not reasonably understand to be proscribed." *United States v.*

5  *Harriss*, 347 U.S. 612, 617 (1954); *cf. Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391

6  (1926).

7      A criminal statute is void for vagueness if it "'fails to give a person of ordinary

8  intelligence fair notice that his contemplated conduct is forbidden by the statute,' or is so

9  indefinite that 'it encourages arbitrary and erratic arrests and convictions.'" *Colautti v.*

10 *Franklin*, 439 U.S. 379, 390 (1979) (internal citations omitted). This "does not mean that

11 [a] statute must define every factual situation that may arise." *United States v. Nelson*,

12 712 F.3d 498, 508 (11th Cir. 2013).

13      First, a defendant claiming a statute is fatally vague on its face must show that the

14 statute is vague "in the sense that no standard of conduct is specified at all." *United States*

15 *v. Schneiderman*, 968 F.2d 1564, 1567 (2d Cir. 1992) (*quoting Village of Hoffman*

16 *Estates v. The Flipside*, 455 U.S. 489, 495 n. 7 (1982)). The defendant bears the burden

17 of showing the statute to be "impermissibly vague in all of its applications." *Id.* at 1568

18 (citing *Hoffman Estates*, 455 U.S. at 495).  Second, the U.S. Supreme Court has made

19 clear that an as-applied to the facts challenge is entertained after trial unless First

20 Amendment concerns are raised. *Chapman v. United States*, 500 U.S. 453, 467 (1991);

21 *United States v. Powell*, 423 U.S. 87, 92 (1975). Vagueness challenges that do not

22 involve the First Amendment must be examined in light of the specific facts of the case at

23 hand and not with regard to the statute's facial validity. *See, e.g., United States v.*

24 *Mazurie*, 419 U.S. 544, 550 (1975) (holding it "well established that vagueness

25 challenges to statutes which do not involve First Amendment freedoms" require review

26 of the factual record.). Here, Defendant does not present a facial challenge of § 1343 and

27 the motion to dismiss does not involve First Amendment concerns, instead, it is an "as-

28

applied to the facts" challenge. As an "as-applied" challenge, pretrial adjudication of the challenge is premature because the motion cannot be decided as a matter of law and a review of the factual record is required.

Recognizing that an "as-applied to the facts" challenge is premature under *Chapman*, Defendants invite the Court to entertain an "as-applied to the indictment" challenge as raised pretrial in *United States v. Saathoff*, 708 F. Supp. 2d 1020 (S.D. Cal. 2010). In *Saathoff,* city board members were charged with violations of the wire fraud statute by conducting a "scheme or artifice to defraud", to wit, a scheme or artifice to deprive another of the intangible right of honest services by failing to disclose conflicts of interests. In its analysis, the court observed that the right of honest service theory was one that had been identified as particularly problematic. 708 F. Supp. 2d at 1026.[1] Eventually, the court dismissed the indictment prior to trial as being vague as-applied to the defendants. The court explained that:

> From reviewing the indictment and holding hearings over the past three years, it is clear that the vagueness of § 1346 has failed to give these defendants fair warning that their conduct could violate the federal mail and wire fraud statutes. Although the honest services statute is not unconstitutionally vague on its face according to current circuit precedent, it is vague *as applied* to these defendants.

*Id*. at 1035.

Defendants have not identified a case where the Supreme Court itself has endorsed an "as-applied to the indictment" challenge.  Furthermore, *Saathoff* presented a unique set of facts, did not address the *Chapman* holding and considered the "as-applied to the indictment" challenge by taking into account the 44-page detailed indictment plus

---

[1] In *United States v*. *Kincaid–Chauncey*, 556 F.3d. 923, 950 (9th Cir. 2006), Judge Marsha Berzon recognized that the conflict of interest theory of honest services fraud risks imposing a dangerously amorphous standard of criminal liability in the case of public officials.

1   evidence derived from court hearings in the case over the course of three years and

2   parallel proceedings before the California Supreme Court in a case interpreting

3   California's government employee conflict of interest statute that involved Mr. Saathoff.

4   *See Lexin v. Superior Ct.*, 47 Cal. 4th 1050, 1065 (2010*), as modified* (Apr. 22, 2010).

