```
RANDY S. GROSSMAN
Acting United States Attorney
MELANIE K. PIERSON
Assistant U.S. Attorney
California State Bar Nos. 112520
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 546-7976

Attorneys for Plaintiff
United States of America
```

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 18-cr-4683-GPC |
|---|---|
| Plaintiff, | **SUPPLEMENTAL DECLARATION OF ASSISTANT U.S. ATTORNEY MELANIE K. PIERSON IN SUPPORT OF UNITED STATES' RESPONSE TO MOTION TO COMPEL DISCOVERY REGARDING INFORMANT** |
| v. | |
| JACOB BYCHAK et. al., | |
| Defendants. | |

I, Melanie K. Pierson, hereby submit the following declaration in support of the United States' response and opposition to the defendants' motion for discovery regarding an informant in this case. I state, under penalty of perjury, I know the following to be true, based on my review of the files and records of the case:

1. I have been employed as an Assistant United States Attorney in the United States Attorney's Office for the Southern District of California since 1987. I am one of the prosecutors assigned to the investigation and prosecution of Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum, and Petr

Pacas in Criminal Case No, 18cr-4683-GPC. The case is currently set for trial beginning May 24, 2022.

2. Based on my review of the FBI records in this case and discussions with the case agents, it appears that sometime in approximately March of 2013, the Baltimore Field Office of the FBI received a complaint from Spamhaus about possible IP hijacking. The FBI Baltimore Field Office conducted the initial interview of the Spamhaus Source (SS) on July 12, 2013. In approximately January or February of 2014, the FBI Baltimore Field Office transferred the investigation to the San Diego Field Office of the FBI. The first interview of SS by the San Diego Field office of the FBI occurred on June 2, 2014. Copies of both reports were provided as discovery on December 4, 2018.

3. On December 23, 2014, the United States obtained a search warrant for the Company A email account of defendant Mark Manoogian. On May 1, 2015, the government obtained warrants for four other Company A email accounts, and the business email account of Daniel Dye. The search warrants were provided to the defendants as part of discovery production 4, on January 23, 2019. The records obtained pursuant to these warrants were disclosed to the defense in production 3 on December 19, 2018. Copies of these two search warrant affidavits are filed as Exhibits 2 and 3, under seal, in connection with this responsive pleading.

//

4. On September 22, 2016, the United States issued a subpoena duces tecum to the company that employed Daniel Dye. On September 23, 2016, the United States issued subpoenas duces tecum to Company A and five related firms.

5. The United States issued the first of approximately 106 grand jury subpoenas on July 21, 2014, and the last on October 10, 2018. The United States has disclosed to the defense approximately 77 reports of investigation (302s) written by the FBI during the government's investigation. Of those 77 reports, approximately 33 were reports of interviews.

6. On October 12, 2018, SS became a Confidential Human Source (CHS) for a different FBI Field Office on an unrelated matter, and was assigned a CHS number. On October 28, 2021, the FBI case agents in San Diego confirmed that their office had no form of internal "informant" file on SS. They advised that any CHS file for SS for the other unrelated matter was in the custody of a different FBI Field Office, and the San Diego agents did not and do not have access to that file.

7. When preparing the initial discovery in this case (which occurred after SS was assigned the CHS number by the other FBI Field Office in October 2018), the CHS number was substituted for SS's name on the FBI reports generated for this case, as an attempt to redact the reports and protect SS's identity. The government disclosed to the defense a report dated August 3, 2021, in which the FBI explained how this happened. Also disclosed to the defense were the

3

| | |
|---|---|
| 1 | original reports simply redacting SS's name, so that defense |
| 2 | counsel could see for themselves that the original reports |
| 3 | did not contain a CHS number. Copies of the unredacted |
| 4 | original reports, together with the reports containing the |
| 5 | inadvertently substituted CHS number, and the reports |
| 6 | correctly redacting SS's name, are submitted to the court *ex* |
| 7 | *parte* for *in camera* review, as Exhibit 4. |

8. As the prosecutors were reviewing the email information provided to the FBI by SS in preparation for providing them to the defense as discovery, a zip file was found which contained an email from outside counsel for Company A. On September 23, 2020, prosecutors stopped their review and a filter team took over the review. The materials released by the filter team were disclosed to the defense in the discovery productions occurring between December 3, 2020, and March 9, 2021.

9. As one of the prosecutors who presented the case to the grand jury and drafted the indictment, I had not seen the emails from SS to the FBI until I reviewed them in preparation for providing them as discovery. The government's investigation and prosecution in this case were not directed by SS, nor did SS guide in any manner the government's legal positions or strategies.

DATED: November 1, 2021



MELANIE K. PIERSON
Assistant U.S. Attorney