```
 1                  UNITED STATES DISTRICT COURT

 2            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4  UNITED STATES OF AMERICA,      .
                                   .
 5            Plaintiff,           . No. 18-cr-4683-GPC
                                   .
 6            v.                   . January 18, 2022
                                   . 1:15 p.m.
 7  JACOB BYCHAK,                  .
    MARK MANOOGIAN,                .
 8  MOHAMMED ABDUL QAYYUM,         .
    PETR PACAS,                    .
 9                                 .
            Defendants.            . San Diego, California
10  . . . . . . . . . . . . . . . .

11
              TRANSCRIPT OF TELEPHONIC STATUS HEARING
12             BEFORE THE HONORABLE GONZALO P. CURIEL
                    UNITED STATES DISTRICT JUDGE
13

14

15  APPEARANCES:

16  For the Plaintiff:    United States Attorney's Office
                          By: SABRINA L. FEVE, ESQ.
17                            MELANIE K. PIERSON, ESQ.
                              CANDINA S. HEATH, ESQ.
18                        880 Front Street, Room 6293
                          San Diego, California 92101
19
    For the Defendant     Wiechert, Munk & Goldstein, PC
20  JACOB BYCHAK:         By: DAVID W. WIECHERT, ESQ.
                              JESSICA C. MUNK, ESQ.
21                        27136 Paseo Espada, Suite B1123
                          San Juan Capistrano, California 92675
22
    For the Defendant     Mintz Levin
23  MARK MANOOGIAN:       By:  RANDY K. JONES, ESQ.
                               DANIEL J. GOODRICH, ESQ.
24                        3580 Carmel Mountain Road, Suite 300
                          San Diego, California 92130
25  ///
```

```
 1  APPEARANCES (CONTINUED):

 2

 3  For the Defendant       Bienert Katzman Litrell Williams LLP
    MOHAMMED ABDUL          By:   WHITNEY Z. BERNSTEIN, ESQ.
 4                                CARLOS A. NEVAREZ, ESQ.
                            903 Calle Amanecer, Suite 350
 5                          San Clemente, California 92673

 6
    For the Defendant       Bird Marella
 7  PETR PACAS:             By:   GARY S. LINCENBERG, ESQ.
                                  ALEXIS A. WISELEY, ESQ.
 8                          1875 Century Park East
                            Suite 2300
 9                          Los Angeles, California 90067

10

11

12

13

14

15

16

17

18

19

20

21

22  Court Reporter:         Chari L. Bowery, RPR, CRR
                            USDC Clerk's Office
23                          333 West Broadway, Suite 420
                            San Diego, California 92101
24                          chari_bowery@casd.uscourts.gov

25  Reported by Stenotype, Transcribed by Computer
```

```
 1            SAN DIEGO, CALIFORNIA; JANUARY 18, 2022; 1:15 P.M.
 2                               -o0o-
 3            THE CLERK:  Calling matter two on calendar,
 4   18-cr-4683, United States of America v. Jacob Bychak, Mark
 5   Manoogian, Mohammed Abdul Qayyum, and Petr Pacas, for
 6   telephonic status hearing.
 7            THE COURT:  Appearances, please?
 8            MS. MUNK:  Good afternoon, Your Honor.  Jessica Munk
 9   and David Wiechert, on behalf of Jacob Bychak, who is present
10   on the call.
11            MR. JONES:  Good afternoon, Your Honor.  Randy Jones
12   and Dan Goodrich on behalf of Mr. Mark Manoogian, who is also
13   present and on the call.
14            THE COURT:  Good afternoon, Mr. Jones.
15            MS. BERNSTEIN:  Good afternoon.  Whitney Bernstein
16   and Carlos Nevarez, on behalf of Mohammed Abdul Qayyum.  All
17   three of us are present and on the phone.  Thank you.
18            THE COURT:  Good afternoon, Ms. Bernstein.
19            MR. LINCENBERG:  Good afternoon, Your Honor.  Gary
20   Lincenberg and Alexis Wiseley, with Mr. Pacas, here with us on
21   the call.
22            THE COURT:  Good afternoon.  And thank you for making
23   yourself available for this status hearing.
24       I just wanted to let you know how I see the case at this
25   point, given that we are scheduled for a hearing on Friday.
```

1  And while it is, I believe, scheduled as a status hearing,
2  there was an indication that the Court would be having some
3  type of hearing beyond just a status hearing.
4      So, let me let you know that, at this point, I have
5  reviewed the transcript from the November 18, 2021 hearing; the
6  moving papers; the joint motion to compel discovery, ECF 57;
7  joint motion to compel discovery, 128; the joint motion for
8  reconsideration, regarding ECF Number 93.  That was filed on
9  September 20th.  I have further reviewed the entirety of the
10 attachments, the exhibits, which make up hundreds of pages.
11     And I have at this time also reviewed the follow-up
12 pleadings or documents that were filed by the parties after the
13 November 18th hearing; that is, the defendants' supplemental
14 briefing, filed on December 3rd, and the government's response,
15 filed December the 10th.  The government's response includes a
16 declaration of Special Agent Chabalko and AUSA Pierson.  The
17 declarations fill in some gaps that were otherwise left open at
18 the time of the November 18th hearing.
19      And at this time, the question is, first, whether or not
20 the Court should hold an *in camera* evidentiary hearing with
21 defense counsel.  And at this point, I am prepared to let you
22 know I am not going to do that.  We are not going to have an
23 evidentiary hearing at this point.  To the extent that the
24 parties -- I should say the defendants file their motions to
25 dismiss, under the Fourth Amendment, Fifth Amendment, the Sixth

