RANDY S. GROSSMAN
United States Attorney
MELANIE K. PIERSON
SABRINA L. FEVE
Assistant U.S. Attorneys
California Bar No. 112520/226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0631
Email:Melanie.Pierson@usdoj.gov/Sabrina.Feve@usdoj.gov

CANDINA S. HEATH
Senior Counsel
Texas Bar No. 09347450
Computer Crime and Intellectual Property Section
U.S. Department of Justice
Washington, D.C. 20005
Tel: (202) 307-1049
Email: Candina.Heath2@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JACOB BYCHAK (1), <br> MARK MANOOGIAN (2), <br> ABDUL MOHAMMED QAYYUM (3), and <br> PETR PACAS (4), <br><br> Defendants. | Case No.: 18cr4683-GPC <br><br> **UNITED STATES' NOTICE OF:** <br> **(1) 404(b) EVIDENCE;** <br> **(2) AUTHENTICTION PURSUANT TO FED. R. EVID. 902(11) & (13)** <br> **(3) SUMMARIES OF VOLUMINOUS RECORDS PURSUANT TO FED. R. EVID. 1006** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Randy S. Grossman, United States Attorney, and Assistant United States Attorneys Melanie K. Pierson, Sabrina L. Fève, and Computer Crime and Intellectual Property Section Senior Counsel Candy Heath, and hereby files its above-referenced Notices, based on the files and records in this case.

I.

## INTRODUCTION

Pursuant to Federal Rules of Evidence 404(b), 902(11) & (13), and 1006, the United States hereby provides notice of 404(b) evidence, reliance on business record and electronic records certifications, and the use of summaries of voluminous records. The United States reserves the right to supplement this notice with additional disclosures prior to trial. For example, the United States has previously served a trial subpoena for records and testimony from the domain registrar GoDaddy.com, which has yet to respond. The United States will expeditiously produce any such records when they are received.

II.

## EVIDENCE UNDER RULE FED. R. EVID. 404(b)

The Indictment in this case leads with a conspiracy charge (Count 1), which alleges that, between December 2010 and September 2014, the four defendants conspired with Daniel Dye and Vincent Tarney (both charged elsewhere) to violate the wire fraud and CAN-SPAM statutes by fraudulently acquiring blocks of Internet Protocol ("IP") addresses registered to others through the creation and use of letters, known as "LOAs," that falsely represented them to be the authorized users of those IP blocks. The Indictment also includes four substantive wire fraud counts (Counts 2-5) and five substantive CAN-SPAM counts (Counts 6-10) that each identify a specific block of Internet Protocol ("IP") addresses and, in the CAN-SPAM counts, a specific day on which each block was used to transmit commercial mail messages.[1]

Throughout this case, the United States has represented its intent to present evidence regarding all the IP blocks the defendants acquired via co-conspirator Daniel Dye, and, in response to defendants' motion for a bill of particulars, pointed to the netblocks and domain names set forth in Grand Jury Exhibit 251 for a list of the netblocks acquired via Dye.

---

[1] Counts 2 through 10 of the Indictment specifically refer to IP blocks associated with the domains ect.net, telalink.net, moore-solutions.com, sierrasemi.com, and obs.net, and to specific dates between November 2013 and March 2014.

1  Grand Jury Exhibit 251 identifies the following IP blocks and, where applicable, related
2  domain name:

| IP Block | Domain |
|---|---|
| 63.79.40.0/21 | trinitymicro.com |
| 142.147.0.0/16 | cdnair.ca |
| 151.192.0.0/16 | sierrasemi.com |
| 163.253.0.0/16 | sura.net |
| 165.192.0.0/16 | ect.net |
| 167.87.0.0/16 | moore-solutions.com |
| 168.129.0.0/16 | obs.net |
| 198.68.64.0/18 | internex.net |
| 199.2.16.0/24 | |
| 199.2.17.0/24 | |
| 199.2.19.0/24 | |
| 199.2.20.0/24 | |
| 199.2.22.0/24 | |
| 199.2.24.0/24 | |
| 199.2.25.0/24 | |
| 199.2.30.0/24 | |
| 199.2.64.0/24 | |
| 205.158.176.0/20 | |
| 206.159.192.0/18 | |
| 208.10.20.20.0/24 | |
| 207.152.0.0/18 | telalink.net |
| 207.234.0.0/17 | |
| 208.199.68.0/23 | paxny.com |
| 149.118.0.0/16 | mediavis.com |

The United States maintains that all eleven domains and IP blocks listed in the chart above are direct evidence of the conspiracy and inextricably intertwined with the substantive counts. The United States contends that evidence of and relating to these domains and IP addresses is also admissible under Rule 404(b) to prove intent, plan, knowledge, and absence of mistake regarding the defendants' deepening knowledge over time that they were not the authorized registrants or users of the IP blocks acquired via Dye and his employer, GetAds, and that they acted with the knowledge and intent to defraud and mislead.

