**WIECHERT, MUNK & GOLDSTEIN, PC**
David W. Wiechert, SBN 94607
Jessica C. Munk, SBN 238832
Jahnavi Goldstein, SBN 245084
27136 Paseo Espada, Suite B1123
San Juan Capistrano, CA 92675
Telephone: (949) 361-2822
Email: dwiechert@aol.com
          jessica@wmgattorneys.com
          jahnavi@wmgattorneys.com

*Attorneys for Jacob Bychak*

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKYAND POPEO, P.C.**
Randy K. Jones, SBN 141711
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1510
Email: rkjones@mintz.com

Daniel J. Goodrich, BBO 692624 (Pro Hac)
Ryan Dougherty, BBO 703380 (Pro Hac)
1 Financial Center
Boston, MA 02111
djgoodrich@mintz.com
rtdougherty@mintz.com

*Attorney for Mark Manoogian*

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
Thomas H. Bienert, Jr., SBN 135311
James D. Riddet, SBN 39826
Whitney Z. Bernstein, SBN 304917
Carlos A. Nevarez, SBN 324407
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Email: tbienert@bklwlaw.com
          jriddet@bklwlaw.com
          wbernstein@bklwlaw.com
          cnevarez@bklwlaw.com

*Attorneys for Mohammed Abdul Qayyum*

**BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG RHOW P.C.**
Gary S. Lincenberg, SBN 123058
Alexis A. Wiseley, SBN 330100
Darren L. Patrick, SBN 310727
1875 Century Park East, Floor 23
Los Angeles, CA 90067
Telephone: (310) 201-2100
Email: glincenberg@birdmarella.com
          awiseley@birdmarella.com
          dpatrick@birdmarella.com

*Attorneys for Petr Pacas*

DEFENDANTS' MOTION IN LIMINE TO LIMIT THE GOVERNMENT'S CASE IN CHIEF EVIDENCE TO ELEVEN IDENTIFIED NETBLOCKS

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JACOB BYCHAK, et al.,<br><br>    Defendants. | Case No. 18-CR-4683-GPC<br>Honorable Gonzalo P. Curiel<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO LIMIT THE GOVERNMENT'S CASE IN CHIEF EVIDENCE TO ELEVEN IDENTIFIED NETBLOCKS**<br><br>[Declaration of Jessica C. Munk In Support Thereof and Exhibits A-F thereto filed concurrently herewith]<br><br>Hearing Date:  April 7, 2022<br>Hearing Time: 1:00 p.m.<br>Department:    Courtroom 2D |

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND BACKGROUND

Defendants Jacob Bychak, Mark Manoogian, Mohammed Abdul Qayyum and Petr Pacas (collectively, "Defendants") hereby move *in limine* to limit the government's case in chief evidence to the "Eleven Netblocks"[1] set forth in Grand Jury Exhibit ("GJ Ex.") 251 (Declaration of Jessica C. Munk ("Munk Decl."), Ex. A), which the government previously identified as the sole alleged illegally hijacked netblocks at play in this case.[2] Now, with trial rapidly approaching, despite numerous previous representations over the

---

[1] These consist of IP ranges relating to the following 11 domains: 1) Trinitymicro.com, 2) Cdnair.ca, 3) Sierrasemi.com, 4) Sura.net, 5) Ect.net, 6) Moore-solutions.com, 7) Obs.net, 8) Internex.net, 9) Telalink.net, 10) Paxny.com, and 11) Medavis.com. GJ Ex. 251.

[2] Defendants reserve the right to object at trial to the government's introduction of evidence outside of these Eleven Netblocks during cross-examination and/or rebuttal.

1

course of three years by the government to both Defendants and the Court that the government would limit its case in chief to the Eleven Netblocks, which the defense reasonably relied on – the government is refusing to do so necessitating this motion.

