**WIECHERT, MUNK & GOLDSTEIN, PC**
David W. Wiechert, SBN 94607
Jessica C. Munk, SBN 238832
Jahnavi Goldstein, SBN 245084
27136 Paseo Espada, Suite B1123
San Juan Capistrano, CA 92675
Telephone: (949) 361-2822
Email: dwiechert@wmgattorneys.com
          jessica@wmgattorneys.com
          jahnavi@wmgattorneys.com
*Attorneys for Jacob Bychak*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JACOB BYCHAK, et al.,<br><br>    Defendants. | Case No. 18-CR-4683-GPC<br>Honorable Gonzalo P. Curiel<br><br>**DECLARATION OF JESSICA C. MUNK AND EXHIBITS A-F IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO LIMIT THE GOVERNMENT'S CASE IN CHIEF EVIDENCE TO ELEVEN IDENTIFIED NETBLOCKS**<br><br>Hearing Date: April 7, 2022<br>Hearing Time: 1:00 p.m.<br>Department:    Courtroom 2D |

## **DECLARATION OF JESSICA C. MUNK**

I, Jessica C. Munk, declare as follows:

1. I am a principal at the law firm Wiechert, Munk & Goldstein, PC, attorneys of record for defendant Jacob Bychak. I am licensed to practice in the State of California and in the United States District Court for the Southern District of California. I have personal knowledge of the following, and if called to do so, I could competently testify thereto.

1

DECLARATION OF JESSICA C. MUNK

2. Attached hereto as **Exhibit A** is a true and correct copy of Grand Jury Exhibit 251 as produced by the government in discovery bearing Bates range ADCONION-GJ-EXS-00874, which lists the Eleven Netblocks.

3. Attached hereto as **Exhibit B** is a true and correct copy of relevant portions of the Transcript of the Report of Proceeding from the January 25, 2019 hearing on various motions, including Defendants' Motion for Bill of Particulars.

4. Attached hereto as **Exhibit C** is a true and correct copy of the letter that defense counsel sent to the government on January 28, 2019, which outlined Defendants' understanding of the aspects of the Motion for Bill of Particulars that had been settled in preparation for the parties meet and confer.

5. Attached hereto as **Exhibit D** is a true and correct copy of the letter from the government to defense counsel dated January 30, 2019 in response to the defense's January 28, 2019 letter.

6. Attached hereto as **Exhibit E** is a true and correct copy of a document identified by the government in its January 30, 2019 letter and produced by the government in discovery as Bates range AMOBEE083702. Because the document was produced in a native .txt file, the Bates range does not appear on the pdf of the document.

7. Defense counsel and the government, i.e. the parties, telephonically met and conferred on January 30, 2019 pursuant to the Court's order and discussed the matters memorialized in the letters attached as Exhibits D and E and other matters.

8. Attached hereto as **Exhibit F** is a true and correct copy of the letter that defense counsel sent to the government on February 4, 2019 after the parties met and conferred on January 30, 2019 regarding the bill of particulars issues. This letter memorializes what the government represented to the defense during the January 30, 2019 meet and confer.

9. The government did not respond to the defense's February 4, 2019 letter or advise that the defense's understanding was incorrect.

10. On August 30, 2021, I emailed the government and noted that its voluminous discovery included netblocks and LOAs outside of the Eleven Netblocks (or even the 2(a)

netblocks), which was beyond the scope of the government's representation in early 2019 that the criminal allegations in this case were limited to the Eleven Netblocks. In that email, I requested that the government stipulate to what it had previously represented and what the defense had reasonably relied upon, specifically that:

1. The only alleged hijacked netblocks in play in this case are the 11 netblocks identified in GJ Ex. 251 (with the exception of the list in AMOBEE0083702, which only falls under 2(a)), and the government will not introduce any evidence of other alleged hijacked netblocks. Further, the government is only introducing LOAs for these 11 netblocks in GJ Ex. 251 and will not be introducing evidence of any other alleged fraudulent LOAs.
2. The DBAs, post office boxes, email addresses and domain names (collectively referred to as "dbas") used to allegedly conceal the Defendants' identity as referenced in Paragraph 8 of the Indictment, are the dbas used with the alleged 11 hijacked netblocks and the only ones that are allegedly illegal. The government will not allege any other use of dbas, not used for these alleged 11 hijacked netblocks are illegal. Thus, the general use of dbas is not illegal.
3. The only commercial emails sent by Adconion that the government alleges are illegal are the emails sent from the alleged 11 hijacked netblocks and the government will not take the position that commercial email, i.e. "spam" email is illegal.

11.  On August 31, 2021, the government responded to my email that it would not agree to a stipulation, arguing that its prior representations did not limit what evidence it could put on and that because the Indictment charged a conspiracy and scheme to defraud that the government could put on any evidence it chose "relative to the agreement and the scheme." Yet in that same email, confusingly, the government stated that its case-in-chief "evidence will, consistent with our representations regarding which netblocks are covered by the indictment…, focus on the netblocks identified in GJ Ex. 251."

12. On March 4, 2022, I emailed the government and requested that they reconsider its refusal to stipulate, making it clear that Defendants were not seeking a stipulation to limit all evidence, such as cross or rebuttal evidence, but only the government's case in chief evidence to that relating to the Eleven Netblocks (or even additionally the 2(a) netblocks) – which is exactly what the government had suggested it would do in its prior email.

13. On March 5, 2022, the government responded and expressed confusion at the defense's agreement to include the 2(a) netblocks (AMOBEE0083702) in the stipulation. I clarified that the defense was also open to the government stipulating to exclude evidence relating to that document.

14. On March 8, 2022, the government declined to reconsider its prior decision not to stipulate to limit its evidence in its case in chief as requested.

15. After receiving the government's Rule 404(b) notice, the defense reached out to the government to meet and confer on this issue to try and come to an agreement to avoid the filing of unnecessary motions *in limine*.

16. On March 22, 2022, the parties met and conferred and again the defense asked the government to stipulate that they would not raise evidence of any other alleged hijacked netblocks in its case in chief beyond the Eleven Netblocks in GJ Ex. 251 apart from what it identified in the government's Rule 404(b) notice and requested an answer the following day. The defense made clear to the government that it would file a separate motion to challenge the netblocks identified in the government's Rule 404(b) notice (Dkt. 347). Again, the government refused to stipulate.

17. This is a complex case with voluminous discovery. To date the government has produced over 2,326,863 pages of discovery.

18. The defense has relied on the government's repeated representations that this case is about the Eleven Netblocks, and has focused its review of the discovery and defense strategies that relate to these Eleven Netblocks. There are numerous spreadsheets in discovery with countless additional netblocks and domains listed that the defense has

not focused on given the government's repeated representations that this case is about the Eleven Netblocks.

19.   Aside from the Eleven Netblocks and 2(a) netblocks, the government has never provided a list of all other netblocks in the discovery, or an index demonstrating what discovery numbers related to what netblocks. Just considering the size and scope of Company A and B's business and the time period set forth within the Indictment, there could be thousands of additional netblocks. Moreover, there are several spreadsheets in the discovery that include reference to approximately 30 to 100 additional netblocks and domain names beyond the Eleven Netblocks that the government has never alleged were illegally hijacked and fall under the charges in the Indictment.

20.   If the defense is forced to prepare for trial to defend additional netblocks such as these that the government has never identified fall under the allegations in the Indictment, this would be a huge undertaking. For example, the number of documents in the discovery for most of the Eleven Netblocks returns, on average, more than one thousand documents.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on March 24, 2022 in San Juan Capistrano, California.

*s/Jessica C. Munk*
Jessica C. Munk