# EXHIBIT B

```
 1                    UNITED STATES DISTRICT COURT
 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA
 3
 4  UNITED STATES OF AMERICA,       .
                                    .
 5            Plaintiff,            . No. 18-cr-4683-GPC
                                    .
 6            v.                    . January 25, 2019
                                    . 10:44 a.m.
 7  JACOB BYCHAK,                   .
    MARK MANOOGIAN,                 .
 8  MOHAMMED ABDUL QAYYUM,          .
    PETR PACAS,                     .
 9                                  .
              Defendants.           . San Diego, California
10  . . . . . . . . . . . . . . . .
11
            TRANSCRIPT OF MOTION HEARING/TRIAL SETTING
12             BEFORE THE HONORABLE GONZALO P. CURIEL
                   UNITED STATES DISTRICT JUDGE
13
    APPEARANCES:
14
    For the Plaintiff:      United States Attorney's Office
15                          By: MELANIE K. PIERSON, ESQ.
                                SABRINA FEVE, ESQ.
16                          880 Front Street, Room 6293
                            San Diego, California 92101
17
    For the Defendant       Law Office of David W. Wiechert
18  JACOB BYCHAK:           By: JESSICA C. MUNK, ESQ.
                                DAVID W. WIECHERT, ESQ.
19                          115 Avenida Miramar
                            San Clemente, California 92672
20
    For the Defendant       Mintz Levin
21  MARK MANOOGIAN:         By:  RANDY K. JONES, ESQ.
                            3580 Carmel Mountain Road, Suite 300
22                          San Diego, California 92130
23
24
25  ///
```

```
 1   APPEARANCES (CONTINUED):

 2

 3   For the Defendant      Bienert, Miller & Katzman, P.L.C.
     MOHAMMED ABDUL         By:  WHITNEY Z. BERNSTEIN, ESQ.
 4   QAYYUM:                     JAMES D. RIDDET, ESQ.
                            903 Calle Amanecer, Suite 350
 5                          San Clemente, California 92673

 6
     For the Defendant      Bird Marella Boxer Wolpert
 7   PETR PACAS:              Nessim Drooks & Lincenberg
                            By:  NAEUN RIM, ESQ.
 8                          1875 Century Park East
                            Suite 2300
 9                          Los Angeles, California 90067

10

11

12

13

14

15

16

17

18

19

20

21   Court Reporter:        Chari L. Bowery, RPR, CRR
                            USDC Clerk's Office
22                          333 West Broadway, Suite 420
                            San Diego, California 92101
23                          chari_bowery@casd.uscourts.gov

24   Reported by Stenotype, Transcribed by Computer

25
```

1 voluminous -- there would be sufficient information provided to
2 the defense regarding the particulars of how this crime was
3 allegedly committed, what it involved, and different pieces of
4 evidence that the government intends to offer at trial.
5     But to the extent there's something that I am missing, let
6 me hear from defense counsel.
7         MS. MUNK:  Thank you, Your Honor.  I do want to
8 address a couple of areas.
9     The government did, in their opposition, identify that it
10 was limiting the alleged hijacked IP netblocks and the
11 associated letters of authority to 11 IP netblocks, which were
12 identified in their Exhibit 251.  So that was helpful.  But
13 some of these other areas that we have requested, there's a
14 problem where we would need particulars.
15     With our number five request, it was the dba's and domain
16 names that were allegedly used to conceal the defendants'
17 identity.  The government doesn't specify what dba or domain
18 names it views as illegal.  And when you look at the
19 indictment, paragraph 8 addresses this, under the wire fraud
20 counts.  We don't know if the government is alleging the dba's
21 and domain names used with the alleged hijacked netblocks were
22 fraudulent, or if the government is alleging a broader theory,
23 that the company's use of just using domain names and dba's, in
24 and of itself, were illegal.  So that's one area that the
25 defendants don't have notice of.

```
 1        If the government is alleging the latter, it is
 2   essentially attacking the company's entire business model, and
 3   this is going to be a much broader case than we would otherwise
 4   be required to defend, and we don't have notice of that, Your
 5   Honor.  So that's one big area.
 6        If the government is going to limit the dba's and domain
 7   names to the alleged hijacked IP netblocks, we need the
 8   government to identify what dba's and domain names it views
 9   were fraudulent, because there's no document that we are aware
10   of, from reviewing this, that would point us to that, Your
11   Honor.  So that's one big area.
12             THE COURT:  Ms. Pierson, do you have a response?
13             MS. PIERSON:  My response would be that we do intend
14   to limit this case to just those related to the hijacked
15   netblocks.  This case is about those 11 hijacked netblocks, and
16   that's what it is about.  We are not talking about the broader
17   practices of the company, here.  We are just talking about the
18   ones relate to the hijacked netblocks.
19             THE COURT:  Does that address your concern?
20             MS. MUNK:  It partially does, Your Honor.  It does in
21   that the fact that that lets us know, at least with the dba's
22   and domain names, it is related to the alleged hijacked
23   netblocks, but I don't know if we have a way of knowing which
24   dba's and domain names would have been associated with these
25   netblocks.
```

```
 1            THE COURT:  Ms. Pierson?
 2            MS. PIERSON:  That information is available to them
 3   in the discovery, and their clients are actually in the best
 4   position to know of anyone, since their clients were the ones
 5   who established the domain names, purchased the domain names,
 6   and established the associated IP addresses, all of which are
 7   provided to them in the discovery that they have.
 8            THE COURT:  I am not too sure that the second part of
 9   that answer is sufficient.
10       But with respect to the first part, that this information
11   is contained in discovery, do you have a contrary view?
12            MS. MUNK:  Your Honor, the company's practice, which
13   we believe is lawful, was to use dba's and domain names to send
14   commercial e-mails.  So the government is now limiting the
15   case; that it's only viewing as illegal a very small section, I
16   guess, of e-mails that were sent on these alleged 11 hijacked
17   netblocks.  The company used tons of IP netblocks, not just
18   these 11 allegedly hijacked netblocks.
19       So while it's great to know that the government wants to
20   narrow it, I don't know of any particular document -- and maybe
21   the government can point us to that -- that would actually let
22   us know which dba's and domain names would be associated with
23   those netblocks.
24       And maybe I can just also address our second request,
25   because I think that may be somewhat on point, is that with
```

