RANDY S. GROSSMAN
United States Attorney
MELANIE K. PIERSON
SABRINA L. FEVE
Assistant U.S. Attorneys
California Bar No. 112520/226590
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7976
Fax: (619) 546-0631
Email:Melanie.Pierson@usdoj.gov/Sabrina.Feve@usdoj.gov

CANDINA S. HEATH
Senior Counsel
Texas Bar No. 09347450
Computer Crime and Intellectual Property Section
U.S. Department of Justice
Washington, D.C. 20005
Tel: (202) 307-1049
Email: Candina.Heath2@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB BYCHAK (1),<br>MARK MANOOGIAN (2),<br>ABDUL MOHAMMED QAYYUM (3), and<br>PETR PACAS (4),<br><br>Defendants. | Case No.: 18cr4683-GPC<br><br>**GOVERNMENT'S SUPPLEMENTAL BRIEFING RE AUTHENTICTION PURSUANT TO FED. R. EVID. 902(11) & (13)** |

COMES NOW the plaintiff, United States of America, by and through its counsel, Randy S. Grossman, United States Attorney, and Assistant United States Attorneys Melanie K. Pierson, Sabrina L. Fève, and Computer Crime and Intellectual Property Section Senior Counsel Candy Heath, and hereby files its above-referenced Supplemental

Briefing Regarding Authentication Pursuant to Fed. R. Evid. 902(11) and (13), based on the files and records of the case.

I.
STATEMENT OF RELEVANT FACTS

On March 18, 2022, the United States filed notice of its intent to authenticate business and electronic evidence, pursuant to Fed. R. Evid. 902(11) and 902 (13). [ECF 347.] The records in questions were provided to the defense for inspection and copying, and were disclosed in electronic form, along with the certificates of authenticity ("COAs" or "certificates"). In a footnote to their Rule 404(b) *in limine* motion, the defense stated that the defendants "do not consent to the admissibility or relevance of the certifications," but provided no further explanation. [ECF 360-1, p. 2, fn. 1].

On April 29, 2022, the government filed its Amended Notice of Intent to Authenticate Evidence,[1] providing copies of the individual certificates of authenticity and identifying the exact trial exhibits by exhibit number sought to be authenticated. The Amended Notice identified over 700 exhibits, which matched the exhibit numbers identified on the Government's Exhibit List, filed on April 25, 2022 [ECF 395], which identified the exhibits themselves by description and bates number. As the government has stated repeatedly throughout these proceedings, virtually all its trial exhibits were obtained by means of a subpoena for records, and were provided in electronic format.

On May 5, 2022, the defense received copies of the government's marked exhibits, with an amended exhibit list highlighting any changes. On May 6, 2022, the government filed its Amended Exhibit list [ECF 405]. Twenty-three of the 700-odd exhibits had to be renumbered when it was discovered that those exhibit numbers had already been used during the witness depositions. On May 6, 2022, at the hearing on the parties' motions *in limine*, the court deferred ruling on the Fed. R. Evid. 902(11) matters to May 12, 2022.

---

[1] One supplemental document and accompanying Certificate of Authorization was filed on May 5, 2022.

[ECF 406.] On May 9, 2022, the government provided the defense with a spreadsheet explaining the renumbering of the 23 mis-numbered exhibits.

Since the government's March 29, 2022, filing of its notice of intent to authenticate documents pursuant to Fed. R. Evid. 902(11) and (13), the government has repeatedly asked defense counsel if they could agree that any of the requested documents could properly be authenticated with the proffered certificates of authenticity, including via email on April 22, 2022, and May 12, 2022. The defense did not respond to either email until the evening of May 17, 2022, when an attorney for one of the four defendants indicated that her defendant would not challenge the COAs for three of the 20 certificates identified by the government. The attorney indicated they were willing to accept the COAs from Telic, the State of Delaware, and the State of Louisiana. Defense counsel's email did not identify any specific defects in the remaining 17 COAs, but just indicated they were rejecting them. Another defense counsel indicated that her client might agree to the authenticity of two or three other sets of records. There was no agreement by all four defendants to any of the requests.

