```
 1                     UNITED STATES DISTRICT COURT

 2                FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,       .
                                     .
 5               Plaintiff,          . No. 18-cr-4683-GPC
                                     .
 6               v.                  . May 12, 2022
                                     . 3:00 p.m.
 7   JACOB BYCHAK,                   .
     MARK MANOOGIAN,                 .
 8   MOHAMMED ABDUL QAYYUM,          .
     PETR PACAS,                     .
 9                                   .
                 Defendants.         . San Diego, California
10   . . . . . . . . . . . . . . . .

11
                       TRANSCRIPT OF MOTION HEARING
12              BEFORE THE HONORABLE GONZALO P. CURIEL
                     UNITED STATES DISTRICT JUDGE
13

14

15   APPEARANCES:

16   For the Plaintiff:      United States Attorney's Office
                             By: SABRINA L. FEVE, ESQ.
17                                MELANIE K. PIERSON, ESQ.
                                  CANDINA S. HEATH, ESQ.
18                           880 Front Street, Room 6293
                             San Diego, California 92101
19
     For the Defendant       Wiechert, Munk & Goldstein, PC
20   JACOB BYCHAK:           By: DAVID W. WIECHERT, ESQ.
                                  JESSICA C. MUNK, ESQ.
21                           27136 Paseo Espada, Suite B1123
                             San Juan Capistrano, California 92675
22
     For the Defendant       Mintz Levin
23   MARK MANOOGIAN:         By:  RANDY K. JONES, ESQ.
                                  RYAN T. DOUGHERTY, ESQ.
24                                DANIEL J. GOODRICH, ESQ.
                             3580 Carmel Mountain Road, Suite 300
25                           San Diego, California 92130
```

```
 1   APPEARANCES (CONTINUED):

 2


 3   For the Defendant      Bienert Katzman Litrell Williams LLP
     MOHAMMED ABDUL         By:   WHITNEY Z. BERNSTEIN, ESQ.
 4   QAYYUM:                903 Calle Amanecer, Suite 350
                            San Clemente, California 92673
 5


 6   For the Defendant      Bird Marella
     PETR PACAS:            By:   GARY S. LINCENBERG, ESQ.
 7                                DARREN L. PATRICK, ESQ.
                                  ALEXIS A. WISELEY, ESQ.
 8                          1875 Century Park East
                            Suite 2300
 9                          Los Angeles, California 90067

10

11

12

13

14

15

16

17

18

19

20

21

22   Court Reporter:        Chari L. Bowery, RPR, CRR
                            USDC Clerk's Office
23                          333 West Broadway, Suite 420
                            San Diego, California 92101
24                          chari_bowery@casd.uscourts.gov

25   Reported by Stenotype, Transcribed by Computer
```

```
 1            SAN DIEGO, CALIFORNIA; MAY 12, 2022; 3:00 P.M.
 2                              -o0o-
 3            THE CLERK:  Calling matter two on calendar,
 4   18-cr-4683, United States of America v. Jacob Bychak, Mark
 5   Manoogian, Mohammed Abdul Qayyum, and Petr Pacas, for motion
 6   hearing.
 7            THE COURT:  Appearances, please.
 8            MS. MUNK:  Good afternoon, Your Honor.  Jessica Munk
 9   and David Wiechert on behalf of Jacob Bychak, who is present in
10   court.
11            THE COURT:  Good afternoon.
12            MR. JONES:  Good afternoon, Your Honor.  Randy Jones,
13   Dan Goodrich and Ryan Dougherty, all appearing via telephone,
14   on behalf of Mark Manoogian, who is present in court.
15            THE COURT:  Good afternoon.
16            MS. BERNSTEIN:  Good afternoon, Your Honor.  Whitney
17   Bernstein and Leah Thompson, who is a paralegal with our firm,
18   on behalf of Mohammed Abdul Qayyum, who is present in court.
19            THE COURT:  Good afternoon.
20            MR. PATRICK:  Good afternoon, Your Honor.  Darren
21   Patrick and colleagues Gary Lincenberg and Alexis Wiseley, on
22   the telephone, on behalf of Petr Pacas, who is also present.
23            THE COURT:  Good afternoon to all the defendants, all
24   counsel on behalf of the defense.
25        And on behalf of the United States?
```

```
 1              MS. PIERSON:  Melanie Pierson, Candi Heath, and
 2   Sabrina Feve.
 3              THE COURT:  Good afternoon to you all.
 4         We are here on a couple of matters, at least a couple of
 5   matters.  We have pending a motion *in limine* to exclude
 6   testimony of witnesses Benkert and Kinrich.  This is a motion
 7   that was originally filed *in camera*.  Upon my review of the
 8   motion, it became obvious, clear, that we could not proceed on
 9   the motion in the manner proposed, *in camera*, *ex parte*, just
10   allowing one party, one side of the listed parties to present
11   the motion without providing some opportunity to the government
12   to file a response, which they now have.
13         And so, basically, at this point, we are in the same place
14   that we were at the last hearing; that is, the defense making
15   certain assertions and the government denying them.  There's no
16   question that Mr. Bychak and company entered a joint defense
17   agreement.  There's no question that Mr. Bychak was interviewed
18   by David Benkert and Jeffrey Kinrich.  They are accounting
19   experts retained by Company A to rebut government estimates as
20   to revenue generated by the alleged 11 hijacked netblocks.
21         What is disputed is whether or not presentations,
22   information that was thereafter collected and presented to the
23   government was in any meaningful sense prepared as a result of
24   the interviews by David Benkert and Jeffrey Kinrich of
25   Mr. Bychak.  It is reported that these reports or presentations
```

