WIECHERT, MUNK & GOLDSTEIN, PC
David W. Wiechert, SBN 94607
Jessica C. Munk, SBN 238832
Jahnavi Goldstein, SBN 245084
27136 Paseo Espada, Suite B1123
San Juan Capistrano, California 92675
Telephone: (949) 361-2822
Facsimile: (949) 361-5722
Email: jessica@wmgattorneys.com

Attorneys for Defendant
Jacob Bychak

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB BYCHAK,<br><br>Defendant. | Case No. 18-CR-4683-GPC<br>Honorable Gonzalo P. Curiel<br><br>**DEFENDANT JACOB BYCHAK'S STATEMENT OF POSITION RE SENTENCING FACTORS AND SENTENCING MEMORANDUM; EXHIBITS A-C**<br><br>Hearing Date: October 3, 2022<br>Hearing Time: 10:30 a.m.<br>Department: Courtroom 2D |
|---|---|

TO THE HONORABLE COURT AND THE PLAINTIFF UNITED STATES OF AMERICA AND THEIR COUNSEL OF RECORD: Defendant, Jacob Bychak, hereby submits his Statement of Position re Sentencing Factors and Sentencing Memorandum for consideration by the Court at his sentencing.

//

//

| | | |
|---|---|---|
| DATED: September 26, 2022 | | Respectfully submitted: |
| | | WIECHERT, MUNK & GOLDSTEIN, PC |
| | By: | *Jessica C. Munk* |
| | | Jessica C. Munk |
| | | Attorneys for Defendant |
| | | Jacob Bychak |

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................... 1

II. PERSONAL BACKGROUND ................................................................ 2

    A. MR. BYCHAK'S UPBRINGING AND FAMILY ..................................... 2

    B. MR. BYCHAK'S EDUCATION AND EMPLOYMENT .......................... 3

    C. ADCONION DIRECT'S NEED FOR IP ADDRESSES AND DEALINGS WITH GETADS AND DANIEL DYE ......................................................... 4

III. THE COURT SHOULD GRANT THE SEVEN-LEVEL DOWNWARD DEPARTURE UNDER § 5K2.0 ............................................................... 5

IV. THE 18 U.S.C. § 3553(a) SENTENCING FACTORS WARRANT A SENTENCE OF ONE YEAR PROBATION, COMMUNITY SERVICE AND A MONETARY PENALTY ............................................................... 6

    A. NATURE AND CIRCUMSTANCES OF THE OFFENSE WARRANT A SENTENCE OF ONE YEAR PROBATION ............................................. 7

    B. MR. BYCHAK'S HISTORY AND CHARACTERISTICS FURTHER SUPPORT A SENTENCE OF ONE YEAR PROBATION ......................... 8

        1. Mr. Bychak is a Loving and Dedicated Husband and Family Member and Involved in His Community ................................................... 9

        2. Mr. Bychak is Deeply Remorseful for His Conduct, has Lived a Law-Abiding Life, and Poses Zero Risk of Recidivism ............................ 13

V. UNDER THE CIRCUMSTANCES, ONE YEAR OF PROBATION, COMMUNITY SERVICE AND A SIGNIFICANT MONETARY PENALTY IS SUFFICIENT TO SERVE THE PURPOSES OF § 3553(a)(2) .................. 12

VI. A SENTENCE OF MORE THAN ONE YEAR PROBATION WOULD LIKELY RESULT IN UNFAIR SENTENCE DISPARITIES CONNECTED WITH THIS INVESTIGATION ............................................................... 14

VII. CONCLUSION ....................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*Gall v. United States*, 552 U.S. 38 (2007) ................................................................. 6

*Koon v. United States*, 518 U.S. 81 (1996) ................................................................ 6

*Pepper v. United States*, 562 U.S. 476 (2011) ........................................................... 6

*Rita v. United States*, 551 U.S. 338 (2007) ............................................................... 9

*United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) ........................................... 6, 12