5          Unlike *Saathoff*, the instant prosecution is not premised on the problem-ridden

6   honest services fraud theory nor does it involve parallel proceedings addressing the

7   conduct of the Defendants. Nor is there anything close to a 44-page indictment that can

8   be relied upon by the Court in order to summon the factual record to conclude that

9   netblocks are not property without invading the province of the jury.[2]  As such,

10  Defendants' "as applied" challenge must be reviewed in light of the facts relating to

11  Defendants' specific conduct and the IP netblocks allegedly used in the commission of

12  the offense and cannot be entertained before trial.

13  **C.      Rule 12(b) Does Not Permit the Court to Consider Extrinsic Facts to**

14          **Decide Issues that Are Inextricably Intertwined with the Essential**

15          **Elements of the Offense**

16          Defendants assert, in the alternative, that if the Court rejects their "as-applied to the

17  indictment" challenge, the Court should consider extrinsic, preliminary facts pursuant to

18  Rule 104(a) or conduct an evidentiary hearing pursuant to *Kramen v. Cohen*, 337 F.3d

19

20  _____

21  [2] Cases that have decided the issue of "property" before trial have been based on preliminary
    findings that have not invaded the province of the jury which is not the case here. *See, e.g.,*

22  *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3443117, at *9 (S.D.N.Y. July 17,
    2018) (finding pre-trial, and without an evidentiary hearing, that the Public Company

23  Accounting Oversight Board's confidential list of planned audits constitutes intangible
    "property" for the purposes of wire fraud); *United States v. Alkaabi*, 223 F. Supp. 2d 583, 588

24  (D.N.J. 2002) (finding pre-trial, and without an evidentiary hearing, that a testing company had
    no property interest in "maintaining the integrity of its testing process"); *United States v. Riggs*,

25  739 F. Supp. 414, 416–17 (N.D. Ill. 1990) (finding pre-trial, and without an evidentiary hearing,

26  that a computer text file containing information pertaining to the Bell South Telephone
    Company's enhanced 911 system for a handling emergency calls was "property" for the purpose

27  of a wire fraud indictment).

28

1024 (9th Cir. 2003), and conclude, based upon such developed facts, that IP netblocks are not "property." (ECF No. 169-1 at 8.)  Defendants alleges that because there is an "absence of a property right in IP addresses that has 'long been recognized'", the Court must dismiss the wire fraud counts.  (*Id*. at 29-30.) They rely on "indisputable evidence that ARIN, the authority over IP addresses, has taken the position that IP addresses are not Property". (*Id*.)

Rule 104(a) provides in pertinent part: "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible."  Fed. R. Crim. P. 104(a). Rule 104(a) provides the trial court with the authority to decide questions that might make evidence inadmissible under some other rule of evidence (or under the Constitution, a federal statute, or other Supreme Court rules), but it does not itself provide a substantive basis for excluding the evidence. *See United States v. Evans*, 728 F.3d 953, 960 (9th Cir. 2013). Here, Rule 104(a) does not permit the Court to hold an evidentiary hearing to require the Government to prove an element, i.e., IP netblocks are "property." *Cf. United States v. Lamb*, 945 F. Supp. 441, 454 (N.D.N.Y. 1996) (rejecting request for pre-trial evidentiary hearing to have government pre-prove that the children depicted in alleged child pornography were under eighteen where depiction of children was an element of the crime that the government must prove at trial).

Rule 12(b) of the Federal Rules of Criminal Procedure permits consideration of any defense "which is capable of determination without the trial of the general issue." A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact." *Shortt Accountancy Corp*., 785 F.2d at 1452. Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not "invade the province of the ultimate finder of fact." *Id*. (internal quotation and citation omitted). The *Shortt* court stated:

As the ultimate finder of fact is concerned with the general issue of guilt, a

1
2
3
4
5
6

> motion requiring factual determinations may be decided before trial if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense. Under this standard, the district court must decide the issue . . . if it is entirely segregable from the evidence to be presented at trial. If the pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred.

7   *Id*. (internal quotations and citations omitted).