1  Amendment, prosecutorial misconduct, it may be that, in due
2  course, that we will revisit the issue of whether or not the
3  confidential source's identity should be made known and whether
4  or not he should be called as a witness at any of these
5  hearings that will accompany these future motions to dismiss.
6      But at this point, for purposes of discovery, it's clear
7  that the government has provided any number of documents
8  relating to CHS, or SS, as he is referred to.  There's also
9  documents that have been provided relating to Anon-1.  So there
10 is a body of discovery from which the defense can glean, can
11 craft together depositions as to questions such as state
12 actors, invading the defense camp.  And at this point, the
13 Court does not see or find any particular need to have an
14 evidentiary hearing.
15     For that matter, at this point, given the additional
16 declarations presented by the government, it's questionable
17 whether or not we need any hearing.  At this point, it appears
18 that Agent Chabalko has stated his relationship with the CHS,
19 the amount of contact that he had with him, the form of
20 communication that he had.
21     One of the issues that was concerning to the Court,
22 frankly, is -- and I am sure we will see it in future papers --
23 is the question of whether or not Agent Chabalko can be viewed
24 as having acquiesced in any improper conduct by his CHS.  It's
25 clear that, since 2018, the CHS has been informed on a routine

1  basis that he is not to conduct investigation on his own.  And
2  it's clear that, back in -- I am not sure if it was 2017 or
3  2018, when the CHS came forward with certain information that
4  might have been based upon attorney-client privileged
5  information, that Agent Chabalko then turned, without reviewing
6  that information, and turned it over to the U.S. Attorney's
7  office, and a taint team conducted a review.
8      And it's also clear to the Court, from what it has
9  reviewed, that it does not appear that Agent Chabalko directed
10 the CHS to take steps to invade the defense camp or to violate
11 the attorney-client privilege.
12     But there is the issue of acquiescence, and the
13 declaration filed by Agent Chabalko does not address that; it's
14 silent on that.  And I expect, in due course, the U.S.
15 Attorney's Office will file a supplemental declaration by Agent
16 Chabalko to address that.  But it seems like that would be the
17 only purpose that would support having a hearing this Friday,
18 would be in order to obtain from Agent Chabalko his answer to
19 the question of whether or not he instructed the CHS not to
20 provide him attorney-client privileged information or
21 instructed him not to conduct the types of inquiries that he
22 was conducting as far as tracking the website visits and
23 searches by defense counsel.
24     So, at this point, it looks to the Court like the defense
25 is -- if not well-outfitted, has access to the information that

1  it needs to file its motions.  And so that would be my, I
2  guess, ruling on this Friday's hearing, is to take it off
3  calendar and allow the defense to prepare their motions and
4  proceed.  So, with that, we won't need for you to be here.
5      And then I will inquire as to how much time it will take
6  to have these motions filed.  Is there any indication on how
7  much time is needed for the motions to be filed?
8          MS. MUNK:  Your Honor, this is Jessica Munk, on
9  behalf of Jacob Bychak.
10      Is the Court open to hear argument on this issue?
11          THE COURT:  No.
12          MS. MUNK:  We do respectfully disagree --
13          THE COURT:  I know.
14          MS. MUNK:  -- with -- I think, generally, if the
15  Court is willing to hear argument, we probably need to discuss,
16  as a defense, you know, when we could tee this up.  And we do
17  recognize that we have motions *in limine* that are going to be
18  due in March.  But I am not sure I am in a position right now
19  to say specifically when we will be able to file the motions
20  by.
21          THE COURT: All right.  Given the amount of work --
22          MR. LINCENBERG:  Your Honor --
23          THE COURT:  -- that I anticipate will be required to
24  address these motions, I would like for them to be filed sooner
25  rather than later.  I don't expect that we will be in a

1  position to issue written orders on these upcoming motions,
2  given the complexities, given the number of issues that are
3  going to be raised.
4       I believe I cut off someone.  Was that you,
5  Mr. Lincenberg?
6           MR. LINCENBERG:  This is Mr. Lincenberg, Your Honor.
7       It would be helpful to get a little bit of clarification
8  from the Court.  The Court indicated that the Pierson and
9  Chabalko declarations filled in some gaps.
10      From our vantage point, they actually created gaps and
11 created credibility issues.  So, if the Court is not going to
12 invite argument on that, I would ask the Court, when the Court
13 indicates that it filled in some gaps, is it possible for the
14 Court to expound on that in terms of which gaps the Court feels
15 were filled and which were not?
16      Because, from our vantage point, when we look at this, we
17 see a real gap here in Mr. Chabalko's declaration and testimony
18 about what he recalls he did review and didn't review, and then
19 this gap when he sends these attorney-client documents to the
20 U.S. Attorney's Office in 2018.
21      And my understanding is they were sent to the merits team,
22 not the filter team, and never actually went to the filter team
23 for two years.  And it strains credulity to think that nobody
24 is looking at these documents that are being supplied from the
25 informant and then being supplied by the agent to the merits