For example, the defendants learned that the IP blocks they acquired via Dye, which they sought to control and use through the eleven domains they obtained through him (the "GetAds IP blocks"), did not come with all the rights and properties that were available to legitimate IP block registrants. Defendants' email messages show that they were repeatedly warned that GetAds IP blocks listed in Grand Jury Exhibit 251 were hijacked. At two different times during the conspiracy, the defendants also learned that GetAds IP blocks had been reclaimed by the rightful registrants, but nonetheless continued to work with Dye and use the remaining GetAds IP blocks. In their email discussions related to GetAds IP blocks, the defendants acknowledged both to Dye and each other the risk that the rightful registrants would reclaim GetAds IP blocks. The defendants also used the fact that GetAds IP blocks had been reclaimed to negotiate favorable terms for future contracts from Dye and GetAds. Evidence relating to these hijacked IP blocks, and the defendants' knowledge of the risk that additional GetAds IP blocks might be reclaimed, demonstrates their intent, knowledge, and absence of mistake that they were not the IP blocks' rightful registrant, as well as their plan for dealing with both Dye and the IP blocks' rightful registrants who might reclaim them.

The United States also provides notice pursuant to Rule 404(b) of its intent to use evidence of and relating to defendants' fraudulent acquisition and use of IP addresses associated with the IP blocks 196.194.0.0/15, 196.193.0.0/16, and 196.246.0.0/16 (the "AFRINIC blocks"). Evidence of and relating to these additional IP blocks is admissible

to prove intent, preparation, plan, knowledge, and absence of mistake regarding defendants' misuse of LOAs to acquire control and use of IP addresses that were not rightfully theirs. It is anticipated that the defendants will claim they were defrauded by Dye and Tarney, and therefore lacked criminal intent. The defendants' acquisition and use of the hijacked AFRINIC netblocks did not, however, involve either Dye or Tarney.

Defendants acquired the AFRINIC netblocks via a broker in India in April 2013, and then forged a LOA purporting to be signed by A.S.Y, in his capacity as "Manager" for "AirSea Freight Services" to announce and control 196.193.0.0/16 through Hostwinds, a hosting company they used to announce many of the GetAds IP blocks. On May 1, 2013, the hosting company received a complaint that the "AirSea Freight Services" announcement involved hijacked IP addresses. Despite this notice, defendants continued to try to use 196.193.0.0/16, and did so in conjunction with two other hijacked IP blocks they had acquired via Dye. Defendants' acquisition of a hijacked IP block from a broker other than Dye, along with their emails drafting the forged LOA for this block, demonstrate their intent, preparation, plan, knowledge, and absence of mistake in their use of fraudulent LOAs to acquire control of and use the hijacked GetAds netblocks, in the substantive offenses that occurred later in time.

### III.
### AUTHENTICATION PURSUANT TO FED. R. EVID. 902(11) & (13)

The United States intends to authenticate business records and records generated by an electronic process, pursuant to Federal Rule of Evidence 902(11) and 902(13) and consistent with Rule 803(6), using a certification from a custodian of records relating to those business records. Specifically, the United States intends to so authenticate records obtained from the following entities: the American Registry of Internet Numbers, Amobee (successor-in-interest to Adconion and Frontline Direct), Telic, GoDaddy, Hostwinds, Cogent Communications, Tucows (successor-in-interest to Enom), the Goodman Law Firm, Mandatus, LegalZoom (successor-in-interest to Earth Class Mail), Native Rank (successor-in-interest to GetAds), and CPH Resources. The certificates of the custodians

of records have been produced as discovery as they were received; additional certificates encompassing the entirety of certain rolling productions will be produced as soon as they are received.

## IV.
## NOTICE OF SUMMARIES PURSUANT TO FED. R. EVID. 1006

The United States intends to present summaries of voluminous writings that cannot be conveniently examined in court, pursuant to Federal Rule of Evidence 1006. The underlying records in the possession of the government have been disclosed to the defense in discovery. Those records fall into two categories.

The first category of records involves those records that indicate the number of electronic mail messages sent by particular IP addresses. These records were maintained by Company A on a variety of electronic software platforms, including BlackMail and others. The records indicate the number of electronic mail message sent each day by particular IP addresses. It is anticipated that the evidence will show that over 8 billion electronic mail messages were sent using the netblocks at issue during the time of the conspiracy.

The second category of records involves financial records indicating the revenue earned by sending electronic mail messages using the netblocks during the period of the conspiracy.  It is anticipated that the experts will testify that, based on their review of the financial records created and maintained by Company A in the course of operating its

//

//

business, approximately $4.5-$5 million in revenue were generated through the use of the hijacked netblocks.

DATED: March 18, 2022

    Respectfully submitted,

    RANDY S. GROSSMAN
    United States Attorney

    /s/Melanie K. Pierson
    Assistant United States Attorney

    /s/Sabrina L. Fève
    Assistant United States Attorney

    /s/Candy Heath
    Senior Counsel
    Computer Crime and Intellectual Property Section
    Department of Justice, Criminal Division