On October 31, 2018, a ten-count "Indictment" charged the Defendants with conspiracy to violate and violations of the CAN-SPAM Act (18 U.S.C. § 1037(a)(5)) and the wire fraud statute (18 U.S.C. § 1343). Dkt. 1. The Indictment identified only five netblocks. *Id*. ¶¶ 8-9. Defendants filed a Motion for Bill of Particulars on November 21, 2018 (Dkt. 38-1), which the government opposed (Dkt. 51). The government's opposition identified GJ Ex. 251. GJ Ex. 251 lists the Eleven Netblocks the government alleged were illegally hijacked by the Defendants and further clarified that the Letters of Authority ("LOAs") provided in the grand jury exhibits all related to the Eleven Netblocks. Dkt. 51 at 8.

On January 25, 2019 the Court held a hearing on a variety of motions, including Defendants' Motion for Bill of Particulars. At that hearing, defense counsel discussed the government's identification of the Eleven Netblocks, and the government confirmed, "this case is about those 11 hijacked netblocks, and that's what it is about." Munk Decl., Ex. B at 10:9-12, 11:15-16. The government further represented to the Court and the defense, "[w]e are not talking about the broader practices of the company, here. We are just talking about the ones relate [sic] to the hijacked netblocks." *Id*. at 11:16-18.

The Court further ordered that the parties meet and confer regarding the remaining outstanding Bill of Particular issues. *Id*. at 13:23-14:2, 16:1-7. Pursuant to this order, defense counsel sent a letter dated January 28, 2019 to the government that outlined Defendants' understanding of the aspects of the Motion for Bill of Particulars that had been settled, which included that the Eleven Netblocks (and their associated domains) were the only netblocks that the government alleged were illegal, and for which there were allegedly false LOAs submitted. Munk Decl., Ex. C. at 1. The government responded in a January 30, 2019 letter and clarified that the Eleven Netblocks were those that it alleged satisfied both paragraphs 2(a) (allegedly hijacked netblocks) and 2(b) (that

were announced or mailed on) of the Indictment. Munk Decl., Ex. D at 1. However, it further identified document AMOBEE0083702 with some additional smaller netblocks that it believed were allegedly hijacked, but were not announced or mailed on (hereinafter referred to as "2(a) netblocks"). Munk Decl., Ex. E. The parties telephonically met and conferred on January 30, 2019 and discussed these matters and more. Munk Decl., ¶ 7. Defense counsel sent a February 4, 2019 letter to the government summarizing the meet and confer. Munk Decl., Ex. F. This letter again set forth Defendants' understanding that the Eleven Netblocks were the only netblocks the government alleged were hijacked and announced/mailed upon; and additionally that the government viewed the 2(a) netblocks as highjacked, but not announced/mailed upon. *Id*. at 1. It further summarized that:

a) the only LOAs the government believed were fraudulently submitted were related to the Eleven Netblocks;
b) the only domains (as well as dbas) that the government contended related to paragraph 8 of the Indictment were those that related to the Eleven Netblocks; and
c) the only emails that the government contended were commercial "spam" email were the emails sent from/mailed on from the Eleven Netblocks.

*Id*. at 1-2. The government did not respond to this letter or advise that Defendants' understanding was incorrect. Munk Decl., ¶ 9.

On August 30, 2021 defense counsel emailed the government and noted that its voluminous discovery included netblocks and LOAs outside of the Eleven Netblocks (or even the 2(a) netblocks), which was beyond the scope of the government's representation in early 2019 that the criminal allegations in this case were limited to the Eleven Netblocks. Munk Decl., ¶ 10. Defense counsel reasonably requested that the government stipulate to what it had previously represented and what the defense had reasonably relied upon, specifically that: "The only alleged hijacked netblocks in play in this case are the 11 netblocks identified in GJ Ex. 251 (with the exception of the list in AMOBEE0083702, which only falls under 2(a)), and the government will not introduce any evidence of other alleged hijacked netblocks," as well as that the government would only introduce LOAs

and domains related to the Eleven Netblocks. *Id*.

Quite surprisingly, and in stark contradiction to its previous representations, the government responded on August 31, 2021 that it would **not** agree to a stipulation, arguing that its prior representations did not limit what evidence it could put on and that because the Indictment charged a conspiracy and scheme to defraud that the government could put on any evidence it chose "relative to the agreement and the scheme." Munk Decl., ¶ 11. Yet in that same email, confusingly, the government stated that its case-in-chief "evidence will, consistent with our representations regarding which netblocks are covered by the indictment…, focus on the netblocks identified in GJ Ex. 251" (the Eleven Netblocks). *Id*.