1  regards to the e-mails and what the government views as -- they
2  use this term "Spam e-mail" -- it was unclear if the government
3  is trying to attack the company, just, sending Spam e-mail and
4  that's illegal, or if the government is narrowing it to e-mail
5  that was sent on these alleged hijacked netblocks.
6      So it sounds like maybe the government is narrowing it to
7  the 11 hijacked netblocks.  But just to highlight where our
8  confusion comes in, the government, in their opposition, points
9  to a document called "The Blackmail Reports."  And in their
10 opposition, the government says, "The defendant sent as many as
11 81 million commercial e-mails a day using the netblocks at
12 issue."
13     Well, when you actually look at the discovery -- and
14 there's an exhibit, which is Exhibit 203, that they produced --
15 it shows 81 million e-mails were sent on that day, but there's
16 a whole list of IP netblocks, and a very small fraction of this
17 long list are these alleged 11 hijacked ones.
18         THE COURT:  So let me ask, as a starting point, have
19 you had this conversation with government counsel regarding
20 this?
21         MS. MUNK:  We did not have a chance to discuss this
22 prior to this.
23         THE COURT:  Why don't you do that.  Because rather
24 than be the medium between you two to address these issues, let
25 me have you exhaust your requests.  And then at that point, if

1  you haven't received what you believe you are entitled to, the
2  Court can intervene at that point.  But otherwise, I don't
3  think it is the best use of the Court's time to, as a starting
4  point, look into these matters.
5         MS. MUNK:  Thank you, Your Honor.
6     Can I briefly address -- we also asked for the government
7  to identify the amount of funds subject to criminal forfeiture.
8  So if I can just briefly address, the government cited
9  Rule 32.2A, the proposition that they are not required to
10 identify the property subject to forfeiture or specify the
11 amount.
12    And that's true, that rule does not require that.  But
13 when you look at the notes in the amendments to that rule, it
14 actually says the vehicle for the defense to get this is
15 through a bill of particulars.  And there's case law that is
16 cited there, a Fourth Circuit case, that basically said a bill
17 of particulars is the appropriate way for a defendant to know
18 what is subject to forfeiture in the indictment.
19    So I don't know if that's something you want us to try to
20 meet and confer with counsel as well --
21        THE COURT:  Let me first inquire of Ms. Pierson, what
22 is your response to that position, that the bill of particulars
23 is the appropriate means of determining what items the
24 government intends to forfeit?
25        MS. PIERSON:  That wasn't anything that was addressed

```
 1              THE COURT:  Let me do this.  Let me direct counsel to
 2   meet and confer regarding this.  And to the extent that this
 3   eight-figure number that has been identified is a product of
 4   all the profits and not just related to these 11 netblocks,
 5   then ask the government to be more specific in terms of the
 6   amounts that they believe are a product of the use of these 11
 7   netblocks and the amount that would be subject to forfeitures.
 8              MS. MUNK:  That's all.
 9              THE COURT:  Are there any outstanding issues to
10   address?
11              MS. BERNSTEIN:  No, Your Honor.
12              THE COURT:  From the government?
13              MS. PIERSON:  This is, from our point of view --
14   prior to this appearance, I had circulated amongst defense
15   counsel a proposed protective order.  It is our standard
16   protective order.  The amount of discovery here is voluminous.
17   It also is records relating to individuals who are not the
18   defendants -- the two cooperators -- as well as the company's
19   financial records and all sorts of information that has
20   personal identifying information and other information, which
21   we were providing without redacting under the assumption that
22   it would be protected from disclosure to others.  And I sent
23   around our standard protective order.
24        It has not been signed to date.  And the defense lawyers
25   today, for the first time outside, advised us that they did not
```