Mario Samonte, the records custodian for Company A, previously testified that he began working at one of the predecessor companies to Company A in 2006 as the systems administrator. Samonte, who has a college degree in computers, held the position of system administrator through at least 2018. According to Samonte, as the systems administrator, he was responsible for helping people with their IT needs and keeping the servers up and running.  Samonte said he "was in charge of all IT needs for all the employees."  Samonte explained that as the company grew to have 100 employees, he eventually supervised a team of five people, but he remained "the main guy" for supporting the email platform. According to Samonte, he "would be the single person to support all of them [the employees], on top of the email platform that I'm supporting."  When the firm became a global company after being acquired by Company A, Samonte took "more of a systems and engineering role" while still maintaining the email platform needed for mailing.

## THE EXHIBITS ARE PROPERLY AUTHENTICATED BY CERTIFICATES.

Fed. R. Evid. 902(11) provides that business records certified to meet the requirements of Fed. R. Evid. 803(6)(A) – (C) are "self-authenticating" and "require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 803(6)(A)-(C) requires attestation that: "(A) the record was made at or near the time by-or from information transmitted by-someone with knowledge, (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit, [and] (C) making the record was a regular practice of that activity." Making reference to Fed. R. Evid. 803(6), the Advisory Committee Notes explain that Fed. R. Evid. 902(11) "sets forth a procedure by which parties can authenticate certain records of regularly conducted activity, other than through the testimony of a foundation witness." *See* Fed. R. Evid. 902(11), Advisory Committee's Note. Additionally, the Advisory Committee Notes to the 2000 Amendments to Rule 803, explain that Rule 902(11) "provides that the foundation requirements of Rule 803(6) can be satisfied under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses." Fed. R. Evid. 803(6), Advisory Committee's Note. Simply stated, the government seeks the application of Fed. R. Evid. to authenticate records from Amobee, Enom, CPH Resources, Name.com, PayPal, GoDaddy, GetAds, Hostwinds, Telic, Cogent, Mata Group, ARIN, Moniker, the Goodman Law Firm, and Broadcloud, via a COA signed by an authorized custodian of records for each entity. Such authentication, as prescribed for by the Fed. R. Evid., will eliminate the need for a custodian of records for each entity to travel to San Diego to appear in court simply to testify to the same statements set out in the COS, that the records are authentic records of his or her entity.

A.   A Minimal Threshold is Required to Authenticate Evidence.

In general, a "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). To support such a finding, the proponent "need only make a *prima facie* showing of authenticity" and "establish a connection between the proffered evidence and the defendant." *United States v. Tank*, 200

F.3d 627, 630 (9th Cir. 2000). Disputes over authentication should be about whether it is reasonably likely that the evidence is what the proponent says (e.g., a Company A email), not over the evidence's probative value. The courts can therefore properly "admit[] evidence that meets the minimum requirements for authentication under the Federal Rules of Evidence" and let opposing counsel "argue that the jury should give the evidence minimal weight." *United States v. Ortiz*, 776 F.3d 1042, 1045 (9th Cir. 2015).

B. <u>The Defendants Have No Right to Confront the Record Custodians</u>.

The Ninth Circuit, following the Tenth Circuit[2] and the Seventh Circuit[3], has squarely held that admission of records based on COAs from custodians of records without the testimony of a live witness does not violate a defendant's Sixth Amendment right to confront a witness. *United States v. Anekwu*, 695 F. 3d 967, 974 (9th Cir. 2012). *Anekwu* held that the COAs were non-testimonial because the certificates did not interpret what the records contain or certify their substance or effect, or otherwise create a record for the sole purpose of providing evidence against a defendant. As such, the use of the COAs was found to be consistent with the Supreme Court's holding in *Crawford v. Washington,* 541 U.S. 36, 51–52 (2004).