of Benkert and Kinrich were produced back in July of 2020, and, unfortunately, issues related to these presentations were not raised until just recently.

All of this comes down to the basic core question of whether or not the information derived from Mr. Bychak made its way into these presentations. Both parties take opposing views. If not as a threshold matter, as a starting point, the government points to the fact that, unbeknownst to them, they were unaware of a joint defense agreement, and, as such, they had no way of knowing that there would be a claim down the pike that information provided to the government in order to address the amount of income generated by these netblocks would somehow or another implicate a joint defense agreement.

And the Court agrees with that.

We see, in the defense papers, a number of accusations being leveled and lodged against the government as to how what we are dealing with now is further evidence of prosecutorial misconduct. At the same time, there is no indication that the government was made aware of the joint defense agreement, and it was not until, reportedly, the government made reference to these witnesses that the matter was raised initially *in camera*, *ex parte*. So this is our first opportunity to have both parties, both sides heard from, as it relates to this.

But it strikes the Court that what we need here, which is what we saw in the case relied upon by the defense, *Schwimmer*,

1  is an evidentiary hearing.  In *Schwimmer*, the district court
2  found that the references that were otherwise privileged were
3  negligible, and since the documents delivered to the government
4  were merely tax returns and schedules related to bank accounts,
5  there was no invasion of the defense camp.  The Second Circuit
6  observed that, based on the documentation available to it, the
7  district court should have conducted an evidentiary hearing to
8  determine whether the government's case was in any respect
9  derived from the violation of the attorney-client privilege.
10      Here, that wouldn't be the purpose of the motion so much
11 as to find out whether or not these experts relied in some way,
12 in a meaningful way, on the information derived from
13 Mr. Bychak.  The defense asserts that there was no way for
14 Benkert to determine directly the internal email revenue given
15 that Company A did not directly track internal email revenue
16 during the relevant period.  Instead, it is anticipated that
17 Mr. Benkert was only able to arrive at his calculations and his
18 opinions based upon Mr. Bychak's privileged interview.
19      I know the government responds that these witnesses
20 pooh-pooh this idea and observe that Mr. Bychak either was not
21 credible or that they did not attach much weight to what he had
22 to say.
23      But it seems like, at this point, what we should do is
24 have both of these individuals come in, and then they can be
25 examined, and then the Court will have a complete record.

```
 1  That's how I propose to go forward.  We can have a hearing next
 2  week.  And then, at that point, we will see where things stand.
 3       So, are the parties available next Wednesday, the 18th, at
 4  2:00 p.m.?
 5           MS. PIERSON:  No, Your Honor.  I have a doctor's
 6  appointment then.
 7           THE COURT:  How about the morning, at 9:00 a.m.?
 8           MS. PIERSON:  Yes.
 9           THE COURT:  Is the defense available at 9:00 a.m.?
10           MS. MUNK:  Yes, Your Honor.
11           MR. JONES:  9:00 a.m., on Thursday, Your Honor, the
12  18th, I am available.
13           THE COURT:  Okay.
14           MR. JONES:  This is Randy Jones.
15           THE COURT:  Yes, sir.
16       So, then, that's what we will do on this motion.  We will
17  proceed with a hearing.  We will hear from both these
18  gentlemen, Benkert and Kinrich.
19       And then we also have pending the motion to dismiss based
20  on the Fourth Amendment.  The order is being finalized at this
21  moment, but I guess I will give you the ending.  The motion is
22  denied.  And, most notably, the Court is not prepared to find
23  that C.Y. was a government actor.  There's nothing, in the
24  Court's view, besides conjecture or speculation to support
25  that.
```