*United States v. Chapman*, 872 F. Supp. 369 (E.D. Va. 1993) ............................... 13

*United States v. Menyweather*, 447 F.3d 625 (9th Cir. 2006) ................................... 9

*Williams v. New York*, 337 U.S. 241 (1949) .............................................................. 6

## STATUTES

18 U.S.C. § 3553(a) ............................................................................................*passim*

18 U.S.C. §1037(a)(5) ................................................................................................ 1

18 U.S.C. §1037(b)(3) ................................................................................................ 1

U.S.S.G. § 5K2.0 ........................................................................................... 1, 5, 6, 14

## OTHER AUTHORITIES

https://bjs.ojp.gov/content/pub/pdf/fjs19.pdf .......................................................... 13

https://bjs.ojp.gov/content/pub/pdf/fjs20.pdf .......................................................... 13

https://en.wikipedia.org/wiki/Scott_Richter ............................................................. 7

*https://web.archive.org/web/20121016062848/http://www.getads.com/about%20us.html*. ............................................................................................................................ 4

https://www.allamericanspeakers.com/celebritytalentbios/Kim+Perell/426825. ........ 4

https://www.ftc.gov/sites/default/files/documents/public_events/ftc-spam-forum/transcript_day1.pdf. ....................................................................................... 7

https://www.prnewswire.com/news-releases/adconion-direct-ceo-kim-perell-wins-prestigious-ernst--young-entrepreneur-of-the-year-award-211948151.html ........... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant Jacob Bychak humbly appears before this Court for sentencing on his plea of guilty to Count One of the Superseding Information (Dkt. 471) charging him with misdemeanor conspiracy to commit electronic mail fraud, in violation of 18 U.S.C. § 1037(a)(5) and (b)(3). Mr. Bychak entered his guilty plea on June 10, 2022. The parties and the Presentence Report ("PSR") calculate Mr. Bychak's initial offense level to be 15 under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), which includes a 3-point reduction for Mr. Bychak's acceptance of responsibility. *See* Plea Agreement (Dkt. 465) at 9; PSR (Dkt. 495) at ¶¶ 30-32. Further, the parties agreed that a 7-level downward departure under U.S.S.G. § 5K2.0 based on a combination of circumstances is appropriate for a total offense level of 8. Dkt. 465 at 9. The PSR confirms that Mr. Bychak has no criminal history and is in Criminal History Category I. PSR at ¶¶ 38-39. Accordingly, Mr. Bychak's guidelines range for an offense level of 8 in Criminal History Category I is 0 to 6 months. The government recommends the low-end of the guidelines, for a recommendation of no jail time. Dkt. 465 at 10, ¶ F. Further, the parties agreed that Mr. Bychak will pay a special assessment of $25, pay a fine of $100,000, and do 100 hours of community service. *Id.* at ¶¶ G1-G3.

Probation agrees that a custodial sentence is not warranted based on the 18 U.S.C. § 3553(a) sentencing criteria. PSR at ¶ 82. However, Probation recommends a sentence of five years of probation in addition to the monetary penalty of $100,000, and 100 hours of community service stipulated by the parties. PSR at ¶¶ 87-88. This recommendation is inappropriate in light of the specific circumstances here, as well as the general sentencing practices in federal misdemeanor cases.

While Mr. Bychak does not contest the penalty and community service recommendations, which are in line with the parties' agreement, the recommended five years of probation is overly harsh. Mr. Bychak respectfully requests that in

considering all of the factors discussed herein, that the Court impose a one-year probationary period. With the exception of the instant offense, Mr. Bychak has lived his entire life of 36 years free of any criminal activity. He has accepted responsibility and agreed in his Plea Agreement to a $100,000 monetary penalty and 100 hours of community service. The deterrence purpose of sentencing is satisfied by these conditions, and Mr. Bychak represents no present or future danger to the public.