8   *United States v. Nukida*, 8 F.3d 665 (9th Cir. 1993) is instructive in applying Rule
9   12(b). In *Nukida*, the defendant was charged with tampering with consumer products
10  affecting interstate commerce. Nukida filed a Rule 12(b) motion seeking dismissal of the
11  indictment on the grounds that the district court lacked subject matter jurisdiction over
12  the case because her acts did not affect interstate commerce. The district court dismissed
13  the tampering counts and the Ninth Circuit reversed finding that "her motion to dismiss
14  amounted to a premature challenge to the sufficiency of the government's evidence
15  tending to prove a material element of the offense defined by section 1365." *Id*. at 669–
16  70.

17  As in *Nukida*, Defendants are asking the Court to decide pretrial an issue involving
18  an element of the charged offense. Here, Defendants submit that the alleged scheme did
19  not involve the obtaining of "property", (ECF No. 169-1 at 29-30), a determination that
20  involves an element that the government will be required to prove at trial. To prove that
21  the element an IP netblocks are "property", the Government will have to show that the
22  netblocks constitute "something of value". *McNally v. United States*, 483 U.S. 350, 358
23  (1987) (*quoting Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)). To show
24  netblocks are "something of value", the trier of fact will learn, among other things, what
25  legacy IP addresses are, how legacy IP netblocks were assigned, how they were used, what
26  limitations existed on a legacy registrant's use of an IP address, whether the assignee had
27  exclusive control and use of the netblocks, whether, how and when a legacy IP address

28

18-CR-4683-GPC

could be transferred, and whether a market for the transfer of netblocks existed at the time alleged in the indictment. These factual issues are ones the Court would be required to consider in ruling on the motion to dismiss and are "substantially founded upon and intertwined with evidence concerning the alleged offense." *See Shortt Accountancy Corp.*, 785 F.2d at 1452. These factual questions are not segregable from evidence to be presented at trial.  An evidentiary hearing entailing these questions would lead the Court to engage in factfinding that "invade[s] the province of the ultimate finder of fact." *See Nukida*, 8 F.3d at 669 (*quoting Shortt Accountancy Corp.*, 785 F.2d at 1452).

In support of their motion to dismiss, Defendants rely on "indisputable evidence that ARIN, the authority over IP addresses, has taken the position that IP addresses are not Property". (ECF No. 169-1 at 29-30.)  First, the Court cannot entertain this evidence at this time because ARIN's opinion and basis for the opinion are disputed issues of fact. Second, while it may be indisputable that ARIN has taken the reported position, it is also undisputed that ARIN's position has been rejected by a number of courts and industry representatives.[3] *In re Nortel Networks, Inc.*, No. 09-10138 KG, ECF No. 5315 (Bankr. D. Del. Apr. 26, 2011) (bankruptcy court approved the debtor's sale of legacy IP addresses and concluded that the debtor (the addresses' original assignee) "ha[d] the exclusive right to use the Internet Numbers and the exclusive right to transfer its exclusive right to use the Internet Numbers."; *Glob. NAPS, Inc. v. Verizon New England, Inc*., No. CV 02-12489-RWZ, 2015 WL 12781223, at *3 (D. Mass. Mar. 10, 2015) (legacy IP netblock assignee had some form of property interest in disputed netblocks that was transferrable); *Kremen v. Cohen*, No.

---

[3] By referencing these cases, the Court does not suggest that either side will be permitted to offer these or other cases to the jury at trial.  At the same time, the Court expects that the parties may present expert witnesses at trial that will offer opinions regarding a number of considerations in determining whether netblocks are "something of value."  These cases illustrate that the issue of whether netblocks are property is a disputed one which makes a pretrial ruling of the issue inappropriate.

98-cv-20718, ECF No. 1250, at 5 (N.D. Cal. Dec. 20, 2006) (ARIN has limited, if any, control over legacy IP addresses and ARIN could not be compelled to revoke a block of IP addresses issued prior to its formation because "that IP Resource has never been within ARIN's control."); Letter from Lawrence Rudolph, General Counsel, National Science Foundation 2 (Aug. 30, 2012) (speaking on behalf of his office and not the agency or full United States government, expressed the view that an IP address given out under its oversight constituted "'a thing of value' . . . g[iven] to" the assignee such that neither "ARIN, or for that matter any other organization, could retroactively affect property and rights distributed" to the assignee). Ultimately, the question whether IP netblocks are "property" is vigorously disputed.