1   team.
2       And so, it certainly raised more gaps, in our mind, than
3   it filled, and so, it would be helpful if the Court has
4   something in mind in terms of any findings, if we could get the
5   benefit of learning that.
6           THE COURT:  Well, keeping in mind that the Court
7   initially, at the last hearing, on November 28th, had observed
8   that, based upon its review, it was not prepared to grant the
9   motion to have the government identify any and all
10  investigations that Spamhaus may have been a party or provided
11  information and it was not prepared to reconsider the prior
12  ruling.
13      The Court did share that it had concerns about the -- if
14  not the invasion of the defense camp, the CHS's activities in
15  tracking the searches conducted by defense attorneys.
16      And so, the question was, then, was this at the direction
17  of the FBI or with its acquiescence?
18      It's clear, in the Court's view, at this point, that the
19  defense doesn't have any information that it was at the
20  direction of the FBI; and at most, it would be with the
21  acquiescence of the FBI, keeping in mind what AUSA Pierson
22  reports that is contained in her review of the CHS file at the
23  FBI, which includes these quarterly admonitions on not
24  conducting investigations without the approval of the FBI.
25      At the same time, Agent Chabalko's declaration is silent

1  on that.  To the extent that it's silent on that, at this
2  point, the defense can prepare their motions and make of it
3  what they will, what they believe is reasonable to be drawn
4  from this.
5      And so, certainly, for purposes of identifying
6  discoverable information, it does not appear that there are
7  documents, that there exist items or papers that are otherwise
8  discoverable.  All of these documents that relate to this CHS
9  and Anon-1 appear to have been turned over, perhaps in fits and
10 starts and in different batches, but certainly there's a large
11 universe of documents that have been provided relating to these
12 individuals.
13     And at this point, what is being sought is unusual; that
14 is, it's almost like a deposition of Chabalko on the front end
15 before any motion is even filed.  So, the closer I look at
16 that, the more I am uncomfortable with proceeding in that
17 manner.
18     This isn't to say that, at the appropriate time, after
19 these motions are filed, that we won't have an evidentiary
20 hearing and we won't have Agent Chabalko on the stand and
21 perhaps a reinitiation or reopening of the request to have the
22 CS's or CHS's identity made known publicly and that the CHS
23 will be called to testify.
24     But at this point, strictly for purposes of determining
25 what is discoverable, the Court does not believe that an

```
 1  adversarial hearing is the way forward.
 2       And as to what would otherwise occur at an in camera
 3  proceeding held by the Court, it would basically just be asking
 4  the question:  Did you ever instruct the CHS not to take
 5  certain actions, including monitoring visits or searches by
 6  defense lawyers or obtaining attorney-client privileged
 7  information?
 8       So, that is my explanation, and I don't need any
 9  additional argument.
10            MS. MUNK:  Your Honor, would the Court be okay if we
11  confer as a group and we can maybe throw out some dates to your
12  CRD by Friday?
13            THE COURT:  That's fine.  That's fine.  And you can
14  also meet and confer with government counsel so that we can
15  come up with a schedule and a plan to move forward.
16            MS. MUNK:  Okay.  Thank you, Your Honor.
17            THE COURT:  All right.  So, with that, at this point,
18  I have on my calendar that we have motions in limine April 7.
19  As I mentioned, I would prefer to have these motions filed for
20  a hearing before that.  It may not be possible; but I think,
21  given the amount of work that will be involved, even with the
22  motions in limine, there's going to be a lot to do, and there
23  will be something like six weeks or so before we start trial
24  after the motion in limine hearing.
25       So, I will again advise the individual defendants that --
```

```
 1  remind them of the motion in limine hearing on April 7, 2022,
 2  at 1:00 p.m.  And then, to the extent that we also have a
 3  hearing before that, we will set that.
 4       And, with that, that will conclude these proceedings.
 5  Thank you very much.
 6           ALL:  Thank you, Your Honor.
 7       (End of proceedings at 1:34 p.m.)
 8                            -o0o-
 9                    C-E-R-T-I-F-I-C-A-T-I-O-N
10
11           I hereby certify that I am a duly appointed,
12  qualified and acting official Court Reporter for the United
13  States District Court; that the foregoing is a true and correct
14  transcript of the proceedings had in the aforementioned cause;
15  that said transcript is a true and correct transcription of my
16  stenographic notes; and that the format used herein complies
17  with rules and requirements of the United States Judicial
18  Conference.
19             DATED:  January 18, 2022, at San Diego,
20  California.
21
22                         /s/  Chari L. Bowery
                           _____
23                         Chari L. Bowery
                           CSR No. 9944, RPR, CRR
24
25
```