Defense counsel again requested that the government reconsider its refusal to stipulate, making it clear that Defendants were not seeking a stipulation to limit all evidence, such as cross or rebuttal evidence, but only the government's case in chief evidence that related to the Eleven Netblocks (or even additionally the 2(a) netblocks) – which is exactly what the government had suggested it would do in its prior email. Munk Decl., ¶ 12. When the government expressed confusion at Defendants' agreement to include the 2(a) netblocks (AMOBEE0083702) Defendants clarified they were open to the government stipulating to exclude evidence relating to them. Munk Decl., ¶ 13. Nonetheless, and without any further explanation, the government again refused to stipulate to what it has repeatedly represented for over three years. Munk Decl., ¶ 14.

On March 10, 2022 the government made various expert disclosures. Its Third Notice (Dkt. 342) lists Peter Holden[3], owner and CEO of Hostwinds, and indicates that he will discuss various netblocks Hostwinds announced for Defendants, including Air Sea Freight Services (196.193.0.0/16) ("Air Sea"). *Id*. at 6. Air Sea is **not** one of the Eleven Netblocks, **nor** is it even one of the 2(a) netblocks.

On March 18, 2022, the government provided notice of its Rule 404(b) evidence.

---

[3] Defendants dispute the government's designation of Mr. Holden as an expert, when in fact he is a percipient fact witness – which Defendants will address outside of this motion.

Dkt. 347. In that notice, it indicated it was relying on the Eleven "[N]etblocks and domain names set for in Grand Jury Exhibit 251" (Dkt. 347 at 2) and that these netblocks were "also admissible under Rule 404(b)[.]" *Id.* at 4. The government also disclosed three additional netblocks in that Rule 404(b) notice including "196.194.0.0/15, 196.193.0.0/16, and 196.246.0.0/16 (the 'AFRINIC blocks')." *Id.* at 4.

After receiving the government's Rule 404(b) evidence, the defense reached out to the government to meet and confer on this issue to try and come to an agreement to avoid the filing of unnecessary motions *in limine*. Munk Decl. at ¶ 15. On March 22, 2022, the parties met and conferred and again the defense asked the government to stipulate that they would not raise evidence of any other alleged hijacked netblocks in its case in chief beyond the Eleven Netblocks in GJ Ex. 251 apart from what it identified in the government's Rule 404(b) notice.[4] Munk Decl. at ¶ 16. The defense requested that the government provide an answer the following day. *Id.* Again, the government refused to stipulate. *Id.*

## II.  ARGUMENT

### A. Basic Principles of Fairness Should Preclude the Government From Introducing Evidence Beyond the Eleven Netblocks

The government's refusal to stipulate and its recent inclusion of Air Sea in its Expert Witness and Rule 404(b) disclosures clearly demonstrates that the government has no intention to honor its longstanding representations that its case is limited to the Eleven Netblocks, which the Defendants reasonably relied on for the past three years. It has long been abundantly clear that the government's case, and evidence thereof, related solely to the Eleven Netblocks,[5] as set forth in the parties meet and confer communications, and the

---

[4] The defense made clear to the government that it would file a separate motion to challenge the netblocks identified in the government's Rule 404(b) notice (Dkt. 347). Munk Decl. at ¶ 16. This motion does not address challenges to whether those newly raised netblocks properly fall under Rule 404(b) and will be addressed by a separate motion.

[5] Or at most to the Eleven Netblocks and the 2(a) netblocks.

government's own representations to the Court. Defendants (and likely the Court) have understood that the 10 to 15 day trial time estimated by the government was based on its case in chief being limited to the Eleven Netblocks to which it told the Court "that's what [this case] is about." Munk Decl., Ex. B at 11:15-16.