C. <u>The Defendants May Challenge the Sufficiency of the Certification</u>.

Even though no witnesses need testify and no cross examination need occur, the defendants may still challenge the authenticity of the evidence and the sufficiency of the certifications through the mechanism of a hearing pursuant to Fed. R. Evid. 104. *United States v. Kahre*, 610 F. Supp. 2d 1261, 1265 (D. Nev. 2009). This procedure requires the government to provide notice of the documents it seeks to authenticate, and copies of the certificates upon which it relies for authenticity. The defense is then free to challenge the sufficiency of certificates at the hearing. Assuming the court finds the certifications to be sufficient, the records are deemed authenticated. The issue of admissibility is separate and

---

[2] *United States v. Yeley–Davis,* 632 F.3d 673 (10th Cir.), *cert. denied,* –– U.S. ––––, 131 S.Ct. 2172, 179 L.Ed.2d 951 (2011)

[3] *United States v. Ellis,* 460 F.3d 920, 927 (7th Cir.2006)

distinct, and occurs only after the government meets its burden to prove the documents' relevance and the absence of some form of hearsay. *Id*. If the defendants have questions for these records custodian witnesses outside of their role as merely establishing foundation for authentication, they are "free to call them at trial before the jury…this procedure provides an opportunity to expedite the already-lengthy trial while still maintaining and protecting the Defendants' constitutional rights." *Id*.

D. <u>COAs Made By Corporate Successors and Custodians without Personal Knowledge Support Authenticity Under 902(11)</u>

In *United States v. Siders*, 712 Fed Appx 601 (9th Cir. 2017), the Ninth Circuit rejected the defendant's objections that the Rule 902(11) certifications required the custodian of record to have personal knowledge of each document certified. In *Sider*, the loan records were issued by Washington Mutual, while the declaration was provided by a records custodian from JPMorgan Chase, the corporate successor to Washington Mutual. The court found the COAs to be sufficient under Rule 902(11) because the declaration established that the applications were received in the course of loan processing and maintained thereafter, and this occurred in the regular course of business. *Id.* One entity may receive and maintain documents in the regular course of business, even if the documents were created by third parties. *United States v. Childs*, 5 F.3d 1328, 1333–34 (9th Cir. 1993).

Similarly, "the is no requirement that" the COA indicate "precisely when the [document] was" created and an opposing party's quarrels with the timing, location, or other aspects of the document "indicate a lack of trustworthiness . . . address[] the weight of the evidence rather than its admissibility." *United States v. Huber*, 772 .2d 585, 590-91 (9th Cir. 1985); *see also United States v. Ray*, 930 F.2d 1368 (9th Cir. 1990) ("There is no requirement that the government establish when and by whom the [business records] were prepared"); *United States v. Basey*, 613 F.2d 198, 201 n.1 (9th Cir. 1979) (records custodian did not need to personally record the information or know who did). Because the evidence provided by the custodian of records is foundational, the personal knowledge

standard is not applied. *See* Fed. R. Evid. 104(a); 4 Christopher B. Mueller & Laird C. Kirkpatrick, FEDERAL EVIDENCE § 8:78(5)(4th ed.). The custodian of records "needs firsthand knowledge about the normal processes of the business, but he need not be someone who observed any step in creating the record, and he need not even know exactly who participated in the various steps. He may rely largely on a kind of circumstantial knowledge, and he even [may] rely partly on what amounts to hearsay—on what he has learned by talking to others about record-keeping processes." *Id*. Thus, it is proper for a records custodian from Company A to authenticate the records Company A maintains that were received from predecessor firms, and the proffered Custodian need not have personal knowledge of each document.

Mario Samonte is well qualified to be the custodian of records for the records of Company A, which were all produced electronically. As the systems administrator, who was responsible for the IT needs of all the employees of Company A during the relevant time frame, Samonte had personal knowledge of the normal processes of the business and how the records were created and stored electronically, including by the predecessor firms by whom he was employed.