1        In addition, we do a little bit of reviewing of the 11
2   emails themselves, whether or not all four defendants have
3   shown that they had an interest that society is prepared to
4   acknowledge or recognize, and the Court goes through how
5   there's a number of defendants who -- well, Mr. Manoogian, for
6   example, from what we have in the record, does not appear to
7   have been a recipient or sender of any of the 11 emails.  There
8   are others who have two or three that were directed to them,
9   but there were also emails where C.Y. was identified as a
10  sender or recipient; and given those circumstances, as to those
11  emails where C.Y. was identified as a sender or recipient, the
12  Court is not prepared to find that society would afford a right
13  under the Fourth Amendment to challenge those emails.
14       And so then we have, I think, the motion on
15  authentication.  I am not going to take that up today.
16       And then do we have any other pending motions that I have
17  not mentioned?
18            MS. PIERSON:  We have not received any reciprocal
19  discovery yet.
20            THE COURT:  I understand that is not that uncommon in
21  any case with a criminal defendant.
22       Is there any?
23            MS. MUNK:  Yes, Your Honor.  We actually do plan to
24  file -- I think we are filing a list today.  I think there's
25  approximately 164 exhibits on it.  And then there are some

1  additional reciprocal discovery that the government doesn't
2  have that we are producing as part of that, so they should
3  receive it by the end of the day.
4          THE COURT:  There you have it.
5          MS. BERNSTEIN:  And Your Honor, so it's clear, we
6  made an over-1,000-page reciprocal discovery production a while
7  ago.  That is not true.  We have produced reciprocal discovery.
8          MS. PIERSON:  What they produced in reciprocal
9  discovery was the copies of legal decisions, Bates stamped,
10 which seemed like not reciprocal discovery to me.
11         THE COURT:  Is that what you have provided
12 previously?
13         MS. BERNSTEIN:  I don't know what the substance was,
14 but it was over 1,000 pages.  So that is fine if they take
15 issue with what was produced, but it is not accurate to tell
16 Your Honor we never produced anything when we have.  It was the
17 subject of a motion in limine.  I just wanted the record to be
18 clear that we have provided reciprocal discovery.
19         THE COURT:  Do you have 1,000 pages of case law?
20         MS. FEVE:  Your Honor, we have 1,000 pages of case
21 law, legislative history, and regulatory filings.  We have no
22 evidence in this case.
23         MS. BERNSTEIN:  So, again, we are -- again, we are
24 producing additional stuff today pursuant to the Court's order
25 last week.  It has taken a while to get that Bates stamped and