Furthermore, Mr. Bychak has been on pre-trial supervised release since his self-surrender on November 1, 2018 – nearly 4 years ago, and he has been wholly compliant with the terms of his release, including when this Court allowed him to travel outside the Southern District. PSR at ¶ 21. During his pretrial supervision, he has maintained stable employment and remained a loving and supportive husband, brother, and son, and dedicated volunteer to his residential community. Mr. Bychak has already demonstrated that he has been and will be a model probationer. Five years of probation goes far beyond what is sufficient and necessary to meet sentencing objectives. Based on the numerous mitigating factors under the 18 U.S.C. § 3553(a) sentencing factors, and the fact that Mr. Bychak has already been supervised for four years, a sentence of one year of probation, 100 hours of community service and $100,000 fine is warranted.

## II.   PERSONAL BACKGROUND

### A. MR. BYCHAK'S UPBRINGING AND FAMILY

Mr. Bychak was born on October 29, 1985 in Santa Maria, California to a loving father and mother in a stable home environment. While his parents divorced when he was seven years old, he maintained a healthy relationship with both parents, and he is still close with them today. In the last few years his mother has suffered from various mental and physical health issues, and Mr. Bychak has been key in helping her take care of herself, including purchasing her a new home and

helping her rebuild and maintain relationships. Mr. Bychak has two brothers, an older brother who is 41 years old and a younger brother who is 35 years old. Mr. Bychak is extremely close with both of his brothers, as well as with his father.

Mr. Bychak has been married for four years to his wife Jean. They met in college over 15 years ago and their close friendship blossomed into a romantic relationship. Jean works full-time for a real estate company. They have lived in the San Diego area for most of their adult lives and have very close ties to their residential community where they have lived the past nine years. Once this case is behind them, they hope to start a family.

### B. MR. BYCHAK'S EDUCATION AND EMPLOYMENT

Mr. Bychak graduated from St. Joseph's High School in Santa Maria, California in 2004 and was a good student. After high school he attended San Diego State University ("SDSU") and graduated a semester early in the fall of 2007 with a bachelor's degree in Business Management. He immediately went on to obtain his Master of Business Administration ("MBA") from SDSU, which he earned in 2009.

Shortly thereafter Mr. Bychak briefly worked as a marketing research analyst for a financial services firm. On April 5, 2010, he was hired by Frontline Direct[1] as a marketing analyst and later that year he moved to the Operations team. This was Mr. Bychak's first significant full-time job out of college and he was 24 years old when he started working there. Over the years Mr. Bychak was promoted to Operations Manager and then became the Director of Operations. He worked for the company throughout the pending case. After he entered his guilty plea, the company subsequently let him go as well as the other co-defendants.

Mr. Bychak anticipates that he will remain gainfully employed post sentencing as he has accepted new employment as the Director of Marketing Operations for Launch Media Solutions, LLC.

---

[1] Frontline Direct was the predecessor company to Adconion Direct.

3
DEFENDANT JACOB BYCHAK'S SENTENCING MEMORANDUM

### C. ADCONION DIRECT'S NEED FOR IP ADDRESSES AND DEALINGS WITH GETADS AND DANIEL DYE

Frontline Direct was a commercial marketing company started by Kim Perell in 2003 with her friend Amanda Currie. Ms. Perell was the firebrand behind the company, and she quickly grew the company into a multimillion-dollar business that she sold to Adconion Media Group. In 2010, Frontline Direct became Adconion Direct (hereinafter "Adconion") and Ms. Perell was appointed as the CEO. Ms. Perell continued to grow Adconion and when it was acquired it grew to approximately 60 to 80 employees and later to over a hundred employees with numerous offices.

Throughout Ms. Perell's tenure as CEO, she received numerous awards and accolades, including being recognized by San Diego Business Journal as one of San Diego's Most Admired CEOs,[2] and in 2013 she received the prestigious Ernst & Young Entrepreneur of the Year Award.[3] Her employees loved working for her and trusted and respected her, including Mr. Bychak.