Next, Defendants invite the Court to find as matter of law that IP netblocks are not an interest that has "long been recognized as property". In Defendants' view, this legal question can be answered by determining whether netblocks were traditionally recognized as property rights in 2010 through 2014, the time frame during which the alleged wire fraud occurred. (ECF No. 221 at 13.) Among other things, Defendants point to the absence of legal treatises that commented on the property-status of IP netblocks prior to 2014. (*Id.*)

The Government responds that the question is not answered by requiring a particular technological form to have been recognized as property at the time of the offense but, instead, necessarily focuses on the characteristics of the property rights and interests at issue. (ECF No. 222 at 8-9.) That is, determining whether the common law has recognized the rights embodied therein as property.

The Court agrees that determining whether an interest has "long been recognized as property" does not require the Government to prove that there are one or more prior cases concluding that netblocks are "property." Rather, the facts must establish that netblocks possess characteristics that have long been recognized as "property." The characteristics of IP netblocks will be introduced at trial. In *Kremen v. Cohen*, 325 F.3d 1035, 1053 (9th Cir. 2003), a complex case involving the conversion of an intangible property interest, the

1   dissent observed that the property interest issue certified to the California Supreme Court

2   involved "a hard technical question, not a legal one" and was a matter which required

3   coming up with the right analogy.

4       In fact, the Supreme Court has decided the "property" issue by coming up with

5   analogies and identifying the characteristics of the interest that were developed at trial. *See*

6   *Pasquantino v. United States*, 544 U.S. 349, 355 (2005) (court affirmed convictions for

7   running a scheme to import alcohol into Canada without paying taxes on it where

8   defendant's conduct deprived Canada of a valuable entitlement (i.e. cash) "inflicting an

9   economic injury no less than had they embezzled funds from the Canadian treasury.");

10  *Dowling v. United States*, 473 U.S. 207, 217 (1985) (the property rights of a copyright

11  holder is subjected to precisely defined limits given that copyright protection "has never

12  accorded the copyright owner complete control over all possible uses of his work," such

13  that the "unauthorized sale of copyright works did not constitute interstate transportation

14  of stolen property in violation of 18 U.S.C. § 2314"); *Carpenter v. United States*, 484 U.S.

15  19, 25 (1987) (Wall Street Journal deprived of its "property" right to exclusive use of the

16  information because "exclusivity is an important aspect of confidential business

17  information and most private property for that matter."); *McNally v. United States*, 483

18  U.S. 350, 360 (1987) (former public official did not obtain property from the state in a

19  kickback scheme where government failed to prove "in the absence of the alleged scheme

20  the Commonwealth would have paid a lower premium or secured better insurance," and

21  that defendants "received part of the commissions but those commissions were not the

22  Commonwealth's money."); *Cleveland v. United States*, 531 U.S. 12, 23 (2000) ("far from

23  composing an interest that has long been recognized as property…these intangible rights

24  of allocation, exclusion, and control amount to no more that Louisiana's sovereign power

25  to regulate.").

26      Ultimately, whether something has "long been recognized as property" requires an

27  evidentiary record that will allow the trier of fact to determine whether netblocks, an

28

1   intangible asset, possesses the characteristics of something that has traditionally been

2   treated as "property."   At this time, a Rule 12(b) motion is premature. To paraphrase the

3   Court in *United States v. Ayarza-Garcia*, 819 F.2d 1043 (11th Cir. 1987), "[t]he proper

4   procedure for raising a challenge to the sufficiency of the government's evidence to support

5   a finding [a substantive element of the offense] [is] by a motion for judgment of acquittal

6   under Rule 29 and not by a pretrial motion to dismiss." *Ayarza-Garcia*, 819 F.2d at 1048.