This is a complex case with voluminous discovery. To date the government has produced over 2,326,863 pages of discovery. Munk Decl., ¶ 17. Defendants have relied on the government's repeated representations, and focused their review of the discovery and defense strategies that relate to the Eleven Netblocks. Munk Decl., ¶ 18. There are numerous spreadsheets in discovery with countless additional netblocks and domains listed that the defense has not focused on given the government's repeated representations that this case is about the Eleven Netblocks. *Id.* Now, with trial quickly approaching, the government's unreasonable stance will force Defendants to scramble and try to review and prepare a defense for every single netblock (and corresponding domains or dbas) existing within the voluminous discovery that the government, at its whim, may decide to introduce in its case in chief, even though introduction of anything outside of the Eleven Netblocks is not relevant to the conduct charged in the Indictment. There is an undetermined amount of netblocks existing within the discovery. Aside from the Eleven Netblocks and 2(a) netblocks, the government has never provided a list of all other netblocks in the discovery, or an index demonstrating what discovery numbers related to what netblocks. Just considering the size and scope of Company A and B's business and the time period set forth within the Indictment, there could be thousands of additional netblocks. Moreover, there are several spreadsheets in the discovery that include reference to approximately 30 to 100 additional netblocks and domain names beyond the Eleven Netblocks that the government has never alleged were illegally hijacked or fall under the charges in the Indictment. Munk Decl. at ¶ 19. If the defense is forced to prepare for trial to defend additional netblocks such as these that the government has never contended fall under the allegations in the Indictment, this would be a huge undertaking. For example, the number of documents in the discovery for most of the Eleven Netblocks returns, on

average, more than one thousand documents. Munk Decl. at ¶ 20. Requiring the defense to start from scratch defending additional netblocks, which the government has yet to provide notice to the defense were allegedly illegally hijacked would highly prejudice the defense and require Defendants to seek a continuance.[6]

For over three years, Defendants have reasonably relied on the government's numerous representations to them and this Court that the allegations in the Indictment are limited to the Eleven Netblocks. Accordingly, the Court should hold the government to its word, which Defendants have reasonably relied upon in preparing this case for trial, and order that the government not be allowed to present evidence in its case and chief beyond the Eleven Netblocks.[7] If the Court does not limit the government's case in chief to these Eleven Netblocks, given the voluminous discovery and number of documents corresponding to many of the netblocks, Defendants would require a continuance of the trial date in order to properly prepare for this last minute immensely expanded scope of alleged criminal activity, which would also likely expand the government's trial estimate.

### B. Evidence Beyond the Eleven Netblocks Is Not Relevant, Is Prejudicial and Would Cause Undue Delay and Confusion

To be admissible, evidence must be relevant. Under FRE 401, evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Evidence that is not relevant is not admissible. *See* Fed. R. Evid. 402. Netblocks (and LOAs, domains, and dbas) beyond the Eleven Netblocks are not relevant to the Indictment's charges of wire fraud and CAN-SPAM Act violations – a

---

[6] Further, without a master index of all netblocks the government is contending are fair game, that shows what IP numbers relate to what domains, and what numbered discovery documents they appear in, Defendants are left blindly trying to anticipate what non relevant netblock needle the government may pull out of the haystack.

[7] In light of the government's bad faith in honoring its representations, and the fact that the 2(a) netblocks are not relevant or necessary to the government's case for the conduct charged in the Indictment; Defendants request that the Court order that the government is precluded from introducing evidence related to the 2(a) netblocks in its case in chief.

contention the government clearly believes as demonstrated by its course of communications with defense counsel over the past three years. The government's refusal to stipulate to limit its case in chief to the Eleven Netblocks suggests that the government believes any netblock, buried in the over two million pages of discovery, might be relevant to the government's conspiracy charges. Even if this Court were to find some remote relevance between any other netblocks and the conspiracy charges – evidence of other netblocks is not relevant and is cumulative and unnecessary for the government to prove its case, and would result in undue delay, confusion, and prejudice.