E. <u>Authentication of Electronic Evidence.</u>

*Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534 (D.Md. 2007) which catalogued the myriad ways in which electronic evidence may be authenticated and admitted, noted at the time that the most common methods for authenticating email were Fed. R. Evid. 902(b)(1) (person with personal knowledge), 901(b)(3) (comparison with authenticated exemplar), 901(b)(4) (distinctive characteristics, including circumstantial evidence),[4] and 902(11) (business records certifications). *Id.* at 554-55.

More recently, the courts have relied on Rule 902(11) certifications to authenticate email records. *See, e.g., United States v. Gal*, 606 Fed. Appx. 868, 874-75 (9th Cir. 2015)

---

[4] Fed. R. Evid. 901(b)(4) also encompasses the "reply doctrine," which holds that, once an email "is shown to have been mailed, sent or made," an email "shown by its contents to be in reply is authenticated without more." *United States v. Frantz*, 2004 WL 5642909, n. 25 (C.D. Cal. 2004) (citations omitted).

(email properly authenticated under Rule 902(11) and the certification did not violate the Confrontation Clause) (citations omitted); *United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019) (same); *United States v. Denton*, 944 F.3d 170, 183-84 (4th Cir. 2019) (same); *United States v. Way*, 1:14cr00101-DAD-BAM-1, 2018 WL 2470944, *1-2 (E.D. Cal. June 1, 2018).

Even when the proffered electronic communications are from social media, where the courts have been somewhat more conservative regarding the authentication of an account's *contents* via Rule 902(11), the courts have still been inclined to accept the Rule 902(11) certification to authenticate *records* about the content (e.g., metadata showing times or dates of transmission or IP addresses) under Rule 901(a) and to hold there was no Confrontation Clause issue. *See, e.g., United States v. Farrad*, 895 F.3d 859, 879-80 (6th Cir. 2018); *United States v. Browne*, 834 F.3d 403, 413-15 (3rd Cir. 2016); *United States v. Hunt*, 534 F.Supp.3d 233, 254-58 (E.D.N.Y. 2021); *see also* Advisory Committee Notes to 901(a) ("significant inroads upon the traditional insistence on authentication and identification have been made by accepting as at least prima facie genuine items of the kind treated in Rule 902").

Other electronic business records, like GoDaddy, Tucows, Name.com, and Enom's domain registration records, are more conventional business records that fall within both Fed. R. Evid. 902(11) and 902(13). *See, e.g., United States v. Ray*, 20cr110 (LJL) 2022 WL 558146 (S.D.N.Y. Feb. 24, 2022) (GoDaddy records may be authenticated under Rule 902(11)); *Dienes v. FCA US LLC*, 16cv1812-AJB, 2017 WL 11672443 (S.D. Cal. Jan. 10, 2017) (business reports properly authenticated under Fed. R. Evid. 902(11)). Fed. R. Evid. 902(13) also applies to records created via an electronic process, such as archival data that is collected automatically by a website. *Western Towboat Co. v. Vigor Marine, LLC*, 2021 WL 2641521, *4-5 (W.D. Wash. 2021); *see also* Wright and Miller § 7147. The Advisory Committee Notes to the 2017 Amendments that codified Rule 902(13) note the shared public policy underlying both Rule 901(11) and 902(13): "As with the provisions on business records in Rules 902(11). . ., the Committee has found that the

expense and inconvenience of producing a witness to authenticate an item of electronic evidence is often unnecessary."

### III.
### CONCLUSION

To avoid delay and wasted time at trial resulting from an appearance by a dozen or more custodians of records simply to testify that the documents, are indeed, authentic documents from their company, the government requests that the court rule that the records can be authenticated by the proffered certificates of authenticity.

DATED: May 18, 2022          Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney

/s/Melanie K. Pierson
Assistant United States Attorney

/s/Sabrina L. Fève
Assistant United States Attorney

/s/Candy Heath
Senior Counsel
Computer Crime and Intellectual Property Section