1   out the door, but I wanted the record to be clear about our
2   compliance with Rule 15.
3           THE COURT:  So, let me do this.  Given that you have
4   presented 1,000 pages of case law and legislative history, let
5   me ask the defense to submit something which would show the
6   Court why any of that would be admissible at trial.
7           MS. BERNSTEIN:  And we would be filing that with Your
8   Honor *in camera*?
9           THE COURT:  You could, because, at this point, I am
10  not inclined to have the jury receive thousands or hundreds of
11  pages or even dozens of pages of case law.
12      To the extent that the Court is the one that determines
13  what the applicable law is, the Court will advise the jury what
14  the law is, and so that will not be something that the jury
15  decides.  I know there's a number of issues that are hotly
16  contested, including the question of what qualifies as
17  property, whether IP netblocks qualify, and there are
18  instructions that certainly we will have to provide to the jury
19  that provides some guidance in what they are to consider.  So I
20  am certain that that is one of the -- if not challenges, one of
21  the obligations that we will be fulfilling as we go forward.
22      As a threshold matter, I do not intend to permit
23  legislative history for any law or cases to be sent back to the
24  jury.  If you have authorities where that has happened, I would
25  welcome the defense filing those so that I can be privy, I can

1  see what they are.  But those are my general thoughts regarding
2  that reciprocal discovery.
3         MS. FEVE:  Your Honor, I just had one housekeeping
4  matter for you when you are finished dealing with the
5  reciprocal discovery.
6         THE COURT:  I think I am finished.
7         MS. FEVE:  Neither party has filed a motion *in limine*
8  on it, but I wanted to ask the Court, so that both sides are on
9  notice, what is the Court's policy with regard to PowerPoints,
10 both in opening and at closing?  Particularly at opening,
11 because we recognize no evidence will have been admitted.  But
12 are the parties permitted to present a PowerPoint?  And if so,
13 what is the Court's policy about identifying exhibits in
14 advance and in what format, so the PowerPoints can be relied on
15 and prepared?
16        THE COURT:  All right.  To the extent that the
17 parties meet and confer and exchange any proposed PowerPoints
18 and are agreeable that the contents of those PowerPoints are
19 properly displayed to the jury, I am more than happy to accept
20 the stipulation or that agreement to proceed in that way.
21     To the extent that one side or the other wishes to include
22 in their opening PowerPoint presentation -- which I am amenable
23 to, I am agreeable to, as long as the substance can be agreed
24 upon -- but if the parties don't agree, and you believe that
25 you are entitled to make that offering in your opening via

```
 1   PowerPoint, then, as we have seen, by default, it comes to me.
 2          Again, I invited you to meet and confer, to work out as
 3   many of these things between yourselves, because there's enough
 4   matters that have already been placed on the Court's plate.  I
 5   expect that there will be more things placed on the Court's
 6   plate that I will have to deal with.  But to the extent that
 7   you can streamline some of this, that you can work this out
 8   between yourselves, that will be of great assistance to the
 9   Court, and it will hopefully allow us to have this trial
10   concluded within four or five -- no more than six weeks,
11   because, frankly, that's still a concern of mine.  And I think
12   it should be a concern for all of us because, right now, with
13   the surge in COVID cases, it may be very difficult to keep our
14   jury all safe -- and yourselves, for that matter -- for an
15   entire five- or six-week period.  So it behooves us all to be
16   as efficient as we can be.
17          MS. PIERSON:  I would like to ask a question about
18   the hearing that the Court has just suggested we have on
19   Wednesday.  I am assuming that, since the defense is the
20   proponent of the motion, they will be calling Mr. Benkert and
21   Mr. Kinrich, and they will be doing the direct examination?
22          THE COURT:  I think under the law it is the defense
23   that has the laboring oar, has the burden to establish that
24   there's a privilege, that it has been violated, and so I agree.
25          But I will ask that, since I have the government as
```