As Adconion grew, it needed more and more internet-protocol addresses ("IP addresses") to send mass commercial email. The Operations team at Adconion was tasked with acquiring the IP addresses for the email teams. GetAds was a company that marketed itself as providing electronic marketing solutions and advice. GetAds had a long-standing relationship with Adconion and was a marketing affiliate of Adconion.[4]

---

[2] https://www.allamericanspeakers.com/celebritytalentbios/Kim+Perell/426825 (last visited September 22, 2022).
[3] https://www.prnewswire.com/news-releases/adconion-direct-ceo-kim-perell-wins-prestigious-ernst--young-entrepreneur-of-the-year-award-211948151.html (last visited September 22, 2022).
[4] GetAds' website in 2012 touted its compliance practices: "GetAds has been instrumental in helping to create and standardize industry-wide compliance practices to ensure top lead quality for Advertisers and Agency's, while providing innovative ads and the highest payouts for our Publishers/Affiliates." *See* https://web.archive.org/web/20121016062848/http://www.getads.com/about%20us.html (last visited September 23, 2022).

In late 2010 to early 2011, Ms. Perell reached out to Daniel Dye from GetAds to inquire about purchasing IPs from GetAds. Up to this point, Adconion had never purchased IPs and had only previously leased them. Ms. Perell and another executive at Adconion, Kevin Wolf, had established the business relationship with GetAds and connected Dye with the Operations team to purchase IP netblocks. The first purchase of an IP netblock by Adconion from GetAds occurred in early 2011 and was handled by then Director of Operations Petr Pacas. The netblock related to a company named Open Business Solutions ("OBS"), and GetAds had acquired it from Scott Richter's company. Mr. Bychak handled the second purchase of an IP netblock from GetAds and Dye, as well as subsequent purchases until Mark Manoogian was introduced to Dye to handle additional purchases. The company's in-house counsel, Jonathan Harrill, who previously worked in IP acquisition at the company, reviewed, revised, and approved the purchase contract from GetAds.

In total, Adconion purchased eleven pre-ARIN[5] netblocks from GetAds and Daniel Dye, which were hijacked by Dye or Scott Richter. Regrettably, Mr. Bychak disregarded the signs that the netblocks were stolen.

### III. THE COURT SHOULD GRANT THE SEVEN-LEVEL DOWNWARD DEPARTURE UNDER § 5K2.0

Pursuant to Mr. Bychak's plea agreement, the parties agreed that a seven-level downward departure under U.S.S.G. § 5K2.0 is appropriate. *See* Plea Agreement, Dkt. 465 at 9, ¶ X.A. Section 5K2.0(2) allows for identified and unidentified circumstances the Commission may have not adequately considered to warrant a downward departure.

Here, the parties agreed that a seven-level downward departure was appropriate based on a combination of circumstances including: "the offense is a misdemeanor (while the guideline section is typically applied to felonies), and the

---

[5] Pre-ARIN or legacy IP space are IP addresses that were allocated in the early to mid 1990's before the creation of ARIN in 1997. ARIN stands for the American Registry of Internet Numbers.

agreement allows the government to avoid a prolonged trial during a surge in the ongoing pandemic." *Id.* at 9. Accordingly, the Court should grant the seven-level downward departure under § 5K2.0 and find that Mr. Bychak's total offense level is 8, in Criminal History Category I for a guideline range of 0 to 6 months.

## IV. THE 18 U.S.C. § 3553(a) SENTENCING FACTORS WARRANT A SENTENCE OF ONE YEAR PROBATION, COMMUNITY SERVICE AND A MONETARY PENALTY

After a district court calculates the applicable Guidelines range, which post-*Booker* are only advisory, it must then consider the factors in 18 U.S.C. § 3553(a). *Gall v. United States*, 552 U.S. 38, 38-39 (2007). The court "may not presume that the Guidelines range is reasonable but must make an ***individualized assessment*** based on the facts presented." *Id*. at 39 (emphasis added). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). "Underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.'" *Id*. at 487-88 (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)).