7         **D.**    **The Indictment Does Not Fail for Lack of Specificity.**

8         Finally, Defendants assert that the Indictment is constitutionally defective because

9   it fails to allege a fraud involving "property". Defendants argue that to the extent the

10   Court maintains that it cannot consider preliminary facts and the Indictment does not

11   contain enough facts for the Court to determine whether or not an IP address is property,

12   then the Indictment fails to give Defendants sufficient notice of whether they have been

13   charged with a crime.  (ECF No. 169-1 at 8, 27-29.)

14         Federal Rule of Criminal Procedure 7 requires that an indictment contain a "plain,

15   concise, and definite written statements of the essential facts constituting the offense

16   charged." Fed. R. Crim. P. 7(c)(1). That standard is satisfied where the Indictment

17   "furnish[es] the defendant with a sufficient description of the charges against him to

18   enable him to prepare his defense, to ensure that the defendant is prosecuted on the basis

19   of facts presented to the grand jury, to enable him to plead jeopardy against a later

20   prosecution, and to inform the court of the facts alleged so that it can determine the

21   sufficiency of the charge." *Cecil*, 608 F.2d at 1297. Thus, an Indictment survives where it

22   "adequately alleges the elements of the offense and fairly informs the defendant of the

23   charge;" the Government need not "prove its case" at this stage. *United States v. Buckley*,

24   689 F.2d 893, 897 (9th Cir. 1982).

25         "[I]f properly challenged prior to trial, an indictment's complete failure to recite an

26   essential element of the charged offense is not a minor or technical flaw subject to

27   harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *United*

28    

1    *States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999). In *United States v. Omer*, 395 F.3d

2    1087 (9th Cir. 2005), the indictment failed to recite an essential element of the charged

3    offense—materiality of falsehood. *Omer*, 395 F.3d at 1088. The government contended

4    Ninth Circuit precedent permitted an indictment charging bank fraud to omit an

5    allegation of materiality. The Ninth Circuit rejected this notion and declared that "[t]he

6    indictment's failure to recite an essential element of the charged offense, namely the

7    materiality of the scheme or artifice to defraud, is a fatal flaw requiring dismissal of the

8    indictment." *Id.* at 1089.

9        Defendants contend that the Indictment charges "property" by a generic term and

10   must specify what that property is to enable the Court to determine whether the item

11   alleged is in fact "property." (ECF No. 169-1 at 27–28.) The Court disagrees.  The

12   Indictment refers to "IP addresses" as the "property" that is the subject of the charged

13   scheme. It charges Defendants with depriving the legacy IP registrants of their right to

14   use the subject IP netblocks by deceptive means, including letters sent to hosting

15   companies and subsequent efforts to conceal the scheme, and with the object of using the

16   IP netblocks to send spam.  (ECF No. 1 at ¶¶ 5–8.) The Indictment further notes the

17   specific wire transfers at issue and identifies the subject IP netblocks, and details specific

18   acts in furtherance of the scheme as "overt acts" of the conspiracy. (*Id.* at ¶¶ 3, 8, 9.) The

19   Indictment plainly identifies the property that is the subject of the fraud, i.e. IP netblocks,

20   and has permitted Defendants to file two motions to dismiss the indictment on the theory

21   that the IP netblocks are not property as a matter of law.

22       Defendants complain that the facts are insufficient because the Indictment does not

23   explain in detail the characteristics of IP netblocks, how they are assigned, how they are

24   transferred, or how they are used.  (ECF No. 169-1 at 28.)  However, it is unnecessary for

25   the Government to present the evidence underlying the charges to satisfy the "fair notice"

26   requirement.  A review of the Indictment does not reveal a "complete failure" to recite an

27   essential element. *See Du Bo*, 186 F.3d at 1179.  Thus, the Indictment has adequately

28

alleged each of the elements for wire fraud.

## V.     CONCLUSION

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** Defendants' motion to dismiss wire fraud counts for violating the fifth amendment due process and sixth amendment fair notice protections.  Defendants may challenge the sufficiency of the government's evidence pertaining to the "property" element through a motion for acquittal under Rule 29, presented at the close of the government's case-in-chief.

**IT IS SO ORDERED.**

Dated:  February 25, 2021

Hon. Gonzalo P. Curiel
United States District Judge

18-CR-4683-GPC