     Pursuant to FRE 403, even if evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. It is within the Court's discretion to exclude cumulative evidence. *Id.* The government has alleged that the Eleven Netblocks, plus the 2(a) netblocks were hijacked – it has a plethora of netblock evidence it may seek to admit to support the substantive and the conspiracy charges in the Indictment. Allowing the government to introduce evidence in its case in chief of any random netblock mentioned within millions of pages of discovery, of which the government does or does not contend was illegally acquired and is not material or relevant to any charged conduct, serves no purpose except to expand the scope of trial beyond what is manageable or fair. *See United States v. Lignelli*, 2014 WL 2002294, at *3 (W.D. Pa. May 15, 2014) (Granting in part defendant's motion to preclude evidence of uncharged conduct, noting: "The Court concludes that the danger of unfair prejudice substantially outweighs the limited probative value of such evidence pursuant to Rule 403. This evidence would- literally—double the scope of this trial.").

     Similarly, here, introduction of evidence beyond the Eleven Netblocks would likely double, or perhaps triple, the scope of the trial depending on the scope of this expansion – while being irrelevant, or at best being unnecessary cumulative evidence. In an already complex case with technical terms and concepts, allowing the government to present an

unlimited amount of netblock evidence is likely to, at worst, intentionally mislead the jury, and at best, rightfully confuse the jury. Most importantly, despite numerous challenges and roadblocks presented by the government, especially related to discovery, Defendants have been rigorously preparing their defense strategies and focus over the last three years based on their good faith reliance on the government's multiple representations that this case was solely about the Eleven Netblocks. Even assuming, *arguendo*, that other netblock evidence is admissible – the government should not be allowed to circumvent its word, which Defendants and the Court have relied upon.

### III. CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court limit the government's case in chief evidence to the Eleven Netblocks, and to LOAs and domains relating to the Eleven Netblocks; or alternatively, to just the Eleven Netblocks and the 2(a) netblocks.

Respectfully submitted:

Dated: March 24, 2022          **WIECHERT, MUNK & GOLDSTEIN, PC**

By: *Jessica C. Munk*
    David W. Wiechert
    Jessica C. Munk
    Jahnavi Goldstein
    *Attorneys for Jacob Bychak*

Dated: March 24, 2022          **MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

By: *Randy K. Jones*
    Randy K. Jones
    Daniel J. Goodrich
    Ryan Dougherty
    *Attorneys for Mark Manoogian*

Dated: March 24, 2022          **BIENERT KATZMAN LITTRELL WILLIAMS LLP**

          By: *Thomas H. Bienert, Jr.*
              Thomas H. Bienert, Jr.
              James D. Riddet
              Whitney Z. Bernstein
              Carlos A. Nevarez
             *Attorneys for Mohammed Abdul Qayyum*

Dated:  March 24, 2022      **BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**

          By: *Alexis A. Wiseley*
              Gary S. Lincenberg
              Alexis A. Wiseley
              Darren L. Patrick
             *Attorneys for Petr Pacas*

**CERTIFICATE OF AUTHORIZATION TO SIGN ELECTRONIC SIGNATURE**

|   |   |
|---|---|
| 1 | Pursuant to section 2(f)(4) of the Electronic Case Filing Administrative Policies and |
| 2 | Procedures of the United States District Court for the Southern District of California, I |
| 3 | certify that the content of this document is acceptable to counsel for the Defendants and |
| 4 | that I have obtained authorization from Randy K. Jones, Thomas H. Biernert, Jr., and |
| 5 | Alexis A. Wiseley. |

Dated: March 24, 2022                                     By: s/*Jessica C. Munk*
                                                                             Jessica C. Munk

# CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

AUSA Melanie K. Pierson
AUSA Sabrina L. Feve
AUSA Ashley E. Goff
U.S. Attorney's Office
880 Front Street, Rm 6293
San Diego, CA 92101
melanie.pierson@usdoj.gov
sabrina.feve@usdoj.gov
ashley.goff@usdoj.gov

Candina S. Heath
Department of Justice
1301 New York Avenue NW, Suite 600
Washington, DC 20530
candina.heath2@usdoj.gov

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 24, 2022, at San Juan Capistrano, California.

s/*Jessica C. Munk*
Jessica C. Munk