1  calling these individuals as witnesses, that you let them know
2  when you subpoena them.
3       Or you can, Ms. Munk.
4            MS. MUNK:  I would request the government have them
5  present.  They are now on the government's expert witness list.
6            THE COURT:  I will ask the government to arrange for
7  them to be present.
8            MS. PIERSON:  We will do our best.  They are in
9  Los Angeles and not San Diego.
10            THE COURT:  We can issue a subpoena.
11            MS. PIERSON:  We will do our best.
12       So will the defense be issuing a subpoena?
13            MS. MUNK:  I was going to let the government call
14  them, Your Honor.  Do we need to issue a subpoena for the
15  government's witnesses?
16            THE COURT:  I will ask the government to issue a
17  subpoena.
18            MS. MUNK:  Thank you, Your Honor.
19            THE COURT:  Is there anything else for us to address
20  at this moment?
21            MS. BERNSTEIN:  This one should be easy, Your Honor.
22       We have a combined trial tech who is going to be assisting
23  all defense.  We would like if he can sit at the end of the
24  table, and we will need a monitor for him.  So I don't know if
25  extra monitors are coming, or if we can be permitted to have

1  him bring his own monitor, which would require a court order
2  for him to get through security.
3          THE COURT: Let me ask my clerk to follow up with IT.
4  We will need another monitor.
5      And let me also -- to the extent that I hadn't previously
6  asked him -- I know there was a question of the additional
7  table.  As far as the attorneys that will be seated right there
8  ahead of the bar, they can bring their little portable desks or
9  tables.  And then, as to here, I think there was a question of
10 how many we would be able to fit in this L configuration, and
11 let me ask my clerk.
12         THE CLERK: I tried to do it.  It was pretty tight,
13 depending how close they want to sit near each other.  And I
14 have procurement looking for more chairs if they want to use
15 them with the small chairs.
16         THE COURT: That might make more sense, rather than
17 importing another table.  It seems hard to imagine we will have
18 room to have another table back there; whereas, your proposal
19 about having attorneys seated at the different chairs with
20 their collapsable desk, that makes the most sense.
21         MS. BERNSTEIN: That's fine.  We will need the trial
22 tech to be provided a monitor, or we can provide one, but we
23 would need an order.
24         THE COURT: I expect IT possibly has one, and it
25 works out probably better for them to have something that they

```
 1  already know works with our system.
 2          THE CLERK:  I already reached out with Bruno, and he
 3  is going to reach out to me tomorrow or next week.
 4          MS. BERNSTEIN:  We can follow up next week.
 5      And the next is to request a copy of the juror
 6  questionnaires.
 7          THE COURT:  Yes.  We have a copy for you all right
 8  there, so you can take your respective copy.
 9      And then what we can do next Wednesday, after we are done
10  with the hearing on these two witnesses, we can begin the
11  process of seeing where things stand as to excuse for cause or
12  any other matters that relate to these jurors who have provided
13  questionnaires and who have indicated that, at least as of the
14  time that they submitted those, that they were available for up
15  to a six-week trial.  All right?
16      Anything else?
17          MR. JONES:  Your Honor, with respect to the jury
18  questionnaire, I am going to have Mr. Manoogian pick it up
19  since we are not in court.  Is that okay?
20          THE COURT:  Yes, it is all right, Mr. Jones.
21      Anything else?
22          MS. PIERSON:  I was having difficulty hearing
23  Mr. Jones.
24          THE COURT:  He asked if we would allow his copy to be
25  picked up by Mr. Manoogian, and yes, we will provide him with
```

1   that copy.
2         So, then, that concludes these proceedings.  We will see
3   you next Wednesday.  Take care.
4         (End of proceedings at 3:27 p.m.)
5                              -o0o-
6                      C-E-R-T-I-F-I-C-A-T-I-O-N
7
8         I hereby certify that I am a duly appointed,
9   qualified and acting official Court Reporter for the United
10  States District Court; that the foregoing is a true and correct
11  transcript of the proceedings had in the aforementioned cause;
12  that said transcript is a true and correct transcription of my
13  stenographic notes; and that the format used herein complies
14  with rules and requirements of the United States Judicial
15  Conference.
16               DATED:  May 20, 2022, at San Diego, California.
17
18                              /s/  Chari L. Bowery
                                _____
19                              Chari L. Bowery
                                CSR No. 9944, RPR, CRR
20
21
22
23
24
25