The Guidelines range is only one factor among each of the other factors set forth in § 3553(a) that the district court must consider. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The § 3553(a) sentencing factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the guideline sentencing range; (5) any pertinent policy statement; (6) any need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the need to provide restitution to any victims of the offense.[6] As

---

[6] Restitution is not applicable in this case.

6
DEFENDANT JACOB BYCHAK'S SENTENCING MEMORANDUM

discussed below these factors demonstrate that a sentence of one year probation, 100 hours of community service and a fine of $100,000 for Mr. Bychak is warranted.

### A. NATURE AND CIRCUMSTANCES OF THE OFFENSE WARRANT A SENTENCE OF ONE YEAR PROBATION

The discovery produced by the government in this case shows that it was Daniel Dye and his associate Scott Richter, also known as the "Spam King,"[7] that apparently hijacked the pre-ARIN netblocks that were ultimately sold to Adconion. In fact, in 2003 Richter was invited to be a panelist by the Federal Trade Commission to a public conference to discuss the subject of spam. During that conference, one of Richter's co-panelists remarked about the proliferation of the use of abandoned or unused legacy space:

> MS. KOSCHIER: This is Margot. We've noticed a ***trend recently where IP addresses*** that are registered to entities overseas or domestic that ***have been dormant for a while are apparently being misappropriated and borrowed—we're terming these zombie net blocks*** -- for spamming uses. We're not quite sure how it's happening; we have a couple of theories, but mail is coming from places where it hasn't been coming from all along and these IP addresses are somehow being routed by -- the routes are being accepted by internet service providers, locally, domestically, but the IP blocks a long time ago should have been registered to folks overseas.
>
> MR. COHEN: Could part of the problem be that they've been sublet to other users?
>
> MS. KOSCHIER: Could be, from what we've been seeing; however, it would indicate that the owners of these, the rightful owners of these net blocks, have no idea that this is happening.

*See* Transcript of Record at 201:13-202:5, *Federal Trade Commission Spam Forum – Day One, Second Version* (April 30, 2003) (emphasis added), https://www.ftc.gov/sites/default/files/documents/public_events/ftc-spam-forum/transcript_day1.pdf (last visited September 23, 2022).

---

[7] *See* https://en.wikipedia.org/wiki/Scott_Richter (last visited September 26, 2022).

Richter was aware that IP hijacking was transpiring in the industry as early as 2003 – when Mr. Bychak was still in high school, and when he had no experience in the commercial email marketing industry. Despite Richter being the source of some of the purloined netblocks that Adconion ultimately purchased, Richter was never criminally charged by the government. Further, even though Dye orchestrated the scheme to sell hijacked netblocks to Adconion, and hijacked some of the netblocks that were sold to Adconion himself, he is expected to receive a misdemeanor based on his cooperation. *See United States v. Dye*, Case No. 18-CR-0822-GPC, Addendum to Plea Agreement filed on February 22, 2018 at 3-4, ¶ H. Also, Vincent Tarney, who announced the hijacked netblocks and even created some of the Letters of Authority ("LOAs") to announce them is also expected to receive a misdemeanor based on his cooperation. *See United States v. Tarney*, Case No. 18-CR-3469-GPC, Addendum to Plea Agreement filed on August 7, 2018 at 3, ¶ H.

Mr. Bychak certainly accepts responsibility for his role in this offense. It is important to note that his salary and bonus at Adconion were not tied to the acquisition of the GetAds IPs. In fact, in 2013 when Adconion purchased the most IPs from GetAds, Mr. Bychak's compensation was less than the prior year. Further, the original assignees of the netblocks had abandoned them and some were not even aware they had a netblock. This is not meant to minimize the conduct, but rather to point out that the owners of the netblocks sustained no monetary injury from their use. Accordingly, given Mr. Bychak's role in the offense compared to others charged and uncharged in the netblock hijacking scheme, and his lack of discernable financial gain, a sentence of one year of probation, 100 hours of community service, and a $100,000 fine is warranted.

### B. MR. BYCHAK'S HISTORY AND CHARACTERISTICS FURTHER SUPPORT A SENTENCE OF ONE YEAR PROBATION

District courts may weigh a multitude of mitigating factors under § 3553(a) such as "age, education, mental or emotional condition, medical condition . . .

employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service." *Rita v. United States*, 551 U.S. 338, 364-65 (2007); *see* also *United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006).

### 1. Mr. Bychak is a Loving and Dedicated Husband and Family Member and Involved in His Community

Mr. Bychak has lived in California his entire life and he has lived in the San Diego area since college. He is an active member of his community and a loving husband, brother, and son. Mr. Bychak's wife Jean, whom he has known for approximately 15 years, writes:

> Jake is the ***most responsible, kindest, and best person I know***. As his wife, it may seem obvious that I would have these feelings - but he continues to prove it to me and the world day after day.
>
> …
>
> ***Since I've known Jake, he has been a pillar of family - both his and my own. He has repaired other's relationships and supported people when they were at their lowest point***. He has taken in multiple friends and family members to live with him/us, expecting nothing in return. When my mother was diagnosed with Leukemia a few years ago, it was without question that he financially supported me while I moved in with her to be her caretaker until she died years later, all the while moving in his own mother with him when she needed a place to stay. It was a difficult time for us to be apart and be dealing separately with such emotional distress. This was also the same time that this case arose.
>
> Recently, we bought his mother a home. She didn't have a place to stay and needed help. Jake, in true character, again rose to the occasion to make sure that she was safe and healthy. Since then, she has been able to regain her health and mend relationships that she had abandoned. You can truly hear the difference in her voice since Jake helped her.

Exhibit A (emphasis added).

Mr. Bychak is also very close to his younger brother Rick who was only a year below him in school and they also both attended college at SDSU and currently work together. Rick writes:

> Jake and I get along quite well. We've essentially spent our entire lives together and I have *never once questioned Jake to be anything other than an absolute and genuinely good person*. To this day, we regularly spend time together. We'll get together with family to hang out, BBQ, and have an overall great time. While together, *I've watched him interact with my toddler daughter and it never ceases to warm my heart how his approach is always gentle, yet fun and inviting*. I'm a big facilitator of having my children around the people they love, and Jake has always been one of those people.

Exhibit B (emphasis added). Rick goes on to write:

> I know these past few years have been very stressful for Jake and our family not knowing what is going to happen with this case. I know Jake has learned a lot through this process and Jake and our whole family are looking forward to this being behind him. *Jake is a person of integrity and good character and I know he has learned from his past mistakes*. I support Jake to the fullest degree.

*Id.*

Mr. Bychak is also an active member of his community and tries to give back to make it a better place. He has served on the Homeowners Association ("HOA") Board for the last eight years shortly after purchasing his condominium. He volunteered for the board because he wanted to make a difference and play at part in improvements around the community. Over the past eight years, he has served in various volunteer roles for the board and recently became president. He has spent many hours working through community issues, hearing residents' concerns, helping out when residents have repair issues, and working to create better rules to have a safer, more prosperous community. The residents know they can call him if they

10
DEFENDANT JACOB BYCHAK'S SENTENCING MEMORANDUM

have any issues or concerns. Mr. Bychak has tirelessly served his community because he wants to make it a better place for all his neighbors.

Mr. Bychak also looks forward to being able to put this matter behind him, not just for himself, but for his family and friends that he cares so much about. As he wrote in his letter to the Court:

> Although the last several years have been personally difficult due to the case, I have done my best to still be there for my wife, parents, and brothers and be a source of comfort and support for them, as well as for friends in need. They have all been extremely supportive of me through this matter and I look forward to putting this matter behind me, not just for my sake, but for their sake and peace of mind as well.

Exhibit C. Mr. Bychak looks forward to being able to dedicate more time to his family and friends and to other community involvement.

### 2. **Mr. Bychak is Deeply Remorseful for His Conduct, has Lived a Law-Abiding Life, and Poses Zero Risk of Recidivism**

Mr. Bychak is deeply remorseful for his conduct in this offense, which occurred approximately 10 years ago when he was in his mid-twenties. Apart from this offense, he has always lived a law-abiding life and has never been in trouble before. His conduct in this offense was out of character for him, and he writes:

> I come before the Court humbled by this case that has spanned the last four years. I am a person of integrity and I fully accept responsibility for my part in this case and am very remorseful for the part I played. This case, which has been my only experience within the criminal justice system, has been very stressful and I can assure the Court that you (or any other criminal court) will not see me again. I've never been in trouble before and I learned a lot about this process along the way, and will absolutely do my part to never experience it again. I have learned from my errors from when I was younger and will not repeat them.

Exhibit C.

Mr. Bychak has no criminal history, and this case alone has made him learn from his mistakes. He poses virtually no risk of recidivism, and like his participation on pre-trial release, he will comply with all the conditions of probation.

In summary, taking into consideration the numerous mitigating factors including Mr. Bychak's lack of criminal history, his long-standing community ties, his acceptance of responsibility, the fact the offense occurred in his mid-twenties, the lack of any discernable financial gain, and the fact that those who actually stole the netblocks will likely receive misdemeanors or were not charged by the government at all – all weigh in favor of a sentence of one year of probation, 100 hours of community service, and a $100,000 fine.

## V.   UNDER THE CIRCUMSTANCES, ONE YEAR OF PROBATION, COMMUNITY SERVICE AND A SIGNIFICANT MONETARY PENALTY IS SUFFICIENT TO SERVE THE PURPOSES OF § 3553(a)(2)

Subparagraph (2) of 18 U.S.C. § 3553(a) lists additional factors for the court to weigh in order "to impose a sentence sufficient, *but not greater than necessary*" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *Carty*, 520 F.3d at 991 (quoting and citing 18 U.S.C. § 3553(a) and (a)(2) (emphasis added)).

Here, Probation is recommending five years of probation, which is greater than necessary to meet the factors of § 3553(a)(2). As addressed in detail *supra*, apart from this offense, Mr. Bychak has always led a law-abiding life dedicated to hard work, he has no criminal history, much less even a prior arrest, and this offense was out of character for him. He has learned from his mistakes, which occurred a decade ago, and he has already shown this Court he can follow all restrictions placed on him as he has already been on pretrial supervision for nearly four years.

This Court, or any other court for that matter, will not see Mr. Bychak again in any criminal context as he poses zero risk of recidivism.

Imposition of five years of probation is greater than necessary to reflect the seriousness of the offense and promote respect for the law and would unnecessarily expend government resources on a defendant who does not need to be monitored. As the court stated in *United States v. Chapman*, a case dealing with early termination of probation, "there is no benefit to be derived by maintaining a supervised release at public expenses over someone who has proven himself to be beyond the need of supervision." 872 F. Supp. 369, 372 (E.D. Va. 1993). Mr. Bychak has shown during his almost four years of supervised pretrial release that he does not warrant an additional five years of supervision, and that one year of probation is sufficient. Further, the offense is a misdemeanor, with a guidelines range of 0 to 6 months. Finally, the median term of probation for a federal misdemeanor is 12 months,[8] and 36 months for a felony.[9] Thus, Probation's recommendation of two years over the median term of probation for a felony is greatly disproportionate to this misdemeanor offense. Accordingly, a sentence of one year of probation, 100 hours of community service and a fine of $100,000 is sufficient to promote respect for the law and provide just punishment and adequate deterrence in this case.

---

[8] *See* U.S. DOJ, Federal Judicial Statistics 2019 at 11 (showing table of median misdemeanor probation length as 12 months), https://bjs.ojp.gov/content/pub/pdf/fjs19.pdf (last visited on September 22, 2022); and U.S. DOJ, Federal Judicial Statistics 2020 at 11 (noting "In FY 2020, the median probation sentence was … 12 months for a misdemeanor (not shown in table)."), https://bjs.ojp.gov/content/pub/pdf/fjs20.pdf (last visited on September 22, 2022). The U.S. DOJ Federal Judicial Statistics for 2021 have not yet been released.
[9] *Id.* Statistics 2019 at 11 (showing table of median felony probation length as 36 months); *id.* Statistics 2020 at 11 (noting "In FY 2020, the median probation sentence was 36 months for a felony….").

13
DEFENDANT JACOB BYCHAK'S SENTENCING MEMORANDUM

## VI. A SENTENCE OF MORE THAN ONE YEAR PROBATION WOULD LIKELY RESULT IN UNFAIR SENTENCE DISPARITIES CONNECTED WITH THIS INVESTIGATION

Subsection 6 of 18 U.S.C. § 3553(a) requires the court to avoid unwarranted sentence disparities among defendants with similar records. First, as discussed *supra*, the government's discovery showed that many of the netblocks Dye sold to Adconion came from Scott Richter. Yet Mr. Richter was never even prosecuted. Further, Dye who coordinated with Richter to obtain some of the netblocks sold to Adconion will likely have his felony plea amended to a misdemeanor. *See United States v. Dye, supra*, Addendum to Plea Agreement at 3-4, ¶ H.[10] Also, the government has similarly agreed to reduce Tarney's felony conviction to a misdemeanor if it determines he has provided "extraordinary cooperation." *See United States v. Tarney, supra*, Addendum to Plea Agreement at 3, ¶ H.

Dye's sentencing is not scheduled until January 30, 2023 (*United States v. Dye, supra*, Dkt. 46), and Tarney's sentencing is not scheduled until December 12, 2022. *United States v. Tarney, supra*, Dkt. 39. Accordingly, based on their sentences, imposing a five-year term of probation could be greater than what Dye and Tarney both receive, a disparity unjustified by the circumstances. Accordingly, the Court should impose a term of probation no greater than one year to avoid unwarranted sentence disparities.

## VII. CONCLUSION

For the foregoing reasons, Mr. Bychak respectfully requests that the Court grant the seven-level downward departure under U.S.S.G. § 5K2.0 and adopt an offense level of 8 for a guidelines range of 0 to 6 months in Zone A, and based on the numerous mitigating factors under 18 U.S.C. § 3553(a), impose a sentence of one year of probation, 100 hours of community service, a special assessment of $25 and a fine of $100,000.

---

[10] The government agreed to dismiss Dye's felony conviction and allow Dye to plead to a misdemeanor based on extraordinary cooperation prior to his sentencing.

| | | |
|---|---|---|
| Dated: September 26, 2022 | | WIECHERT, MUNK & GOLDSTEIN, PC |
| | By: | s/*Jessica C. Munk* |
| | | Jessica C. Munk |
| | | Attorneys for Defendant |
| | | Jacob Bychak |

# CERTIFICATE OF SERVICE

Counsel for Defendant certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

AUSA Melanie K. Pierson
AUSA Sabrina L. Feve
AUSA Ashley E. Goff
U.S. Attorney's Office
880 Front Street, Rm 6293
San Diego, CA 92101
melanie.pierson@usdoj.gov
sabrina.feve@usdoj.gov
ashley.goff@usdoj.gov

Candina S. Heath
Department of Justice
1301 New York Avenue NW, Suite 600
Washington, DC 20530
candina.heath2@usdoj.gov

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 26, 2022, at San Juan Capistrano, California.

s/*Jessica C. Munk*
Jessica C. Munk